# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **DILIP JANA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-00698-SDJ-KPJ** |
| | § | |
| **WALMART INC.,** | § | |
| | § | |
| **Defendant.** | § | |

---

## WALMART INC.'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

---

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................6

II.   STATEMENT OF THE ISSUES .......................................................................7

III.  FACTUAL BACKGROUND ..............................................................................8

      A.  Walmart hires Plaintiff and promotes him to Director of Data Science. ...............8
      B.  Walmart selects Infogain as a third-party analytics vendor for a project...............8
      C.  Walmart works with Infogain on the Project.........................................................9
      D.  Walmart investigates various complaints submitted by Plaintiff,
          determining that each requires no further action. ...............................................10

          1.   August 8, 2023, complaint to Allie Hazelwood......................................10
          2.   August 14, 2023, complaint to Shawn Cohen.........................................11
          3.   October 4, 2023, complaint to Milbourne, Mehra, and Wendy
              Bowman. ...............................................................................................12
          4.   October 6, 2023, complaint to Greg Cathey. ..........................................12

      E.  Walmart terminates Plaintiff after he engages in acts of insubordination
          and disruptive conduct. ......................................................................................13
      F.  Plaintiff files complaint with Department of Labor and kicks complaint
          out to this Court. ...............................................................................................14

IV.   LEGAL STANDARD ........................................................................................15

V.    ARGUMENTS AND AUTHORITIES ..............................................................16

      A.  Plaintiff's Purported "Whistleblowing" Was Not Protected Activity Under
          SOX or CAARA. ...............................................................................................16

          1.   Plaintiff has not established a reasonable belief that a SOX or
              CAARA violation occurred. ..................................................................17
           2.   Plaintiff's belief that Walmart violated SOX was objectively
              unreasonable. ........................................................................................19
          3.   Plaintiff's belief that Walmart violated an antitrust law was
              objectively unreasonable........................................................................23
          4.   The Complaint's pleading defects cannot be cured by (another)
              amendment. ...........................................................................................25

      B.  Even if Plaintiff Was Engaged in Protected Activity, the Complaint
          Alleges Facts that Prove Walmart Would Have Fired Him for Independent
          Reasons...............................................................................................................25

VI.   CONCLUSION ..................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allen v. Admin. Rev. Bd.*,
    514 F.3d 468 (5th Cir. 2008) ................................................................ 16, 17, 18, 19, 20, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 15

*Basic Cap. Mgmt. v. Dynex Cap., Inc.*,
    976 F.3d 585 (5th Cir. 2020) ...................................................................................... 15, 16

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) .......................................................................................................... 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 8

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
    27 F.4th 313 (5th Cir. 2022) ...................................................................................... 15, 16

*Brown v. Colonial Savings F.A.*,
    No 4:16-CV-884-A, 2017 WL 1080937 (N.D. Tex. Mar. 21, 2017) .............................. 21, 22

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ............................................................................................ 28

*Day v. Staples, Inc.*,
    573 F.Supp.2d 336 (D. Mass. 2008) ................................................................................ 18

*Day v. Staples, Inc.*,
    555 F.3d 42 (1st Cir. 2009)..................................................................................... 19, 20, 24

*Estabrook v. Admin. Rev. Bd.*,
    814 Fed.Appx 870 (5th Cir. June 20, 2020) ...................................................................... 17

*Gibney v. Evolution Mktg. Rsch., LLC*,
    25 F.Supp. 3d 741 (E.D. Pa. 2014) ................................................................................... 22

*Hemphill v. Celanese Corp.*,
    430 Fed.Appx. 341 (5th Cir. June 23, 2011) .................................................................... 26

*Joy v. Robbins & Myers, Inc.*,
    Case No. 2007–SOX–74, 2008 WL 892694 (U.S. Dept. Labor, Off. Admin. L.
    Judges, 2008) .................................................................................................................... 20

*Kantin v. Metro. Life Ins. Co.*,
    No. 13 CV 8925-LTS-JCF, 2016 WL 1020988 (S.D.N.Y. Mar. 14, 2016) ........................ 22

*Mahony v. KeySpan Corp.*,
    No. 04 CV 554 SJ, 2007 WL 805813 (E.D.N.Y. Mar. 12, 2007)........................................ 18

*Parker v. BNSF Railway Co.*,
    112 F.4th 687 (9th Cir. 2024) (Graber, J., dissenting) ........................................... 17

*Ret. Sys. Of Haw. v. Whole Foods Mkt., Inc.*,
    905 F.3d 892 (5th Cir. 2018) ................................................................................... 15

*Ronnie v. Off. Depot, LLC*,
    81 F.4th 1345 (11th Cir. 2023) ............................................................................... 19

*Scranton Const. Co., Inc. v. Litton Indus. Leasing Corp.*,
    494 F.2d 778 (5th Cir. 1974) ................................................................................... 24

*Sequeira v. KB Home*,
    716 F.Supp.2d 539 (S.D. Tex. 2009) ...................................................................... 18

*Stripling v. Jordan Prod. Co., LLC*,
    234 F.3d 863 (5th Cir. 2000) ................................................................................... 25

*Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*,
    496 F.3d 403 (5th Cir. 2007) ................................................................................... 23

*U.S. v. Young Bros., Inc.*,
    728 F.2d 682 (5th Cir. 1984) ................................................................................... 24

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
    336 F.3d 375 (5th Cir. 2003) ................................................................................... 28

*Verfuerth v. Orion Energy Sys., Inc.*,
    879 F.3d 789 (7th Cir. 2018) ................................................................................... 21

*Wallace v. Tesoro Corp.*,
    796 F.3d 468 (5th Cir. 2015) ................................................................................... 18

*Wallace v. Tesoro Corp.*,
    No. SA-11-CA-00099-FB, 2017 WL 6403117 (W.D. Tex. Feb. 23, 2017) ............ 27

**Federal Statutes**

15 U.S.C. § 7a-3 ............................................................................................... 7, 14, 16

18 U.S.C. § 1514A ........................................................................................ 7, 15, 16, 21

49 U.S.C. § 42121(b) ................................................................................................... 17

49 U.S.C. § 42121(b)(2)(B) ........................................................................................ 17

49 U.S.C. § 42121(b)(2)(B)(iv) ................................................................................... 25

**Rules**

FED. R. CIV. P. 12(b)(6) ............................................................................................. 6, 15

FED. R. CIV. P. 15(1)(b) ................................................................................................. 14

FED. R. CIV. P. 15(a)(1)(B) ........................................................................................... 14

FED. R. CIV. P. 15(a)(2) ................................................................................................. 25

