# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**FILED**

DEC 1 2 2024

Clerk, U.S. District Court
Eastern District of Texas

*In the Matter of:*

DILIP JANA,
 *Plaintiff*

v.

WALMART, INC,
 *Defendant*

Civil Action No. **4:24-cv-00698-SDJ-BD**

Honorable Bill Davis, Honorable Sean D Jordan

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

NOW COMES ***Pro Se*** Plaintiff, Dr. Dilip Jana, and files this Response in Opposition to Defendant's Motion to Dismiss [Dkt. 22] Plaintiff's Second Amended Complaint ("Complaint") [Dkt 13] pursuant to Rule 12(b)(6) and respectfully asks this Court to deny the motion in its entirety.

## SUMMARY OF THIS MOTION

1. Defendant's Motion to Dismiss [Dkt 22] Plaintiff's Second Amended Complaint [Dkt 13] pursuant to Rule 12(b)(6) ("Defendant's Motion") lacks merit and should be denied. Plaintiff has properly plead claims for COUNT ONE: RETALIATION UNDER CAARA (US title 15 U.S.C. §7a-3)[1] and COUNT TWO: RETALIATION UNDER SOX (US title 18 U.S.C. §1514A)[2]. Defendant improperly conflates

---

[1] Complaint [Dkt 13], ¶218
[2] Complaint [Dkt 13], ¶219

the requirements for ***pleading*** a claim and the requirements for ***proving/establishing*** such claim; in particular when Supreme Court insisted that a **pro se** pleading is "***to be liberally construed***.". Defendant failed to articulate that Defendant would have terminated Plaintiff in the absence of Plaintiff's whistleblowing activities. In an attempt to avoid responsibility for its actions made the basis of this lawsuit, and the allegations plead therein, Defendant uses Defendant's Motion at the pleading stage while Defendant is acting in bad faith and unclean hands; and it should be DENIED.

## I.    LEGAL STANDARD AND ARGUMENT

2.    A motion to dismiss for failure to state a claim under Rule 12(b)(6) is disfavored in the law and rarely granted.

> Sylvester v. Parexel International LLC, No. 07-123 (ARB May 25, 2011) , Rainwater v. Ragozzino Foods, Inc., No. 4:15-CV-746, 2016 WL 8787143, at *3 (E.D. Tex. Mar. 10, 2016) (citing Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997)). The court may not decide disputed fact issues and must assume that all material facts contained in the challenged complaint are true. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499,2509 (2007). "A court should grant a 12(b)(6) motion only when the complaint fails to contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662,678 (2009)).

3.    When a court analyzes a 12(b)(6) motion, it accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. Reliable Consultants, Inc. v. Earle, 517 F.3d 738, 742 (5th Cir. 2008), reh'g. en banc denied, 538 F.3d 355 (2008) (internal quotations omitted). Rule 12(b)(6) "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." In re Southern Scrap Material Co., 541 F.3d 584, 587 (5th Cir. 2008), cert. denied, 129 S. Ct. 1669, 173 L.Ed2d 2036 (2009). Twombly, 550 U.S. at 556:

> "[A] well-pleaded Complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that recovery is very remote and unlikely.'"

---

4.      The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. Great Plains Trust Co. v. Morgan Stanley Dean Witter, 313 F.3d 305, 312 (5th Cir. 2002). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable harm. United States ex. Rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 376 (5th Cir. 2004).

> "Absent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying [a plaintiff] an opportunity to develop facts to support their complaint." N. Cent. Tex. Coll. V. Crandall Design Grp., No. 4:10-CV-00037, 2012 WL 262612, at *4 (E.D. Tex. Jan 6, 2012), report and recommendation adopted, 2012 WL 262606 (E.D. Tex. Jan. 30, 2012) (emphasis added).

5.      While initially reciting Rule 12(b)(6) standards, Defendant's Motion improperly conflates the requirements of pleading a claim with the requirements for proving such a claim. Defendant consistently alleges that Plaintiff failed to "establish" elements of a claim. The majority of Defendant's Motion is devoted to the discussion of, and substantive argument regarding, the Complaint's detailed factual allegations. Many of the cases cited by Defendant apply the evidentiary standard for summary judgment, preliminary injunction, or a trial on the merits, rather than a Rule 12(b)(6) standard: for example: "Plaintiff has not **established** a reasonable belief that a SOX or CAARA violation occurred." In an effort to avoid accountability for its actions, Defendant improperly uses Defendant's Motion at the pleading stage as motion for summary judgment on the merits of factually intensive fraud, committed by Defendant, dispute. For these reasons, and those further provided herein, Defendant's Motion should be denied.

## Brief History

6.      Federal Rule of Civil Procedure 8(a), enacted as part of the original rules in **1938**, provides:
>      (a) Claim for Relief. A pleading that states a claim for relief must contain:
>      (2)**a short and plain statement of the claim showing that the pleader is entitled to relief**;

7.      Federal Rule of Civil Procedure 9(b), also enacted as part of the original 1938 rules, provides:

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. C1v. P. 9(b) 28 U.S.C.A § 9(b) (2008).;

Courts have uniformly understood that this rule "requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." Dorsey v. Portfolio Equities, Inc., 540 F.3d 333 (5th Cir. 2008). Litigation about this rule has focused on two main issues: the level of detail required to satisfy the above requirements,e.g., United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 188-89 (5th Cir. 2009) and whether the rule extends to fraud-like claims such as negligent misrepresentation. General Electric Capital Corp v. Posey 415 F.3d 391 (5th Cir. 2005).

8.      Fifty years later, the Supreme Court took a very different view of Rule 8(a). In **2007**, in Bell

Atlantic Corporation v. Twombly 550 U.S. 544, 127 S. Ct. 1955 (2007) ("Twombly" here after) the

Court wrote perhaps its most influential paragraph for modern civil litigation:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level ....[ 550 U.S. at 555]

## (1)     The Heightened Pleading Standards FRCP 9(b) Do Not Apply to SOX/CAARA (EXHIBIT 6, PAGE 12)

9.      The Supreme Court, however, carved out *pro se* cases from the application of Twombly when,

only weeks after Twombly, it decided Erickson v. Pardus, 551 U.S. 89 (2007) which reversed a motion

to dismiss a complaint by a *pro se* prisoner and insisted that a **pro se** pleading is "*to be liberally*

*construed*."1 Id. at 94.

10.     Two years later, in **2009** the Supreme Court further elaborated on this holding in Ashcroft v.

Iqbal, 556 U.S. 662 (**2009**). a civil right Title VII case ("Iqbal" here after):

> "..be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense…[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.

11.     Judges and scholars are divided on the new heightened pleading standards after Iqbal. *Pro Se*

plaintiffs are the victims of application of Title VII Iqbal cases in Whistleblower cases.

*From Harvard Law Journal[3]: Iqbal*'s new "plausibility" pleading regime hinders ..employment discrimination suits, antitrust suits, and *pro se* litigants are also disproportionally affected by *Iqbal*'s heightened pleading standard. The result is a significant and lamentable decrease in the enforcement of constitutional and civil rights.. Beyond decreased enforcement, *Iqbal* has also increased the subjectivity of pleading dismissals."

