Case 4:24-cv-00698-SDJ-BD    Document 29-3    Filed 12/12/24    Page 1 of 41 PageID #: 538

EXHIBIT 6

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011)
(2011 Decisions)

Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011)

**U.S. Department of Labor**                    Administrative Review Board
                                                200 Constitution Avenue, N.W.
                                                Washington, D.C. 20210

**ARB CASE NO. 07-123**
**ALJ CASE NOS. 2007-SOX-039**
**2007-SOX-042**
**DATE: May 25, 2011**

**In the Matter of:**

**KATHY J. SYLVESTER and**
**THERESA NEUSCHAFER,**

**COMPLAINANTS,**

**v.**

**PAREXEL INTERNATIONAL LLC,**

**RESPONDENT.**

**BEFORE: THE ADMINISTRATIVE REVIEW BOARD**

**Appearances:**

***For the Complainants:***
**E. Patrick McDermott, Esq.,** *Law Office of E. Patrick McDermott*, **Annapolis, Maryland; David C. Weaver, Esq.,** *Ethridge, Quinn, McAuliffe, Rowan & Hartinger*, **Frederick, Maryland**

***For the Respondent:***
**Joseph E. Schuler, Esq., Matthew F. Nieman, Esq.,** *Jackson Lewis LLP,* **Vienna, Virginia**

***For the Assistant Secretary of Labor for Occupational Safety and Health, as Amicus Curiae:***
**M. Patricia Smith, Esq., William C. Lesser, Esq., Jonathan T. Rees, Esq., Megan Guenther, Esq., Edward D. Sieger, Esq.,** *United States Department of Labor,* **Washington, District of Columbia**

***For The United States Securities and Exchange Commission, as Amicus Curiae:***
**David M. Becker, Esq., Mark D. Cahn, Esq., Jacob H Stillman, Esq., John W. Avery, Esq., Morgan Bradylyons, Esq.,** *United States Securities and Exchange Commission,* **Washington, District of Columbia**

***For the National Whistleblowers Center, as Amicus Curiae:***
**Richard Renner, Esq., Stephen M. Kohn, Esq.,** *National Whistleblowers*

[Page 2]

***Legal Defense and Education Fund, Washington, District of Columbia***

***For the Chamber of Commerce of the United States of America, as Amicus Curiae:***

*Robin S. Conrad, Esq., Shane B. Kawka, Esq., National Chamber Litigation Center, Inc., Washington, District of Columbia; Eugene Scalia, Esq., Jason C. Schwartz, Esq., Gibson, Dunn & Crutcher LLP, Washington, District of Columbia*

*For Douglas Evans, as Amicus Curiae:*
**Stephen M. Kohn, Esq., Richard Renner, Esq.,** *National Whistleblowers Legal Defense and Education Fund,* **Washington, District of Columbia**

**Before: Paul M. Igasaki,** *Chief Administrative Appeals Judge,* **E. Cooper Brown,** *Deputy Chief Administrative Appeals Judge,* **Luis A. Corchado,** *Administrative Appeals Judge,* **Joanne Royce,** *Administrative Appeals Judge,* **presiding en banc.**[1] **Judge Corchado filed a concurring opinion, in which Judge Royce joined. Judge Brown filed a separate opinion concurring, in part with the majority opinion, and dissenting, in part.**

## DECISION AND ORDER OF REMAND

This case arises under Section 806, the employee protection provision, of the Sarbanes-Oxley Act of 2002 (SOX) and its implementing regulations. 18 U.S.C.A. § 1514A (Thomson/West 2010); 29 C.F.R. Part 1980 (2009). Kathy J. Sylvester and Theresa Neuschafer (Complainants) each filed a complaint with the United States Department of Labor's Occupational Safety and Health Administration (OSHA), alleging that Parexel International LLC (Parexel) violated the SOX by discharging each of them in retaliation for engaging in SOX-protected activities. Parexel moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(1), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). On August 31, 2007, a Labor Department Administrative Law Judge (ALJ) dismissed the Complainants' claims on the grounds that their OSHA complaints failed to establish subject matter jurisdiction under the SOX because those complaints failed to allege activity protected by SOX Section 806.

This appeal presents several interrelated issues. Called into question is the propriety of the ALJ's dismissal of the Sylvester and Neuschafer complaints pursuant to Fed. R. Civ. P. 12(b)(1), and numerous issues concerning the requirements necessary to establish whistleblower protected activity under SOX Section 806. For the following

[Page 3]

reasons, the Board, presiding en banc, concludes that the ALJ clearly had subject matter jurisdiction over the Complainants' SOX complaints, and that the ALJ committed reversible error on several grounds in concluding that the Complainants failed to establish their claims that they engaged in SOX-protected whistleblower activity prior to their discharge. Accordingly, we reverse the ALJ's decision and remand the case for further proceedings consistent with this Decision.

## Background

The following facts presented in the complaints are accepted as true for purposes of our review of the ALJ's order granting Parexel's Motions to Dismiss. Parexel is a publicly-traded company that tests drugs for drug manufacturers and other clients. It operates a research facility to test drugs at Harbor Hospital in Baltimore, Maryland (the Baltimore Unit). Parexel performs these tests on behalf of drug manufacturers such as AstraZeneca, Advanced Magnetics, and Procter & Gamble. Parexel has reported to its shareholders the financial importance of its contracts with those manufacturers. Those contractual relationships involve significant credit obligations by Parexel, and they play a major role in determining Parexel's annual revenues. Sylvester Complaint ¶ 33-34; Neuschafer Complaint ¶¶ 36-37. Parexel contracts allow clients to terminate their contracts with Parexel upon 30 to 60 days notice. Sylvester

Complaint ¶ 23; Neuschafer Complaint ¶¶ 27, 41.

Sylvester worked for Parexel as a Case Report Forms Department Manager in the Baltimore Unit. She began working for Parexel in September 2003. Sylvester Complaint ¶ 4. Her responsibilities included "the accurate reporting of data and related research results from clinical studies conducted by Parexel pursuant to the law and regulations promulgated by the United States Food and Drug Administration (FDA)." Sylvester Complaint ¶ 7. It was her responsibility to ensure that such data adhered to the FDA's "Good Clinical Practice" (GCP) standards.

The purpose of GCP is to "provide a unified standard for designing, conducting, recording, and reporting trials that involve human subjects. GCP describes the essential regulatory documents that individually and collectively permit evaluation of the conduct of a clinical study and the quality of the data produced." Sylvester Complaint ¶ 7. Parexel has consistently reported to its shareholders that it strictly adheres to GCP. Sylvester Complaint ¶ 19; Neuschafer Complaint ¶¶ 23, 36.

Parexel employed Neuschafer as a Clinical Research Nurse in the Baltimore Unit beginning in August 2004. In this capacity, she was responsible for reporting accurate clinical data. Neuschafer was known by her co-workers to be unwilling to engage in false reporting or other conduct in violation of GCP. These co-workers used derisive terms to describe her adherence to GCP, such as referring to her as the "Parexel police." Neuschafer Complaint ¶ 9. Neuschafer's coworkers considered her to be a close friend of Kathy Sylvester. Neuschafer Complaint ¶ 7.

[Page 4]

On March 15, 2006, Neuschafer reviewed the charts of four subjects participating in a study Parexel was conducting for the drug manufacturer AstraZeneca. She concluded that "the Neuro-cognitive testing time points were not completed on each subject's chart." Neuschafer Complaint ¶ 11. Neuschafer brought these omissions to the attention of Karen Smith, Mary Ann Green, and Ramona Setherly, three other Parexel employees working on the AstraZeneca study. According to Neuschafer, "[t]he AstraZeneca study is a major source of revenue for Parexel." Neuschafer Complaint ¶ 22.

Smith responded to Neuschafer's concern by inserting the then-current time into the charts' time points. Neuschafer considered this act to constitute the reporting of false clinical data, and a GCP violation, because the time entries did not reflect the time at which the tests had been performed. Neuschafer Complaint ¶ 12. Neuschafer next spoke to Meimpie Fourie, Clinical Research Coordinator/Manager and coordinator of the AstraZeneca study. She told Fourie that Smith and Green "were reporting false clinical data." Neuschafer Complaint ¶ 14. Fourie told her not to worry about the falsifications because it was "no big deal." *Id.*

Sylvester had observed the exchange between Neuschafer and Smith on March 15. On or about March 16, 2006, Sylvester reported to Fourie and Elizabeth Jones, a Nurse Manager (and supervisor), that Smith and Green had "report[ed] false clinical data, in violation of the FDA regulated GCP by falsely recording the time points at which Neuro-cognitive testing was performed by clinical subjects at designated times when in fact these times were manufactured and not accurate as to when true testing was performed." Sylvester Complaint ¶ 13.

Following Sylvester's and Neuschafer's accusations, Green verbally and physically assaulted Neuschafer on March 19, 2006. According to Sylvester, she was blamed for Green's attack on Neuschafer. Parexel issued letters of warning to Sylvester and Neuschafer on March 21, 2006. Sylvester Complaint, ¶ 27; Neuschafer Complaint, ¶ 31. Sylvester "protested to management" that her letter was issued in retaliation for reporting the fraudulent research data and GCP violations by Smith and Green. Sylvester Complaint

¶¶ 28-29.

On or about May 26, 2006, Sylvester told Jones that Smith had engaged in another GCP violation. She alleged that Smith had fraudulently documented Pharmacokinetic (PK) blood sample time points for samples drawn from subjects involved in tests for Advanced Magnetics, AstraZeneca, and Proctor & Gamble. Sylvester Complaint ¶ 31.[2] According to Sylvester, "[i]f the PK samples are drawn at incorrect times, or falsely reported as being drawn at a time when in fact they were not, the analysis will be flawed and the data corrupt and inaccurate." Sylvester Complaint ¶ 32.

[Page 5]

Sylvester and Neuschafer allege that Parexel managers chose not to investigate their concerns:

> Parexel declined to investigate its conduct as promised in its Code of Business Ethics, correct this conduct or to report it to appropriate parties such as the FDA and its clients because doing so would have adversely affected the large profit from the studies . . . . This would have adversely affected the value of the stock, would have caused corporate credit problems, would have contradicted Parexel's statements to its shareholders concerning strict adherence to GCP and would have significantly reduced or eliminated bonus compensation and other stock based compensation for Parexel executives.

Sylvester Complaint ¶ 37; Neuschafer Complaint ¶ 26. Neuschafer states that, to the best of her knowledge, "this false data has never been corrected and has been reported as accurate by Parexel in communication through the U.S. mails and by wire communications such as the Internet." Neuschafer Complaint ¶ 39.

Sylvester and Neuschafer state that, because they complained about the misconduct of other Parexel employees, they were subjected to various forms of retaliation. Sylvester indicates that she was threatened by an anonymous letter, had her motor vehicle vandalized, and "was required to work in an atmosphere where knowing fraud was being committed in clinical studies of drugs where such studies would later be submitted to the U.S. government to justify the widespread prescribing and distribution of such drugs." Sylvester Complaint ¶¶ 40-41.

Neuschafer states that, in addition to a warning letter, she "was subjected to continuing abuse from her co-workers." Neuschafer Complaint ¶ 43. She also indicates that "[p]rior to [her] termination Ms. Jones chastised her for discussing wages with a co-worker. She believes that this was used to fire her because Parexel needed to get rid of her due to her conduct protected by the Sarbanes-Oxley Act." Neuschafer Complaint ¶ 48.[3]

Rachel Garrido, Parexel's Unit Director and Senior Director of Business Operations, and Lisa Roth, Human Resources Director, discharged Sylvester on June 15, 2006. Garrido told her that "the termination decision was a æ…¶orporate decision' and that

[Page 6]

she was terminated because she was æ†,ot a team player.'" Sylvester Complaint ¶ 43. Jones discharged Neuschafer on August 10, 2006. Jones stated that "the reason for termination was that Neuschafer's personality did not fit in." Neuschafer Complaint ¶ 46.

Sylvester and Neuschafer filed separate complaints with OSHA on September 11, 2006, and October 30, 2006, respectively. The complaints state that Parexel violated the SOX by discharging each of them in retaliation for informing Parexel managers about fraudulent acts other Parexel employees committed.

They indicate that:

> By covering up clinical research fraud, by violating its Code of Business Ethics, and by failing to disclose fraudulent data to the FDA and to the sponsor of the clinical study, Parexel engaged in a fraud against its shareholders, financial institutions, and others . . . to maximize short-term revenue from the tarnished clinical study at the expense of the long-term financial performance of the company . . . at a time when he knew that disclosure of this fraudulent data would have significantly reduced Parexel's revenue and reputation . . . to ensure that its officers would earn compensation related to economic performance, that stock options and other stock-based compensation would be maximized, and a wide range of related conduct all based on fraudulent data and the failure to report this material information of clinical fraud in these studies.

Sylvester Complaint ¶¶ 46-49; Neuschafer Complaint ¶¶ 52-55.

The Complainants' OSHA complaints allege that, prior to their discharge, Sylvester and Neuschafer provided information to Parexel about conduct that they believed constituted actual or potential mail or wire fraud, and fraud against shareholders. Sylvester Complaint ¶¶ 20, 21, 39, 46, 47, 48, 49 & 50; Neuschafer Complaint ¶¶ 24, 25, 38, 41, 52, 53, 54 & 55. Both complaints also state that "[v]iolation[s] of GCP could constitute a violation of Federal law including . . . 18 U.S.C. 1344 (financial institution fraud) or other federal or state law." Sylvester Complaint ¶ 12; Neuschafer Complaint ¶ 10.[4]

[Page 7]

The Complainants also allege that Parexel "knowingly failed to comply with its Business Code of Ethics, an internal control relied upon by both its auditors and shareholders," and that such failure "renders the signature of its Chairman of the Board and Chief Executive Officer on its annual report a violation of the Securities and Exchange Act and SOX." Sylvester Complaint, ¶ 56; Neuschafer Complaint, ¶ 60.

OSHA dismissed both complaints, and the Complainants requested a hearing before an ALJ. Prior to a hearing, Parexel filed separate Motions to Dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the complaints' allegations "do not fall within the closely prescribed subject matter jurisdiction authorized by Congress for the Department of Labor to hear SOX complaints." *See, e.g*., Respondent's Motion to Dismiss (Complaint of Theresa Neuschafer) at 3. Parexel also requested dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the complaints fail to state a claim upon which relief can be granted. *See, e.g*., Respondent's Motion to Dismiss (Complaint of Kathy J. Sylvester) at 4-5. The Complainants responded by submitting a Consolidated Reply to Respondent's Motion to Dismiss Their Respective Complaints.

Pursuant to a Decision and Order (D. & O.) issued on August 31, 2007, the ALJ granted the Respondent's Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), holding that the Complainants' complaints failed "on their face to establish subject matter jurisdiction under the Act." D. & O. at 12. Based on the allegations of the Sylvester and Neuschafer complaints, the ALJ concluded that neither had engaged in SOX-protected activity. The ALJ cited, specifically, the Complainants' failure to establish that the concerns they had raised with Parexel, for which they sought whistleblower protection, (1) "definitively and specifically" related to a violation of any of the laws covered by SOX Section 806, (2) involved an actual violation by Parexel of any of the laws enumerated in Section 806, (3) involved shareholder fraud, fraud generally, or were otherwise adverse to shareholders' interests, or (4) constituted reasonable concerns about SOX violations. D. & O. at 9-12.

**Jurisdiction and Standard of Review**

Congress authorized the Secretary of Labor to issue final agency decisions with respect to claims of discrimination and retaliation filed under the SOX. 18 U.S.C.A. § 1514A(b). The Secretary has delegated that authority to the Administrative Review Board. Secretary's Order No. 1-2010 (Delegation of Authority and Assignment of Responsibility to the Administrative Review Board), 75 Fed. Reg. 3924 (Jan. 15, 2010). *See* 29 C.F.R. § 1980.110(a). The Board reviews the ALJ's findings of fact under the substantial evidence standard. 29 C.F.R. § 1980.110(b). The Board reviews questions of law de novo. *See Simpson v. United Parcel Serv.*, ARB No. 06-065, ALJ No. 2005-AIR-031, slip op. at 4 (ARB Mar. 14, 2008).

