# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| *In the Matter of:* | § | Civil Action No. 4:24-cv-00698-SDJ-BD |
| | § | |
| DILIP JANA, | § | |
|     *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| WALMART, Inc, | § | |
|     *Defendant* | § | |
| | § | |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to the Federal Rules of Civil Procedure Rule 33, and the Local Rules for the Eastern District of Texas Sherman Division, ***pro Se*** Plaintiff, Dr. Dilip Jana, propounds the following Interrogatories to Defendant, Walmart, Inc. to be answered under oath no later than thirty (30) calendar days after receipt of this document, to the undersigned at 800 Fairlawn St, Allen, TX, 75002 or by EMail: *janadilip@gmail.com*.

### I.   INSTRUCTIONS

A.   Each Interrogatory is to be answered fully on the basis of information which is in your possession.

B.   In each of your answers to these Interrogatories, you are requested to provide not only such information as is in your possession, but also information as is reasonably available. In the event that you are able to provide only part of the information called for by any particular Interrogatory, please provide all the information you are able to provide and state the reason for your inability to provide the remainder.

C.   If you object to or otherwise decline to answer any portion of an Interrogatory, please provide all information called for by that portion of the Interrogatory to which you do not object or to which you do not decline to answer. For those portions of an Interrogatory to which you object or to which you do not decline to answer, state the reason for such objection or declination.

D.  Every Interrogatory herein shall be deemed a continuing interrogatory and information in addition to or in any way inconsistent with your initial answer to such Interrogatory.

E.  If any of the following Interrogatories can be answered fully and completely simply by referring to an exhibit number, page, and paragraph of the investigative file compiled by Defendant and furnished to the Plaintiff by the Defendant in connection with this administrative complaint of discrimination, such references, if adequately identified to inform the Plaintiff as to your response will serve as a satisfactory response to such Interrogatory.

## II.  DEFINITIONS

A. "Plaintiff" means Dr. Dilip Jana

B. "You," "your," or "yourself," means Walmart Inc. the Defendant in this case and any and all of its agents, representatives, employees, servants, vendors, consultants, contractors, subcontractors, investigators, attorneys, and any other persons or entities acting or purporting to act on behalf of the Defendant.

C. "Person", "persons," "people", and "individual" means any natural person, together with all federal, state, county, municipal and other government units, agencies or public bodies, as well as firms, companies, corporations, partnerships, proprietorships, joint ventures, organizations, groups of natural persons or other associations or entities separately identifiable whether or not such associations or entities have a separate legal existence in their own right.

D. "Document," "documents," and "writing" means all records, EMails, papers, and books, transcriptions, pictures, drawings or diagrams or every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements or conversations by whatever means made, whether in your actual or constructive possession or under your control or not, relating to or pertaining to or in any way to the subject matters in connection which it is used and includes originals, all file copies, all other copies, no matter how prepared and all drafts prepared in connection with such writing, whether used or not, including by way of illustration and not by way of limitation, the following; books; records; reports; contracts; agreements; expense accounts; canceled checks; catalogues; price lists; video, audio and other electronic recordings; memoranda (including written memoranda of telephone conversations, other conversations, discussions, agreements, acts and activities); minutes; diaries; calendars; desk pads; scrapbooks; notes; notebooks; correspondence; drafts; bulletins; electronic mail; facsimiles; circulars; forms; pamphlets; notice; statements; journals; postcards; letters; telegrams; publications; inter- and intra- office communications; photostats; photographs; microfilm; maps; drawings; diagrams; sketches; analyses; electromagnetic records; transcripts; and any other documents within defendant's possession, custody or control from which information can be obtained or translated, if necessary, by detection devices into reasonably usable form, i.e. typed in English prose.

E. "Communication" or "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letters

correspondence, notes telegrams, facsimiles, electronic mail, memoranda, or other forms of communications, including but not limited to both oral and written communications.

F. "Produce" and "provide" mean to provide either a legible true copy of the original or any document and/or communication.

G. "Relate to," "relating to," "concerning," "pertain," and "pertaining to," mean consisting of, referring to, reflecting or arising out of, evidencing or in any way legally, logically, or factually connected with the matter discussed, directly or indirectly.

H. "Identify," "identifying," and "identification" when referring to a person mean to provide an identification sufficient t notice a deposition of such person and to serve such person with process to require his or her attendance at a place of examination and shall include, without limitation, his or her full name, present or last known address, present or last known business affiliation, home and business telephone number, title or occupation, each of his or her positions during the applicable period of time covered by any answer referring to such person and relationship, if any, to Walmart, Inc.