**Regulations**

29 C.F.R. § 1979.104(b)(1) .......................................................................................................17

29 C.F.R. § 1980.109 ................................................................................................................17

29 C.F.R. § 1980.114(b) ...........................................................................................................17

29 C.F.R. § 1991.109(b) ...........................................................................................................25

29 C.F.R. § 1991.109 ................................................................................................................17

29 C.F.R. § 1991.114 ................................................................................................................17

**Other Authorities**

*Procurement Collusion Strike Force*, U.S. DOJ, ANTITRUST DIVISION,
   https://www.justice.gov/atr/procurement-collusion-strike-force (last visited
   Sept. 25, 2024) ....................................................................................................................24

Defendant Walmart Inc. ("Walmart") moves this Court to dismiss, without leave to amend, Plaintiff Dilip Jana's ("Plaintiff") Seconded Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) and in support shows as follows:

## I.     **INTRODUCTION**

This case arises out of Walmart's termination of Plaintiff's employment.  Walmart did so because Plaintiff's tenure at Walmart was mired with his disruption, toxicity, and constant attempts to undermine his supervisors.  Clear from the face of the Complaint, Plaintiff resented his supervisors and colleagues and viewed them as incompetent, undereducated, and unqualified to manage someone of Plaintiff's supposed caliber.  Instead of taking accountability for his inability to work within a team, Plaintiff now describes his termination as Walmart's retaliation for his purported whistleblowing.

As an initial matter, Plaintiff is not a whistleblower because, under the anti-retaliation statutes at issue here, one who makes contrived and baseless accusations of illegal conduct is not engaged in the "protected activity" that defines whistleblowing.  Further, Plaintiff's allegations demonstrate that he lacks even a basic understanding of the elements of the so-called violations that he reported.

Nonetheless, Plaintiff claims that his allegations of "fact" somehow demonstrate "textbook" fraud and "textbook" antitrust violations by Walmart.  But as this Court knows, such conclusory labels are insufficient to save the Complaint from dismissal.  Plaintiff must instead allege sufficient facts to plausibly suggest that a reasonable person would have believed that Walmart's conduct was illegal.  And as any relevant "textbook" would confirm, Plaintiff's allegations do not remotely approach the elements of either shareholder fraud or an antitrust violation.  Accordingly, Plaintiff's Complaint should be dismissed in its entirety with no right to

replead because Plaintiff has failed to allege that he was engaged in protected activity while employed at Walmart.

Separately, to the extent that Plaintiff's Complaint states a claim, it also pleads a dispositive affirmative defense: Walmart can avoid liability by demonstrating that, even in the absence of Plaintiff's purported whistleblowing, Walmart would have terminated Plaintiff's employment. The Complaint itself contains ample factual allegations to support such a finding as a matter of law, as Plaintiff has included in his own operative pleading several incidents of his insubordination, disruption, and underperformance.  Walmart could have terminated Plaintiff's based on any of those incidents, which the Complaint describes in detail.  In fact, Plaintiff has also attached to the Complaint internal Walmart documents that detail the reasons why Walmart terminated Plaintiff's employment—his insubordination, disruption and underperformance, with no reference to Plaintiff's unfounded reports of allegedly illegal conduct.  Because an affirmative defense is evident directly from the face of the Complaint, both of Plaintiff's claims should be dismissed.

## II.   STATEMENT OF THE ISSUES

To resolve this Motion to Dismiss, the Court must decide the following issues:

1.      Whether Plaintiff alleged facts sufficient to plausibly suggest that Plaintiff was engaged in "protected activity," as defined in either 15 U.S.C. § 7a-3 or 18 U.S.C. § 1514A, during Plaintiff's employment at Walmart.

2.      Whether Plaintiff alleged facts sufficient to find that, as a matter of law, Walmart would have terminated Plaintiff's employment even in the absence of Plaintiff's purported protected activity.

### III.   FACTUAL BACKGROUND

#### A.  Walmart hires Plaintiff and promotes him to Director of Data Science.

Plaintiff is a data scientist with a master's degree in physics and a PhD in nuclear and particle physics.[1]  In March 2020, Walmart hired Plaintiff as a Principal Data Scientist at a Walmart corporate office in Dallas, Texas.  Compl. ¶ 1.  In April 2023, Walmart promoted Plaintiff to Director of Data Science.  *Id.*  In Plaintiff's promoted role, Plaintiff reported directly to Adrian Milbourne ("Milbourne"), who, at the time relevant to the Complaint, was a Senior Director at Walmart.  *Id.* ¶ 37.  Milbourne reported to Ridhi Mehra ("Mehra"), who, at the time relevant to the Complaint, was a Vice President at Walmart.  *Id.* ¶ 37.

#### B.  Walmart selects Infogain as a third-party analytics vendor for a project.

In March 2023, shortly before Plaintiff officially began his new role as Director of Data Science, Milbourne informed Plaintiff that Milbourne's team (which Plaintiff was about to join) was soliciting bids from third-party analytics providers for a project intended to identify certain operational defects in Walmart's retail stores (the "Project").  *Id.* ¶ 40.  Milbourne told Plaintiff that Kamil Bay ("Bay"), a Walmart Director of Analytics who also reported to Milbourne, was leading the bid-evaluation process.  *Id.*  Milbourne requested Plaintiff provide Bay with Plaintiff's input as to the strengths and weakness of potential vendors.  *Id.*

Bay initially received bids from five potential third-party vendors, including Infogain, an India-based data and analytics firm.  *Id.* ¶ 42.  In accordance with Milbourne's instruction, Plaintiff attended bid presentations from Infogain as well as Deloitte and Google, who partnered in submitting a competing bid together (Deloitte and Google together, "Google").  *Id.* ¶¶ 42–43.

---

[1]  The recitation of facts contained herein is a mere restatement of certain factual allegations contained in the Complaint.  For purposes of this Motion to Dismiss, Plaintiff's allegations are taken as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Walmart has not in this Motion responded to the myriad of unfounded allegations in Plaintiff's Complaint, and in summarizing certain facts as alleged by Plaintiff for purposes of this Motion to Dismiss, Walmart also reserves the right to deny these and other factual allegations in the Complaint at a later time.

During this time, Plaintiff became aware of the initial bid price of both Infogain and Google: Infogain bid an initial fee of $180,000 to complete a Proof of Concept ("POC") for the Project, and Google bid a fee of $300,000 for the POC.  *Id.* ¶ 43.

Plaintiff wasted no time expressing his preference against awarding the POC to Infogain. On the same day that Plaintiff attended the Google and Infogain presentations, Plaintiff told Bay that "we will not get quality of work" from Infogain.  *Id.* ¶ 44.  The next day, Mehra attempted to assuage Plaintiff's concerns about Infogain, telling Plaintiff she preferred awarding Infogain the contract because Infogain was less expensive than Google and "underst[ood] the problem better."[2] *Id.* ¶ 45.