12.    A 2011 (2 years after Iqbal) studies[4] shows that **pro se** plaintiffs' claims, the **dismissal rate** increased from 32.0% before Twombly to 67.3% under **Iqbal**, representing 2.10 times increase

13.    In 2014, the Supreme Court set an outer bound on Twombly and Iqbal in its unanimous opinion of Johnson v. City of Shelby 135 S. Ct. 346 (2014). The Supreme Court reversed the **Fifth Circuit**'s affirmance of the complaint's dismissal stating

> **Our decisions in [Twombly and Iqbal] are not in point..Petitioners <u>stated</u> simply, concisely, and directly events that**, they alleged, entitled them to damages from the city

14. Application of Iqbal, a Title VII discrimination case, where Plaintiff was a suspected Pakistani Muslim terrorist for 911 terrorist attack (a possible threat to National Security)  is a textbook example of the perils of

> "apply[ing] rules applicable under one statute to a different statute without careful and critical examination." Federal Express Corp. v. Holowecki, 552 U.S. 389, 393 (2008).

SOX and Title VII are two different statutes with two distinct histories and procedures. And imposing Title VII's framework on SOX cases simply cannot be squared with SOX. Congress chose the language that SOX incorporates precisely to **reject** Title VII as a model.

15.    In Sylvester v. Parexel International LLC, No. 07-123 (ARB **May 25, 2011**) (EXHIBIT 6), US Department of Labor's adjudicatory body for worker protection laws ("ARB"),  "Twombly and Iqbal

---

[3] https://journals.law.harvard.edu/lpr/online-articles/assessing-iqbal/
[4] https://www.judges.org/wp-content/uploads/2022/05/2011-Quintanilla.pdf

"standard should not be applied to SOX whistleblower claims."

16.     On November 12, 2014, in Menendez v. **Halliburton (Case: 13-60323)** the Fifth Circuit recognized that **SOX's "'independent burden-shifting framework' is distinct from** the McDonnell Douglas burden-shifting framework applicable to **Title VII claims.**" Id. At 476 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The Title VII framework places the burden on the employee ultimately to prove that the employer acted with a discriminatory purpose. But SOX, by contrast, imposes the **burden on the employer to prove** "by clear and convincing evidence that it would have taken the same personnel action against the whistleblower even in the absence of that protected behavior." Allen, 514 F.3d at 476.

17.  In 2009 Northern District of Texas correctly found that the heightened pleading standard of Rule 9(b) did not apply to SOX whistleblower claims. Hemphill v. Celanese Corp., CIV.A.3:08CV2131-B, 2009 WL 2949759 (N.D. Tex. Sept. 14, 2009) aff'd, 430 F. App'x 341 (5th Cir. 2011) (finding heightened pleading standard did not apply because allegations involved wrongful termination and discrimination, not fraud or mistake)

18.  Fifth Circuit in Wallace v. Tesoro (796 F.3d 468, 480 (5th Cir. 2015)) stated, the fact that section 1514A(a)(1) "protects an employee who 'reasonably believes' that conduct violates an enumerated statute." SOX (and CAARA) whistleblower claims are analogous to retaliation claims under the False Claims Act ("FCA") and do not actually involve alleging fraud. While the heightened pleading standard of Rule 9(b) governs allegations that an individual made a false claim in violation of the FCA, "all federal circuit courts of appeal that have faced this issue have reached the conclusion that retaliation claims under [the FCA] need only meet the Rule 8(a) standard." Wallace v. Tesoro Corp., Civ. No. SA-11-CA-99-FB, at 18 (W.D. Tex. Feb. 28, 2013) (Primomo, Mag. J.).

19.    In Wiggins v. ING 3:14-CV-01089 (JCH) the court held that the heightened Rule 9(b) pleading standard for fraud claims does not apply to SOX retaliation claims and a whistleblower can plead that she had a reasonable belief that her employer violated one of section 1514A's enumerated fraud provisions without specifically alleging that she believed that the employer's conduct satisfied all of the elements of the federal statute/SEC rule that was allegedly violated. The court stated, "The requirement that a pleading contain "specific detail as to the who, where, when, or how" generally applies only under the heightened pleading standard for fraud claims, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. See Knoll v. Schectman, 275 Fed.Appx. 50, 51 (2d Cir. 2008)". As such, there is room for a plaintiff to maintain a SOX whistleblower claim under Section 1514A, assuming he has satisfied the other pleading requirements, "**even if the [complained of] conduct turns out not to be fraudulent.**" Id.; see also Guyden v. Aetna, Inc., 544 F.3d 376, 384 (2d Cir. 2008) ("a whistleblower need not show that the corporate defendant committed fraud to prevail in her retaliation claim under § 1514A"). Because section 1514A protects the employee who acted under a reasonable belief that fraud was occurring – rather than protecting only those employees who report activity that is, in fact, fraudulent – "Federal Rule of Civil Procedure 9(b) does not apply because [Wiggins] brings a retaliation claim based on his reasonable belief of fraud rather than a claim necessitating proof of fraud." Jin Huang v. Harman Intern. Industries Inc., Civil Action No. 3:14-cv-1263-VLB, 2015 WL 4601047, at *2 n. 3 (D. Conn. July 29, 2015); see also Wallace, 796 F.3d at 480

20.    In 2015 Richardson v. Axion Logistics, L.L.C. 780 F.3d 304 (**5th Cir. 2015**) the Fifth Circuit disagreed and reversed district court dismissal

> "Richardson merely alleged that some of his co-workers engaged in unethical billing practices, **only devoting one conclusory paragraph** to stating that such illegal activity was authorized by [Axion]."

taking a broader view of the relevant allegations: Under Twombly's "plausibility" standard, the Court concluded that

> "[t]**aken together, these facts make plausible the allegation**" made by the plaintiff about his employer's knowledge of the alleged misconduct.

21.  Trusz v. UBS Realty: No. 3:09-cv-00268 (JAM)  (2016): In its motion for summary judgment, UBS contended that SOX-protected whistleblowing is limited to definitive and specific disclosures of shareholder fraud and that a SOX whistleblower must have reasonably believed that all the elements of shareholder fraud were present.  Relying on the Second Circuit's decision in Nielsen v. AECOM Tech. Corp., 2014 WL 3882488, at *5-7 (2d Cir. Aug. 8, 2014), Judge Meyer rejected UBS' construction of SOX protected conduct and instead held that

> "[t]he conduct must concern a rule or regulation of the SEC—regardless of whether it has to do with shareholder fraud—or any other federal law that is related to shareholder fraud."

SOX-protected conduct in *Trusz* is consistent with a trend of federal courts adopting or deferring to the ARB's *Sylvester* decision (EXHIBIT 6 ).