[Page 8]

## Discussion

For the following reasons, we find that subject matter jurisdiction clearly existed in this case, and the ALJ erred when he dismissed these cases pursuant to Fed. R. Civ. P. 12(b)(1). However, a remand on that basis alone would not move this case forward because, as discussed below, we disagree with a number of the ALJ's conclusions regarding a complainant's burden to establish protected activity under SOX Section 806, which the ALJ made in the course of his finding of no subject matter jurisdiction. Consequently, in addition to addressing the propriety of the ALJ's dismissal for lack of subject matter jurisdiction, we address: (1) the pleading standard applicable to SOX cases; (2) the requirements necessary for establishing the reasonableness of an employee's belief that the conduct of which he or she complains violates the laws identified under Section 806; (3) whether the ALJ erred by requiring the Complainants to describe protected activity in their complaints that related "definitively and specifically" to the laws identified in Section 806; (4) whether, for an employee to establish that he or she engaged in Section 806 whistleblower-protected activity, it is necessary in all instances to establish that the activity of which the employee complains involved shareholder fraud, fraud generally, or that the complained-of activity materially affected shareholders' interests; and (5) where the complained-of activity involves allegations of fraud, whether it is necessary that the employee establish all elements necessary to the proof of such fraud. First, we address the issue of subject matter jurisdiction.

## A. Governing Law

Congress enacted the SOX on July 30, 2002, as part of a comprehensive effort to address corporate fraud. The SOX whistleblower protections were included in response to "a culture, supported by law, that discourage[s] employees from reporting fraudulent behavior not only to the proper authorities . . . but even internally. This æ...¶orporate code of silence' not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity." S. Rep. No. 107-146, at 5 (2002).

SOX Title VIII is designated the Corporate and Criminal Fraud Accountability Act of 2002 (the Accountability Act). Section 806, the SOX's employee-protection provision, prohibits covered employers and individuals from retaliating against employees for providing information or assisting in investigations related to certain fraudulent acts. That provision states:

> (a) Whistleblower Protection For Employees Of Publicly Traded Companies.?No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. *78l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms

[Page 9]

and conditions of employment because of any lawful act done by the employee?

(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire, radio, TV fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by?

(A) a Federal regulatory or law enforcement agency; (B) any Member of Congress or any committee of Congress; or (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

(2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

18 U.S.C.A. § 1514A.[5]

Section 806 was first introduced as part of the Accountability Act, and the Conference Committee added it to the final version of the SOX bill. It is but one part of a comprehensive law ensuring corporate responsibility. Congress added whistleblower protection provisions to the SOX as a "crucial" component for "restoring trust in the financial markets by ensuring that corporate fraud and greed may be better detected, prevented and prosecuted." S. Rep. 107-146 at 2 (May 6, 2002); *see, e.g., Johnson v. Siemens Bldg. Techs.*, ARB No. 08-032, ALJ No. 2005-SOX-015, slip op. at 12 (ARB Mar. 31, 2011).

The legal burdens of proof set forth in the employee protection provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR 21) govern SOX Section 806 actions. Accordingly, to prevail on a SOX claim, a complainant

[Page 10]

must prove by a preponderance of the evidence that: (1) he or she engaged in activity or conduct that the SOX protects; (2) the respondent took unfavorable personnel action against him or her; and (3) the protected activity was a contributing factor in the adverse personnel action.[6]

As noted above, the ALJ concluded that the Complainants' OSHA complaints failed to indicate that the Complainants engaged in SOX-protected activity prior to their discharge. We now address the procedural and substantive errors the ALJ committed in reaching this conclusion.

**B. The ALJ Erred by Ruling that the Complainants' OSHA Complaints Should be Dismissed Pursuant to Rule 12 of the Federal Rules of Civil Procedure**

**1. The ALJ Had Subject Matter Jurisdiction Over the Complaints**

The ALJ expressly contemplated whether to address Parexel's Motions as factual challenges to subject matter jurisdiction over the Complainants' claims pursuant to Fed. R. Civ. P. 12(b)(1). D. & O. at 2-3. He

described the issue before him as "[w]hether Complainants have alleged facts which establish protected activity within the scope of the Act and jurisdiction over the subject matter in this tribunal as a matter of law." *Id*. at 3. And he ultimately concluded that "Respondent's motion under Rule 12(b)(1) for dismissal of the consolidated complaints for failure of the pleadings on their face to establish subject matter jurisdiction under the Act should be granted." *Id*. at 12. We disagree, because subject matter jurisdiction clearly existed in this case.

Subject matter jurisdiction "refers to a tribunal's power to hear a case." *Morrison v. Nat'l Australian Bank*, 130 S. Ct. 2869, 2877 (2010) (citing *Union Pacific v. Bhd. of Locomotive Eng'rs*, 130 S .Ct. 584, 596-97 (2009)). Subject matter jurisdiction "presents an issue quite separate from the question whether the allegations the plaintiff makes entitles him to relief," *Morrison*, 130 S. Ct. at 2877,[7] and thus under the whistleblower laws over which the Department of Labor has jurisdiction, should not be confused "with the wholly separate question whether [a complainant's] actions might be covered as æ†„rotected activities.'" *Sasse v U.S. Dept. of Justice,* ARB No. 99-053, ALJ No. 1998-CAA-007, slip op. at 3 (ARB Aug. 31, 2000).

Similar to federal complaints based on federal question jurisdiction, the burden of establishing subject matter jurisdiction under Section 806 is not particularly onerous. *See, e.g., Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1317 (7th Cir. 1997); *Musson*

[Page 11]

*Theatrical*, 89 F.3d 1244, 1248 (6th Cir. 1996). As the Board explained in *Sasse*, the Department of Labor's subject matter jurisdiction is invoked "when the parties are properly before it, the proceeding is of a kind or class which the court is authorized to adjudicate, and the claim set forth in the paper writing invoking the court's action is not obviously frivolous." *Sasse*, slip op. at 3 (quoting *West Coast Exploration Co. v. McKay*, 213 F.2d 582, 591 (D.C. Cir.), *cert. denied*, 347 U.S. 989 (1954)). And the Supreme Court has explained that:

> [Subject matter] [j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Bell v. Hood,* 327 U.S. 678, 681-82 (1946), (citing *Swafford v. Templeton*, 185 U.S. 487, 493-494, 22 S. Ct. 783, 785-786 (1902)).

Here, subject matter jurisdiction was clear. The ALJ's subject matter jurisdiction to hear SOX whistleblower complaints exists pursuant to the Secretary of Labor's delegation of her hearing and adjudication authority under 18 U.S.C.A. § 1514A(b) to Department of Labor Administrative Law Judges.[8] By filing complaints alleging that Parexel violated the SOX by discharging them from employment, Sylvester and Neuschafer properly invoked the Department of Labor's jurisdiction to adjudicate their complaints. We therefore conclude that the ALJ erred by granting Parexel's Motions to Dismiss "for failure of the pleadings on their face to establish subject matter jurisdiction." D. & O. at 12.

While the ALJ erred in dismissing the Complainants' complaints pursuant to Rule 12(b)(1), the ALJ's analysis actually involved a determination of whether the allegations of the consolidated complaints

established that the Complainants engaged in SOX-

[Page 12]

protected whistleblower activity. There is nothing in the ALJ's analysis that turned on the mistake of dismissing the case for lack of subject matter jurisdiction. Consequently, rather than remanding because of this mistake, which would merely require upon remand affixing "a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion," *Morrison,* 130 S. Ct. at 2877, we proceed to address whether the ALJ's conclusion that the Complainants failed to engage in SOX-protected activity is sustainable.

### 2. The Heightened Pleading Standards Established in Federal Courts Do Not Apply to SOX Claims Initiated With OSHA

The ALJ noted that Parexel also moved for dismissal of the complaints pursuant to Fed. R. Civ. P. 12(b)(6) "for failure to state a claim upon which relief can be granted." D. & O. at 2. He reviewed the allegations contained in the complaints and concluded that Parexel was entitled to dismissal because neither Sylvester not Neuschafer had engaged in SOX-protected activity prior to their discharge. We disagree with this conclusion because Sylvester and Neuschafer have provided sufficient allegations of SOX-protected activity to proceed with their complaints.

A SOX claim begins with OSHA, where "no particular form of complaint" is required, except that it must be in writing and "should contain a full statement of the acts and omissions, with pertinent dates, which are believed to constitute the violations." 29 C.F.R. § 1980.103(b). OSHA then has a duty, if appropriate, to interview the complainant to supplement a complaint that lacked a prima facie claim. 29 C.F.R. § 1980.104(b)(1). If the complaint, as supplemented, alleges a prima facie claim, then OSHA initiates an investigation to determine whether a violation occurred.

At some point, OSHA must decide if the complainant has stated a prima facie complaint. When OSHA finishes its investigation and makes a decision, either party may object and ask for a hearing before a Department of Labor Administrative Law Judge . 29 C.F.R. § 1980.106. In contrast, in federal court, a plaintiff files a formal complaint and serves the defendant with a complaint, which is measured against the requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure. Upon the filing of the federal complaint, the defendant may immediately challenge the sufficiency of the pleadings through Rule 12, without waiting for any supplementation.

Two United States Supreme Court cases, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S .Ct. 1937 (2009) have heightened the pleading requirements established in the Federal Rules of Civil Procedure. In those cases, the Supreme Court interpreted Rule 8 to mean that the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

[Page 13]

The ALJ applied this heightened standard to evaluate the allegations of the complaints in this case. But this standard should not be applied to SOX whistleblower claims because the *Twombly* and *Iqbal* decisions involve cases in which the procedural requirements are not analogous to cases arising under the SOX's employee-protection provision. Given the procedural paradigm under which SOX complainants begin, SOX complainants would have to be mindful of these pleading requirements when they file a written statement with OSHA, knowing that their original complaint will be forwarded to an ALJ if a hearing is requested. Essentially, SOX complainants would be required to file the equivalent of a federal

court complaint when they initiate contact with OSHA.[9] This contravenes the expressed duty that OSHA has to interview the complainant and attempt to supplement the complaint.

ALJs are entitled to manage their caseloads and decide whether a particular case is so meritless on its face that it should be dismissed in the interest of justice. But SOX claims are rarely suited for Rule 12 dismissals. They involve inherently factual issues such as "reasonable belief" and issues of "motive." In addition, we believe ALJs should freely grant parties the opportunity to amend their initial filings to provide more information about their complaint before the complaint is dismissed, and dismissals should be a last resort. Dismissal is even less appropriate when the parties submit additional documents that justify an amendment or further evidentiary analysis under 29 C.F.R. § 18.40 (ALJ Rule 18.40), the ALJ rule governing motions for summary decision, which is analogous to Fed. R. Civ. P. 56 (summary judgment). As described below, it is clear that both Complainants in this case have exceeded the pleading requirements established by the laws and regulations governing the SOX.

Rule 12 motions challenging the sufficiency of the pleadings are highly disfavored by the SOX regulations and highly impractical under the Office of Administrative Law Judge (OALJ) rules. The OALJ rules do not contain a rule analogous to Rule 12, but instead allow parties to seek prehearing determinations pursuant to ALJ Rule 18.40. We therefore conclude that the heightened pleading standards established in federal courts do not apply to the Complainants' complaints, and those complaints require further analysis pursuant to ALJ Rule 18.40 or an evidentiary hearing on the merits.[10]

[Page 14]

## C. A Complainant Need Only Express a "Reasonable Belief" of a Violation to Engage in a SOX-Protected Activity

In dismissing the Complainants' complaints, the ALJ cited to a number of cases issued by this Board and the federal courts discussing SOX-protected activity. But in doing so, the ALJ failed to acknowledge the basic requirements for establishing protected activity described in the statute itself.

The SOX's plain language provides the proper standard for establishing protected activity. To sustain a complaint of having engaged in SOX-protected activity, where the complainant's asserted protected conduct involves providing information to one's employer, the complainant need only show that he or she "reasonably believes" that the conduct complained of constitutes a violation of the laws listed at Section 1514. 18 U.S.C.A. § 1514A(a)(1). The Act does not define "reasonable belief," but the legislative history establishes Congress's intention in adopting this standard. Senate Report 107-146, which accompanied the adoption of Section 806, provides that "a reasonableness test is also provided . . . which is intended to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts (*See generally, Passaic Valley Sewerage Commissioners v. Department of Labor*, 992 F. 2d 474, 478)." S. Rep. 107-146 at 19 (May 6, 2002).

Both before and since Congress enacted the SOX, the ARB has interpreted the concept of "reasonable belief" to require a complainant to have a subjective belief that the complained-of conduct constitutes a violation of relevant law, and also that the belief is objectively reasonable, "*i.e.* he must have actually believed that the employer was in violation of an environmental statute and that belief must be reasonable for an individual in [the employee's] circumstances having his training and experience." *Melendez v. Exxon Chems.*, ARB No. 96-051, ALJ No. 1993-ERA-006, slip op. at 28 (ARB July 14, 2000); s*ee also, Brown v. Wilson Trucking Corp*., ARB No. 96-164, ALJ No. 1994-STA-054, slip op. at 2 (ARB Oct. 25, 1996)(citing *Yellow Freight Sys., Inc. v. Reich*, 38 F.3d 76, 82 (2d Cir. 1994)).

To satisfy the subjective component of the "reasonable belief" test, the employee must actually have believed that the conduct he complained of constituted a violation of relevant law. *Harp v. Charter*

*Commc'ns*, 558 F.3d 722, 723 (7th Cir. 2009). "[T]he legislative history of Sarbanes-Oxley makes clear
that its protections were æ…½ntended to include all good faith and reasonable reporting of fraud, and
there should be no presumption that reporting is otherwise.'" *Van Asdale v. Int'l Game Tech*., 577 F.3d
989, 1002 (9th Cir. 2009)(citing 148 Cong. Rec. S7418-01, S7420 (daily ed. July 26, 2002)). "Subjective
reasonableness requires that the employee æ…³ctually believed the conduct complained of constituted a
violation of pertinent law.'" *Day v. Staples, Inc.,* 555 F.3d 42, 54 n.10 (quoting *Welch v. Chao*, 536 F.3d
269, 277 n.4 (4th Cir. 2008)). In this

[Page 15]

regard, "the plaintiff's particular educational background and sophistication [is] relevant." *Id.*

The second element of the "reasonable belief" standard, the objective component, "is evaluated based on
the knowledge available to a reasonable person in the same factual circumstances with the same training
and experience as the aggrieved employee." *Harp,* 558 F.3d at 723. "The æ†ʄbjective reasonableness'
standard applicable in SOX whistleblower claims is similar to the æ†ʄbjective reasonableness' standard
applicable to Title VII retaliation claims." *Allen v. Admin. Rev. Board*, 514 F.3d 468, 477 (5th Cir. 2008)
(citing *Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 348 (5th Cir. 2007)). Accordingly, in
*Parexel Int'l Corp. v. Feliciano*, 2008 WL 5467609 (E.D. Pa. 2008), the court found the complainant's
reliance upon the employer's representations reasonable in light of the complainant's limited education,
noting that had the complainant been, for example, a legal expert, a higher standard might be appropriate.
*See also Sequeira v. KB Home*, 2009 WL 6567043, at 10 (S.D. Tx. 2009) ("The statute does not require,
as Defendants suggest, that the whistleblower have a specific expertise.").

The reasonable belief standard requires an examination of the reasonableness of a complainant's beliefs,
but *not* whether the complainant actually communicated the reasonableness of those beliefs to
management or the authorities. *See, e.g., Knox v. U.S. Dept. of Labor*, 434 F.3d 721, 725 (4th Cir. 2006).
In *Knox*, the Fourth Circuit reversed the Board's misapplication of the reasonable belief standard to
require that a complainant actually convey the reasonable belief to management. Certainly, those
communications may provide evidence of reasonableness or causation, but a complainant need not
actually *convey* reasonable belief to his or her employer. *See, e.g., Collins,* 334 F. Supp. 2d 1365, 1377-78
(N.D. Ga. 2004) (it is sufficient that the recipients of the whistleblower's disclosures understood the
seriousness of the disclosures).

Often the issue of "objective reasonableness" involves factual issues and cannot be decided in the absence
of an adjudicatory hearing. *See, e.g., Allen,* 514 F.3d at 477-478 ("the objective reasonableness of an
employee's belief cannot be decided as a matter of law if there is a genuine issue of material fact");
*Welch,* 536 F.3d at 278 ("objective reasonableness is a mixed question of law and fact" and thus subject to
resolution as a matter of law "if the facts cannot support a verdict for the non-moving party."); *Livingston
v. Wyeth Inc*., 520 F.3d 344, 361 (4th Cir. 2008) (Judge Michael, dissenting) ("The issue of objective
reasonableness should be decided as a matter of law only when æ†ʼ,o reasonable person could have
believed' that the facts amounted to a violation. . . . However, if reasonable minds could disagree about
whether the employee's belief was objectively reasonable, the issue cannot be decided as a matter of law"
[citations omitted])).