"Identify," "identifying," and "identification" when used in reference to a writing or document mean to give a sufficient characterization of such writing or document to properly identify it in a request to produce and shall include, without limitation, the following information with respect to teach such document:
    1. The date appearing on such document, and if it has no date, the answer shall so state and shall give the date or approximate date such document was prepared;
    2. The identity or descriptive code number, file number, title or label of such document;
    3. The general nature and description of such document, and if it was not signed, the answer shall so state and shall give the name of the person or persons who prepared it;
    4. The names of the person(s) to whom such document was addressed and the name of each person other than such addressee to whom such document or copies of it, were given or sent;
    5. The name(s) of the person(s) having present possession, custody, or control of such document(s);

In answering these interrogatories, the Defendant is requested to furnish not only such information as is available to the Defendant but also such information as is known to any of the Defendant's agents, representatives, employees, servants, consultants, contractors, vendors, subcontractors, investigators, attorneys, and any other person or entity acting or purporting to act on behalf of Defendant.

In any matter responsive to any of the interrogatories the Defendant shall set forth completely the grounds for the asserted privilege, along with copies of the Privacy Act provisions or other written materials upon which such assertion is made.

The Defendant shall identify as to each privileged communication or document:
        1. its date;

      2. its author(s);
      3. the business title or position of its author(s);
      4. its recipient(s);
      5. the business title or position of its recipient(s);
      6. its number of pages;
      7. its stated subject matter;
      8. the legal basis upon which the Defendant claims privilege;
      9. the specific portion of the interrogatory or document to which the communication or document is responsive.

Documents are to be labeled to indicate the interrogatory to which they respond. In order to simplify the issues and resolve as many matters of fact as possible before hearing, if, following a reasonable and thorough investigation using due diligence, you are unable to answer any interrogatory, or any part thereof, in full, because sufficient information is not available to you, answer the interrogatory to the maximum extent possible, including any knowledge or belief you have concerning the unanswered portion thereof and the facts upon which such knowledge or belief is based. In addition, state what you did to locate the missing information and why that information is not available to you.

When an exact answer to an interrogatory is not known, state the best estimate available, state that it is an estimate, and state the basis for such an estimate.

If documents once in your possession or under your control are requested or are the subject of an interrogatory, and such documents are no longer in your possession or under your control, state when such documents were most recently in your possession or under your control, and what disposition was made of them, including identification of the person now in possession of or exercising control over such documents. If the documents were destroyed, state when and where they were destroyed, and identify the person or persons who directed their destruction.

All of the following interrogatories shall be continuing in nature until the date of the hearing, and you must supplement your answers as additional information becomes known or available to you.

All information responsive to this request that is relevant to this case, proportional to the needs of the case and is not privileged and that is in your possession, custody, or control is to be produced.

# III.     INTERROGATORIES DEMANDED

1.     Identify all persons answering or supplying information used in answering these Interrogatories. Please be specific to each individual's contribution to each of the answers of these Interrogatories.

2. This interrogatory is related to EXHIBIT 1 (Complaint, Dkt 13, PageID#:298) and EXHIBIT 2 (Complaint, Dkt 13, PageID#:299) of the Complaint (Dkt 13) and here is the context.

Complaint ¶191 claimed

> "Walmart and its attorney's modified/altered evidence and presented the modified documents to Federal Agencies; makes it a crime…Upon close inspection, one can find that EXHIBIT 2 is an altered version of EXHIBIT 1 which appears to be for the purpose of committing fraud, thus making it a crime under Federal Laws."

On June 14, 2024, Defendant in it's Answer to the Plaintiff's Complaint to Administrative Law Judge at the Department of Labor said,

> "Walmart provided a redacted version in its original response out of an abundance of caution. We have reassessed the document and determined that it was originally marked for privilege in good faith error. We are attaching the **unredacted version** herein as an Exhibit and intend on providing the attachments subject to a protective order" (emphasis added)

On December 19, 2024, Defendant in it's Brief to this Court (Dkt 30, Page 11, PageID 590) claimed,
> "Plaintiff again returns to his theory that Walmart committed criminal fraud in the OSHA proceedings below by altering a document. Walmart hesitates to dignify this conspiracy theory with another response and instead refers the Court to Walmart's Reply in Support of Motion to Stay Discovery, Dkt. No. 23, which explains that the "altered document" was a mere unredacted version of a document already produced. Relatedly, Plaintiff argues that the Motion should be denied because Walmart has unclean hands from "altering evidence." Response ¶85. But as stated above, **Walmart did not "alter" evidence**—it produced an unredacted version of a document" (emphasis added)

Do you still maintaintain that EXHIBIT 2 (Complaint, Dkt 13, PageID#:299) is exactly the same unaltered document but just "**unredacted version" of** EXHIBIT 1 (Complaint, Dkt 13, PageID#:298)?