To finalize his recommendation on the selection of a vendor for the Project, Bay numerically rated potential vendors.  *Id.* ¶ 47.  At the time, Plaintiff disagreed with Bay's rating of Infogain.  *Id.*  In any event, Walmart awarded Infogain the POC contract for the Project on April 11, 2023.  *Id.*

### C.  Walmart works with Infogain on the Project.

At various stages of the Project, Walmart and Infogain mutually agreed on adjustments to Infogain's fee and the initial POC term length.  *Id.* ¶¶ 50–54.  A Statement of Work executed by Walmart and Infogain governed the rights and duties of Infogain with respect to the Project.  *Id.* ¶¶ 49, 50, 52–53.  The Complaint also alleges that, on occasion, Walmart and Infogain executed an amendment to the Statement of Work to memorialize the parties' agreement about work that

---

[2] Throughout the Complaint, Plaintiff includes purported transcriptions of conversations Plaintiff had with various Walmart employees, which Plaintiff appears to have recorded. *See, e.g.*, Compl. ¶ 45.  Such recordings were made without the knowledge or consent of the other participants.  In quoting these purported transcriptions for the purposes of this Motion to Dismiss, Walmart reserves any rights or potential objections related to the accuracy and admissibility of both Plaintiff's purported transcriptions as well as the recordings themselves.

Infogain had already completed.  *Id.* ¶ 54.  Plaintiff apparently considered this routine practice to constitute "manipulation of account bookkeeping for a publicly traded company."  *Id.*

During Walmart's engagement with Infogain, Plaintiff took issue with the work Infogain performed.  Specifically, Plaintiff resented that Infogain failed to present to Walmart a proprietary software called NAVIK, which Infogain had offered to provide during its bid presentation to Walmart.  *Id.* ¶ 55.  Although Mehra and Milbourne, Plaintiff's superiors, did not view Infogain's failure to deliver the NAVIK software as a dealbreaker, Plaintiff thought otherwise, considering Infogain's underdelivery "a textbook style of fraud."  *Id.* ¶ 56.  Against Plaintiff's preference, Walmart continued to work with Infogain throughout the POC stage of the Project, which ended in September 2023.  *See id.* ¶¶ 53–54, 92.

### D.   Walmart investigates various complaints submitted by Plaintiff, determining that each requires no further action.

Plaintiff alleges that he made several complaints to various Walmart employees during Walmart's relationship with Infogain, which were each officially investigated and determined to lack merit.

### 1.   August 8, 2023, complaint to Allie Hazelwood.

*First*, Plaintiff alleges that on August 8, 2023, Plaintiff reported "possible fraud" to Allie Hazelwood ("Hazelwood"), a Senior Vice President at Walmart and Mehra's supervisor.  *Id.* ¶ 62. By "possible fraud," Plaintiff explained to Hazelwood that "vendor (Infogain) selection was done in an unethical manner, providing projects to vendor despite their very poor performance."  *Id.*

When Hazelwood contacted Plaintiff regarding Plaintiff's complaint, Plaintiff told Hazelwood that (1) Bay favored selecting Infogain as a vendor and his rating of potential vendors was biased towards Infogain, (2) Infogain raised its fee amount after being awarded the Project contract, (3) Walmart was continuing its relationship with Infogain despite Plaintiff's belief that

Infogain was performing poorly, and (4) on occasion, Walmart and Infogain did not always reduce amendments to the Statement of Work to writing before Infogain performed the changed work. *Id.* ¶ 63.  Plaintiff did not elaborate on how the above events could be considered fraud.  *Id.*

### 2. August 14, 2023, complaint to Shawn Cohen.

*Second*, Plaintiff alleges that on August 14, 2023, Plaintiff reported "possible fraud" to Shawn Cohen ("Cohen"), Vice President of Human Resources at Walmart.  *Id.* ¶ 64.  Plaintiff ominously told Cohen that "we are in the verge of big corruption" and that Plaintiff was concerned with "procurement fraud, bid rigging, bid suppression and misrepresentation of low cost to get the POC for the vendor."  *Id.*

In response, Cohen informed Plaintiff that Cohen would pass along the complaint to Walmart's ethics team to "launch an investigation."  *Id.* ¶ 65.  In early September 2023, Plaintiff met with Jelahn Stewart ("Stewart"), a Vice President of Ethics at Walmart.  *Id.* ¶ 66.  Plaintiff reiterated his concerns to Stewart, and Stewart told Plaintiff that Monica Hall ("Hall"), a Senior Manager of Ethics at Walmart, would handle Walmart's investigation into Plaintiff's complaints.

A few days later, on September 8, 2023, Plaintiff and Hall discussed Plaintiff's complaints, and Plaintiff shared with Hall documents that Plaintiff contended were evidence of "procurement fraud, bid rigging, possible fraud to shareholders, [and] FCPA violations."  *Id.* ¶ 67.  The "documents" were actually just narrative descriptions authored by Plaintiff in which Plaintiff described purportedly illegal conduct by Walmart employees.  *See id.* ¶¶ 67–68.  Specifically, Plaintiff stated that "Infogain portrayed of a false image that they are cheaper during the bidding process" and that Google "was unfairly eliminated" from the bidding process.  *Id.*  Plaintiff also theorized that Mehra "intentionally supported" the selection of Infogain as a vendor as part of a bribery and embezzlement scheme, evidenced only by the fact that "Infogain is an India based IT company" and that Mehra "was/is an Indian citizen."  *Id.*

On September 27, 2023, Hall informed Plaintiff that Walmart's investigation into Plaintiff's claims had been closed. *Id.* ¶ 69.

### 3.    October 4, 2023, complaint to Milbourne, Mehra, and Wendy Bowman.

*Third*, Plaintiff alleges that on October 4, 2023, Plaintiff sent a message to Milbourne, Mehra, and Wendy Bowman ("Bowman"), a Walmart Human Resources employee, in which Plaintiff stated that Bay was "approving Infogain's work unethically." *Id.* ¶ 75. The next day, Mehra responded to Plaintiff's message, stating that "all [of Plaintiff's emails] have been appropriately escalated." *Id.* ¶ 103.

On October 16, Plaintiff submitted a complaint to Walmart's Ethics Department "about [Milbourne's] retaliation effort and how [Milbourne] was aiding [Mehra] for bid rigging, procurement fraud and violation of other federal laws." *Id.* ¶ 79. That same day, Plaintiff informed Bowman that Plaintiff had submitted the above-described ethics complaint, which Bowman acknowledged. *Id.* ¶ 80.