Here are a few examples.  *See, e.g.,* Wooten v. McDonald Transit Associates, Inc., 788 F.3d 490 (5th Cir. 2015). *Rhinehimer v. U.S. Bancorp Investments, Inc.*, No. 13-6641 (6th Cir. May 28, 2015); *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 220-21 (2d Cir. 2014) (granting *Skidmore* deference to *Sylvester)*; *Wiest v. Lynch*, 710 F.3d 121 (3d Cir. 2013) (according *Chevron* deference to *Sylvester*); *Stewart v. Doral Fin. Corp*., 997 F. Supp. 2d 129, 135-36 (D.P.R. 2014) (adopting the *Sylvester* standard); *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 443 (S.D.N.Y. 2013); *Stewart v. Doral Fin. Corp.*, CIV. 13-1349 DRD, 2014 WL 661587 (D.P.R. Feb. 21, 2014).

22.    The Court of the Appeals for the Third Circuit has adopted the ARB approach (EXHIBIT 6 ). In Wiest v. Lynch, 710 F.3d 121 (3d Cir. 2013), the Third Circuit noted that:

> "the purpose of whistleblower statutes like SOX § 806 is to protect people who stand against institutional pressures and say plainly, 'what you are doing here is wrong' in the particular way identified in the statute at issue. By identifying conduct that falls within the ample bounds of the anti-fraud laws, an employee has done just that. That employee should not be unprotected from reprisal because she did not have access to information sufficient to form an objectively reasonable belief that there was an intent to defraud or the information communicated to her supervisor was material to a shareholder's investment decision")

23.   The Court of Appeals for the Sixth Circuit also adopted Sylvester (EXHIBIT 6) in Rhinehimer v.

U.S. Bancorp Investments, Inc., 787 F.3d 797, 809-811 (6th Cir. 2015).

**24.** A Whistleblower Need Only Express a "Reasonable Belief" of a Violation to Engage in a SOX-Protected Activity (or CAARA Activity) (EXHIBIT 6 , page 14)

Protected Activity Need Not Describe an Actual Violation of the Law EXHIBIT 6 , page16)
The ALJ Erred By Concluding that Violations Asserted by SOX Complainants Must Relate to Fraud Against Shareholders (EXHIBIT 6 , page 19)

25.   A SOX (or CAARA) Complainant Need Not Establish the Various Elements of Criminal

Fraud to Prevail on a Section 806 Retaliation Complaint (EXHIBIT 6 , page 21)

> "Some courts have **misinterpreted** this analysis as a requirement that SOX complainants must allege the elements of a securities fraud claim to qualify for protection". See, e.g., **Allen, 514 F.3d at 479-80 (5th Cir. 2008) Day, 555 F.3d at 55-56**

Defendant heavily depends on **Allen, 514 F.3d at 479-80 (5th Cir. 2008)**

## Employers Inconsistent or Changing explanation for the adverse action are pretextual

26.   "A company may have several legitimate reasons to dismiss an employee. But when a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual." See Domiguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000). "Although the defendant then offered a multiplicity of reasons to justify its action, the plaintiff had little trouble proving that none of these explanations was worthy of any credence. To be sure, Jolly did not have too onerous a task, as the defendant's various personnel told so many stories, so totally inconsistent with each other, that they had lost all credibility by the conclusion of the proceedings. Put simply, NTI took more positions than a gymnast on a trampoline." See Jolly v. Northern Telecom Inc., 766 F. Supp. 480, 493-94 (E.D.Va. 1991). "If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification." Perfetti v. First Nat. Bank of Chicago, 950 F.2d 449, 456 (7th Cir. 1991), cert. denied, 505 U.S. 1205 (1992)."The jury apparently concluded from the total absence earlier of the justification Coca-Cola would later offer at trial that the justification had been concocted in preparation for trial to fit the available facts.  In other words that it was pretextual" See Emmel v. Coca-Cola Bottling Co. of Chicago, 95 F.3d 627, 634-35 (7th Cir. 1996). The falsity of the explanation can give rise to an inference that the employer is dissembling to cover up an ulterior

purpose. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may … suffice to show intentional discrimination."); *Stratton v. Dep't for the Aging for New York*, 132 F.3d 869, 880-81 (2d Cir. 1997) (holding that evidence of an employer's false explanation for employment action supported the jury's finding of unlawful pretext).

## II.   Plaintiff's "Whistleblowing" Activities Was Protected Under SOX or CAARA

27.    "To state a claim under either statute, Plaintiff must allege facts that suggest, among other elements, that he was engaged in "protected activity" before his termination. Because Plaintiff has not done so, both of Plaintiff's claims should be dismissed…**The Court need not look beyond the first element**, as described below." (emphasis added)

   1. Plaintiff has **not established** a reasonable belief that a SOX or CAARA violation occurred.
   2. Plaintiff's belief that Walmart violated SOX was objectively unreasonable
   3. Plaintiff's belief that Walmart violated an antitrust law was objectively unreasonable.

### ARGUMENT

28.     Defendant **misstates** Plaintiff's burden by suggesting that Plaintiff must "**establish**" each element of a claim to avoid dismissal. Defendant argued, "Plaintiff did not elaborate on **how** the above events could be considered fraud." Plaintiff needs only allege sufficient facts to state a claim to relief that is plausible on its face to survive a Rule 12(b)(6) motion to dismiss. Twombly, 550 U.S. at 570. As explained in **Id. ¶¶9-25** heightened pleading does not apply for SOX cases and on top of it, Supreme Court insisted that a **pro se** pleading is "***to be liberally construed***" Erickson v. Pardus, 551 U.S. 89 (2007). Plaintiff "stated simply, concisely, and directly events" in **Complaint ¶¶42 – 61** that alleges Violation of Antitrust Laws ("CAARA") and Fraud against Shareholders ("SOX") which Plaintiff reasonably believed and Plaintiff reported (**Complaint ¶¶62 – 80 )** possible fraud in good faith and Defendant investigated based on Plaintiff's Complaint**¶¶65, 81-86**. Plaintiff is entitled to be protected under both SOX and CAARA statutes See Leznik v. Nektar Therapeutics, Inc., 2006-SOX-00093, at

10 & fn. 50 (Nov. 16, 2007). See also Collins, 334 F. Supp. 2d at 1377-1378.

## 1.     Plaintiff had reasonable belief that a SOX or CAARA violation occurred

29.       (i)   Defendant argued that Plaintiff's deficiency in legal understanding of SOX/CAARA is

fatal to Plaintiff's claim and should be dismissed.

> "an employee's belief is not objectively reasonable if the employee's lack of experience or training makes the employee incapable of accurately identifying potential illegal conduct…**deficiency in legal understanding that is fatal to Plaintiff's claims**," (emphasis added)

### ARGUMENT

30. Plaintiff respectfully will demonstrate to this Court that "**The Court need not look beyond the**

**first element**" to deny Defendant's Motion to Dismiss.  Two years after Defendant's cited cases

(Sequeira v. KB Home and Day v. Staples, Inc), in 2011, in Sylvester v. Parexel International LLC,

No. 07-123 (ARB May 25, 2011), ARB had provided an adequate explanation of using normal

reasonable person standard

> "The SOX's plain language provides the proper standard for establishing protected activity. ..**Senate Report 107-146**, **which accompanied** the adoption of **Section 806**, provides that "a reasonableness test is also provided . . . which is intended to **impose the normal reasonable person standard used** and interpreted in a wide variety of legal contexts (See generally, Passaic Valley Sewerage Commissioners v. Department of Labor, 992 F. 2d 474, 478)." S. Rep. 107-146 at 19 (May 6, 2002)." (emphasis added)

31.   The focus is whether the belief was actually held and objectively reasonable, not whether it was

correct. "To encourage disclosure, Congress chose statutory language which ensures that 'an

**employee's reasonable but mistaken belief** that an employer engaged in conduct that constitutes a

violation of one of the six enumerated categories [in Sarbanes-Oxley] is protected.'" Van Asdale v.