We believe that such a mistake has been made in this case. The ALJ completely discounted as "irrelevant
and immaterial" what the Complainants "might have believed or been told by Respondent regarding any
relationship of such false [FDA] reporting to SOX." D. & O. at 10. In doing so, the ALJ precluded the
Complainants from presenting evidence regarding the reasonableness of their alleged protected activities.
And as noted

Case 4:24-cv-00698-SDJ-BD   Document 29-3   Filed 12/12/24   Page 12 of 41 PageID #: 549

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011) (2011 Decisions)

[Page 16]

above, the complaints in this case present several accusations regarding Parexel's business practices and its failure to disclose deficiencies in those practices. Such accusations may be objectively reasonable to employees with the same training and experience as Sylvester and Neuschafer. Because a determination regarding the reasonableness of the Complainants' alleged protected activities requires an examination of facts, it was inappropriate for the ALJ to rule on that activity pursuant to the Motions to Dismiss.

## D. Protected Activity Need Not Describe an Actual Violation of the Law

The ALJ held that the Complainants' concerns about Parexel's actions needed to involve an actual violation of the laws under SOX, and "until enforcement action is taken," allegations that Parexel engaged in fraud "are speculative and are deemed insufficiently material to [Parexel's] financial picture to form a basis for securities fraud or to affect shareholders investment decisions." D. & O. at 11, n.5. This constitutes error because the ALJ required not only a specific reference to fraud, but also reference to an illegal act that had already taken place.

A whistleblower complaint concerning a violation about to be committed is protected as long as the employee reasonably believes that the violation is likely to happen. Such a belief must be grounded in facts known to the employee, but the employee need not wait until a law has actually been broken to safely register his or her concern. *See, e.g., Melendez,* ARB No. 96-051, slip op. at 21 ("It is also well established that the protection afforded whistleblowers who raise concerns regarding statutory violations is contingent on meeting the aforementioned æ††easonable belief' standard rather than proving that actual violations have occurred."); *Crosby v. Hughes Aircraft Co.,* 1985-TSC-002, slip op. at 14 (Sec'y Aug. 17, 1993) (required is reasonable belief that the employer "was violating or about to violate the environmental acts"). *Accord Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992) (protection under Surface Transportation Assistance Act not dependent upon whether complainant proves a safety violation); *Collins,* 334 F. Supp. 2d at 1376.

Consistent with this line of authority, the ARB has held that an employee's whistleblower communication is protected where based on a reasonable, but mistaken, belief that the employer's conduct constitutes a violation of one of the six enumerated categories of law under Section 806. *See, e.g., Halloum v. Intel Corp.,* ARB No. 04-068, ALJ No. 2003-SOX-007, slip op. at 6 (ARB Jan. 31, 2006).

The Fourth Circuit held in *Welch* that the SOX did not require an employee to complain of an *actual* violation of a listed law to engage in protected activity. 536 F.3d at 277. Moreover, the court noted, such a requirement would conflict with ARB and court rulings that have held that Section 806 protects an employee's communications if "based on a reasonable, but mistaken, belief that conduct constitutes a securities violation." *Id.* The Fifth Circuit agrees. *See, e.g., Allen*, 514 F.3d at 476-77 (an employee's reasonable belief about a violation is protected even if the belief is mistaken and an actual violation never occurs). We therefore conclude that the ALJ erred by

[Page 17]

requiring Sylvester and Neuschafer to describe in their OSHA complaints illegal acts that had already taken place when they complained to Parexel management.

## E. The ALJ Erred by Applying the "Definitive and Specific" Evidentiary Standard Established in Prior Cases

The ALJ also held that, "[u]ntil the [Complainants'] allegedly protected activities are shown to have a sufficiently definitive and specific relationship to any of the listed categories of fraud or securities

violations under 18 U.S.C. § 1514A(a)(1), what Complainants might have believed or been told by Respondent regarding any relationship of such false reporting to SOX is irrelevant and immaterial to the legal sufficiency of their complaints under SOX." D. & O. at 10. In support of this conclusion, the ALJ cites to cases using the words "definitive and specific" or "definitively and specifically" in determining whether a complainant engaged in SOX-protected activity. But in relying upon those words to reject the Complainants' complaints, the ALJ failed to focus on the plain language of the SOX whistleblower protection provision, which protects "all good faith and reasonable reporting of fraud." 148 Cong. Rec. S7418-01, S7420 (daily ed. July 26, 2002); *see, e.g*., *Van Asdale,* 577 F.3d at 1002.

The use of the words "definitively and specifically" in whistleblower retaliation cases can be traced back to cases arising under the Energy Reorganization Act, 42 U.S.C.A. § 5851 (ERA). The ERA protects specific activities including notifying one's employer of an alleged violation of the ERA or the Atomic Energy Act (AEA), refusing to engage in activities prohibited under the AEA, or testifying before Congress regarding any provision of the ERA or the AEA. *See* 42 U.S.C.A. § 5851(a)(1)(A)-(D). In addition, the ERA includes a catch-all provision that protects employees who, among other things, assist or participate in "a proceeding ?or any other action [designed] to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended." 42 U.S.C.A. § 5851(a)(1)(F).

The ERA does not define the phrase "any other action to carry out the purposes of this chapter" as set forth in subsection (F). Consequently, the courts construed the phrase as requiring, in light of the ERA's overarching purpose of protecting acts implicating nuclear safety, that an employee's actions implicate safety "definitively and specifically" to constitute whistleblower protected activity under subsection (F). *See, e.g., Am. Nuclear Res. v. U.S. Dept. of Labor*, 134 F.3d 1292, 1295 (6th Cir. 1998), citing *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 931 (11th Cir. 1995); s*ee also Stone & Webster v. Herman*, 115 F.3d 1568, 1575 (11th Cir. 1997).

The SOX whistleblower protection provision contains no similar language, and instead expressly identifies the several laws to which it applies.[11] Thus, importation of

[Page 18]

the standard applied to derive meaning from subsection (F) is inapposite to the question of what constitutes protected activity under SOX's whistleblower protection provision. Not only is it inappropriate, but it also presents a potential conflict with the express statutory authority of § 1514A, which prohibits a publicly traded company from discharging or in any other manner discriminating against an employee for providing information regarding conduct that the employee "reasonably believes" constitutes a SOX violation.

Nevertheless, to determine whether the complainant engaged in SOX-protected activity, the Board, in *Platone v. FLYi, Inc*., ARB No. 04-154, ALJ No. 2003-SOX-27 (Sept. 29, 2006), imposed the requirement from ERA case law requiring that the complainant establish that the activity or conduct for which protection is claimed "definitively and specifically" relates to one or more of the laws listed under § 1514A(a)(1).[12] The *Platone* test has been followed in a number of ARB decisions,[13] and deferred to on appeal in several circuit court decisions with neither reflection nor further analysis of the term's origin or correct application. *See, e.g., Allen v. Admin. Rev. Board*, 514 F.3d 468 (5th Cir. 2008). We find that the standard announced in *Platone* has evolved into an inappropriate test and is often applied too strictly. This case is an example.

In *Livingston*, the Fourth Circuit considered the question of whether the complainant had engaged in SOX-protected activity without reference to the "definitively and specifically" standard.[14] Other circuits that have similarly determined whether the complainant had set forth an adequate showing of protected activity without reference to the "definitively and specifically" standard include the Seventh Circuit in

*Harp*, the First Circuit in *Day*, the Eleventh in *Gale v. Dept. of Labor*, 2010 WL 2543138 (11th Cir.,

[Page 19]

June 25, 2010) (unpublished), and the Eighth Circuit in *Pearl v. DST Syst., Inc.*, 2010 WL 27066 (8th Cir. Jan. 7, 2010) (unpublished).

As we indicated above, the critical focus is on whether the employee reported conduct that he or she *reasonably believes* constituted a violation of federal law. "Congress chose statutory language which ensures that æ…³n employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected."' *Van Asdale*, 577 F.3d at 1001 (quoting *Allen*, 514 F.3d at 477).

The issue before the ALJ here was whether Sylvester and Neuschafer provided information to Parexel that they reasonably believed related to one of the violations listed in Section 806, and not whether that information "definitively and specifically" described one or more of those violations. It was therefore error for the ALJ to dismiss the complaints in this case for failure to meet a heightened evidentiary standard espoused in case law but absent from the SOX itself.

### F. The ALJ Erred By Concluding that Violations Asserted by SOX Complainants Must Relate to Fraud Against Shareholders

The ALJ also erred by concluding that the Complainants were not entitled to relief because "[t]here is no allegation in the pleadings that Complainants, notwithstanding their alleged beliefs, expressly referred to fraud, shareholders, securities, statements to the SEC, or SOX in their reports of false reporting of clinical data in violation of applicable drug testing protocols made to other employees and supervisors at Respondent." D. & O. at 11. This constitutes error because a complaint of shareholder or investor fraud is not required to establish SOX-protected activity.

The SOX's legislative history indicates that the Accountability Act was implemented to address not only securities fraud (in the aftermath of financial scandals involving Enron, Worldcom, and Arthur Anderson), but also corporate fraud generally. *See* S. Rep. No. 107-146, at 2 (May 2, 2002) ("This legislation aims to prevent and punish corporate and criminal fraud, protect the victims of such fraud, preserve evidence of such fraud, and hold wrongdoers accountable for their actions.").

Sections 803, 804, and 807 of the Accountability Act address securities fraud specifically. But other sections address infractions that do not involve fraud against shareholders. Section 802 assesses criminal penalties upon persons who alter, destroy, conceal, or falsify records "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C.A. § 1519. And Section 805 instructs the United States Sentencing Commission to review sentencing guidelines to ensure that they include enhancements "for cases . . . in which the solvency or financial security of a substantial number of victims is endangered," and ensure that those enhancements are "sufficient to punish and deter criminal misconduct by corporations." S. Rep. No. 107-146, at 12-13.

[Page 20]

As indicated above, Section 806 prohibits an employer from retaliating against an employee who complains about "any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire, radio, TV fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C.A. § 1514A. Of these six categories, only the last one refers to fraud

against shareholders. Under the rule of the last antecedent, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *U.S. v. Hayes*, 129 S. Ct. 1079, 1086 (2009) (citing *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 157 L.Ed.2d 333 (2003)). The rule "is not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart*, 540 U.S. at 26.

Such indicia are not present in the SOX's employee protection provision. *See, e.g.*, *O'Mahony v. Accenture Ltd.*, 537 F. Supp .2d 506 (S.D.N.Y. 2008). In *O'Mahony,* the court analyzed the SOX and concluded that the phrase "relating to fraud against shareholders" did not apply to all of the categories listed in Section 806:

> The first four provisions are statutes that, as written by Congress, are not limited to types of fraud related to SOX. By listing certain specific fraud statutes to which § 1514A applies, and then separately, as indicated by the disjunctive "or", extending the reach of the whistleblower protection to violations of any provision of federal law relating to fraud against securities shareholders, § 1514A clearly protects an employee against retaliation based upon the whistle-blower's reporting of fraud under any of the enumerated statutes regardless of whether the misconduct relates to "shareholder" fraud.

*Id*. at 517. Other courts have concurred with this conclusion. *See, e.g., Reyna v. Conagra Foods, Inc.*, 506 F. Supp. 2d 1363, 1382-83 (M.D. Ga. 2007) (although the last category clearly identified laws related to shareholder fraud, pursuant to applicable rules of statutory construction, it did not apply to the preceding categories, thus "reporting alleged violations of mail fraud or wire fraud does not have to relate to shareholder fraud in order to be protected activity under the statute."); *accord, Parexel Int'l v. Feliciano*, 2008 WL 5101642 (use of illegally obtained database to solicit business constituted prohibited wire fraud within meaning of SOX provision irrespective of any impact upon investors or shareholders).

In examining the SOX's language, it is clear that a complainant may be afforded protection for complaining about infractions that do not relate to shareholder fraud. On their face, mail fraud, fraud by wire, radio, or television, and bank fraud are not limited to frauds against shareholders. *See, e.g.*, 18 U.S.C.A. § 1344 ("Whoever knowingly

[Page 21]

executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution . . . .").

When an entity engages in mail fraud, wire fraud, or any of the six enumerated categories of violations set forth in Section 806, it does not necessarily engage in immediate shareholder fraud. Instead, the violation may be one which, standing alone, is prohibited by law, and the violation may be merely one step in a process leading to shareholder fraud. Additionally, a reasonable belief about a violation of "any rule or regulation of the Securities and Exchange Commission" could encompass a situation in which the violation, if committed, is completely devoid of any type of fraud. In sum, we conclude that an allegation of shareholder fraud is not a necessary component of protected activity under SOX Section 806.

### G. A SOX Complainant Need Not Establish the Various Elements of Criminal Fraud to Prevail on a Section 806 Retaliation Complaint

The ALJ also held, citing to *Platone*, that "[t]he alleged fraudulent conduct must æ…³t least be of a type that would be adverse to investors' interests' and meet the standards for materiality under the securities laws such that a reasonable shareholder would consider it important in deciding how to vote." D. & O. at 9. We disagree.

Case 4:24-cv-00698-SDJ-BD   Document 29-3   Filed 12/12/24   Page 16 of 41 PageID #: 553

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011) (2011 Decisions)

In *Platone,* the ARB described a violation of Section 806 by referencing a violation of securities laws.[15] After describing the elements of a violation under 10b-5, the Board transitioned into a discussion of the requirements for whistleblower protected activity. In analyzing Platone's claim that 10b-5 had been violated, the ARB commented that Platone's whistleblower complaint failed because, among other things, the complaint did not "approximate any of the basic elements of a claim of securities fraud ?a material misrepresentation (or omission), scienter, a connection with the purchase, or sale of a security, reliance, economic loss and loss causation." *Platone,* slip op. at 21.

Some courts have misinterpreted this analysis as a requirement that SOX complainants must allege the elements of a securities fraud claim to qualify for protection. *See, e.g., Allen,* 514 F.3d at 479-80 (5th Cir. 2008) ("objective reasonableness of the employee's belief is evaluated in part through reference to the elements of a Rule 10b-5 claim," citing *Platone*); *Day,* 555 F.3d at 55-56 ("To have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud. . . . Securities fraud under section 10(b) and Rule 10b-5 requires: ?1) a material misrepresentation or omission; (2) scienter; (3) connection with the purchase

[Page 22]

or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.'") (footnotes omitted); *Van Asdale,* 577 F.3d at 1001 (same, citing *Day*).

With these opinions guiding the discussion, the ARB, courts, and ALJs have merged the elements required to prove a violation of a fraud statute, e.g., materiality and scienter, with the requirements a whistleblower must allege or prove to engage in protected activity.

But requiring a complainant to prove or approximate the specific elements of a securities law violation contradicts the statute's requirement that an employee have a reasonable belief of a violation of the enumerated statutes. We agree that a complainant who blows the whistle on activity that approximates the elements of a fraud will be protected under Section 806. But because a complainant need not prove a violation of the substantive laws, we feel a complainant can have an objectively reasonable belief of a violation of the laws in Section 806, i.e., engage in protected activity under Section 806, even if the complainant fails to allege, prove, or approximate specific elements of fraud, which would be required under a fraud claim against the defrauder directly. In other words, a complainant can engage in protected activity under Section 806 even if he or she fails to allege or prove materiality, scienter, reliance, economic loss, or loss causation.

The purpose of Section 806, and the SOX in general, is to protect and encourage greater disclosure. Section 806 exists not only to expose existing fraud, i.e., conduct satisfying the elements of a fraud claim, but also to prevent potential fraud in its earliest stages. We feel the purposes of the whistleblower protection provision will be thwarted if a complainant must, to engage in protected activity, allege, prove, or approximate that the reported irregularity or misstatement satisfies securities law "materiality" standards, was done intentionally, was relied upon by shareholders, and that shareholders suffered a loss because of the irregularity.