Please answer YES/NO.

3. If your answer to interrogatory 2 is YES, please answer following questions:
   - EXHIBIT 1 had an attachment "**Termination recommend…msg**" which is clearly visible, why EXHIBIT 2 does not have "**Termination recommend…msg**"?
   - Why are the sent dates of EXHIBIT 1 (Wednesday, October 4,2023 11:07:31 PM) and EXHIBIT 2 (Wednesday, October 4, 2023 6:08 PM) different?
   - Why is there 1 at the bottom of EXHIBIT 2 while there is no 1 in EXHIBIT 1?

4. If your answer to interrogatory 2 is NO, please answer following questions:
   - Did Defendant alter EXHIBIT 1?
   - Who and when was EXHIBIT 1 altered?
   - What's in the altered content
   - What was the purpose of the alternation?

5. Defendant's Reply in Support of Motion to Dismiss (Dkt 30, page #10) states:
   "Plaintiff's apparent inability to comprehend that his continual questioning of the competency of his supervisors would result in an adverse employment action"

Plaintiff requests that the Defendant supply the following in support of this language and assertion *during Plaintiff's employment at Walmart prior to the termination decision*:
   a) What constitutes a 'continual' questioning?
   b) How many times of this are alleged to have occurred?
   c) Please provide events with dates, locations, persons involved, context and detailed description of the event  Plaintiff's "continual questioning of the competency of his supervisors" prior to 10-19-2023.
   d) Do you agree that use of the word 'continual' is hyperbole and grossly misleading. If no, explain why.

6. Plaintiff's Complaint states that SOX (shareholder fraud), CAARA (Antitrust fraud), and FCPA violation whistleblower activities were related to Ridhi Mehra's alleged wrongdoing.  Ridhi Mehra's tenor of 12 years at Walmart ended within a few months after Plaintiff's termination and during pendency of this case with Ridhi Mehra as the main witness. Walmart terminated the employment of their main witness of Dr. Jana's termination. In one of its Briefs to this Court, Walmart stated they terminated Mrs. Mehra because of "mismanagement". Please answer following questions:
   (a) What type of mismanagement specifically led Mrs. Mehra's termination; please explain in detail.
   (b) Does it refer to mismanagement of money, personnel, corruption or something else?
   (c) When did this mismanagement occur? How did Walmart find this mismanagement?
   (d) Is this mismanagement related to Dr. Jana's case or lawsuit? Please explain.

7.     State and describe in detail all evidence including documents, affidavits and/or statements which you have not submitted to Plaintiff upon which you intend to rely, or submit at the hearing.

8.     Please provide a list of each and every document with detailed description with dates,

projects, meetings etc which you are using to support your claims that termination was because of insubordination and performance.

9.     Please describe detailed inputs from Adrian Milbourne, Ridhi Mehra, Allie Hazelwood, Greg Cathy, Shawn Cohen, Wendy Bowman, Monica Hall, Lori Chumbler, Jelahan Stewart for Plaintiff's termination recommendation.

10.    Walmart's position statement submitted to OSHA on or around Feb 21, 2024 had, "Despite repeated efforts by his leadership to help Jana find a path to success, Jana refused to do so"

(i) Please describe Dr. Jana's leadership's repeated efforts with date, projects and brief description of what efforts the leadership made to help Dr. Jana get success.

(ii) Please provide cases with dates and projects where Dr. Jana "refused to do so".

(iii) Please state the dates with appropriate project details when management warned Dr. Jana about his refusal to do the task.

11.    (i) Describe the roles and responsibilities of Dr. Jana (Director of Data Science) and Kamil Bay (Director of Analytics) when Ridhi Mehra and Adrian Milbourne set up the new team by hiring these two Directors on or around January-April 2023.

(ii) Please list in detail all reasons that Kamil Bay was hired as a Director of Analytics, not as Director of Data Science as of April 8, 2023.

(iii) Please list in detail all reasons that Dr. Jana was hired as a Director of Data Science, not as Director of Analytics as of April 8, 2023.