### 4.    October 6, 2023, complaint to Greg Cathey.

*Fourth*, Plaintiff alleges that on October 6, 2023, Plaintiff "reported fraud" to Greg Cathey ("Cathey"), a Senior Vice President at Walmart. *Id.* ¶ 76. In his message to Cathey, Plaintiff suggested that awarding Infogain a new contract beyond the POC for the Project would "be a violation of a few federal labor laws." *Id.* Plaintiff's apparent basis for his concern was posed as a question to Cathey: "[A]re they being compensated properly?" *Id.* The next day, Cathey told Plaintiff that Walmart would "hold[] all work with Infogain" while Walmart reviewed Plaintiff's concerns. *Id.* ¶ 77.

### E.  Walmart terminates Plaintiff after he engages in acts of insubordination and disruptive conduct.

Concurrent with Plaintiff's submission of the above-described complaints, Plaintiff lashed out at his supervisors and colleagues, eventually culminating in his termination by Walmart.

For example, in August 2023, Plaintiff made public, negative comments regarding his supervisors at a work event, commenting to the full audience that they were unqualified with "limited or no Data Science experience" and are "here because of cronyism." *Id.* ¶ 187.  In doing so, Plaintiff also continually referred to himself as "one of the best data scientists." *Id.*  Puzzlingly, Plaintiff delivered this diatribe within a loose analogy to "the Oppenheimer movie [in which] Oppenheimer had to go through a horrible situation even after successfully delivering a nuclear bomb, simply because of politics." *Id.*

As Plaintiff's unfounded accusations of Walmart's misconduct increased, so did his direct insubordination.  On September 14, 2023, Milbourne recapped a one-on-one meeting with Plaintiff in an email that listed deadlines for ongoing projects.  *See id.*, Ex. 11.  Milbourne noted that one item to be performed by Plaintiff was late and that Plaintiff should "keep [Milbourne] posted on progress." *Id.*  In that same email thread, Milbourne informed Plaintiff that one of Plaintiff's prior responsibilities would be transitioned to Bay.  *See id.* ¶ 107; *id.*, Ex. 11.  Plaintiff was offended by his receipt of orders from his superior and responded aggressively to Milbourne's email the next day, blaming Milbourne for Plaintiff's apparent underperformance and advising Milbourne to "Please READ from my previous email, it's simple English" with respect to a deadline that Plaintiff disagreed with.  *See id.*, Ex. 11.

Relatedly, on October 2, 2023, Mehra led a meeting with Walmart's analytics team (led by Bay) and data science team (led by Plaintiff).  *See id.* ¶ 106.  During that meeting, Plaintiff expressed his frustration that Bay was taking over one of Plaintiff's responsibilities, telling Mehra

that Plaintiff felt "like we are enforcing a dictatorship here" and that if Mehra did not accommodate Plaintiff's concern, then "we have to say this is an authoritative regime or dictatorship that is imposing to follow you." *Id.* ¶ 109.

In response to Plaintiff's continued insubordination and erratic behavior, on October 4, 2023, Bowman recommended that Walmart terminate Plaintiff. *See id.*, Ex. 2. Bowman internally described the basis for Plaintiff's termination as Plaintiff's "disparaging, disruptive and dismissive behavior causing a toxic work environment." *Id.* Plaintiff was officially terminated on October 19, 2023. *Id.* ¶ 213.

### F. Plaintiff files complaint with Department of Labor and kicks complaint out to this Court.

On January 3, 2024, Plaintiff filed a complaint with the Department of Labor's Occupational Safety and Health Administration ("OSHA"), alleging that he was terminated in violation of the anti-retaliation provisions in the Criminal Antitrust Anti-Retaliation Act and the Sarbanes-Oxley Act. *Id.* ¶ 12. OSHA investigated and dismissed Plaintiff's complaint by letter on March 5, 2024. *Id.* ¶ 16.

Plaintiff then appealed OSHA's dismissal of his complaint to the Department of Labor's Office of Administrative Law Judges ("OALJ"). *See id.* ¶ 17. The OALJ set a formal hearing for February 5, 2025. *See id.* ¶ 19. After extensive discovery motion practice before the OALJ, Plaintiff elected to instead proceed in federal district court and filed his initial complaint in this Court on August 5, 2024. *See id.* ¶ 20. Plaintiff has twice amended his complaint, once as his right under Federal Rule of Civil Procedure 15(a)(1), and the second time without having sought leave of Court as required by Rule 15(a)(2). (*See* Dkt. No. 1; Dkt. No. 10; Dkt. No. 13.)

The Complaint includes two counts, alleging Walmart's violation of (1) the Criminal Antitrust Anti-Retaliation Act, 15 U.S.C. § 7a-3, and (2) the anti-retaliation provision of the

Sarbanes-Oxley Act, 18 U.S.C. § 1514A.  *See* Compl. ¶¶ 218–21.  The Complaint also generally

alleges that Walmart's prior counsel committed various felonies while representing Walmart in

administrative proceedings before the Department of Labor.[3]  *See id.* ¶¶ 189–196.

## IV.   LEGAL STANDARD

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which

relief can be granted."  FED. R. CIV. P. 12(b)(6).   "To survive a motion to dismiss under Rule

12(b)(6), a plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

quotation marks omitted).   "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  *Id.*

"A claim states plausible grounds for relief when—assuming the truth of all the plaintiff's

nonconclusory allegations and viewing them in the light most favorable to the plaintiff—[the

court] can 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 899 (5th Cir. 2018) (quoting *Iqbal*, 556

U.S. at 678).  When the well-pleaded facts fail to achieve this plausibility standard, "the complaint

has alleged—but it has not shown—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679

(cleaned up) (quoting FED. R. CIV. P. 8(a)(2)).

Dismissal under Rule 12(b)(6) may also "be appropriate based on a successful affirmative

defense provided that the affirmative defense appear[s] on the face of the complaint."  *Bell v. Eagle

Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (quoting *Basic Cap. Mgmt.*

---

[3] The Complaint accuses Walmart's prior counsel of perjury, forgery, and fraud.  *See* Compl. ¶ 189.  Notably, these baseless accusations are not linked to any cause of action in the Complaint.  *See id.* ¶¶ 218–21.  More broadly, Plaintiff appears to believe that his disagreement with Walmart's factual allegations made in the prior administrative proceedings means that Walmart (or its counsel) has committed various crimes.  To avoid further wasting of this Court's time, Walmart will refrain from moving to strike the Complaint's irrelevant and unsupported allegations of criminal conduct by Walmart's prior counsel.  With that said, Walmart reserves the right to do so at a later date.