Int'l Game Tech., 577 F.3d 989, 1001 (9th Cir. 2009) (alteration added) (quoting Allen v. Admin.

Review Bd., U.S. Dep't of Labor, 514 F.3d 468, 477 (5th Cir. 2008)); see also Menendez v. Halliburton, Inc., Nos. 09-002 & 09-003, 2011 WL 4915750, at *8 (ARB Sept. 13, 2011) ("The Board has ruled that an employee's reasonable but mistaken belief in employer misconduct may constitute protected activity."), aff'd sub nom. Halliburton, Inc. v. Admin. Review Bd., U.S. Dep't of Labor, 771 F.3d 254 (5th Cir. 2014). There is no condition that an employee who reports possible frauds needs to be a legal expert; requiring only legal experts to report SOX defeats the purpose of SOX.

*In 2013, in Wiest v. Lynch*, 710 F.3d 121 (3d. Cir. 2013), the Third Circuit confirmed that a SOX whistleblower need not be an expert in securities law to engage in SOX protected conduct:

> **"An employee's lack of knowledge of certain facts that pertain to an element of one of the anti-fraud laws would be relevant to, but not dispositive of, whether the employee did have an objectively reasonable belief that a listed anti-fraud law had been violated."** (emphasis added)

32.    All that SOX requires an employee to do is prove that they "reasonably believed" that their employer violated or is about to violate federal law. *Murray,* 2017 WL 1498051, at *10. **The focus here is "on the plaintiff's state of mind rather than on the defendant's conduct**."*Id., at *10* (quoting *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008), superseded on other grounds by statute).This rule is informed by the court's recognition that, because "[m]any employees are unlikely to be trained to recognize legally actionable conduct by their employers," an employee's "belief" in their employer's wrongdoing is "central" to the analysis of **SOX-protected conduct**.*Id.,* at *9 (quoting *Nielsen*, 762 F.3d at 221 (alterations in original))

33.    *In Deltek, Inc. v. Dep't of Labor, Admin. Review Bd.*, No. 14-2415, 2016 WL 2946570(4th Cir. May 20, 2016), Deltek argued that Ms. Gunther's belief that Deltek was violating securities laws was not objectively reasonable because she lacked the education and experience necessary to recognize

securities fraud; **she, in fact, did not have a college degree**. The Fourth Circuit rejected this argument, stating that a determination of the reasonableness of Ms. Gunther's belief warranted consideration of the "factual circumstances," including information that Ms. Gunther learned from coworkers

34.     Here is a fatal blow to the defendant's argument from the 5th Circuit. The Western District of Texas, USDC No. 5:11-CV-99 for Wallace v Tesoro dismissed Plaintiff's Complaint citing Plaintiff's belief in wrongdoing was not objectively reasonable because Plaintiff did not know of a specific SEC rule that employer violated. An accounting expert, the District Court said, "should have been aware of that specific requirement". 5th Circuit in Wallace v Tesoro (No. 13-51010, 5th Cir, July 31, 2015) rejected District Court's argument and reversed the verdict with clear explanation:

> **The court should not have dismissed on this ground**. There is no doubt that SOX protects only those employees who reasonably believed they were investigating or reporting a violation of one of the six SOX categories. Wallace has sufficiently pleaded, however, that he thought the accounting practice violated SEC rules. The objective reasonableness of an **employee's belief under SOX cannot be resolved as a matter of law "if there is a genuine issue of material fact."** Id. Wallace has adequately alleged that he believed the practice at least violated SEC rules. The basis for that belief in this case, including the level and role of Wallace's accounting expertise and **how that should weigh against him, are grounded in factual disputes that cannot be resolved at this stage of the case…."** (emphasis added)

35.     The objective reasonableness of Plaintiff's complaints is buttressed by the fact that Defendant conducted a compliance investigation against Ridhi Mehra after Plaintiff's protected Whistleblowing activities **Complaint ¶¶65-69, ¶¶81 – 83**. And the fact is, Defendant fired Ridhi Mehra within few months after Plaintiff's termination; Ridhi Mehra's decade long career ended abruptly within few months after Plaintiff's termination; despite Walmart's record profit. The fact is, however, Defendant believed Plaintiff's reasonable belief of protected whistleblowing activities despite Plaintiff's "deficiency in legal" understanding of different frauds before the termination: Defendant investigated those following Plaintiff's complaint (Complaint ¶¶65 – 69, **¶¶81 – 83**.)

36.    More than one year after the termination the same defendant is questioning Plaintiff's "deficiency in legal understanding" for legal defense in order to avoid liability. Prior to termination, Plaintiff was a Director of Data Science, not a legal expert. Defendant investigated following Plaintiff's complaint prior to termination; defendant knew Plaintiff was not a legal expert; if Plaintiff's complaint was not specific enough and reasonable enough; why would defendant investigate? Multiple senior executives independently instructed for investigation following Plaintiff's complaint; this fact is "**fatal"** to Defendant's Motion to Dismiss. Defendants' response of initiating investigation to Plaintiff's whistleblowing activities during August, September and October 2023 proves that Plaintiff's complaints were objectively reasonable. See Leznik v. Nektar Therapeutics, Inc., 2006-SOX-00093, at 10 & fn. 50 (Nov. 16, 2007). See also Collins, 334 F. Supp. 2d at 1377-1378

> "The legislative history of SOX states that corporate action taken in response to disclosure of information supports a finding that the employee's belief was a reasonable one."

37.    Plaintiff has alleged enough facts to raise a reasonable expectation that discovery will reveal a fraud related to SOX and CAARA claim occurred. See John Crane Prod. Sols., Inc., 2012 WL 1571080.

38.    Defendant has a very rigorous mandatory training program related to fraud, corruption, money laundering etc which Plaintiff had to pass. Defendant knew Plaintiff had to pass those trainings, still for the sake of defense in the Court denying it; discovery will reveal what training Plaintiff had to pass during his employment at Walmart.

39.    There is no reason to conclude that Plaintiff did not subjectively believe the complaints that he was making, especially on a motion to dismiss when the allegations in the Complaint are construed in Plaintiff's favor. For the foregoing reason above, Defendant's Motion to Dismiss should be DENIED.