Section 806's plain language contains no requirement that a complainant quantify the effect of the wrongdoing the respondent committed. We acknowledge that the Board has, in prior rulings, held that to be protected, an employee's communication must relate to a "material" violation of any of the laws listed under SOX. But the Fourth Circuit rejected this notion in *Welch.* The court stated that, "[a]lthough many of the laws listed in § 1514A of [SOX] contain materiality requirements, nothing in § 1514A (nor in *Livingston*) indicates that § 1514A contains an *independent* materiality requirement" *Welch,* 536 F.3d at 276 (emphasis added). Accordingly, we do not impose a materiality requirement on the communication

that the complainants contend is protected activity.

A wide range of conduct may be important to regulatory bodies or a reasonable investor that falls short of satisfying the rigorous requirements for securities violations. This is not to say that a triviality element would never be relevant to a complainant's allegations of misconduct by his or her employer. It may well be that a complainant's complaint concerns such a trivial matter that he or she did not engage in protected activity under Section 806. However, that was not the case with the concerns Sylvester and Neuschafer raised.

[Page 23]

## H. The Complainants In This Case Have Provided Sufficient Allegations To Require Further Evidentiary Analysis

In light of the foregoing, we conclude that Sylvester and Neuschafer have provided sufficient information in their complaints to satisfy the statutory and regulatory requirements for pleading that they engaged in SOX-protected activity. There is no dispute that Sylvester and Neuschafer are covered employees, and that Parexel is a covered employer. Both Complainants filed timely complaints. The complaints describe the fraudulent activities they reported to Parexel through a manager or supervisor. Sylvester Complaint ¶¶ 13-16, 31; Neuschafer Complaint ¶¶ 11, 14, 33-34. The complaints also identify specific dates on which they made the disclosures. *Id.*

The Complainants describe how the allegedly fraudulent activities relate to the financial status of the company. *See, e.g.*, Sylvester Complaint ¶¶ 18-19, 22-23, 33-34, 37-38, 47-49; Neuschafer Complaint ¶¶ 22-23, 26-27, 36-38, 40-41, 52-55. They also state that those activities relate to one or more of the six enumerated categories of violations in SOX Section 806, with a specific emphasis on mail and wire fraud. *See, e.g.,* Sylvester Complaint ¶¶ 12, 20, 45; Neuschafer Complaint ¶¶ 10, 25.

Sylvester and Neuschafer also state that Parexel had knowledge of their protected activities, that they were subjected to adverse employment actions, and that those adverse actions were in retaliation for their protected activities. *See, e.g.,* Sylvester Complaint ¶¶ 28-29, 40, 52-55; Neuschafer Complaint ¶¶ 32, 44, 56-57. It is therefore clear that both complainants have far exceeded the pleading requirements established by the laws and regulations governing the SOX.

In sum, we conclude that the Complainants have sufficiently pled that they engaged in SOX-protected activity prior to their discharge. In doing so, they have provided enough information to defeat Parexel's Motions to Dismiss their complaints.

## Conclusion

The ALJ erred by granting Parexel's Motions to Dismiss the complaints filed by Sylvester and Neuschafer. Accordingly, the Board **REVERSES** the ALJ's D. & O. and **REMANDS** the case for further proceedings consistent with this opinion.

## SO ORDERED.

**PAUL M. IGASAKI**
**Chief Administrative Appeals Judge**

[Page 24]

**Judge Corchado, joined by Judge Royce concurring:**

Case 4:24-cv-00698-SDJ-BD    Document 29-3    Filed 12/12/24    Page 18 of 41 PageID #: 555

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011) (2011 Decisions)

I agree entirely with the holding and rationale of the majority decision. But Section E left a troubling question for another day. In Section E of the opinion, we unanimously hold that the ALJ misapplied the "definitive and specific" evidentiary standard and that "the standard announced in *Platone* has evolved into an inappropriate test." Given that this case was dismissed before evidence was considered, we unanimously hold this case warrants further evidentiary considerations, leaving unresolved whether the *Platone* "definitive and specific" standard is an essential element of a SOX whistleblower case.

I write separately because I believe that the terms "definitively" and "specifically" (a) contradict the statutory definition of "protected activity" set forth in 806(a)(1); (b) are not requirements in the causation clause (or the "because" clause) found in 806(a); and (c) are simply evidentiary factors that may be considered in the totality of circumstances on a case-by-case basis at an evidentiary hearing.[16] Consequently, as I explain more fully below, the plain language of the SOX whistleblower statute does not permit dismissals of SOX whistleblower claims pursuant to a "definitive and specific" standard.

As discussed in the majority opinion, the ALJ relied on the ARB's decision in *Platone* in dismissing the complaints, ruling that the allegations failed to demonstrate that the disclosures of alleged misconduct "definitively and specifically implicate the substantive law of SOX and fraud on shareholders."[17] The majority decision holds that the complainants provided more than sufficient information to assert viable SOX complaints that could not be dismissed on the allegations alone. More specifically, the complainants alleged that their disclosures involved the Respondent's core business activity (drug testing) for one or more anchor clients (e.g., AstraZeneca), exposing the company to huge financial risks and inaccurate SEC reporting. While I appreciate that the ALJ is bound to follow Board precedent, the error with the ALJ's ruling is more fundamental than misapplying the *Platone* standard. The fundamental error is that the words "definitively" and "specifically" do not appear in the SOX whistleblower statute; they were added by the Board in *Platone*.

This case coupled with other recent decisions demonstrate that the heightened scrutiny of SOX complaints has reached an alarming point, justifying a review of the *Platone* standard to determine whether it adheres to the SOX whistleblower statute or whether it is being misunderstood. Given that we are charged with the duty of enforcing the SOX whistleblower statute, such a review is appropriate and arguably mandatory.[18]

[Page 25]

Such a review in this case exposes the incompatibility of *Platone*'s "definitive and specific" requirement with the plain language of the SOX whistleblower statute.

Fundamental principles of statutory application.

Any review of *Platone* must begin with the rules of statutory construction that define our scope of authority to interpret statutes and implementing regulations. It is fundamental that statutory construction begins with the statute itself.[19] "If the statute's meaning is plain and unambiguous, there is no need for further inquiry and the plain language of the statute will control its interpretation." *Luckie v. United Parcel,* ARB Nos. 05-026, -054; ALJ No. 2003-STA-039 (ARB June 29, 2007) citing *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002).[20] Furthermore, when we engage in statutory interpretation among the various whistleblower statutes we oversee, we "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 393 (2008). In SOX cases, we should keep in mind that it was written more broadly than other whistleblower statutes. For example, it expressly includes "harass" and "intimidate" in its list of prohibited employment actions, while other whistleblower statutes do not.[21]

In *Platone,* the Board did not expressly demonstrate that it followed the principles of statutory

interpretation when it added the words "definitive" and "specific" to the SOX whistleblower provisions. In that case, the Board described the employee's disclosures to the employee as nothing more than "billing discrepancies." Apparently, the *Platone* Board thought that the disclosure of "billing discrepancies" fell outside of the kind of disclosures the SOX Act intended to protect. To support its decision, it cited Section 806, referred to the preamble of the SOX Act and then simply borrowed a test from another whistleblower law it administers, the ERA whistleblower law. The Board in *Platone* did

[Page 26]

not point to an ambiguous or imprecise word or phrase in the SOX whistleblower statute and then explain how the terms "definitive" and "specifically" appropriately refined the ambiguous language in the SOX statute. As we explain in our majority opinion, the asserted need to create the "definitive and specific" standard in interpreting the ERA arose from an imprecise catch-all provision in the ERA that has no parallel in the SOX whistleblower statute. In reality, the ERA standard is not consistent with the SOX law, and we should refrain from using such a standard without thoroughly explaining how it complies with the plain language of the SOX whistleblower law.

Section 806 Whistleblower Statute

The SOX whistleblower statute describes the essential elements of a SOX claim in Section 806(a). Section 806(a)(1) defines protected whistleblower activity (the "Protected Activity Clause"). In relevant part, the Protected Activity Clause protects those who:

> provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

Section 806(a)(1) prohibits employers from taking unfavorable employment actions "because of" protected activity (the "Causation Clause"). The prohibited unfavorable employment actions expressly include "discharge[ing], demot[ing], suspend[ing], threaten[ing], harass[ing], or in any other manner discriminate[ing]" against an employee. The words, or any variation of the words, "definitively" or "specifically" do not appear in Section 806(a) or 806(a)(1). The question is, then, whether the Protected Activity and Causation Clause have an ambiguity that requires or even permits the Board to add these words to the statute.

806(a)(1)(Protected Activity Clause)

The plain language in the Protected Activity Clause seems clear and actually contradicts the "definitive and specific" standard. The definition of protected activity in Section 806(a)(1) hinges on the reasonable belief of the employee about the employer's conduct, not on the kind of information provided. The question is whether the conduct in question would lead a reasonable person to believe, when standing in the shoes of the complainant, that such conduct constitutes a violation of one or more of the enumerated categories in Section 806(a)(1). Requiring that the information provided must be "definitive and specific" misses the focal point of Section 806(a)(1). In fact, providing information is not a required element of protected activity; an employee can cause information to be provided or "otherwise assist" in an investigation. Presumably, encouraging a co-worker to report what he or she knows about a SOX violation could be

[Page 27]

a protected activity. Also critical in understanding the Protected Activity Clause is recognizing its repeated use of broad words and phrasing, not narrow and strict words like "definitive and specific." The Protected Activity Clause refers to "*any* conduct," "*any* rule or regulation," and "*any* provision of Federal law *relating* to fraud against shareholders." (Emphasis added.) The word "relating" is a broad term, simply meaning to "have some connection to."[22] Consequently, it is not clear how the Board can add either "definitive" or "specific" to the definition of protected activity, not to mention that such words contradict the plain language and broad philosophy found in Section 806(a)(1). Taken together, "definitive" and "specific" is an extremely onerous standard and material alteration of the Protected Activity Clause.

### 806(a)(Causation Clause)

Similarly, the words "definitive" and "specific" do not appear in the Causation Clause in Section 806(a). The Causation Clause is so simple and clear that it leaves no reason to add words to apply it. It simply prohibits an employer from taking an unfavorable employment action against an employee "because" she engaged in protected activity. It is undisputed that most whistleblower complainants must rely on circumstantial evidence to attempt to prove that "protected activity" was at least a cause of the unfavorable employment action in question. Circumstantial evidence may include temporal proximity, evidence of pretext, inconsistent application of policies, shifting explanations and more. There is no particular circumstantial evidence that is required. Consequently, it would be a material change in the whistleblower law to add a requirement to the causation element, such as a requiring that the employee prove that he disclosed information or conduct that was "definitively" and "specifically" related to a SOX violation. There is no question that the clarity of the relevant disclosures could be one of many factors constituting circumstantial evidence of the employer's motivations, evidence that could be presented by the employer or the employee or both. In other words, the amount of clarity in the relevant disclosures arguably will correlate to the employer's ability to persuasively claim ignorance of any allegation of unlawful conduct. In sum, the Causation Clause neither requires nor prohibits the use of evidence related to the clarity of the relevant disclosures of misconduct.

Consequently, given the plain language of Section 806(a) and (a)(1), this Board should refrain from using the "definitive and specific" standard until it explains specifically through a disciplined statutory analysis which part of the SOX whistleblower statute either requires or permits the use of these terms. This explanation should happen as soon as possible given the number of ARB decisions that adhered to *Platone*, repeating the same error of adding words to the plain meaning of the SOX whistleblower statute without explicit justification. Without seeing a sufficient explanation, it is my opinion that the "definitive and specific" standard contradicts the language in the Protected Activity Clause and is not required by the Causation Clause. There is no U.S. Supreme

[Page 28]

Court case addressing the "definitive and specific" test in SOX cases. The controlling circuit court of appeals in this case, the Fourth Circuit, has not issued a decision preventing us from re-examining and changing the holding in *Platone*, as appropriate.[23]

**LUIS A. CORCHADO**
**Administrative Appeals Judge**

**JOANNE ROYCE**
**Administrative Appeals Judge**

**E. Cooper Brown,** *Deputy Chief Administrative Appeals Judge*, **concurring in part and dissenting in**

Case 4:24-cv-00698-SDJ-BD   Document 29-3   Filed 12/12/24   Page 21 of 41 PageID
#: 558

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011)
(2011 Decisions)

**part:**

I concur in the majority's decision with respect to the propriety of the ALJ's dismissal of the instant action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and with respect to the requirements under Sarbanes-Oxley for establishing whistleblower protected activity, although I find myself compelled to write separately regarding interpretation of those requirements. I dissent from the majority's ruling sustaining the applicability of Rule 12(b)(6) of the Federal Rules of Civil Procedure to SOX investigatory complaints filed with OSHA. I first address the reasons for my partial dissent:

I. Neither the federal pleading requirements nor recourse for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) are applicable to SOX complaints

The ALJ in the instant case did not expressly resort to Rule 12(b)(6) of the Federal Rules of Civil Procedure in dismissing the instant case. Nevertheless, the ALJ's dismissal necessarily constituted a Rule 12(b)(6) "merits" determination that Complainants' respective complaints, originally filed with OSHA, failed to state a claim for whistleblower relief under Section 806 of Sarbanes-Oxley. The ALJ conducted a Rule 12(b)(6) analysis pursuant to which he concluded that the allegations of Complainants' investigatory complaints were insufficient to support their respective claims that they engaged in SOX protected whistleblower activity. The majority

[Page 29]

concludes to the contrary, holding that the allegations of Sylvester's and Neuschafer's complaints are sufficient to withstand a Rule 12(b)(6) motion to dismiss. In so ruling, the majority distinguishes SOX investigatory complaints from complaints filed in federal court, rejects the applicability of the pleading standard for federal complaints articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly, supra,* and *Ashcroft v. Iqbal, supra*, and expresses the opinion that Rule 12(b)(6) challenges to the sufficiency of the pleadings in a SOX complaint are "highly disfavored by the SOX regulations and highly impractical under the OALJ rules." The majority nevertheless leaves standing the availability of Rule 12(b)(6) as a procedural mechanism for dismissing Sarbanes-Oxley whistleblower claims, without addressing the fact that the ARB has previously embraced the applicability of *Twombly* and *Iqbal* to whistleblower complaints[24] or indicating what pleading standard is applicable in lieu of the Supreme Court's decisions.

I am of the opinion that neither Fed. R. Civ. P. 12(b)(6) nor federal court pleading requirements are applicable to SOX whistleblower complaints, and that the ALJ's exclusive resort to the allegations of the SOX complaints as the basis for ruling that Complainants did not engage in protected activity was in error. In reaching this conclusion, I am mindful that the dismissal of whistleblower complaints pursuant to Fed. R. Civ. P. 12(b)(6) has been a longstanding practice endorsed by the ARB. However, in no prior case before the Board has the applicability of Fed. R. Civ. P. 12(b)(6) been subjected to challenge and the legal scrutiny to which it has been subjected in the instant case.[25] Moreover, as Justice Souter stated in *Reno v. Bossier Parish School Bd.*, 528 U.S. 320 (2000), the policy respecting precedent in statutory interpretation "does not demand that recognized error be compounded indefinitely." 528 U.S. at 342 (Souter, J., concurring).

[Page 30]

The basis for dismissing a whistleblower complaint pursuant to Fed. R. Civ. P. 12(b)(6) is the last sentence of 29 C.F.R. § 18.1(a),[26] which states: "The Rules of Civil Procedure for the District Courts of the United States shall be applied in any situation *not provided for or controlled by these rules, or by any statute, executive order or regulation*." (emphasis added). However, under subsection 18.1(a) resort is not in the first instance to the Federal Rules of Civil Procedure where the rules of OALJ (29 C.F.R. Part 18)

are silent. The penultimate sentence of subsection 18.1(a) mandates that, "To the extent that these rules may be inconsistent with a *rule of special application* as provided by statute, executive order, or regulation, *the latter is controlling.*" (emphasis added). The rules of special applicability to SOX whistleblower claims are found at 29 C.F.R. Part 1980.