(iv)  State any changes of Roles and Responsibilities of Dr. Jana (Director of Data Science) and Kamil Bay (Director of Analytics) that occurred after August 8, 2023 and before October 4, 2023 and the reason for that change.

12.    Please list all positions/Designations held by Kamil Bay with dates since Kamil Bay joined Walmart until October 19, 2024.

13.    Walmart's position statement submitted to OSHA on or around Feb 21, 2024 had, "Apart from belittling and insulting his supervisor by indicating that Milbourne does not understand "simple English," Jana provides no solutions or proposals - his expectation is that Milbourne, his supervisor, "provide []... all the answers..This behavior was emblematic of Jana's overall performance"

While disagreeing with the assertion that Dr. Jana somehow belittled Milbourne, how does that affect Dr. Jana's quality of work or eliminate the need for data and answers required to complete the task? The answers (solutions or proposals) Dr. Jana provided were to repeatedly ask for relevant parties to provide the needed data and information required for the work.

14.     (i) Please state how many 1:1 meetings or Quarterly Touch Base meetings were scheduled between Ridhi Mehra and Dr. Jana between Aug 8, 2023 and October 19, 2023 (by Ridhi Mehra's secretary Laura Tedrik) and how many times those meetings were either rescheduled/never met or canceled?

(ii) Please state how many 1:1 meetings or Quarterly Touch Base meetings were scheduled between Ridhi Mehra and Dr. Jana between April 8, 2023 and August 8, 2023 (by Ridhi Mehra's secretary Laura Tedrik) and how many times those meetings were either rescheduled/never met or canceled?

15.     Please list any adverse actions (including but not limited to disciplinary action, termination etc) against Kamil Bay, Adrian Milbourne and Ridhi Mehra between August 8, 2023 and March 28, 2025 taken by Walmart in connection with this lawsuit.

16.     Please list any promotions or changes in roles and responsibilities (including but not limited to Changing from Director of Analytics to Director of Data Science) for Kamil Bay, Adrian Milbourne and Ridhi Mehra between August 8, 2023 and May 30, 2024 by Walmart and % of changes in compensation because of the promotions.

17.     (i) Please list all competing vendors for the "Defect Engine" "Request for Proposal" on or around January-April 2023.

(ii) Please describe the vendor evaluation criteria to select the finalist from all competing vendors.

(iii) Please list initial BID amounts (in dollars) from all competing vendors during the vendor selection process.

18.     (i) Please state whether you agree or disagree with the following statements/FACTS:

On or around <u>March 28, 2023</u> Infogain presented their proposal to win the bid which clearly stated:

" Our Day One MVP Team: We are ready to hit the ground running" with "OnSite" following people:

Asif Khan (Project Manager)
Sudeep Haldar (Subject Matter Expert)
Abdurrehman Malekji (AI Tech Lead)
Shahid Mohammed (Account Manager)

and proposed a BID of $180,000.

On <u>Tuesday, April 11, 2023</u> Shahid A. Mohammed of Infogain wrote to Kamil Bay:
"On Attached is the costing and team structure slide that we presented, this includes the cost for 13 weeks of MVP phase which includes staffing cost, laptops to Infogain team, travel cost for onsite team during initial phase to be in Bentonville. The resource headcount provided is for 100% capacity for all resources mentioned in the Slide 2 except for the onsite SME (Sudeep Haldar) who will be utilized partially on need basis"

On <u>Tuesday, April 11, 2023</u>, Kamil Bay responded to Shahid A. Mohammed of Infogain, "I'm somewhat confused. The RFP I got shows 180. Is the 180 POC, and 270 MVP? Is there a typo?"

On Tuesday, April 11, 2023  Kamil Bay informed Adrian Milbourne, Ridhi Mehra and Dr. Jana, "Infogain cost is $270k. Below is the explanation why the RFP says $180K, however if we want "onsite", it will be $270K."

The Initial SoW had a clause, "Total fees under this SOW must not exceed $189, 520. Any fees exceeding $189, 520 must be pre-approved in writing by Walmart in the form of a Project Change request. The cost includes Travel & Logistics charges."

New BID amount of $270,000 happened before the start of the POC project.

Please state if you agree or disagree with the above facts/statements. If you disagree, please explain and provide details.

    (ii) Please provide dates of Infogain's staff's presence at Bentonville, AR during the POC (sometimes referred to as MVP) of the Defect Engine.