*v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (internal quotation marks omitted).  "A claim suffering from this kind of facial deficiency warrants dismissal because it has 'a built-in defense and is essentially self-defeating.'"  *Id.* (quoting *Basic Cap. Mgmt.*, 976 F.3d at 588).

## V.   ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Purported "Whistleblowing" Was Not Protected Activity Under SOX or CAARA.

Plaintiff asserts claims under Section 806 of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the Criminal Antitrust Anti-Retaliation Act ("CAARA"), 15 U.S.C. § 7a-3.  To state a claim under either statute, Plaintiff must allege facts that suggest, among other elements, that he was engaged in "protected activity" before his termination.  Because Plaintiff has not done so, both of Plaintiff's claims should be dismissed.

"Section 806 of SOX . . . creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity."  *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475 (5th Cir. 2008).  Under SOX, protected activity is defined as providing information to a supervisor about conduct which the employee *reasonably believes* to constitute (1) mail fraud, (2) wire fraud, (3) bank fraud, (4) securities fraud, (5) a violation of any SEC rule or regulation, or (6) a violation of any provision of Federal law relating to fraud against shareholders. *Id.*

CAARA is a parallel statute that tracks the language of Section 806 of SOX.  Thus, CAARA proscribes the same conduct that SOX does, but CAARA defines "protected activity" as providing information to a supervisory authority about "any violation of, or any act or omission [the employee] *reasonably believes* to be a violation of, the antitrust laws." 15 U.S.C. § 7a-3 (emphasis added).

Importantly, CAARA utilizes the same standard for proving a violation as does Section 806 of SOX.  *Compare* 29 C.F.R. § 1980.114(b) ("[A] proceeding under . . . this section shall be governed by the same legal burdens of proof specified in § 1980.109.") *and id.* § 1980.109 ("A determination that a violation has occurred may be made only if the complainant has demonstrated by a preponderance of the evidence that protected activity was a contributing factor in the adverse action alleged in the complaint.") *with id.* § 1991.114 *and id.* § 1991.109; *see also Parker v. BNSF Railway Co.*, 112 F.4th 687, 705 (9th Cir. 2024) (Graber, J., dissenting) (noting anti-retaliation statutes each use standard set forth in the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, codified at 49 U.S.C. § 42121(b)).

Thus, for either of Plaintiff's claims to survive dismissal, Plaintiff must plead facts to support that (1) he engaged in protected activity; (2) Walmart knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in his termination.  *See* 49 U.S.C. § 42121(b)(2)(B); 29 C.F.R. § 1979.104(b)(1).  The Court need not look beyond the first element, as described below.

1.  <u>Plaintiff has not established a reasonable belief that a SOX or CAARA violation occurred.</u>

An employee who unreasonably believes that his employer has violated the law is not engaged in "protected activity" and is thus not covered by an applicable anti-retaliation statute. *See Allen*, 514 F.3d at 477.  Whether a belief is reasonable requires scrutiny "under both a subjective and objective standard."[4]  *Id.*  "The objective standard examines whether the belief would be held by 'a reasonable person in the same factual circumstances with the same training

---

[4] Wal-Mart is unaware of a Fifth Circuit opinion that speaks specifically to whether CAARA's inclusion of "reasonably believes" was legislatively intended to trigger the "objective and subjective" standard recited and adopted in *Allen*.  With that said, the Fifth Circuit has so concluded in the context of other anti-retaliation statutes with identical language.  *See Estabrook v. Admin. Rev. Bd.*, 814 Fed.Appx 870, 873 n.1 (5th Cir. June 20, 2020) (noting inclusion of "reasonably believes" in statute supplies the objective and subjective reasonableness test).

and experience as the aggrieved employee.'"  *Wallace v. Tesoro Corp.*, 796 F.3d 468, 474–75 (5th Cir. 2015) (quoting *Allen*, 514 F.3d at 477).

Specifically, an employee's belief is not objectively reasonable if the employee's lack of experience or training makes the employee incapable of accurately identifying potential illegal conduct.  *See Sequeira v. KB Home*, 716 F.Supp.2d 539, 551 (S.D. Tex. 2009) (citing *Mahony v. KeySpan Corp.*, No. 04 CV 554 SJ, 2007 WL 805813, at *6 (E.D.N.Y. Mar. 12, 2007) (finding plaintiff had sufficient knowledge of accounting practices to harbor a reasonable belief of a SOX violation) and *Day v. Staples, Inc.*, 573 F.Supp.2d 336, 346–48 (D. Mass. 2008), *aff'd*, 555 F.3d 42 (1st Cir. 2009) (finding plaintiff's "lack of experience in the industry and ignorance of financial metrics . . . show[ed] that [he] did not harbor a reasonable belief" the defendant violated SOX)).

Here, although Plaintiff has alleged, to exhaustion, that he is well-educated, Plaintiff has not alleged facts suggesting that he has an ability to reasonably identify conduct that rises to the level of either an antitrust or SOX violation.  Illustrating the deficiency in legal understanding that is fatal to Plaintiff's claims, the Complaint's half-baked accusations against Walmart border on frivolity and are accusations that a reasonable person in Plaintiff's position would not intentionally assert.  For example, Plaintiff decisively concluded that Bay implicated Walmart in a "bid-rigging" scheme merely because Bay appeared to favor contracting with Infogain, against Plaintiff's personal preference (which is, of course, not a violation of any law, much less an antitrust law). *See* Compl. ¶ 47–48.  Every other accusation against Walmart in the Complaint is similarly underthought, contrary-to-law, and not the type of conduct that constitutes a violation of SOX or CAARA.  As his misapprehensions demonstrate, Plaintiff's title and training was limited to data science and no reasonable person in Plaintiff's role would arrive at the baseless legal conclusions that Plaintiff has littered throughout the Complaint.

2.  <u>Plaintiff's belief that Walmart violated SOX was objectively unreasonable.</u>

Even if Plaintiff had the experience necessary to identify a SOX violation, the Complaint does not allege sufficient facts to justify Plaintiff's belief that a violation occurred.  Plaintiff's burden is to "put forth sufficient information about the alleged wrongful conduct to show that a reasonable person in his position would believe the wrongdoing amounted to a SOX violation." *Ronnie v. Off. Depot, LLC*, 81 F.4th 1345, 1351 (11th Cir. 2023).  Because Plaintiff has not alleged facts that plausibly suggest he could meet his burden, Plaintiff's SOX claim should be dismissed.