## 2.    Plaintiff's belief that Walmart violated SOX was objectively reasonable.
### ARGUMENT

40.    Defendant argues Plaintiff to plead with heightened pleading standard Rule 9(b) with specific details of the fraud committed by the Defendant. Two components of Rule 9(b) pleading are silencer and materiality. Defendant is requiring very specific details of these frauds **(i) Alleged Backdating, (ii) Alleged Underperformance, (iii) Alleged Bribery Scheme, (iv)** Alleged Cost Overruns:

41.    Congress enacted the SOX on July 30, 2002, as part of a comprehensive effort to address corporate fraud. The SOX whistleblower protections were included in response to "a culture, supported by law, that discourage[s] employees from reporting fraudulent behavior not only to the proper authorities . . . but even internally. This æ...¶**orporate code of silence**' not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity." S. Rep. No. 107-146, at 5 (2002). SOX Title VIII is designated the Corporate and Criminal Fraud Accountability Act of 2002 (the Accountability Act). Congress added whistleblower protection provisions to the SOX as a "crucial" component for "restoring trust in the financial markets by ensuring that **corporate fraud and greed may be better detected, prevented and prosecuted**." S. Rep. 107-146 at 2 (May 6, 2002); see, e.g., Johnson v. Siemens Bldg. Techs., ARB No. 08-032, ALJ No. 2005-SOX-015, slip op. at 12 (ARB Mar. 31, 2011).

42.    Here, Plaintiff's activity was not only protected because he opposed conduct that is prohibited by "any rule or regulation of the Securities and Exchange Commission" and "any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). Plaintiff's activity was protected because he reported conduct relating to violations of section 13 of the Exchange Act of 1934, and its rules and regulations, and (c) provisions of the Sarbanes Oxley Act itself (Complaint ¶63)

"how the vendors SOW and payment related to account bookkeeping for a publicly traded company was manipulated. On many occasions, the SOW was signed after the work was done; which should have been the other way around."

43.    Fifth Circuit reversed District Court's dismissal of Wallace's complaint (Wallace v Tesoro No. 13-51010, Fifth Circuit, 2015)

"Wallace was not required to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b). **Tesoro has not shown that it disclosed all of the taxes Wallace alleges were improperly recorded. If Wallace was required to plead a belief that Tesoro acted with a deceptive mental state, he satisfied that requirement**. And Tesoro has not shown that Wallace discovered and reported the reach of the accounting practice too late to have engaged in protected activity." (emphasis added)

42.    Defendant investigated (Complaint ¶¶65, 81-86) based on Plaintiff's Complaint ¶¶42-80. But the defendant never disclosed the investigation report related to Plaintiff's allegation to Plaintiff; therefore, if Plaintiff is required to plead a belief that Defendant acted with a deceptive mental state, as per Fifth Circuit above, Plaintiff satisfied that requirement.

43.    As described in **Id.** ¶¶9-25 Plaintiff does not need the heightened pleading standard Rule 9(b) which contains materiality and scienter elements where there is a substantial material dispute that can only be resolve during discovery. Allen, 514 F.3d at 476

44.    To the degree that the federal statute SOX that plaintiff alleges Defendant violated contain materiality and scienter elements, the Complaint contains assertions indicating that Plaintiff believed that Defendant's behavior satisfied those elements (Complaint ¶60-61). These allegations support the reasonable inference that a reasonable person in Plaintiff's position could view such actions as material:

"Misidentifying or failing to detect critical defects could result in billions of dollars in lost revenue and wasted resources annually." Complaint ¶60

45.    Mr. Milbourne's acknowledgement of revenue loss substantiates materiality of the fraud Complaint ¶61:

"Timely identifying those defects will save billions of dollars. Dr. Jana sent a few text messages and videos to Mr. Milburne to demonstrate the severity of the problem. Mr. Milbourne s response highlighted the severity of the issue, indicating a substantial economic impact: "That's crazy! Never seen anything like that! ..A lot of lost sales for sure"

46.   *In 2013, in Wiest v. Lynch*, 710 F.3d 121 (3d. Cir. 2013) "[An]t employee should not be unprotected from reprisal because she did not have access to information sufficient to form an objectively reasonable belief that there was an intent to defraud or the information communicated to her supervisor was material to a shareholder's investment decision."

47.     The Complaint ¶¶197-210 has a dedicated section "Objective Belief - Totality of the Circumstances Test" where Plaintiff demonstrated Plaintiff's colleagues (Kamil Bay, Leslie Platz and Olan Land) would believe the wrongdoing amounted to a SOX violation.

48.     Here, Plaintiff complained to Defendants about inaccurate information being reported and recorded. (Complaint ¶63) There is no reason to conclude that Plaintiff did not objectively believe the complaints that he was making, especially on a motion to dismiss when the allegations in the Complaint are construed in Plaintiff's favor. In addition, for the reasons set forth above, Plaintiff's complaints were objectively reasonable that Defendant violated SOX and Plaintiff was protected under SOX.

**3.     Plaintiff's belief that Walmart violated an antitrust law was objectively reasonable.**

49.     "Procurement collusion refers to bid-rigging practices in the context of government contracts. Here, Plaintiff does not allege facts that "at least approximate the basic elements" of a Sherman ..Plaintiff mistakenly contends that bid-rigging is committed by an entity receiving bids for a contract..The Complaint merely alleges facts that Walmart favored a bidder during an open bidding process.. the Complaint certainly does not allege facts that Walmart did so in the procurement process for a government contract.

## ARGUMENT

50.     Plaintiff never made this comment "bid-rigging is committed by an entity receiving bids for a contract". Even if Plaintiff mistakenly contends; Plaintiff mistaken belief is also protected as argued in

the previous section.

51.    The plain language of CAARA taken from United States House website:

15 U.S.C §7a–3. Anti-retaliation protection for whistleblowers

(a) Whistleblower protections for employees, contractors, subcontractors, and agents
(1) In general

   **No employer may discharge,** demote, suspend, threaten, harass, or in any other manner discriminate against a covered individual in the terms and conditions of employment of the covered individual because of any lawful act done by the covered individual-

   (A) to provide or cause to be provided to the Federal Government or **a person with supervisory authority over the covered individual** (or such other person working for the employer **who has the authority to investigate, discover, or terminate misconduct**) information relating to-

52.    OSHA, a Department of Labor agency, who initiates the whistleblower investigation, has

FactSheet[5] for Whistleblower Protection for Reporting Criminal Antitrust Violations ("CAARA")

which clearly describes:

   "A criminal violation of the antitrust laws such as price fixing, bid rigging, or market division or allocation schemes, or A violation of another criminal law committed in conjunction with a potential violation of the criminal antitrust laws or in conjunction with an investigation by the Department of Justice of a potential violation of those laws"

53.    In order to be protected by CAARA, the Complaint does not need to be only for Government

contracts as Defendant argues; whistleblowers at the publicly traded companies can report to

supervisory authority that whistleblower reasonably believes to be a violation of the antitrust laws

(Complaint ¶¶ 47-58). Plaintiff reported possible Antitrust law violations to persons of supervisory

authority over Plaintiff at Walmart Complaint ¶¶ 62- 80

54.    Here is the document released by the US General Services Administration (GSA) Office of

Inspector General (OIG) for Procurement Fraud[6] which is an Antitrust Violation. Defendant's argument

---

[5] **https://www.osha.gov/sites/default/files/publications/OSHA4174.pdf**
[6] **https://www.gsaig.gov/sites/default/files/misc-reports/ProcurementFraudHandbook_0.pdf**

"Walmart is unaware of an antitrust violation based on "procurement fraud."" is simply meritless on its face.