The applicability of Fed. R. Civ. P. Rule 12(b)(6) is premised upon the existence of a complaint filed to commence a civil action in federal court (see Fed. R. Civ. P. Rule 3), which must meet the pleading requirements of Fed. R. Civ. P. Rule 8(a)(2) (or where fraud is alleged, the more stringent pleading requirements of Fed. R. Civ. P. 9(b)). However, under the regulations applicable to SOX whistleblower complaints, there is no comparable pleading. Under the SOX regulations, the only mention of a "complaint" is the complaint filed with OSHA, which constitutes an investigatory complaint intended to enlist the assistance of OSHA in investigating the complainant's claim. *See* 29 C.F.R. § 1980.104. Unlike a complaint filed in federal court, there are no formal pleading requirements for the OSHA complaint, nor does a SOX complaint have to be in any particular form other than the requirement that it be in writing.[27] To assist OSHA in its

[Page 31]

investigation, the SOX complaint only has to set forth the acts and omissions, with pertinent dates, that the complainant believes constitute the SOX violations. *See* 20 C.F.R. § 1980.103(b). Moreover, in subsequently determining whether or not the complainant has established a *prima facie* case warranting investigation, OSHA is not limited to what is stated in the complaint but must also consider any supplemental information provided by the complainant. *See* 29 C.F.R. § 1980.104(b)(1)&(2).[28]

Upon completion of OSHA's investigation and the issuance of findings and a preliminary order, a copy of the original complaint and a copy of the findings and order are filed by OSHA with the Office of Administrative Law Judges (OALJ). *See* 29 C.F.R. § 1980.105(b). This does not, however, initiate an action before OALJ. Instead, a SOX claim before OALJ is initiated upon the filing by one of the parties of objections to OSHA's findings and the party's request for a hearing. *See* 29 C.F.R. § 1980.106(a). This filing, according to the ALJ's rules, constitutes the "complaint" before OALJ. *See* 29 C.F.R. § 18.2(d) ("'æ...• omplaint' means any document initiating an adjudicatory proceeding, whether designated a complaint, appeal or an order for proceeding or otherwise.").

There is thus no "complaint" before an ALJ as that pleading is envisioned under the Federal Rules of Civil Procedure. Consequently, the proceedings before the ALJ, having been initiated by a party's objections and request for hearing, are controlled by the SOX regulations, which require that "[u]pon receipt of an objection and request for hearing" and the prompt assignment of the case to an ALJ, the requested hearing is to "commence expeditiously" following notice to the parties. 29 C.F.R. § 1980.107(b). Unless it is determined by the ALJ that OALJ does not have jurisdiction, the ALJ is required to

[Page 32]

"hear the case on the merits." 29 C.F.R. § 1980.109(a).

The requirement of section 1980.109(a) that "if there otherwise is jurisdiction, the administrative law judge will hear the case on the merits" could be interpreted as mandating that, as long as jurisdiction exists, an ALJ is required to hear the case on the merits even if there might exist a legal or factual basis warranting dismissal without the need for an evidentiary hearing. Obviously, to construe 29 C.F.R. § 1980.109(a) as mandating such a result would create an untenable situation for a presiding ALJ (as well as for the parties). However, such is not the case. As hereafter discussed, construction of the regulations of special applicability to SOX claims (29 C.F.R. Part 1980) in harmony with those governing ALJ

Case 4:24-cv-00698-SDJ-BD    Document 29-3    Filed 12/12/24    Page 23 of 41 PageID #: 560

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011) (2011 Decisions)

proceedings generally (29 C.F.R. Part 18) establishes that the ALJ's authority to summarily dispose of meritless claims prior to formal hearing remains intact notwithstanding the lack of authority to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6).

29 C.F.R. § 1980.107(a) indicates that to the extent proceedings before the ALJ are not covered by Part 1980, the proceedings are to be conducted in accordance with 29 C.F.R. Part 18. Under Part 18, an ALJ retains sufficient authority to dispose of meritless cases. An ALJ has the authority to narrow the issues through pre-hearing statements and pre-hearing conferences, limit discovery, and impose sanctions. Most important, the ALJ has the authority under 29 C.F.R. §§ 18.40 and 18.41 to summarily dismiss a meritless claim that is lacking in either legal or factual support. Thus, the ALJ *sua sponte* pursuant to an order to show cause, or a party pursuant to motion for summary disposition, may dispose of "all or any part" of the pending claim. Under section 18.40 a dismissal can be sought "with or without supporting affidavits." This clearly contemplates both the situation where the issue is the legal efficacy of the claim and the situation where the issue is whether the complainant has the necessary evidence to support his claim.[29] Stated otherwise, if a motion for summary disposition pursuant to section 18.40 raises purely legal issues, the ALJ may rule on the motion as a matter of law. If, on the other hand, a motion seeking summary disposition draws into question factual matters ?raised by way of attached affidavits and evidence submitted in support of the moving party's motion, or raised by the responding party through affidavits and evidence submitted in opposition ?sections 18.40 an 18.41 obligate the ALJ to take the submitted evidence into consideration in ruling upon the motion.

Inasmuch as there is no complaint filed with the Office of Administrative Law Judges in a SOX whistleblower case similar to a complaint filed in federal court, neither the federal court pleading requirements of Fed. R. Civ. P. Rule 8(a)(2) nor recourse for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) are applicable. As noted, this does not

[Page 33]

limit an ALJ's authority to summarily dismiss a SOX whistleblower claim, either as a matter of law or where the claim lacks evidentiary support pursuant to 29 C.F.R. §§ 18.40 and 18.41. Where, however, evidence is presented by a responding party in opposition to a motion for summary disposition, the ALJ is obligated to take that evidence into consideration in ruling upon the motion to dismiss. In the instant case, the ALJ's failure to take the Complainants' proffered evidence into consideration in ruling upon the Respondent's motion to dismiss thus constituted reversible error. While I thus agree with the majority that remand to the ALJ is required in the instant case, I would not remand based upon a determination as to the adequacy of the pleadings in Complainants' complaints. Instead, I would remand in order to permit the ALJ to reconsider Respondent's motion to dismiss as a motion for summary disposition pursuant to 29 C.F.R. § 18.40, should Respondent upon remand so move, after taking into consideration the evidence presented by Complainants in opposition to Respondent's motion.

II. Requirements for establishing SOX protected activity

## A. **A Complainant Need Only Express a "Reasonable Belief" of a Violation to Engage in a SOX-Protected Activity**

Essential to any finding of protected whistleblower activity under Sarbanes-Oxley is the determination that the employee's belief that his employer was engaged in activity in violation of SOX was reasonable. For conduct to be protected under 18 U.S.C.A. § 1514A(a) (Section 806), the plain language of the statute requires that the employee "provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee *reasonably believes* constitutes a violation of" the criminal fraud provisions listed under Section 806, securities regulations, or federal laws relating to shareholder fraud (emphasis added). The Act does not define "reasonable belief," but the legislative

history clearly establishes Congress's intention in adopting this standard. Citing *Passaic Valley Sewerage Comm'rs v. Dep't of Labor*, 992 F.2d 474, 478 (3d Cir. 1993), Senate Report 107-146 (May 6, 2002), which accompanied the adoption of Section 806, provides: "[A] reasonableness test is also provided under the subsection (a)(1), which is intended to impose the normal reasonable person standard used and interpreted in a wide variety of legal contexts."

This is not a demanding standard. As the legislative history of Sarbanes-Oxley further explains: the whistleblower protections of Section 806 were "intended to include all good faith and reasonable reporting of fraud, and [that] there should be no presumption that reporting is otherwise, absent specific evidence."[30] This liberal construction of "protected activity" under Section 806 arises out of recognition of the significant public interest in preventing the channels of information from being dried up by employer intimidation of prospective whistleblowers. Interpreting the Clean Water

[Page 34]

Act's whistleblower protection provision, which mirrors that of other federal environmental, safety, and energy statutes, the Third Circuit in *Passaic Valley* explained:

> The whistle-blower provision was enacted for the broad remedial purpose of shielding employees from retaliatory actions taken against them by management to discourage or to punish employee efforts to bring the corporation into compliance with the Clean Water Act's safety and quality standards. If the regulatory scheme is to effectuate its substantive goals, employees must be free from threats to their job security in retaliation for their good faith assertions of corporate violations of the statute. . . . [A]n employee's non-frivolous complaint should not have to be guaranteed to withstand scrutiny of in-house or external review in order to merit protection under [the CWA] for the obvious reason that such a standard would chill employee initiatives in bringing to light perceived discrepancies in the workings of their agency.

*Passaic Valley*, 992 F.2d at 478, 479. Accordingly, the Third Circuit affirmed the Secretary of Labor's holding "that all good faith intracorporate allegations are fully protected from retaliation under § 507(a)" of the CWA "even though the complaining employee may have been "profoundly misguided or insufficiently informed in his assessment." 992 F.2d at 478, 480.

It is relevant to note that the concept of "reasonable belief" was imported into whistleblower precedent from retaliation law under Title VII of the Civil Rights Act of 1964 long before it was expressly included in statutory whistleblower provisions like Section 806.[31] The Secretary adopted the concept from a number of appellate court decisions which construed the scope of protected activity under the Title VII retaliation clause to include a "reasonable belief test."[32] These opinions reasoned that a literal reading of the statute requiring the conclusive accuracy of allegations would undermine

[Page 35]

Title VII's central purpose of encouraging employees to report discrimination internally and settle complaints informally. The Secretary found this reasoning likewise compelling in connection with whistleblower statutes, recognizing that it would ill serve the remedial purposes of whistleblower statutes to provide protection only when employees could establish definitively the merits of their claims.[33]

The Board has long interpreted whistleblower statutes in a parallel manner.[34] Given that Section 806 is expressly structured on another DOL whistleblower statute,[35] it is clear that in citing *Passaic Valley* Congress intended Section 806 to be no exception. "Reasonable belief" and the scope of protected activity under Section 806 should be construed in the context of the long line of DOL cases interpreting

"reasonable belief" in whistleblower statutes. Under this precedent, whistleblower activity that merely "implicates" or "touches on" the substantive statute is protected.[36] Our precedent further establishes that the accuracy of the whistleblower complaint is not determinative.[37] Nor under our precedent is an actual violation required.[38] Consistent with this line of authority, the ARB has held that an employee's whistleblower communication is protected where based on a reasonable, but mistaken, belief that the conduct of the

[Page 36]

employer at issue constitutes a violation of one of the six enumerated categories of law under Section 806.[39]

The court in *Passaic Valley* focused on the necessity of protecting employees from retaliation for their "good faith" whistleblower assertions. 992 F.2d at 178. Otherwise identified as the "subjective" component of the reasonable belief test, this aspect of the reasonable belief test is satisfied where the employee demonstrates that he actually believed that the conduct he complained of constituted a violation of relevant law. *Harp v. Charter Commc'ns*, 558 F.3d 722, 723 (7th Cir. 2009).

The second element of the "reasonable belief" standard applicable in SOX whistleblower claims, as the majority notes, is the objective component, which is similar to the "objective reasonableness" standard applicable to Title VII retaliation claims. *Allen v. Admin. Review Bd.,* 514 F.3d 468, 477 (5th Cir. 2008). The "objective reasonableness" standard "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Harp,* 558 F.3d at 723. Thus, contrary to the ALJ's opinion in the instant case, "[a] company's explanations given to the employee for the challenged practices are also relevant to the objective reasonableness of an employee's belief" of a violation of one of the Section 806 listed laws. *Day*, 555 F.3d at 58.

The ALJ in the instant case ignored the subjective component of the reasonable belief test completely and misapplied the objective component. The ALJ completely discounted as "irrelevant and immaterial" what Complainants "might have believed or been told by Respondent regarding any relationship of such false [FDA] reporting to SOX. D. & O. at 10. Moreover, the ALJ stated, "Complainants' beliefs in such regard would also not be objectively reasonable." *Id*.

Not only did the ALJ turn the "objective reasonableness" test on its head by dismissing the reasonableness of the Complainants' belief of SOX violations because they "were employed in nursing or related capacities, not as investment analysts at a financial services firm," the ALJ's summary disposition of the "objective reasonableness" of their belief as a matter of law presents further grounds for reversible error. "[O]bjective reasonableness is a mixed question of law and fact" and thus subject to resolution as a matter of law "if the facts cannot support a verdict for the non-moving party."[40] In Title VII retaliation claims, whose "objective reasonableness" standard is similar to the "objective reasonableness" standard applicable in SOX whistleblower claims, "the objective reasonableness of an employee's belief cannot be decided as a matter of law if there is a genuine issue of material fact. If æ††easonable minds could

[Page 37]

disagree on this issue,' the objective reasonableness of an employee's belief should not be decided as a matter of law."[41] In the instant case Complainants, in response to the motion to dismiss, attempted without success to introduce evidence showing that their belief that Respondent's conduct violated SOX was based on their employment training and representations made by company officials.[42] At a minimum, this evidence raises material issues of fact as to the objective reasonableness of Complainants' beliefs of SOX violations. Thus, it was error for the ALJ to refuse to permit the introduction of that evidence and to

Case 4:24-cv-00698-SDJ-BD   Document 29-3   Filed 12/12/24   Page 26 of 41 PageID
#: 563

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011)
(2011 Decisions)

consider it as part of his assessment of the reasonableness of Complainants' belief that Respondent was engaged in conduct violating the laws identified under Section 806 of SOX.

B. Protected activity need not describe an actual violation of the law

The ALJ rejected Complainants' assertion of protected activity in part because their allegations of violation by Parexel of FDA regulations governing the reporting of clinical trial data did not involve an actual violation of the laws under SOX. The ALJ conceded that the FDA violations "could constitute" a violation of the criminal fraud provisions of Section 806, but was of the opinion that "until enforcement action is taken, such allegations are speculative and are deemed insufficiently material to [Parexel's] financial picture to form a basis for securities fraud or to affect shareholders investment decisions." D. & O. at 11, n. 5. This constitutes error because the ALJ required not only a specific reference to fraud, but also required that an act in violation of the laws identified under Section 806 must have already taken place.

The Fourth Circuit's decision in *Livingston v. Wyeth* would seem to suggest that the ALJ was correct to the extent that the majority therein indicated that a complainant

[Page 38]

must have a reasonable belief about an "existing violation" to the extent that it "has happened" or "is in progress." 520 F.3d at 352. While this formulation may be literally correct, the Title VII case law upon which it rests, as the dissent in *Livingston* recognized, supports a broader interpretation. In particular, the complainant does not have to establish that the violation is complete, but "has a claim if he was retaliated against for reporting his reasonable belief that a violation æ†Œas taking shape,' that æ...³ plan was in motion' to violate the law, or that a violation was æ†€ikely to occur.' *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 340-41 (4th Cir. 2006). *See also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005). Consistent with Title VII case law, as long as the complainant's belief relates to "activity that reasonable person could conclude is *or is about to become* a violation," 520 F.3d at 361 (J. Michael, dissenting), as opposed to unsupported conjecture about hypothetical future events, it is protected. *Jordan*, 458 F.3d at 341. *Accord Day,* 555 F.3d at 52 (Section 806 provides protection for complaints to an employer "about specified potential unlawful conduct").

In *Welch v. Chao* the Fourth Circuit squarely rejected any requirement that an employee complain of an *actual* violation of a Section 806 listed law in order to engage in protected activity. 536 F.3d at 277. Such a requirement, the court noted, would not only contradict the text of Section 806,[43] it would conflict with ARB and court recognition that Section 806 "protects an employee's communications based on a reasonable, but mistaken, belief" that the conduct constitutes a violation of one of the listed laws. 536 F.3d at 277 (citing *Halloum v. Intel Corp.*, ARB No. 04-068, ALJ No. 2003-SOX-007 (ARB Jan 31, 2006); *Allen,* 514 F.3d at 477). *See also, Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 1001 (9th Cir. 2009); *Fraser v. Fiduciary Trust Co.*, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006). It is a matter of common sense that in order to be protected under SOX an employee should not have to wait until a violation of one of the listed laws has been accomplished to register a concern. *Harp*, 558 F.3d at 728 (J. Tinder, dissenting). Indeed, as the Ninth Circuit has noted, to hold otherwise, and require an employee "to essentially prove the existence of fraud before suggesting the need for an investigation, would hardly be consistent with Congress's goal of encouraging disclosure." *Van Asdale,* 577 F.3d at 1002.[44]

[Page 39]

C. The ALJ misapplied the "Definitive and Specific" standard

(1) "Definitive and Specific" is inappropriate standard for assessing the adequacy under Section 806 of

the content of an employee's protected communication

In dismissing the complaints of Sylvester and Neuschafer, the ALJ cited and relied upon the "definitively and specifically" standard that was first applied to SOX complaints by the ARB in *Platone v. FLYi,* ARB No. 04-154, ALJ No. 2003-SOX-027 (ARB Sept. 29, 2006). Consistent with *Platone's* requirement that the employee's communication, to be protected, must "definitively and specifically" relate the employer's conduct at issue to any of the listed categories of fraud or securities violations under Section 806, the ALJ held that Complainants' reports to their supervisor of the recording of false clinical data in violation of drug testing protocols did not constitute SOX protected whistleblower activity.