> Asif Khan (Project Manager)
> Sudeep Haldar (Subject Matter Expert)
> Abdurrehman Malekji (AI Tech Lead)
> Shahid Mohammed (Account Manager)

19.    (i) Please state the initial duration (tenure of the POC[1]) and total fees of POC for "Defect Engine" as signed between Walmart and Infogain/Absolute Data Technologies, Inc on or around April-June 2023.

    (ii) Please state the tentative start date and the end date of POC as signed in the Master Service Agreement between Walmart and Infogain/Absolute Data Technologies, Inc on or around April-June 2023.

---

[1] POC - Proof of Concept

**PLAINTIFF'S FIRST SET OF INTERROGATORIES**    Page **9** of 11
*Jana v Walmart Inc*

    (iii) Please state the final END date and Total amounts paid (in dollars) to Infogain by the end of the POC

20. Please list dates, payment amounts (with dates) for all SOWs (Statement of Work) signed between Walmart and Infogain/Absolute Data Technologies, Inc ("Consultant"), "Product Change Request" and revenue change due to "Defect Engine" POC project during April - December 2023

21. (i) Adrian Milbourne conducted a survey for Infogain on or around the month of August, 2023 in Walmart's Feedbackally (Walmart's internal feedback website) before extending Infogain's contract where team members provided inputs about their experience working with Infogain and Infogain's performance. Adrian Milbourne never shared that document to anybody despite repeated requests. Adrian Milbourne, however, read those feedbacks in a closed door meeting with Dr. Jana and Kamil Bay during his visit to Dallas office on or around August 25, 2023.

Please write in the exact response's associates provided for that feedback.

    (ii) Please state your opinion about Infogain's performance during the POC. Please state who provided this information to you.

    (iii) Please state whether Infogain completed their SoW tasks within the first 8 weeks (extended to 13 weeks) successfully?

    (iv) Plaintiff was the only Data Science Director and the majority of the work Infogain was doing was related to Data Science. Plaintiff declined to approve Infogain's work twice, one in the 3rd week of Aug 2023 and another one in the 4th week of Sept, 2023 citing Infogain's poor performance.

> Did Adrian Milbourne or Ridhi Mehra issue "rejection notice" to Infogain during the "Acceptance Period" of the POC deliverables (3rd & 4th week of August 2023, 3rd & 4th week of September, 2023) before extending POC contracts to Infogain for September 2023 and October 2023 and who approved Infogain's Data Science Related results during the POC ?

22. (i) Do you agree that none of Walmart associates in Ridhi Mehra's organization saw NAVIK software during the POC, Infogain could not produce NAVIK software even after repeated requests by Walmart Associates?

(ii) If you disagree with the previous question, please state the name/names of Walmart associates in Ridhi Mehra's organization who used NAVIK software provided by Infogain as promised during the vendor selection process in March-April 2023 and Statement of Work (SoW) on or around April-June 2023.

(iii) Please state whether you agree or disagree with the following statement below. (Complaint Dkt 13, ¶¶ 47, 48)

"On April 11, 2023 Infogain won the POC contract, which unfairly eliminated very competent US based vendors like Deloitte/Google…This is Antitrust procurement fraud with unlawful manipulation of a procurement process to obtain an unfair advantage during the procurement process, after eliminating the most competent vendors like Google/Deloitte who participated in the bidding process."

If you disagree, please explain the reason why you disagree.

23. (a) Please state whether you agree or disagree with the following statement below. Please explain if you disagree.
Despite Ridhi Mehra, Adrian Milbourne and Kamil Bay knew that Infogain did not provide NAVIK software during the POC which Infogain promised during the vendor selection process and received extension multiple times (8 weeks POC ended in more than 20+ weeks), thereby, Ridhi Mehra, Adrian Milbourne and Kamil Bay probably committed crimes.

b) If you agree on previous question Please state you agree or disagree that Walmart violated its own Code of Conduct[2] (see below) and misled shareholders

- "We are honest, fair, and objective..We speak up about concerns and comply with all laws and our policies."
- "..a culture of integrity guides all our decisions. We are dedicated to doing business the right way. Our Code reflects who we are as a company and shows how we bring our culture of integrity to life in our work every day. Integrity builds trust"

24. Please state the educational qualifications and any training related to the Data Science field of Adrian Milbourne, Ridhi Mehra and Kamil Bay.

Dated: March 28, 2025

Respectfully Submitted,

*Dilip Kumar Jana*
DILIP JANA, Plaintiff
Pro Se
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002

---

[2] https://www.walmartethics.com/content/walmartethics/en_us/code-of-conduct.html