As an initial matter, nowhere in the Complaint or its attachments does Plaintiff reference any conduct that implicates one of the first five bases of a SOX violation—(1) mail fraud, (2) wire fraud, (3) bank fraud, (4) securities fraud, or (5) a violation of any rule or regulation of the SEC. *See Allen*, 514 F.3d at 475.  Thus, Plaintiff must instead rely on the sixth, "catch-all" category related to fraud against shareholders.  *See id.* at 480; Compl. ¶ 51–54.

"To have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud."  *Day*, 555 F.3d at 55. "Those elements typically include a material misrepresentation or omission, scienter, loss, and a causal connection between the misrepresentation or omission and the loss." *Id.* at 56.  With respect to scienter, "the employee must reasonably believe that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders."  *Allen*, 514 F.3d at 480.

For his part, Plaintiff alleges that his belief Walmart committed shareholder fraud was reasonable based on:

(I) Walmart's supposed "backdating" a statement of work with Infogain, *see* Compl. ¶¶ 51–54;

(II) Walmart continuing its relationship with Infogain despite Infogain's alleged underperformance, *see id.* ¶¶ 55–57;

(III) a visit by Mehra to India after Walmart and Infogain signed a vendor contract, *see id.* ¶ 68, which Plaintiff bizarrely contends is evidence of bribery and embezzlement by Mehra, *see id.* ¶¶ 64–66; and

(IV) Infogain's initial vendor bid being lower than the amount actually paid by Walmart to Infogain, *see id.* ¶ 67.

Even assuming Plaintiff's factual allegations were true—a generous thought experiment given the outlandish theories presented—the facts alleged do not come remotely close to "approximat[ing] the basic elements of a claim of securities fraud." *Day*, 555 F.3d at 55.

> (I)     Alleged Backdating

*First*, Plaintiff has failed to adequately allege factual support for his belief that Walmart's invoicing or contracting procedure with Infogain was improper, let alone that it amounted to securities fraud. *See* Compl. ¶¶ 51–54. The Complaint does not allege that Walmart backdated a statement of work with Infogain with an intent to deceive Walmart's shareholders. *See Allen*, 514 F.3d at 480 (stating that a plaintiff must plead scienter). Nor does the Complaint demonstrate why such conduct (to the extent it occurred) was problematic or why it would benefit Walmart at the expense of its shareholders. Thus, Plaintiff's reporting of the alleged backdating issue does not relate to SOX, and Plaintiff's belief that such conduct amounted to fraud was not objectively reasonable. *See Joy v. Robbins & Myers, Inc.*, Case No. 2007–SOX–74, 2008 WL 892694, at *1 (U.S. Dept. Labor, Off. Admin. L. Judges, 2008) ("[SOX] does not provide whistleblower protection for all employee complaints about how a public company spends its money and pays its bills.").

(II)     Alleged Underperformance

*Second*, Plaintiff has failed to adequately allege factual support for his belief that the duration or efficacy of Walmart's relationship with Infogain constituted securities fraud.  *See* Compl. ¶¶ 55–57.  At its core, Plaintiff's claim is that Walmart should have awarded the Project contract to Google, not Infogain.  This is clearly insufficient to allege fraud.  The "securities laws do not require companies to notify shareholders about every managerial hiccup or internal policy disagreement."  *Verfuerth v. Orion Energy Sys., Inc.*, 879 F.3d 789, 794 (7th Cir. 2018).

Further, the Complaint does not allege that Walmart's purportedly inefficient relationship with Infogain "comes anywhere near the level of materiality needed to support a plausible claim of fraud."  *Id.*  The materiality element of securities fraud requires "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988).  Even accepting Plaintiff's claim that the Infogain contract was worth "a few million dollars," Compl. ¶ 198, and that the contract's entire existence was wrongful, this single contract does not come close to the level of materiality necessary to support the claims alleged. Indeed, Plaintiff alleges that Walmart's FY 2024 revenue was $648 billion, *see* Compl. ¶ 10, and no allegation in the Complaint even comes close to suggesting that the Infogain contract was material to Walmart shareholders.  Accordingly, Plaintiff has alleged facts that negate—not support—the materiality element.  *See Brown v. Colonial Savings F.A.*, No 4:16-CV-884-A, 2017 WL 1080937, at *3 (N.D. Tex. Mar. 21, 2017) ("Nothing in the text of § 1514A or the *Lawson* decision suggests that SOX was intended to encompass *every* situation in which any party takes an action that has some attenuated, negative effect on the revenue of a publicly-traded company, and by extension decreases the value of a shareholder's investment." (cleaned up) (quoting *Gibney v. Evolution Mktg. Rsch., LLC*, 25 F.Supp. 3d 741, 748 (E.D. Pa. 2014)); *see also Kantin v. Metro.*

*Life Ins. Co.*, No. 13 CV 8925-LTS-JCF, 2016 WL 1020988, at *3 (S.D.N.Y. Mar. 14, 2016), *aff'd in relevant part*, 696 F. App'x 527 (2d Cir. 2017) (holding plaintiff's belief was not objectively reasonable as a matter of law because alleged fraudulent pricing was "plainly immaterial" to company's overall business).

(III)    Alleged Bribery Scheme

*Third*, Plaintiff has failed to adequately plead facts supporting his belief that Mehra visited India to execute a scheme of bribery and embezzlement related to Walmart's vendor contract with Infogain.  This portion of the Complaint is supported by nothing more than pure speculation bordering on conspiracy theory.  *See* Compl. ¶ 68 ("[Mehra's] India visit . . . right after signing the contract with Infogain who she favorably selected is suspicious for suspected embezzlement, bribery/corruption . . . Infogain is an India based IT company . . ., [Mehra] was/is an Indian citizen (I do not know her current citizenship status).").  Plaintiff's allegation speaks for itself—his report is not one that a reasonable person would make based on the facts alleged.

Additionally, even if Plaintiff's wild allegation about Mehra were true, Mehra's actions would constitute embezzlement **from** Walmart, not fraud **by** Walmart against its shareholders.  *See Brown*, 2017 WL 1080937, at *3 (noting that a fraud "committed against the public company" is "a scenario not covered by SOX" (quoting *Gibney*, 25 F.Supp. 3d at 747–48)).  Accordingly, Plaintiff's conjured theory of Mehra's scheme would not implicate SOX, and Plaintiff's belief that it would was unreasonable.