55.    Plaintiff had to pass different fraud training including but not limited to Antitrust laws, Fraud against shareholders, money laundering etc at Walmart during his tenure at Walmart; which will be discoverable during the discovery. As argued before, even Plaintiff's mistaken belief is also protected under CAARA as CAARA and SOX are similar statues.

56.    Plaintiff complained to his supervisory authority over him about his reasonable belief of the violation of Antitrust laws and it was convincing enough that Defendant investigated for possible fraud and Defendant appreciated Plaintiff for speaking up. Therefore, Plaintiff is protected under CAARA.

57.    The Complaint has a dedicated section "Objective Belief - Totality of the Circumstances Test" Complaint ¶¶197-210 where Plaintiff demonstrated Plaintiff's colleagues (Kamil Bay, Leslie Platz and Olan Land) would believe the wrongdoing amounted to a CAARA violation.

58.   Therefore, Defendant's argument is merit less and for the foregoing reason above, Plaintiff's belief that Walmart violated CAARA was objectively reasonable

## 4.    Defendant Failed to Substantiate Defendant would have fired Plaintiff in the absence of Whistleblowing activities

59.    Motion to Dismiss under 12(b)(6) is not an affirmative defense since Defendant did not introduce any new facts that would negate the plaintiff's claim even if the facts in the Complaint are true. Defendant's Motion to Dismiss which Defendant claims is **affirmative defense ("Plaintiff cannot overcome an affirmative defense")** should be DENIED.

**First: Defendant's changing story of "dictatorship" was a pretext for retaliation**

60. **FACTS:**

1) 08-08-2023 Whistleblowing Activities started Complaint ¶¶ 62-80

2) 09-05-2023: Mr Milbourne's threat to Plaintiff Complaint ¶¶ 126-127 with background events Complaint ¶¶ 112-147

3) On or around 09-12-2023 Milbourne was fishing for Plaintiff's flaws abusing his position to intimidate and coercing an analyst, a fresh college graduate and Plaintiff's direct report, as a pretext for retaliation. The analyst stated to Wendy Bowman, Human Resource personnel, the analyst guessed the fate of Plaintiff 2-3 weeks before the termination decision (10-04-2023) Complaint ¶¶ 168-171

> "the problem with that assignment is like probably there is no solution in data science....**I don't know where this is going**". (emphasis added).

4) On 09-14-2023 Demotion Complaint ¶¶ 168-171 and EXHIBIT 11 (page 6) where Plaintiff informed his supervisor

> "I have already protested during the call yesterday during ours 1:1 I am considering it as disrespectful and **as an act of retaliation as LLM is purely data science topic** and I am the Director of Data Science."

5) Ridhi Mehra's refusal to meet Plaintiff during Sept-Oct 2023 Complaint ¶108

> Dr. Jana had a one-on-one meeting with Mrs. Mehra where..that meeting was canceled at least four times and that meeting never happened before termination.

6) During 10-02-2023 meeting (Complaint ¶¶ 106-111) when Mr. Milbourne was demoting Plaintiff in front all senior and junior members Plaintiff defended himself but never called Mehra a dictator.

7). On 02-21-2024: Defendant in its Position statement to OSHA (EXHIBIT 4) stated,

> Jana called Mehra "a dictator" and said, "this is a dictatorship."..calling your organization's leader a "dictator" during a team meeting is disrespectful and damaging to an organization, and was part of a pattern of behavior that led to Jana's termination"

---

61. **EXHIBIT 1** of the Complaint which Defendant submitted to OSHA on 02-21-2024 indeed had "disparaging, disruptive and dismissive" behavior but Defendant never substantiated that allegation even more than one year after the termination; therefore, should be considered as Defendant's conclusory statements, Defendant's Motion should be denied.

62.   Plaintiff provided a recording of that meeting to OSHA, Defendant made this statement: "Jana called Mehra "a dictator"" after reviewing that recording. Defendant is urguing based on Plantiff's evidence without disclosing its own story how Plaintiff's behavior was "disparaging, disruptive and dismissive". Discovery will reveal the true reason of the termination.

63.   On 06-14-2024 In its answer to Administrative Law Judges ("ALJ") defendant reiterated it's position (EXHIBIT 5)

> "During the meeting, Jana repeatedly referred to Ridhi's leadership as a "dictatorship," …Walmart fosters a culture of open communication and feedback, but also states as a core value "Respect for the Individual."..Jana's decision to use a team meeting to publicly denounce Ridhi Mehra as a dictator was a clear violation of this policy, and one of many poor decisions that were his own and resulted in his termination."

64.   09-13-2024: Plaintiff's Complaint ¶¶ 106-111 made completely opposite statement that Plaintiff "neither disrupted the meeting nor called Mrs. Mehra a dictator"

> Walmart is misrepresenting the facts to mask the true reasons for retaliation. Dr. Jana neither disrupted the meeting nor called Mrs. Mehra a dictator during the meeting on October 2, 2023, Dr. Jana spoke up for self-defense when Adrian was demoting and disrespecting Dr. Jana in front of  junior/senior team members in a team meeting by changing (demoting) Dr. Jana's roles and responsibilities (EXHIBIT 11).

As described in the Complaint ¶¶ 106-111 Plaintiff's behavior was not "aggressive,"

"unprofessional," or "abusive".

65.    09-13-2024: Plaintiff's Complaint ¶240 stated that within 10 months after Plaintiff's

termination, Ridhi Mehra was fired. Plaintiff's complaint about SOX and CAARA violation against

Ridhi Mehra.

> "Ridhi Mehra: Her entire team was dissolved and her decade long career at Walmart
> ended in August 2024."

Defendant did not challenge; this substantiates the need for Discovery for SOX and CAARA

violation by the Defendant.

66.  On 10-28-2024 In its Motion to Dismiss now states Plaintiff  "attempted to embarrass Mehra"

> "..**The Complaint, in an impressive display of mincing words, emphasizes that
> Plaintiff "never called Mehra 'a dictator.'"** Id. This is a distinction without a
> difference. Even if he did not use the precise word "dictator," Plaintiff attempted to
> embarrass Mehra in front of her team.."

67.    Chronological order of incidents presented above after Plaintiff's protected Whistleblowing

activities clearly substantiates that Defendant was preparing to terminate Plaintiff after the

Whistleblowing activities and Defendant was waiting for an event to trigger; and that event (10-02-

2023) was carefully designed by Defendant to demote Plaintiff in front of junior members of the team

so that Plaintiff would speak up. As Complaint states very clearly:

> "Mrs. Mehra decided to terminate Dr. Jana within the next 48 hours of this incident."

68.    As described in section Id.¶26 and references therein, Defendant's changing explanation for

termination is a pretext for retaliation.