It is understandable that the ALJ embraced the *Platone* test, given that it has been embraced by the ARB in a dozen decisions since it was first articulated.[45] Nevertheless, upon careful re-examination of this standard one is left with the inescapable conclusion that the *Platone* test conflicts with the express language of 18 U.S.C.A. § 1514A(a), which requires only that the employee blow the whistle on conduct that he "reasonably believes" constitutes a violation of the laws listed under the statute. I thus join with the majority in rejecting the continued applicability of *Platone's* requirement that an employee's communication must "definitively and specifically" relate to the listed categories of fraud or securities violations under Section 806 in order to be protected.

Review of the origin of the "definitive and specific" test demonstrates that it was never intended to articulate a legal standard for the requisite particularity of a SOX whistleblower disclosure. The Sixth Circuit initially formulated the "definitively and

[Page 40]

specifically" test in *American Nuclear Res., Inc. v. U.S. Dep't of Labor*, 134 F.3d 1292 (6th Cir. 1998), as an aid in interpreting the broadly worded whistleblower protection provision of the Energy Reorganization Act (ERA) found at 42 U.S.C.A. § 5851(a)(1)(F) (West 2003 & Supp. 2010). Subsection (F) protects employees who assist or participate in "a proceeding . . . or any other action to carry out the purposes of this chapter or the Atomic Energy Act of 1954, as amended."[46] Because the phrase "any other action to carry out the purposes of this chapter" found in subsection (F) is not defined, the Sixth Circuit construed the language as requiring that an employee's actions, to be protected, implicate safety "definitively and specifically."

The Sixth Circuit articulated the "definitively and specifically" requirement for finding protected activity under subsection (F) out of recognition of the ERA's overarching purpose of protecting acts implicating nuclear safety, and in order to distinguish explicit safety complaints, which *would* constitute protected activity, from a general inquiry regarding safety which would not. "Despite this generally broad reading, courts limit the ERA to protect only certain types of acts. To constitute a protected safety report, an employee's acts must implicate safety definitively and specifically."[47] In articulating this standard for bringing an employee's actions within the protection of subsection (F), the court distinguished as not protected under the ERA "general inquiries regarding safety" and "every incidental inquiry or superficial suggestion that somehow, in some way, may possibly implicate a safety concern."[48]

The Administrative Review Board first adopted the "definitive and specific" test from *American Nuclear* in the ERA cases of *Makam v. Public Serv. Elec. & Gas*, ARB No. 99-045, ALJ No. 1998-ERA-022 (Jan. 30, 2001), and *Kester v. Carolina Power & Light Co*., ARB No. 02-007, ALJ No. 2000-ERA-031 (Sept. 30, 2003). Subsequently, the Board in *Platone v. FLYi* plucked the terms from this ERA case law without explanation, and a SOX legal standard was born.[49] While I agree with the wisdom of the "definitive and specific" test for ascertaining protected activity under the ERA whistleblower statute, it is inappropriate to apply such a standard to the content of

[Page 41]

communications by an employee to his or her employer in the context of SOX whistleblower cases. The SOX whistleblower protection provision contains no similarly broad language to that of 42 U.S.C.A. § 5851(a)(1)(F). Instead, 18 U.S.C.A. § 1514A expressly identifies the several laws to which it applies. Thus, importation of the "definitively and specifically" standard, whose sole purpose was as an aid in deriving meaning from ERA subsection (F), is inapposite to the question of the content of an employee's communication or report for which he seeks whistleblower protection under Section 806. Moreover, as previously noted, it conflicts with the express language of Section 806 which prohibits discharge or other forms for retaliation against an employee for providing information regarding conduct that the employee "reasonably believes" constitutes a violation of any of the laws listed under the statute.

(2) To be protected under Section 806, an employee's communication to the employer need only identify the conduct with specificity

To the extent that specificity is required under SOX with respect to a whistleblower's communications to his or her employer, it is as the Fourth Circuit has recognized: the communication "must identify the specific conduct that the employee believes to be illegal." *Welch*, 536 F.3d at 276.[50] This requirement, which has been similarly imposed under other whistleblower protection statutes,[51] is simply a means for ensuring that an employee's communication to his or her employer is not a vague statement of concern or generalized inquiry, but provides sufficient notice to the

[Page 42]

employer that the employee is raising concerns about conduct that the employee reasonably believes violates the laws listed in Section 806. As the Fourth Circuit reasoned:

> This requirement ensures that an employee's communications to his employer are factually specific. An employee need not æ…¶ite a code section he believes was violated' in his communications to his employer, but the employee's communications must identify the specific conduct that the employee believes to be illegal.

*Welch*, 536 F.3d at 276 (citation omitted).[52] With this as the proper focus, the express language of Section 806 requiring but a "reasonable belief" in order for an employee's communications to be protected is not rendered superfluous, and the courts' interpretation of that language as "protect[ing] an employee's communications based on a reasonable, but mistaken, belief" is given meaning.[53]

(3) To establish the objective reasonableness of the complainant's belief that the employer's conduct violated SOX, the complainant must establish that the employer's conduct related to one of the enumerated categories of fraud or securities violations under Section 806

While I am unequivocally of the opinion that *Platone v. FLYi* misapplied the terms "definitively and specifically" as a legal standard under SOX for assessing the adequacy of what a complainant actually communicated to the employer, I do not disavow the several appellate court decisions that have applied the standard to the question of the objective reasonableness of an employee's belief that the conduct of which the employee complains constitutes a violation of the identified laws under Section 806. A number of appellate courts have embraced the "definitively and specifically" standard in SOX cases. However, notwithstanding that they have cited out of deference the ARB's decision in *Platone v. FLYi*, the courts have applied the standard differently. Rather than applying the "definitively and specifically" standard as a measure of the

[Page 43]

Case 4:24-cv-00698-SDJ-BD    Document 29-3    Filed 12/12/24    Page 29 of 41 PageID
#: 566

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011)
(2011 Decisions)

adequacy of the employee's communication to his/her employer, the courts have applied the standard to the question of the objective reasonableness of the employee's belief that the employer's conduct violated any of the laws listed in Section 806.

*Allen v. Admin. Review Bd.*, 514 F.3d 468 (5th Cir. 2008), was the first appellate court decision to apply the "definitively and specifically" requirement to a SOX whistleblower case. In doing so, however, the Fifth Circuit applied the standard to the question of whether the complainant's beliefs of SOX violations were objectively reasonable. To meet the complainant's burden of proof at trial as to the objective reasonableness of the complainant's belief, the complainant was required to show that the employer's conduct related to one of the enumerated categories of fraud or securities violations under Section 806. 514 F. 3d at 477-482.

The Fourth Circuit has followed the lead of the Fifth Circuit in three separate decisions. In *Livingston v. Wyeth*, 520 F.3d 344 (4th Cir. 2008), the Fourth Circuit effectively embraced the "definitively and specifically" test (while not referring to it expressly) in the context of assessing the objective reasonableness of the complainant's belief that his employer was engaged in activity in violation of the laws identified in Section 806. Failing to show that his employer's complained-of conduct involved any of the requisite elements of the fraud Livingston had alleged, the court held that a reasonable person in his position could not have believed that the employer's conduct constituted fraud or a violation of the securities laws, and thus that Livingston's communication whereby he raised his concerns was not protected under SOX. 530 F.3d at 255-356. Similarly, in *Welch,* the court, after finding that the complainant's communications to his employer adequately identified the specific conduct of concern (misclassification in financial statements), concluded that Welch failed to adequately explain how he could have had an objectively reasonable belief that his employer violated any potentially relevant law. 536 F.3d at 278-279. *See also*, *Platone v. U.S. Dep't of Labor*, 548 F.3d 322 (4th Cir. 2008) (to support a finding of protected activity an objectively reasonable belief of a violation of one of the SOX listed laws the complainant's theory upon which the claim of protected activity is based must be substantiated in relation to the listed laws).

In addressing the issue of what constituted an objectively reasonable belief under SOX that the employer's conduct constituted securities fraud, the First Circuit in *Day*, required that the employee "show that his communication to the employer specifically related to one of the laws listed in § 1514A." 555 F.3d at 55. Notwithstanding the specificity of the complainant's communications to her employer identifying the conduct at issue, the court upheld dismissal of the complainant's complaint because she was unable to establish at trial a nexus between employer's conduct and the SOX listed laws sufficient to sustain an objectively reasonable belief that the conduct violated one of the listed laws. 555 F.3d at 56-57.

Consistent with the foregoing, in *Harp v. Charter Commc'ns*, 558 F.3d 722 (7th Cir. 2009), the Seventh Circuit, having found the complainant's report to her employer to have sufficiently identified the conduct of concern, concluded that the facts of the case

[Page 44]

did not support an objectively reasonable basis for believing that the conduct violated any of the laws listed in Section 806. Citing *Day*, the Ninth Circuit in *Van Asdale* similarly evaluated the objective reasonableness of the complainants' beliefs of SOX violations by assessing whether the complainants established at trial a sufficient nexus between the conduct at issue and the complainants' belief that the conduct constituted securities fraud. 577 F.3d at 1001.

Because of its applicability to other whistleblower laws such as the ERA, the term "definitively and specifically" should be discarded completely from SOX lexicon because of the confusion its use under SOX has caused and will continue to cause. Following the ARB's decision in *Platone*, subsequent ARB

decisions reflexively employed the terms "definitively and specifically" axiomatically, with neither reflection nor further analysis of the terms' origin or correct application. However proper the standard's application is under the ERA, its application to SOX complaints has only served to improperly narrow the scope of SOX protected activity.[54]

As previously discussed, Section 806 contains no requirement that the content of a whistleblower's disclosures "definitively and specifically" relate to the SOX identified laws. Its imposition as a standard for evaluating the adequacy of the content of a whistleblower's disclosure, beyond identifying the employer's conduct of concern, renders meaningless the sole statutory requirement for establishing SOX protection, *i.e.* that a complainant provide information, which she "reasonably believes" constitutes a violation of one of the enumerated fraud or securities violations. At the same time, I agree with the appellate courts' requirement that for a complainant's belief of violation to be objectively reasonable, the complainant must establish at trial a basis for concluding that the employer's conduct of concern relates to the laws listed under Section 806 ?bearing in mind that "Congress chose statutory language which ensures that æ...³n employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected.'" *Van Asdale,* 577 F.3d at 1001 (quoting *Allen,* 514 F.3d at 477).

D. Violations asserted by SOX complainants need not relate in all instances to fraud against shareholders

To constitute SOX protected activity, the ALJ both required that Complainants' reports of falsified clinical data reporting in violation of FDA protocols involve fraud, "[f]raud is an integral element of a cause of action under § 806," and that the reports "specifically relate to fraud against shareholders." D. & O. at 9. Both assertions ignore Section 806's more discriminating requirements.

[Page 45]

It is understandable that the ALJ would be of the opinion that Section 806 only protects whistleblowing activity concerning violations related to fraud. Commentary found in *Livingston* suggests the reasonableness of such a conclusion. *See* 520 F.3d at 351 n.1.[55] However, as the First Circuit noted in *Day*, the plain language of Section 806 provides protection to information involving conduct violating specified criminal fraud statutes, violations of SEC rules and regulations, or any provision of federal law relating to fraud against shareholders. While the first and third categories share the common denominator of "fraud," that will not always be the case with respect to claims involving violations of SEC rules and regulations. 555 F.3d at 55. Thus it is that the ARB has sought to distinguish claims involving fraud from those involving securities violations. *See, e.g*., *Neuer,* ARB No. 07-036, slip op. at 5 ("a SOX protected activity must involve an alleged violation of a federal law directly related to fraud *or* securities violations") (emphasis added).

It is also understandable why the ALJ would be of the opinion that Complainants' reports of falsified clinical data would have to specifically relate to fraud against shareholders in order to be protected. ARB precedent has indicated as much. *See, e.g., Platone*, ARB 04-154, slip op. at 14-15 (notwithstanding that the mail and wire fraud statutes listed in Section 806 are not by their terms limited to fraudulent activity affecting shareholders, when violations thereof are charged under SOX the conduct at issue "must at least be of a type that would be adverse to investors' interests"). The problem with this interpretation of the requirements imposed by Section 806 is that it ignores the plain language of the statute, and for that reason has been recently rejected by the Board. *See, Brown v. Lockheed Martin*, ARB No. 10-050, ALJ No. 2008-SOX-049, slip op. at 9 (ARB Feb. 28, 2011).

Section 806 protects an employee against retaliation for providing information regarding "any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire, radio, TV fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and

Exchange Commission, or any provision of Federal law relating to fraud against shareholders." Of these six categories, the first four are not, as codified, limited to fraud against shareholders,[56] and only the last one expressly refers to shareholder fraud. Reading Section 806 to require in all instances that the employer's conduct at issue relate to fraud against shareholders is precisely contrary to the grammatical "rule of the last antecedent," according to which "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or

[Page 46]

phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (citing 2 A N. Singer, Sutherland on Statutory Construction § 47.33, p. 369 (6th rev. ed. 2000) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent")).

The rule "is not an absolute and can assuredly be overcome by other indicia of meaning." *Barnhart*, 540 U.S. at 26. However, as in *O'Mahony v. Accenture Ltd.*, 537 F. Supp .2d 506, 517 (S.D.N.Y. 2008), I can discern no indicia that Congress intended the phrase "relating to fraud against shareholders" to limit all the preceding phrases. I thus agree with the court's analysis in *O'Mahony* (cited by the majority):

> By listing certain specific fraud statutes to which § 1514A applies, and then separately, as indicated by the disjunctive "or", extending the reach of the whistleblower protection to violations of any provision of federal law relating to fraud against securities shareholders, § 1514A clearly protects an employee against retaliation based upon the whistle-blower's reporting of fraud under any of the enumerated statutes regardless of whether the misconduct relates to "shareholder" fraud.

537 F. Supp. 2d at 517.[57]

Congress's purposes in enacting Sarbanes-Oxley support the plain reading of Section 806. Congress enacted the law "[t]o protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws, and for other purposes." Preamble to Sarbanes-Oxley, Pub. L. No. 107-205, 116 Stat. 745 (2002). Included among the other purposes were provisions enhancing criminal penalties for white-collar criminal offenses, requiring reporting by certain attorneys of securities law violations and breaches of fiduciary duties (15 U.S.C. § 7246), prohibiting the destruction of corporate records 18 U.S.C. § 1519), and provisions enhancing financial disclosure

[Page 47]

requirements (15 U.S.C. §§ 78m(k) and 7265). These provisions are not limited to frauds relating to shareholders. The legislative history of Section 806 makes clear that the whistleblower protection provision was adopted in furtherance of the overall purposes and objectives of Sarbanes-Oxley and not merely to address shareholder fraud. *See Johnson v. Siemens*, ARB No. 08-032, ALJ No. 2005-SOX-015, slip op. at 12-14 (ARB Mar. 31, 2011).

In the instant case Complainants assert, in particular, that their reporting of violations of FDA clinical medical testing protocols constituted violations of the mail and wire fraud statutes listed in Section 806. Protecting employees who report violations of the criminal fraud laws listed in Section 806, regardless of whether the misconduct affects shareholders, effectuates the overall purposes of Sarbanes-Oxley. The frauds covered by these laws are serious and include conduct long considered unacceptable by companies even if they may not directly affect shareholders. *See, e.g., Carpenter v. United States*, 484 U.S. 19, 24 (1987); *United States v. Procter & Gamble*, 47 F. Supp. 676, 678 (D. Mass. 1942). As the Solicitor of Labor argues in its amicus brief on behalf of OSHA, protecting employees who report conduct perceived to be in violation of these criminal fraud laws, even if shareholders or investors are not immediately

affected, effectuates Congress's goal in enacting Sarbanes-Oxley "of changing a corporate culture that discourages reporting of fraud, imposes a code of silence and hampers investigations." OSHA Amicus Brief, pp. 20-21.

If Congress had wanted to limit Section 806 to frauds against shareholders, it would have so specified. The fact that it did not, coupled with the broader purposes Congress sought to achieve in passing Sarbanes-Oxley, supports the inescapable conclusion that a complainant need not establish in all instances that a violation of one of the laws listed in Section 806 involve fraud against shareholders or adversely affect investors' interests.