(IV)    Alleged Cost Overruns

*Fourth*, Plaintiff has failed to adequately plead facts supporting his belief that the cost overruns allegedly incurred by Infogain amounted to shareholder fraud by Walmart.  The Complaint does not attempt to justify Plaintiff's belief that Infogain's adjusted contract price was caused by fraud.  And even if it did, Plaintiff's theory would again suggest fraud committed

**against** Walmart—not fraud committed by Walmart.  *See id.*  Finally, as explained above, no Walmart shareholder would reasonably consider the Infogain contract material.  *See id.*  Thus, even assuming Plaintiff alleged sufficient facts to support his belief that he uncovered a fraud committed by Infogain, Plaintiff's conduct is not within SOX's definition of protected activity.  *See id*.

> 3.  <u>Plaintiff's belief that Walmart violated an antitrust law was objectively unreasonable.</u>

The facts alleged by Plaintiff to support his belief that Walmart violated an antitrust law fare no better.  Because the Complaint includes no facts from which a reasonable person could conclude Walmart committed an antitrust violation, Plaintiff's CAARA claim should also be dismissed.

The contours of the antitrust violation allegedly committed by Walmart are unclear from the Complaint's factual allegations.   It appears that Plaintiff's antitrust theory is one of "procurement fraud," Compl. ¶¶ 47–48, or "bid rigging," *id.* ¶ 79.  In essence, Plaintiff alleges facts that Walmart employees personally favored awarding Infogain the contract over Google.  *See id.* ¶¶ 42–50.  This does not even vaguely resemble an antitrust violation by Walmart, and no reasonable person could conclude differently.

To plead an antitrust claim under Section 1 of the Sherman Act, a plaintiff must allege facts that (1) the defendants engaged in a conspiracy (2) that restrained trade (3) in a particular market.  *Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007); *see* 15 U.S.C. § 1.  "Bid-rigging" is one example of a Sherman Act Section 1 violation; it occurs when a conspiracy between two or more firms exists "to submit collusive, noncompetitive, rigged

bids." *See U.S. v. Young Bros., Inc.,* 728 F.2d 682, 687 (5th Cir. 1984).  Procurement collusion[5] refers to bid-rigging practices in the context of government contracts.

Here, Plaintiff does not allege facts that "at least approximate the basic elements" of a Sherman Act Section 1 claim, so his CAARA claim should be dismissed.  *See Day*, 555 F.3d at 55 (stating standard for "reasonable belief").  Plaintiff mistakenly contends that bid-rigging is committed by an entity *receiving* bids for a contract.  In reality, bid-rigging is when entities *submit* bids collusively or otherwise wrongfully.  *See Young Bros.*, 728 F.2d at 687.

The Complaint merely alleges facts that Walmart favored a bidder during an open bidding process.  By contrast, the Complaint does **not** allege facts that Walmart colluded with a competing firm to submit bids for a contract.  And the Complaint certainly does not allege facts that Walmart did so in the procurement process for a government contract.  Accordingly, Plaintiff has not alleged facts that would lead a reasonable person to believe that Walmart violated an antitrust law through bid-rigging or procurement collusion.

In sum, Plaintiff has only alleged facts that, when construed most favorably to Plaintiff, could suggest that Bay should examine bids from third-party vendors differently than allegedly performed.  But that is obviously insufficient for Plaintiff's CAARA claim to survive dismissal because it does not come close to implicating an antitrust law.  *See Scranton Const. Co., Inc. v. Litton Indus. Leasing Corp.*, 494 F.2d 778, 783 (5th Cir. 1974) ("The Sherman Act is neither a lowest-responsible-bidder statute nor a panacea for all business affronts which seem to fit nowhere else.").

---

[5] Walmart is unaware of an antitrust violation based on "procurement fraud."  *See* Compl. ¶¶ 47–48.  Walmart assumes Plaintiff intended to refer to "procurement *collusion*," which is a label used by the United States Department of Justice to refer to "antitrust crimes and related schemes in government procurement, grant, and program funding." *Procurement Collusion Strike Force*, U.S. DOJ, ANTITRUST DIVISION, https://www.justice.gov/atr/procurement-collusion-strike-force (last visited Sept. 25, 2024).

4.   The Complaint's pleading defects cannot be cured by (another) amendment.

As discussed in detail above, Plaintiff's failure to allege any activity by Walmart that could reasonably be believed as violating an antitrust law or comprising shareholder fraud demands outright dismissal of both of Plaintiff's claims, without opportunity to further replead.

As the seventy-five-page Complaint demonstrates, Plaintiff has given the Court everything he has.  Plaintiff cannot cure the Complaint's deficiencies by merely describing his unfounded speculation in different terms or using different labels.  Plaintiff has already filed two amended complaints (the second in violation of Federal Rule of Civil Procedure 15(a)(2), which requires leave of Court), prior to Walmart filing a responsive pleading.  Each successive complaint filed by Plaintiff has failed to state a claim, and there is no reason the Court should believe that a third amended pleading would achieve a different result.  Thus, any further amendments should be presumed futile, and the Court is justified in dismissing this case with prejudice.  *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000).

**B.  Even if Plaintiff Was Engaged in Protected Activity, the Complaint Alleges Facts that Prove Walmart Would Have Fired Him for Independent Reasons.**

Even if the Court were satisfied that Plaintiff has alleged adequate facts to support a prima facie case of retaliation under either CAARA or SOX, Plaintiff's own Complaint also alleges facts that demonstrate Plaintiff cannot overcome an affirmative defense.  Thus, the Court should dismiss the Complaint because Plaintiff has alleged facts that confirm independent reasons for Plaintiff's termination irrespective of Plaintiff's purported protective activity.

Under both CAARA and SOX, an "employer may avoid liability if it can prove 'by clear and convincing evidence' that it 'would have taken the same unfavorable personnel action in the absence of that [protected] behavior.'"  *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475–76 (5th Cir. 2008) (quoting 49 U.S.C. § 42121(b)(2)(B)(iv)); *see* 29 C.F.R. § 1991.109(b) (Under CAARA's

implementing regulations, "relief may not be ordered if the respondent demonstrates by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected activity.").

Here, the Complaint includes ample factual allegations that, as a matter of law, satisfy Walmart's burden of proving it would have terminated (and did terminate) Plaintiff without respect to Plaintiff's purported whistleblowing. The Complaint alleges several incidents in which Plaintiff engaged in insubordination and created a toxic work environment. Each of these incidents is independently sufficient to justify Walmart taking an adverse employment action, and the totality of the incidents is beyond sufficient to justify Plaintiff's termination. The following are just some examples of such conduct alleged in Plaintiff's Complaint.