### Second: Plaintiff's "Listening session" Comment was not a Contribution factor for termination

69. **FACTS**

Plaintiff was invited to attend a Listening session[7] with CEO Chris Nicholas on August 8, 2023.

70.  a)  Plaintiff's message in the listening session: Id. ¶ 187

"..If I look at Walmart, the majority of Data Science leaders have limited or no Data Science experience while they manage highly talented data scientists. I have a handful of examples where Data Science managers are here because of cronyism."

71.   b)  Plaintiff added additional relevant EXIBITs (video recording of the Listening Session Meeting) to substantiate Defendants pretext for retaliation[8]. Transcribed version:
o  Plaintiff: "We need leaders who have experience to guide, encourage, inspire the team. But that's not the case in some cases if you do not have relevant experience…..what's the management's plan that people at the ground level should be able to speak freely without fear of retaliation." (EXHIBIT 3)

o  Shawn Cohen: ""Dilip, thanks for coming forward with your concern and your question..I think what we are doing today is **an example of our desire to listen to associates and understand experience from their point of view**…there appears to be some breakdown in leadership expectation in your area..Walmart does not tolerate retaliation. We want to hear from our associates, it should be a safe environment where associates can bring forward their concerns" (EXHIBIT 2 )

o  CEO Chris Nicholas: "that's very well said Shawn, is a corner stone, actually, our culture, how we maintain our culture whether it's in the store, the home office, our distribution centers or anywhere else. So we appreciate you bringing it up Dilip, Shawn will be in touch and you can be assured it's handled in the right way and confidentially.…Thank you for what you do…And by the way, that's incredible. I think we've met. I mean, there aren't many people that get to say that they're part of a Nobel winning prize uh team that discovered the God particle" (EXHIBIT 1)
  ▪  CEO appreciated Plaintiff's effort and acknowledged Plaintiff and CEO met

  o  Management's appreciation and communication with the Plaintiff after the listening session. Right after the Listening session with CEO Chris Nicholas, on Aug 8, 2023, at

---

[7]https://www.walmartmuseum.com/content/walmartmuseum/en_us/timeline/decades/1980/artifact/2648.html
[8] Plaintiff has right to add additional material since Defendant is falsifying and misrepresenting facts in Listening session and changed cause of termination

12:21 PM, CJ Guice wrote

"I work for Rapid Response and I am connecting you with Shawn to address your listening session concern…Thank you so much for you raising your concern today, Dilip. **Really appreciate your leadership**!"

72. Plaintiff was terminated on October 19, 2023

- On 02-21-2024 Defendant provided Position Statement to OSHA (EXHIBIT 5, p7) "he was never disciplined for the reports he made to ethics or **for the complaints he made in listening sessions…the complaints had no bearing on the Company's decision to terminate Jana and were not a contributing factor in his termination**" (emphasis added)

- On June 14, 2024 Defendant reiterated at the ALJ (EXHIBIT 6): "*He was never disciplined for the reports he made to ethics or for the complaints he made in listening sessions. The fact is Jana's complaints were not true. What is true, is that the complaints had no bearing on Walmart's decision to terminate Jana and were not a contributing factor in his termination.*" Paragraph 37, page 12

- On 09-06-2024 Plaintiff, for the first time 11 months after the termination, raised Adrian Milbourne's qualification in his Complaint to this Federal Court: Id. ¶ 112:

  o "Mr. Milbourne, a data science leader with Bible Divinity and Bible Theology degree from Baptist Bible College with absolutely no data science background"

- On 10-28-2024 Defendant in its Motion to Dismissed **fit** Plaintiff's Id. ¶ 112 where Plaintiff raised Mr. Milbourne's incompetency into Listening Session event to change it's previous explanation that listening session

  "complaints had no bearing on the Company's decision to terminate Jana and were not a contributing factor in his termination" into

  "**comments evidence that Plaintiff was continually insubordinate toward Milbourne and Mehra, his supervisors…**They also demonstrate that Plaintiff carried out his employment at Walmart with a degree of narcissism (and **disdain for those without a PhD**) that his superiors eventually could not tolerate. See, e.g., id. ¶ 112 (**discussing Milbourne's education and his beginning Walmart career in entry level position**). Accordingly, Walmart had sufficient ground to terminate Plaintiff for reasons independent of his alleged protected activity" (emphasis added)

73. As evidence shows above management including CEO Chris Nicholas appreciated Plaintiff.

Plaintiff's comments at the Listening session on August 8, 2023 was not "**insubordinate toward Milbourne and Mehra, his supervisors"**, when Walmart terminated Plaintiff on October 19, 2023, and when Walmart provided Position Statement to OSHA on February 21, 2024 and when Walmart provided Answers to Plaintiff's Complaint to ALJ on June 14, 2024  but all of a sudden Plaintiff's comments at the Listening session got importance when Plaintiff included Mr. Milbourne's incompetency in his Complaint in September 2024 where Defendant added "**comments evidence that Plaintiff was continually insubordinate toward Milbourne and Mehra, his supervisors**" to fit into Plaintiff's Complaint.

74.    Defendant's Motion to Dismiss should be denied as Defendant changed the cause of the termination overtime to fit into Plaintiff's Complaint which was pretext for retaliation.

**75.  Plaintiff never denigrated his supervisors**. There is no evidence in the Complaint nor Defendant produced any document that suggests "Plaintiff continually denigrated" his supervisors. In the listening session, Plaintiff talked about Walmart wide problem, Plaintiff never mentioned about his supervisors, i.e; Mr. Milbourne. This is Defendant's conclusory statement and Defendant's Motion to Dismiss should be denied.

> "We need leaders who have experience to guide, encourage, inspire the team. But that's not the case in some cases if you do not have relevant experience" and "the majority of Data Science leaders have limited or no Data Science experience..I have a **handful** of examples.."

## Plaintiff was never insubordinate toward his supervisors

76.    Defendant alleged, Plaintiff's Listening Session

"**"comments evidence that Plaintiff was continually insubordinate toward Milbourne and Mehra, his supervisors…"**

77.    Insubordination is the employee's intentional refusal to obey an employer's reasonable and lawful

orders. Elements to insubordination: (i) There is a clear reasonable and lawful order; (ii) The order is given by a person in authority; (iii) The order is intentionally disobeyed by the employee.

78. As argued before, listening session comments (Id. ¶¶ 70-71) were not insubordinate prior to 09-06-2024 (First Amended Complaint when Plaintiff raised Mr. Milbourne's Incompetency for the first time); it became insubordinate only after Plaintiff added Milbourne's qualification in his Complaint on 09-06-2024. Neither the Complaint nor Defendant presented any evidence that demonstrates Plaintiff disobeyed employer's lawful orders. However, Plaintiff, on multiple occasions, declined to approve Infogain's work because Plaintiff reasonably believed doing so would constitute a criminal fraud which is not insubordination.Id. ¶¶ 72, 73, 75. Defendant's allegation of Plaintiff's insubordination towards Milbourne and Mehra is a conclusory statement

## Defendant's false allegation of Plaintiff's narcissism

"demonstrate that Plaintiff carried out his employment at Walmart with a degree of narcissism ..Milbourne's education and his beginning Walmart career in entry level position)."