E. A SOX complainant need not establish the various elements of securities fraud

In further support of the conclusion that Complainants failed to engage in SOX protected activity, the ALJ cited the Board's decision in *Platone* as requiring an "accusation of intentional deceit that under SOX would pertain to a matter that is material to or that would impact shareholders or investors." D. & O. at 9. "The alleged fraudulent conduct must "at least be of a type that would be adverse to investors' interests" and meet the standards for materiality under the securities laws such that a reasonable shareholder would consider it important in deciding how to vote." *Id.* Notwithstanding the ARB precedent that has similarly cited to and relied upon *Platone*, upon careful examination of this issue, including review of the appellate court decisions that have addressed the relevance of the elements of securities fraud to protected activity under SOX, I disagree.

In *Platone,* the ARB addressed the requirements for whistleblower protected activity under Section 806 by reference to the elements established by the Supreme Court in *Dura Pharm v. Broudo*, 544 U.S. 336, 341 (2005), necessary in order to prove

[Page 48]

securities fraud.[58] In analyzing Platone's claim of having engaged in protected activity by reporting what she believed were violations by her employer of 18 U.S.C. §§ 1341 and 1343, and SEC Rule 10b-5, the ARB concluded that Platone's whistleblower claim failed because, among other things, the information she provided to her supervisors did not "approximate any of the basic elements of a claim of securities fraud ?a material misrepresentation (or omission), scienter, a connection with the purchase, or sale of a security, reliance, economic loss and loss causation." *Platone*, ARB No. 04-154, slip op. at 21.

*Platone* and subsequent ARB decisions that have relied upon *Platone*[59] have regrettably conflated the elements required to prove a securities fraud violation, *e.g.*, materiality and scienter, with the requirements a whistleblower must establish to prove that he engaged in SOX protected activity.

As previously discussed, an employee only needs a reasonable belief that the employer's conduct of concern violates one of the laws listed in Section 806. The employee does not have to establish an actual violation. Where the employer's conduct at issue is believed by the employee to be in violation of one of the criminal fraud provisions listed in Section 806, it is also sufficient if the employee reasonably believes that the conduct *could* amount to fraud because the criminal laws prohibit schemes or artifices to defraud even if no fraud is actually committed. Determining whether the objective reasonableness of an employee's belief that the employer's conduct constitutes fraud in violation of one of the listed laws may, however, require some consideration of the elements necessary in order to establish an actual violation.

The legal requirements for establishing a violation of Title VII are used to assess the reasonableness of an employee's belief that the employer's conduct violates that Act. *See, e.g., Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-271 (2001). Consistent with Title VII case law, in cases under Sarbanes-Oxley involving an employee's belief that the employer has engaged in fraud or securities law violations

the appellate courts have required that the employee's theory of the employer's violation approximate the basic elements of the fraud or securities violation for purposes of establishing the objective reasonableness of the employee's belief. *See Day*, 555 F.3d at 55 (in a case asserting shareholder fraud by the employer, "the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud); *Van Asdale*, 577 F.3d at 1001 (agreeing with *Day*); *Allen,* 514 F.3d at 479-480 ("objective

[Page 49]

reasonableness of the employee's belief is evaluated in part through reference to the elements of a Rule 10b-5 claim"); *Livingston*, 520 F.3d at 353 (same as *Allen*).

The appellate courts' requirement is to be distinguished from requiring, as the ALJ did in the instant case, that the information provided by an employee to his or her employer articulate or "approximate" the basic elements of a claim of securities fraud. Requiring an employee's theory of the securities violation or fraud to "approximate" the basic elements of the law believed to have been violated is not a test in itself of the adequacy of the employee's report or communication for which the protection of SOX is sought, but simply a tool to determine whether the employee's belief that the employer's conduct constitutes a violation is objectively reasonable. Requiring a complainant to prove or approximate the specific elements of fraud or a securities law violation takes away from Section 806's requirement that an employee have a reasonable belief of a violation of the listed laws. As previously discussed, objective reasonableness "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Allen*, 514 F.3d at 477. *See also Harp*, 558 F.3d at 723; *Welch*, 536 F.3d at 277 n.4. Consequently, whether the complainant's theory of the fraud or securities violation approximates the elements of the law perceived to have been violated by the employer should take these factual circumstances into consideration, and does not require an assessment of each element individually if the circumstances as a whole suggest possible fraud or a possible securities violation, or the need for further investigation. *See Van Asdale*, 577 F.3d at 1001 (concluding that the employees' theory that company A's failure to disclose critical information before merging with company B approximated securities fraud because of the circumstances surrounding the failure to disclose); *id*. at 1003 (employee protected despite acknowledging that she had not reached a conclusion on whether fraud had actually occurred, but saw the need for an investigation).

Because a complainant need not prove a violation of the substantive laws listed in Section 806, a complainant can have an objectively reasonable belief of a violation by an employer of those laws sufficient to conclude that the complainant engaged in protected activity even if the complainant fails to report or communicate to the employer at the time any of the elements of fraud or securities fraud that would be required in order to prove the occurrence of the fraud. Stated otherwise, a complainant will be held to have engaged in protected activity under Section 806 even if he or she fails to communicate to his/her employer facts that would establish that the employer's conduct of concern involved a material misrepresentation (or omission), scienter, a connection to the purchase or sale of a security, reliance, economic loss, or a causal connection between the material misrepresentation and the loss.

It is acknowledged that the ARB has repeatedly articulated a standard for establishing SOX protected activity that requires, within the requirement that the protected activity meet the elements for establishing securities fraud, that an employee's communication must relate to a "material" violation of any of the laws listed under

[Page 50]

SOX.[60] Notwithstanding, in addition to the reasons stated above, I further reject the contention that Section 806 only protects communications relating to material violations of a listed law for the same

Case 4:24-cv-00698-SDJ-BD Document 29-3 Filed 12/12/24 Page 34 of 41 PageID #: 571

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011) (2011 Decisions)

reasons expressed by the Fourth Circuit in *Welch*. "Although many of the laws listed in § 1514A of the Sarbanes-Oxley Act contain materiality requirements,[61] nothing in § 1514A (nor in *Livingston*) indicates that § 1514A contains an *independent* materiality requirement." 536 F.3d at 276 (court's emphasis). "Fraud" within the meaning of the mail fraud, wire fraud, and bank fraud statutes has been construed by the Supreme Court to include a materiality requirement because the Court presumed that Congress intended to incorporate the common law definition of fraud into those statutes. *See Neder v. United States*, 527 U.S. 1, 22-23 (1999). However that presumption does not apply to Section 806 because, as previously discussed, a complainant does not have to establish actual fraud but only a reasonable belief that the employer's conduct could involve fraud.[62]

For the foregoing reasons, I would remand this case to the ALJ for further proceedings consistent with this concurrence and dissent.

### E. COOPER BROWN
### Deputy Chief Administrative Appeals Judge

### [ENDNOTES]

[1] Judge Wayne C. Beyer was a member of Administrative Review Board when the Complainants filed their appeals, but his term had ended when the case was argued and the ensuing en banc deliberations began. Judge Lisa Wilson Edwards joined the Board after the Board held oral argument, and she did not participate in the disposition of this case.

[2] It is unclear from the complaints whether Neuschafer told Sylvester about Smith's infractions or whether she obtained this information independently.

[3] On January 28, 2011, the National Labor Relations Board held that Parexel violated Section 8(a)(1) of the National Labor Relations Act when it discharged Neuschafer from employment on August 10, 2006. *See Parexel Int'l, LLC & Theresa Neuschafer,* Case 5æœ‡A?3245, 356 NLRB No. 82 (Jan. 28, 2011). Because, for purposes of our consideration of the ALJ's granting of Parexel's Motions to Dismiss, we accept as true the facts presented in the complaints, we do not take judicial notice of any facts presented during Neuschafer's NLRB proceedings.

[4] Sylvester's complaint also states that "[t]he conduct by Ms. Sylvester set forth above constituted protected activity under SOX in that she provided to her employer information relating to conduct which she reasonably believed constituted a violation of 18 U.S.C. Sections 1341, 1343, 1344, 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." Sylvester Complaint, ¶ 45.

[5] During the pendency of this appeal, on July 21, 2010, the President signed into law the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act), Pub. L. 111-203, 124 Stat 1376 (2010). Section 929A of the Dodd-Frank Act amended SOX Section 806, but that amendment is not relevant to this case.

[6] 49 U.S.C.A. § 42121; *see* 18 U.S.C.A. § 1514A(b)(2)(C).

[7] For example, in *Robinson v. Overseas Military Sales Corp*., 21 F.3d. 502 (2d Cir. 1994) (cited by the ALJ in this case), the court dismissed an FTCA tort claim for lack of subject matter jurisdiction because the plaintiff had failed to first file his claim administratively, a jurisdictional prerequisite to filing in federal court.

[8] *See* 18 U.S.C.A. § 1514A(b) (authorizing the Secretary of Labor to hear SOX whistleblower complaints), 29 C.F.R. §§ 1980.106, 1980.107 (delegating the Secretary's hearing and adjudication

authority to Department ALJs). *See also*, 69 Fed. Reg. 52104-01 (Aug. 24, 2004) ("Responsibility for receiving and investigating these complaints has been delegated to the Assistant Secretary for OSHA; Secretary's Order 5-2002, 67 Fed. Reg. 65008 (Oct. 22, 2002)).

[9] The Department of Labor expressly rejected such a heightened standard at the complaint stage when it promulgated the SOX's regulations. *See* Department of Labor Rules and Regulations: Procedures for the Handling of Discrimination Complaints under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VII of the Sarbanes-Oxley Act of 2002, 29 C.F.R. Part 1980, 69 Fed. Reg. 52104, 52106 (Aug. 24, 2004) ("OSHA believes that it would be overly restrictive to require a complaint to include detailed analyses when the purpose of the complaint is to trigger an investigation to determine whether evidence of discrimination exists.").

[10] Because this appeal arises under the SOX, our holding that the heightened pleading standards are inapplicable is limited to SOX cases. We do not, at this time, reconsider the application of these pleading requirements to cases arising under other whistleblower statutes over which we have authority to make final agency decisions.

[11] The closest to a "catch-all" provision under Section 1514A is the reference to "any provision of Federal law relating to fraud against shareholders." Nevertheless, this proviso is far more specific and its wording significantly different from the ERA's "catch-all" provision found at 42 U.S.C.A. § 5851(a)(1)(F).

[12] *Platone* incorporated the "definitively and specifically" test from the Board's decision in *Kester v. Carolina Power & Light Co.*, ARB No. 02-007, ALJ No. 2000-ERA-031 (Sept. 30, 2003), an ERA case which adopted the "definitively and specifically" test articulated in *American Nuclear Res., Inc. v. U.S. Dept. of Labor*, 134 F.3d 1292 (6th Cir. 1998).

[13] *See, e.g., Joy v. Robbins & Myers*, ARB No. 08-049, ALJ No. 2007-SOX-074 (ARB Oct. 29, 2009); *Smith v. Hewlett Packard*, ARB No. 06-064, ALJ Nos. 2005-SOX-088 through -092 (ARB Apr. 29, 2008); *Harvey v. Home Depot USA*, ARB No. 04-114, ALJ No. 2004-SOX-020, -036 (ARB June 2, 2006).

[14] The Board is aware of the fact that, in *Livingston*, the Fourth Circuit found that Livingston, an employee of a drug manufacturer, did not engage in SOX-protected activity when he complained that his employer failed to properly implement manufacturing-process training that the FDA mandated. 520 F. 3d at 345-46. But *Livingston* was a case that was heard on the merits, and the infractions Parexel allegedly committed differ from those alleged against the employer in *Livingston*.

[15] *Platone,* ARB No. 04-154, slip op. at 15-16 ("The elements of a cause of action for securities fraud, such as a violation of SEC Rule 10b-5 . . . include a material misrepresentation (or omission), scienter, a connection with the purchase or sale of a security, reliance, economic loss and loss causation ?a causal connection between the material misrepresentation and the loss.").

[16] Nor do the applicable regulations contain statutory language requiring a complainant to articulate a "definitive and specific" violation of law or regulation.

[17] D. &. O. at 8.

[18] *See National Cable & Telecommunications Assoc. v. Brand X Internet Servs.,* 545 U.S. 967, 981 (2005)(fact that agency reviews prior decisions and even changes its position is consistent with its duty to implement statutes placed under its authority and changes to previous interpretations of ambiguities are entitled to *Chevron* deference).

[19] *Johnson v. Siemens*, ARB No.08-032, ALJ No. 2005-SOX-015 (ARB Mar. 31, 2011). *See also Kaiser*

*Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990); Singer & Singer, 2A Statutes and Statutory Construction, § 46:1 (7th Ed.).

[20] *See also, e.g.,* 2A Sutherland on Statutory Construction § 46:4 (N. Singer, 6th ed. 2000) ("A party who asks the court to ignore the plain language of a statute must show that it is manifest that the legislature could not possibly have meant what it said in that language, or the natural reading of the statute would lead to an absurd result.").

[21] *Cf.* 42 U.S.C.A. § 5851 (Thomson/West 2010) (ERA)("discharge any employee or otherwise discriminate against any employee"); 49 U.S.C.A. § 42121 (Thomson/West 2007)(airline industry)(similar to ERA); 42 U.S.C.A. § 6971 (Thomson/West 2003)(solid waste disposal)(similar to ERA).

[22] Webster's Third New International Dictionary, Unabridged (1993).

[23] To date, the Fourth Circuit mentioned the "definitively and specifically" test in only two SOX cases: *Welch v. Chao*, 536 F.3d 269 (4th Cir. 2008) and *Platone v. Dept. of Labor,* 548 F.3d 322, 327 (4th Cir. 2008). In a strange sequence of timing, the Fourth Circuit issued its decision in *Welch* first and adopted the ARB's "definitively and specifically" standard announced in the ARB's *Platone* decision. Then, in later deciding the *Platone* appeal, the Fourth Circuit cautiously explained that it "accorded *Chevron* deference to the ARB's interpretation of § 1514A" when it applied that standard in the *Welch* case. *Platone,* 548 F.3d at 326. In *Platone,* the court again accorded *Chevron* deference and applied the ARB's "definitively and specifically" standard to affirm the ARB. *Id.* at 327. Consequently, the Fourth Circuit's own words demonstrate that those cases did not create independent controlling Fourth Circuit law on the "definitively and specifically" standard.

[24] *See, e.g., Evans v. U.S. Envtl. Prot. Agency*, ARB No. 08-059, ALJ No. 2008-SOX-003 (ARB Apr. 30, 2010); *Neuer v Bessellieu*, ARB No. 07-036, ALJ No. 2006-SOX-132 (ARB Aug. 31, 2009); *Powers v. PACE*, ARB No. 04-111, ALJ No. 2004-AIR-019 (ARB Aug. 31, 2007).

[25] *See, e.g., Evans v. U.S. Envtl. Prot. Agency, supra*; *Neuer v Bessellieu, supra*; *Powers v. PACE, supra*; *High v. Lockheed Martin Energy Sys.,* ARB No. 97-109, ALJ No. 1997-CAA-003 (ARB Nov. 13, 1997); *Tyndall v. U.S. Envtl. Prot. Agency*, ARB No. 96-195, ALJ No. 1993-CAA-06 (ARB June 14, 1996); *Stephenson v. National Aeronautics & Space Admin.*, No. 1994-TSC-005 (Sec'y Aug. 21, 1995). In *Evans, supra*, for example, wherein I wrote separately by way of concurrence, the applicability of Rule 12(b)(6) was not contested. Exclusively at issue was the pleading standard to which the whistleblower complaint filed therein should be subjected, with the majority endorsing the heightened pleading standard of *Twombly* and *Iqbal* while I embraced the standard articulated in *Swierkeiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). For the reasons set forth in this dissent, I confess my failure in *Evans* to recognize the inapplicability of the federal pleading standards and Fed. R. Civ. P. Rule 12(b)(6) to whistleblower investigative complaints initially filed with OSHA.

[26] 29 C.F.R. § 18.1(a) reads in its entirety:

> (a) General application. These rules of practice are generally applicable to adjudicatory proceedings before the Office of Administrative Law Judges, United States Department of Labor. Such proceedings shall be conducted expeditiously and the parties shall make every effort at each stage of a proceeding to avoid delay. To the extent that these rules may be inconsistent with a rule of special application as provided by statute, executive order, or regulation, the latter is controlling. The Rules of Civil Procedure for the District Courts of the United States shall be applied in any situation not provided for or controlled

by these rules, or by any statute, executive order or regulation.