*First*, during a meeting with his supervisors and colleagues, Plaintiff told Mehra, his Vice President, that Mehra was managing her team like "an authoritative regime or dictatorship." Compl. ¶ 109. Apparently, Plaintiff felt that Mehra was "enforcing a dictatorship" merely because Bay was assigned a responsibility that was formerly under Plaintiff's purview. *See id.* The Complaint, in an impressive display of mincing words, emphasizes that Plaintiff "never called Mehra 'a dictator.'" *Id.* This is a distinction without a difference. Even if he did not use the precise word "dictator," Plaintiff attempted to embarrass Mehra in front of her team by equating her management style to a "dictatorship" and "an authoritative regime." *Id.* This act alone was sufficient for Mehra to recommend Plaintiff's termination. *See Hemphill v. Celanese Corp.*, 430 Fed.Appx. 341, 345 (5th Cir. June 23, 2011) (finding "aggressive," "unprofessional," and "abusive" behavior sufficient to justify termination even assuming protected activity under Section 806). In fact, the Complaint alleges that Mehra did so in the days immediately following Plaintiff's

bizarre outburst.  *See* Compl. ¶ 111 ("Mrs. Mehra decided to terminate Dr. Jana within the next 48 hours of this incident.").

*Second,* Plaintiff continually denigrated his supervisors by expressing his belief that they were unqualified to oversee the work of Plaintiff, a self-proclaimed "subject matter expert."  For example, during a "listening session" attended by many of Plaintiff's colleagues, Plaintiff submitted a written comment (viewable by the entire virtual audience) that asserted "the majority of Data Science leaders have limited or no Data Science experience while they manage highly talented data scientists."  *Id.* ¶ 187.  Plaintiff also complained that "Data Science managers are here because of cronyism."  *Id.*  Attempting to portray himself as a victim, Plaintiff delivered these comments in a self-righteous analogy to "the Oppenheimer movie," noting that "Oppenheimer had to go through a horrible situation even after successfully delivering a nuclear bomb, simply because of politics."  *Id.*

These comments evidence that Plaintiff was continually insubordinate toward Milbourne and Mehra, his supervisors.  They also demonstrate that Plaintiff carried out his employment at Walmart with a degree of narcissism (and disdain for those without a PhD) that his superiors eventually could not tolerate.  *See, e.g.*, *id.* ¶ 112 (discussing Milbourne's education and his beginning Walmart career in entry level position).  Accordingly, Walmart had sufficient ground to terminate Plaintiff for reasons independent of his alleged protected activity.  *See Wallace v. Tesoro Corp.*, No. SA-11-CA-00099-FB, 2017 WL 6403117, at *7–8 (W.D. Tex. Feb. 23, 2017) (finding insubordination and inappropriate behavior justified termination notwithstanding protected activity), *report and recommendation adopted*, 2017 WL 6403050 (W.D. Tex. Sept. 28, 2017), *and aff'd*, 916 F.3d 423 (5th Cir. 2019).

Walmart's decision to terminate Plaintiff independent of Plaintiff's ethics reports is further corroborated by attachments to the Complaint.  *See U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("In deciding a motion to dismiss the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken.").

For example, the Complaint attaches an exchange of emails between Plaintiff and Milbourne, his direct supervisor, which encapsulates the unmanageability and hostility of Plaintiff during his employment at Walmart.  *See* Compl. Ex. 11.  In that email exchange, Milbourne advised Plaintiff that Plaintiff should "ensure our message is not masked by our method of delivery" and "demonstrate respect for the individual as we engage the team."  *Id.*  Substantively, Milbourne also attempted to outline Plaintiff's deliverables and associated deadlines.  *Id.*  Several emails later, when Milbourne gently informed Plaintiff that a deliverable was late, Plaintiff responded in a belligerent note that included the following comment, with font and color as represented:

> Please READ from my previous email, it's simple English, "I propose WFP use case updates and timelines- Due Sept 8th.
>
> **provided we get all the answers**".
>
> So, this is NOT LATE…

*Id.*  No supervisor at any company would tolerate Plaintiff's unprofessionalism and toxicity.  As the Complaint makes clear, Walmart had ample justification to terminate Plaintiff separate from Plaintiff's misplaced ethics complaints.

As if the above conduct by Plaintiff were not enough to solidify Walmart's affirmative defense, Plaintiff also attached to the Complaint an email written by Bowman in which Bowman

explained her reasons for terminating Plaintiff's employment, which included insubordination and misconduct wholly independent from Plaintiff's purported whistleblowing.  *See* Compl., Ex. 2. Indeed, Bowman explained in that email that "due to the latest developments," Bowman had escalated her discipline recommendation to "separation."  *Id.*  That email, dated October 4, 2023, was sent after Walmart had concluded its investigation of Plaintiff's formal ethics complaints, s*ee id.* ¶ 69, and it directly references the "[o]utbursts and disrespect at team meetings" discussed above, *id.*, Ex. 2.  Thus, the Complaint actually alleges facts that Plaintiff's termination was unrelated to Plaintiff's ethics complaints.

In sum, Plaintiff's allegations are self-defeating because a successful affirmative defense is determinable as a matter of law from the face of the Complaint.  Even if Plaintiff had not made the unfounded accusations of illegal conduct that he now describes as whistleblowing, Walmart would have fired him because he acted unprofessionally and created a toxic work environment for his colleagues.  The Court should accordingly dismiss both of Plaintiff's claims.

## VI.  <u>CONCLUSION</u>

Plaintiff has alleged facts sufficient to plausibly suggest only that he disagreed with the business decisions made by his supervisors and colleagues during his employment with Walmart. But that is manifestly insufficient to state a claim for retaliation under either SOX or CAARA. Plaintiff's attempt to transpose his frustrations about Walmart's organizational chart into accusations of Walmart's illegal conduct does not qualify Plaintiff as a whistleblower.  No reasonable person could observe Walmart's actions, as alleged in the Complaint, and conclude that Walmart committed shareholder fraud or an antitrust violation.  And even if a reasonable person could so conclude, Plaintiff has separately alleged facts about his workplace behavior that justify his termination independent of his purported whistleblowing.

Because the Complaint fails to state a claim for retaliation under either SOX or CARAA, and because the Complaint is necessarily self-defeating by alleging facts that demonstrate a meritorious affirmative defense, Walmart respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: October 28, 2024

Respectfully submitted,

/s/ Peter S. Wahby

**Peter S. Wahby**
Texas Bar No. 24011171
peter.wahby@gtlaw.com
**Morgan E. Jones**
Texas Bar No. 24132301
morgan.jones@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214.665.3600
Facsimile:  214.665.3601

**ATTORNEYS FOR DEFENDANT
WALMART INC.**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon the following party via the Court's CM/ECF system on October 28, 2024:

Dilip Jana
800 Fairlawn Street
Allen, Texas 75002
janadilip@gmail.com

/s/ Morgan E. Jones
Morgan E. Jones