79.    Plain language Plaintiff used at the Listening session was relevant data science experience for Walmart wide data science leaders; Plaintiff never mentioned about his PhD degree or Mr Milbourne's Bible Divinity and Bible Theology degree. There is no evidence Plaintiff raised question about Mr. Milbourne's  Bible Divinity and Bible Theology degree prior to termination. Defendant's allegation of "Plaintiff carried out his employment at Walmart with a degree of narcissism (and disdain for those without a PhD)"  is a conclusory statement and added to fit into Complaint one year after the termination; a change in explanation for termination, which is a pretext for retaliation.

 "We need leaders who have experience to guide, encourage, inspire the team… relevant experience"".If I look at Walmart, the majority of Data Science leaders have limited or no Data

Science experience .. I have a handful of examples where Data Science managers are here because of cronyism."

80. Therefore, Defendant misrepresented the fact of "degree of narcissism (and disdain for those without a PhD)" and is Defendant's **conclusory statement**. Even if Plaintiff raised question about Mr. Milbourne's Bible Divinity and Bible Theology degree as a Data Science leader prior to termination, the person who does not have relevant experience or education in Data Science is not competent to evaluate Plaintiff's performance which involves Data Science. In fact Defendant should be liable for negligent hiring, supervision, or retention of Mr. Milbourne: Defendant

> "hires an incompetent or unfit employee whom the employer knows, or reasonably should have known, was **incompetent** or unfit, thereby **creating an unreasonable risk of harm to others**." Cox v. Ft. Worth, 762 F. Supp. 2d 926, 940 (N.D. Tex. 2010) (citing Fifth Club, Inc v. Ramirez, 196 S.W.3d 788, 796(Tex. 2006). (emphasis added)

### Defendant's false allegation of Plaintiff's unprofessionalism and toxicity

> "when Milbourne gently informed Plaintiff that a deliverable was late, Plaintiff responded in a belligerent note that included the following comment, with font and color as represented…No supervisor at any company would tolerate Plaintiff's unprofessionalism and toxicity."

81.    Complaint provides adequate detailed events with dates in Id. ¶¶ 112-147 and ¶¶ 177-186 which substantiates employers retaliatory intent; it has nothing to do with Plaintiff's unprofessionalism and toxicity and therefore, Defendant's Motion should be denied.

### Plaintiff's termination was due to Plaintiff's Whistleblower Activities

**Defendant stated:** "..Plaintiff also attached to the Complaint an email written by Bowman in which Bowman explained her reasons for terminating Plaintiff's employment, which included insubordination and misconduct.."

82.    Motion to Dismiss is not an affirmative defense; because of the ambiguity of the Motion; Defendant's Motion to Dismiss should be denied. Plaintiff attached EXHIBIT 1 and EXHIBIT 2 which

Defendant produced to OSHA and ALJ respectively, both should be the same email. EXHIBIT 1 is an redacted email which had multiple attachments where the body of the email showed words like insubordination, misconduct, separation, "[o]utbursts and disrespect at team meetings" etc. Defendant did not have courage to provide unredacted version of the email and attachments to OSHA; OSHA would have finished the case in favor of Plaintiff already. Disclosing those attachments in its original form will only help Defendant if Defendant truly terminated Plaintiff because of insubordination and/or performance. Without disclosing details about those accusations, it is a conclusory statement by the Defendant.

83.   Evenif Plaintiff engaged himself in protected whistleblower activities, if employer demonstrates "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior" §42121(b)(2)(B)(ii). If that was the case, this case should have been dismissed a long time ago at OSHA and at ALJ; but that did not happen. In fact ALJ declined Defendant's Motion to Dismiss for failure to state a claim. Complaint ¶¶ 13-19 and set up a Trial Date. To shield from Plaintiff's Motion to Compel, Defendant manipulated ALJ by altering EXHIBIT 1 into EXHIBIT 2, which was a Fraud Upon the Court to hide the true reason for the termination. And the Complaint has a Section titled "WALMART'S MATERIALLY FALSE, FRAUDLENT STATEMENTS AND ALTERNATION OF EVIDENCE" Id. ¶¶ 189-196 where "one can find that EXHIBIT 2 is an altered version of EXHIBIT 1 which appears to be for the purpose of committing fraud, thus making it a crime under Federal Laws."

## The Clean Hand Doctrine

84.   "whenever a party, who as actor, seeks to set the judicial machinery in motion and obtain some

remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him***;the court will refuse***to award him any remedy." See Franklin v. Franklin 283 S.W. 2d 483, 486 (1955)

85.    Plaintiff met the Prima Facie Element of this Clean Hand Doctrine: (1) Defendant is seeking affirmative relief, (2) Defendant is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that injures Plaintiff (5) affects the balance of equities between litigants." Natera, Inc. v. Genosity Inc., C.A, No. 20-1352-LPS, D.I. 38 (D. Del. Mar 14, 2022)

86.    Instead of releasing original attachments and original email for more than a year after the termination, Defendant is not only altering evidence but also changing reasons for termination from time to time to cover up the true reason for the termination, affecting the balance of equities between litigants: the true reason for the termination is Plaintiff's Whistleblower Activities. Plaintiff has pled sufficient facts allowing a court to draw a reasonable inference that Plaintiff engaged protected activity under SOX and CAARA. Plaintiff has properly plead a claim for CAARA retaliation complaint (**Complaint ¶218**). Plaintiff has properly plead a claim for SOX retaliation (**Complaint ¶219**)

## IN THE ALTERNATIVE, PLAINTIFF REQUESTS AN OPPORTUNITY TO REPLEAD

87.  In the alternative, if the Court agrees with Defendant that Plaintiff has failed to state a claim upon which relief may be granted, Plaintiff respectfully seeks leave of Court to file an amended complaint. The Court should freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). Although the Court may dismiss a claim, it should not do so without granting leave to amend, unless the defect is simply incurable, or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so. Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000); see also Arthrocare Corp. v. Smith & Nephew, Inc., 406 F.3d 1365, 1370 (Fed. Cir. 2005); Shane v. Fauver, 213 F.3d 113, 116 (3rd Cir. 2000). In the event the Court grants Defendant's Motion, Plaintiff should

## III.    PRAYER

The Complaint has provided sufficient allegations to require further evidentiary analysis and DENY

Defendant's Motion to Dismiss.

Dated: December 12, 2024

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002

ENCLOSURE: Description of Exhibits

## CERTIFICATE OF SERVICE

On December 12, 2024, a true and correct copy of the foregoing was caused to be served upon to the
following through the Court's CM/ECF system:

Peter S. Wahby                           Morgan E. Jones
Texas Bar No. 24011171.                  Texas Bar No. 24132301
Peter.wahby@gtlaw.com                    Morgan.jones@gtlaw.com

GREENBERG TRAURIG LLP
2200 Ross Ave, Suite 5200 Dallas, Texas 75201
Telephone: 214.665.3600
Facsimile: 214.665.3601

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002