[27] While a SOX complaint filed with OSHA must be in writing, the ARB has recognized oral communications to OSHA as sufficient to constitute a complaint under other whistleblower protection provisions such as the Surface Transportation Assistance Act. *See Klosterman v. Davies*, ARB No. 08-035, ALJ No. 2007-STA-019 (ARB Sept. 30, 2010); *Harrison v. Roadway Express*, ARB No. 00-048, ALJ No. 1999-STA-037 (ARB Dec. 31, 2002).

[28] In rejecting the suggestion made at the time the SOX regulations were adopted that section 1980.103 should require SOX complaints to allege wrongdoing with greater specificity, the Department of Labor stated:

> Complaints filed under the Act must be made in writing, but do not need to be made in any particular form. . . . OSHA believes that it would be overly restrictive to require a complaint to include detailed analyses when the purpose of the complaint is to trigger an investigation to determine whether evidence of discrimination exists. To the extent that SHRM and HRPA are suggesting that a complaint on its face must make a prima facie showing to avoid dismissal, OSHA has consistently believed that supplementation of the complaint by interviews with the complainant may be necessary and is appropriate. Although the Sarbanes-Oxley complainant often is highly educated, not all employees have the sophistication or legal expertise to specifically aver the elements of a prima facie case and/or supply evidence in support thereof.

69 Fed. Reg. 52104 (Aug. 24, 2004).

[29] Thus, for example, section 18.40 provides the ALJ with all the authority necessary to dismiss a claim for lack of subject matter jurisdiction, for failure to state a whistleblower claim under SOX, or for failure to timely file the original complaint with OSHA or timely file a request for hearing before OALJ.

[30] Legislative History of Title VIII of H.R. 2673: The Sarbanes-Oxley Act of 2002, 148 Cong. Rec. S7418-01, S7420 (daily ed. July 26, 2002) (statement of Senator Leahy).

[31] *See, e.g., Oliver v. Hydro-Vac Services, Inc.,* No. 1991-SWD-001, slip op. at 5 (Sec'y Nov. 1, 1995); *Carroll v. Bechtel Power Corp.*, No. 1991-ERA-046, slip op. at 10 (Sec'y Feb. 15, 1995); *Minard v. Nerco Delamar Co.,* No. 1992-SWD-001, slip op. at 10-13 (Sec'y Jan. 25, 1994); *Dartey v.Zack Co. of Chicago*, No. 1982-ERA-002, slip op. at 7-9 (Sec'y Apr. 25,1983).

[32] *See EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981); *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045-46 (7th Cir. 1980); *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978) ("[w]hen an employee reasonably believes that [employment] discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts").

[33] *Minard v. Nerco Delamar Co., supra*, slip op. at 12.

[34] *See, e.g., Goldstein v. Ebasco Constructors, Inc.,* No. 1986-ERA-036, slip op. at 4; (Sec'y Apr. 7, 1992); *Poulos v. Ambassador Fuel Oil Co.*, No. 1986-CAA-001, slip op. at 5-7 (Sec'y Apr. 27, 1987).

[35] 18 U.S.C.A. § 1514A(a) adopts the burden-shifting framework applicable to whistleblower claims brought under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR-21), 49 U.S.C.A. § 42121(b) (Thomson/West 2007).

[36] *See Melendez v. Exxon Chems. Ams.,* ARB No. 96-051, ALJ No. 1993-ERA-006, slip op. at 11 (ARB July 14, 2000) ("[T]he Secretary and this Board have repeatedly held that the raising of employee safety and health complaints, including the filing of complaints under OSHA, constitutes activity protected by the environmental acts when such complaints touch on the concerns for the environment and public health and safety that are addressed by those statutes." (citing *Jones v. EG&G Defense Materials, Inc.,* ARB No. 97-129, ALJ No. 1995-CAA-003, slip op. at 7 (ARB Sept. 29, 1998); *Scerbo v. Consolidated Edison Co. of New York,* No. 1989-CAA-002, slip op. at 4-5 (Sec'y Nov. 13, 1992)). *See also Nathaniel v. Westinghouse Hanford Co., No. 1991-SWD-002, slip op. at 8-9 (Sec'y Feb. 1, 1995); Dodd v. Polsar Latex,* No. 1988-SWD-004 (Sec'y Sept. 22, 1994); *Williams v. TIW Fabrication & Machining, Inc*., No 1988-SWD-03 (Sec'y June 24, 1992).

[37] *See, e.g*., *Oliver v. Hydro-Vac Servs., supra* (reasonable belief may include complaints that are neither factually nor legally accurate); *Guttman v. Passaic Valley*, No. 1985-WPC-002, slip op. at 10 (Sec'y Mar. 13, 1992).

[38] *See* discussion, *infra*, p. 16-17.

[39] *See Halloum v. Intel Corp.,* ARB No. 04-068, ALJ No. 2003-SOX-007, slip op. at 6 (ARB Jan. 31, 2006). *Accord Welch v. Chao*, 536 F.3d 269, 277 (4th Cir. 2008); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 477 (5th Cir. 2008).

[40] *Welch*, 536 F.3d at 278 n.4.

[41] *Allen,* 514 F.3d at 477 (citations omitted). *Accord, Livingston*, 520 F.3d at 361, Michael, J. dissenting ("The issue of objective reasonableness should be decided as a matter of law only when æ†‚o reasonable person could have believed' that the facts amounted to a violation. . . However, if reasonable minds could disagree about whether the employee's belief was objectively reasonable, the issue cannot be decided as a matter of law.").

[42] Complainants' proffered evidence purportedly showed "that Respondent told, and trained its employees to understand, and that Complainants believed, that false recording of clinical studies data was clinical fraud that could lead to imprisonment; that clinical falsification such as that Complainants reported was a Sarbanes-Oxley violation; that accurate recording of clinical data is covered under a section of the Respondent's Code of Business Conduct and Ethics that discusses the Securities and Exchange Commission; that all employees of Respondent are told that Sarbanes-Oxley covers breaches of controls such as clinical study protocols which could affect Respondent's financial statements, because of the prospect of a wide range of penalties for falsification of data and fraud that might be imposed, and thus shareholders' interests, [and that Complainants] followed Respondent's management statements, memoranda, and training as to what constituted protected activity." D. & O. at 6.

[43] Indeed, Section 806 lends itself to no other construction given the nature of the law referenced thereunder. For example, the criminal fraud provisions (18 U.S.C. §§ 1341, 1343, 1344) merely require a scheme to violate those laws rather than a completed violation. *See Neder v. United States*, 527 U.S. 1, 25 (1999). Similarly, 15 U.S.C. § 78j(b) prohibits "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of securities; and 17 C.F.R. 240.10b-5 declares it unlawful "[t]o employ any device, scheme, or artifice to defraud," or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security."

[44] Construing Section 806 of SOX accordingly is consistent with ARB and court authority construing similar whistleblower protection provisions. *See, e.g., Melendez v. Exxon Chems. Ams.,* ARB No. 96-051, ALJ No. 1993-ERA-006 (ARB July 14, 2000); *Crosby v. Hughes Aircraft Co.,* No. 1985-TSC-002 (Sec'y

Case 4:24-cv-00698-SDJ-BD   Document 29-3   Filed 12/12/24   Page 39 of 41 PageID #: 576

ARB No. 07-123 Sylvester v. Parexel International LLC, ARB No. 07-123, ALJ Nos. 2007-SOX-39 and 42 (ARB May 25, 2011) (2011 Decisions)

Aug. 17, 1993).

[45] *See Ryerson v. American Express Financial*, ARB No. 08-064, ALJ No. 2006-SOX-074 (July 30, 2010); *Fredrickson v. Home Depot USA*, ARB No. 07-100, ALJ No. 2007-SOX-013 (May 27, 2010); *Robinson v. Morgan Stanley, et al*., ARB No. 07-070, ALJ No. 2005-SOX-044 (Jan. 10, 2010); *Lewandowski v. Viacom, Inc*., ARB No. 08-026, ALJ No. 2007-SOX-088 (Oct. 30, 2009); *Joy v. Robbins & Myers, Inc*., ARB No. 08-049, ALJ No. 2007-SOX-074 (Oct. 29, 2009); *Jordan v. Sprint Nextel Corp*., ARB No. 06-105, ALJ No. 2006-SOX-041 (Sept. 30, 2009); *Neuer v. Bessellieu & Sapiens Americas*, ARB No. 07-036, ALJ No. 2006-SOX-132 (Aug. 31, 2009); *Godfrey v. Union Pac. R.R. Co*., ARB No. 08-088, ALJ No. 2008-SOX-005 (July 30, 2009); *Giurovici v. Equinix, Inc*., ARB No. 07-027, ALJ No. 2006-SOX-107 (Sept. 30, 2008); *Smith v. Hewlett Packard, et al*., ARB No. 06-064, ALJ No. 05-SOX-88 (Apr. 29, 2008); *Stojicevic v. Arizona-American Water*, ARB No. 05-081, ALJ No. 2004-SOX-073 (Oct. 30, 2007); *Welch v. Cardinal Bankshares Corp*., ARB No. 05-064, ALJ No. 2003-SOX-015 (May 31, 2007).

[46] Also protected under section 5851(a)(1) of the ERA, at subsections (1)(A) through (D), are a number of specific activities, including notifying one's employer of an alleged violation of the ERA or the Atomic Energy Act, refusing to engage in activities prohibited under the AEA, and testifying before Congress regarding any provision of the ERA or the AEA.

[47] *American Nuclear Res.*, 134 F.3d at 1295.

[48] *American Nuclear Res, supra* (citing *Bechtel Construction Co. v. Sec'y of Labor*, 50 F.3d 926, 931 (11th Cir. 1995); *Stone & Webster v. Herman*, 115 F.3d 1568, 1575 (11th Cir. 1997)).

[49] The test appeared to have been first employed in a SOX case in *Fraser v. Fiduciary Trust Co.*, 2005 WL 6328596 (S.D.N.Y. June 25, 2005).

[50] In so holding, the court made clear that "we do not suggest that a whistleblower must identify specific statutory provisions or regulations when complaining of conduct to an employer." *Welch*, 536 F.3d at 279.

[51] In *Bechtel Constr. Co. v. U.S. Dep't of Labor*, 50 F.3d 926 (11th Cir. 1995) (cited with approval in *Welch*, 536 F.3d at 276-277), the Eleventh Circuit distinguished between general inquiries regarding safety violations, which the court held did not constitute protected activity, and "rais[ing] particular, repeated concerns about safety procedures for handling contaminated tools," which the court considered to be protected. To be afforded whistleblower protection under the ERA, the court did not require anything more than that the employer's conduct be specifically identified. 50 F.3d at 931. Similarly, in *Clean Harbors v. Herman*, 146 F.3d 12 (1st Cir. 1998), a STAA case, the court opined that while an employer's due process concern of adequate notice would not necessarily be accomplished if the employee's communiqu?is "too generalized," adequate notice was afforded where the employee's communication was "sufficiently definite to put Clean Harbors on notice that [the employee] was engaging in protected activity." 146 F.3d at 22. As in *Bechtel*, the First Circuit did not require that the employee's communication to his employer identify the law or regulations that the employee believed were being violated in order for the communication to constitute protected activity, finding it sufficient that the employee complained to his supervisors that drums containing toxic materials scheduled for shipment were not properly prepared: specifically that there was "visible waste on three drums, three drums didn't have any poison control labels on them, and two drums had lid rings upside down." *Id.*

[52] *Accord Van Asdale,* 577 F.3d at 997 (employee need not use terms "fraud," "fraud on shareholders," or "stock fraud" as long as employee identifies the employer's conduct of concern); *Harp,* 558 F.3d at 725 ("the critical focus is on whether the employee reported specific conduct that constituted a violation of federal law, not whether the employee correctly identified that law"); *Day*, 555 F.3d at 55 (employee not

required to cite code provision in question or show an actual violation, but general inquiries are not protected).

[53] *See Van Asdale*, 577 F.3d at 1001 ("Congress chose statutory language which ensures that an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected."); *Welch*, 536 F.3d at 277. *See also Halloum v. Intel Corp.*, ARB No. 04-068, ALJ No. 2003-SOX-007 (ARB Jan. 31, 2006).

[54] *See, e.g., Vodopia v. Koninklijke Philips Elecs., N.V.*, 398 Fed. Appx. 659, 2010 WL 4186469 (2d Cir. 2010); *Lewandowski v. Viacom, Inc*., ARB No. 08-026, ALJ No. 2007-SOX-088, slip op at 9 (ARB Oct. 30, 2009); *Neuer,* ARB No. 07-036, slip op. at 5.

[55] Noting that the statement in *Livingston* was dicta, the Fourth Circuit in *Welch* declined to address the question given is irrelevance to the court's disposition in that case. 536 F.3d at 276 n.3.

[56] *See* 18 U.S.C. §§ 1341, 1343 (both applying to "[w]hoever, having devised or intending to devise any scheme or artifice to defraud"); *id.* § 1344 (applying to "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice . . . to defraud a financial institution . . .").

[57] Further persuasive authority is found in the district court's analysis in *Reyna v. Conagra Foods, Inc*., 506 F. Supp. 2d 1363 (M.D. Ga. 2007). Having applied the "rule of last antecedent" to reach the same conclusion reached in *O'Mahony*, the court buttressed its conclusion by applying the supplementary rule of punctuation that "where the modifier is set off from two or more antecedents by a comma, the [rule] teaches that the comma indicates the drafter's intent that the modifier relate to more than the last antecedent." 506 F. Supp. 2d at 1383. The court noted the drafters of Section 806 did not set off "relating to fraud against shareholders" with a comma, but instead "chose to set off from the preceding phrases the entire last phrase, æ...³ny provision of Federal law relating to fraud against shareholders,' with a comma. This indicates the drafters' intent that this entire last phrase stand alone rather than intending for a part of it to be stretched to modify each of the phrases preceding the comma." *Id*. A*ccord Parexel Int'l v. Feliciano*, 2008 WL 5101642 (E.D. Pa., Dec. 3, 2008) (use of illegally obtained database to solicit business constituted prohibited wire fraud within meaning of SOX provision irrespective of any impact upon investors or shareholders).

[58] *Platone,* ARB No. 04-154, slip op. at 15-16 ("The elements of a cause of action for securities fraud, such as a violation of SEC Rule 10b-5,. . . include a material misrepresentation (or omission), scienter, a connection with the purchase or sale of a security, reliance, economic loss and loss causation ?a causal connection between the material misrepresentation and the loss.").

[59] *E.g., Lewandowski v. Viacom, Inc*., ARB No. 08-026, ALJ No. 2007-SOX-088 (ARB Oct. 30, 2009).

[60] "[T]o come under the protection of the SOX, the whistleblower must ordinarily complain about a material misstatement of fact (or omission) about a corporation's financial condition on which an investor would reasonably rely." *Smith v. Hewlett Packard*, ARB No. 06-064, ALJ No. 2005-SOX-088, slip op. at 9 (ARB Apr. 29, 2008). *See also Ryerson v. American Express Financial*, ARB No. 08-064, ALJ No. 2006-SOX-074 (July 30, 2010); *Fredrickson v. Home Depot USA*, ARB No. 07-100, ALJ No. 2007-SOX-013 (May 27, 2010); *Robinson v. Morgan Stanley, et al*., ARB No. 07-070, ALJ No. 2005-SOX-044 (Jan. 10, 2010); *Lewandowski v. Viacom, Inc*., ARB No. 08-026, ALJ No. 2007-SOX-088 (Oct. 30, 2009); *Joy v. Robbins & Myers, Inc*., ARB No. 08-049, ALJ No. 2007-SOX-074 (Oct. 29, 2009); *Godfrey v. Union Pac. R.R. Co*., ARB No. 08-088, ALJ No. 2008-SOX-005 (July 30, 2009); *Giurovici v. Equinix, Inc*., ARB No. 07-027, ALJ No. 2006-SOX-107 (Sept. 30, 2008).

[61] The court noted, in particular, its previous recognition in *Livingston* that a statement or omission must

concern a material fact to violate Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5. *Welch*, 536 F.3d 269 (citing *Livingston*, 520 F.3d at 355).

[62] Similar to the relevance of the elements of fraud or a securities law violation in establishing the objective reasonableness of a complainant's belief that his employer has engaged in a violation of one of the laws listed in Section 806, materiality may also be relevant in assessing the reasonableness of a complainant's belief under the criminal fraud provisions and certain securities law.