

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

APR 1 1 2025

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

| | | |
|---|---|---|
| DILIP JANA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00698-SDJ-BD |
| | § | |
| WALMART INC., | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RULE 26(f) CONFERENCE REPORT**

**TO HONORABLE BILL DAVIS**

Plaintiff Dilip Jana ("Plaintiff") files this Rule 26(f) Conference Report pursuant to the Court's Order Governing Proceedings [ECF No. 50] and the Federal Rules of Civil Procedure. Defendant and Plaintiff had Rule 26f Conference on March 24, 2025 and they collaborated to draft this Conference Report until Plaintiff challenged Defendant's misrepresentation of facts of the meeting in this draft and Defendant's Motion for Protective Order (**EXHIBIT C**). Plaintiff, hereby, submits Rule 26(f) Conference Report while keeping Defendant's agreed-upon materials.

1. **Brief factual and legal synopsis of the case.**

*Plaintiff's synopsis:*

Plaintiff brings this action to remedy whistleblower retaliation for his protected activities under Criminal Antitrust Anti-Retaliation Act ("CAARA"), 15 U.S.C. §7a-3 and the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A (to protect employees in publicly traded companies against retaliation in fraud cases), seeking redress for Defendant's retaliatory employment practices. Plaintiff engaged in protected whistleblower activities under SOX and CAARA, Walmart knew of

plaintiff's protected activities and Walmart investigated based on Plaintiff's complaint, then plaintiff suffered an adverse personnel action and plaintiffs protected activity was a contributing factor for adverse personnel action against him. This whistleblower case under statute CAARA is the first Antitrust Whistleblower protection claim in the United States in the US Federal District Court, thanks to President Donald Trump who made it as a law on December 23, 2020 which prohibits employers from retaliating against certain individuals who report criminal antitrust violations. Plaintiff has properly pleaded claims for COUNT ONE: RETALIATION UNDER CAARA (US title 15 U.S.C. §7a-3) and COUNT TWO: RETALIATION UNDER SOX (US title 18 U.S.C. §1514A) **(Complaint Dkt 13 ¶¶218-219)**

Plaintiff needs only to allege sufficient facts to state a claim to relief that is plausible on its face. Plaintiff "stated simply, concisely, and directly events" in **Complaint Dkt 13 ¶¶42 – 61** that alleges Violation of Antitrust Laws ("CAARA") and Fraud against Shareholders ("SOX") which Plaintiff reasonably believed and Plaintiff reported **(Complaint Dkt 13 ¶¶62 – 80)** possible fraud in good faith to Persons of Supervisory Authority at Walmart and Walmart investigated based on Plaintiff's Complaint **Dkt 13 ¶¶65, 81-86**. Plaintiff is entitled to claim SOX whistleblower under Section 1514A "even if the [complained of] conduct turns out not to be fraudulent." Id.; see also Guyden v. Aetna, Inc., 544 F.3d 376, 384 (2d Cir. 2008) ("a whistleblower need not show that the corporate defendant committed fraud to prevail in her retaliation claim under § 1514A"). Because section 1514A protects the employee who acted under a reasonable belief that fraud was occurring – rather than protecting only those employees who report activity that is, in fact, fraudulent – "Federal Rule of Civil Procedure 9(b) does not apply because" Plaintiff "brings a retaliation claim based on his reasonable belief of fraud rather than a claim necessitating proof of fraud." Jin Huang

v. Harman Intern. Industries Inc., Civil Action No. 3:14-cv-1263-VLB, 2015 WL 4601047, at *2 n. 3 (D. Conn. July 29, 2015); see also Wallace, 796 F.3d at 480 (Fifth Circuit)

The "purpose of whistleblower statutes like SOX § 806 is to protect people who stand against institutional pressures and say plainly, 'what you are doing here is wrong' in the particular way identified in the statute at issue. By identifying conduct that falls within the ample bounds of the anti-fraud laws, an employee has done just that. That employee should not be unprotected from reprisal because she did not have access to information sufficient to form an objectively reasonable belief that there was an intent to defraud or the information communicated to her supervisor was material to a shareholder's investment decision"). Wiest v. Lynch, 710 F.3d 121 (3d Cir. 2013). The objective reasonableness of an **employee's belief under SOX/CAARA cannot be resolved as a matter of law "if there is a genuine issue of material fact."** On February 24, 2025 when Honorable Bill Davis asked Defendant whether EXHIBIT 1 (Complaint Dkt 13) is the only one documents (related to termination) Defendant produced in the last one year, after spending few minutes in silence Defendant acknowledged 'by large" that's the only one document Defendant produced. There are material facts in dispute until Defendant co-operates in Discovery for SOX and CAARA violations.

Regarding materiality and scienter element of the Complaint, the Fifth Circuit disagreed with the District Court and reversed district court's dismissal (Richardson v. Axion Logistics, L.L.C. 780 F.3d 304; 2015)

> "[t]aken together, these facts make plausible the allegation" made by the plaintiff about his employer's knowledge of the alleged misconduct.

---

In another case for **materiality** and **scienter element**, Fifth Circuit reversed District Court's dismissal of Wallace's complaint (Wallace v Tesoro No. 13-51010, Fifth Circuit, 2015)

> "Wallace was not required to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b). **Tesoro has not shown that it disclosed all of the taxes Wallace alleges were improperly recorded. If Wallace was required to plead a belief that Tesoro acted with a deceptive mental state, he satisfied that requirement**. And Tesoro has not shown that Wallace discovered and reported the reach of the accounting practice too late to have engaged in protected activity." (emphasis added)

Defendant investigated (Complaint Dkt 13 ¶¶65, 81-86) based on Plaintiff's Complaint Dkt 13 ¶¶42-80. But the defendant never disclosed the investigation report related to Plaintiff's allegation to Plaintiff; Defendant produced zero documents related to CAARA and SOX claim, therefore, if Plaintiff is required to plead a belief that Defendant acted with a deceptive mental state, as per Fifth Circuit above, Plaintiff satisfied that **scienter** requirement.

To the degree that the federal statute SOX that plaintiff alleges Defendant violated contain materiality elements, the Complaint contains assertions indicating that Plaintiff believed that Defendant's behavior satisfied those elements (Complaint **Dkt 13** ¶60-61). These allegations support the reasonable inference that a reasonable person in Plaintiff's position could view such actions as material:

> "Misidentifying or failing to detect critical defects could result in billions of dollars in lost revenue and wasted resources annually." Complaint **Dkt 13** ¶60. Mr. Milbourne's acknowledgement of revenue loss substantiates materiality of the fraud Complaint **Dkt 13** ¶61:

**Defendant's Changing Story of cause of the Termination is a pretext for Retaliation**

Plaintiff's comments at the Listening session with CEO Chris Nicholas on August 8, 2023 was not "**insubordinate toward Milbourne and Mehra, his supervisors**", when Walmart terminated Plaintiff on October 19, 2023, and when Walmart provided Position Statement to OSHA on February 21, 2024 and when Walmart provided Answers to Plaintiff's Complaint to Administrative law Judges on June 14, 2024 but all of a sudden Plaintiff's comments at the Listening session got importance when Plaintiff included Mr. Milbourne's incompetency in his **Complaint** in September 2024 where Defendant added "**comments evidence that Plaintiff was continually insubordinate toward Milbourne and Mehra, his supervisors**" to fit into Plaintiff's Complaint. Defendant's Motion to Dismiss (Dkt 22, Page 25, Section "B") did not recognize "underperformance" was a cause of the termination. Defendant changed the story of Termination (Complaint, Dkt 13, ¶88).

The Title VII employment discrimination framework places the burden on the employee ultimately to prove that the employer acted with a discriminatory purpose. But SOX (and CAARA), by contrast, imposes the burden on the employer to prove "by clear and convincing evidence that it would have taken the same personnel action against the whistleblower even in the absence of that protected behavior." Allen, 514 F.3d at 476. Even after the whistleblowing employee successfully meets his burden by showing that his protected whistleblowing activity "was a contributing factor in the unfavorable personnel action alleged in the complaint" 49 U.S.C §42121(b)(2)(B)(iii), still the employer can prevail only if it "demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior" Id. §42121(b)(2)(B)(iv). See Murray v UBS Securities No. 22-60 (2004)

On February 21, 2024 Defendant submitted a redacted email EXHIBIT 1 (DKT 13, Complaint) to OSHA at the Department of Labor which shows communication among HR, Management and Walmart Ethics in support for Plaintiffs' employment termination with Walmart. If EXHIBIT 1 (DKT 13, Complaint) can "demonstrate by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior", all of Plaintiff's claim should be dismissed with prejudice. Defendant knows unredacted version of EXHIBIT 1 (DKT 13, Complaint) cannot save Defendant; Defendant deliberately modified and altered that document EXHIBIT 2 (DKT 13, Complaint) and used as a bait OALJ on June 14, 2024 and asked OALJ to approve a protective order so that Defendant can reveal those attachments of EXHIBIT 1 (DKT 13, Complaint) to make sure it does not go to Public. Plaintiff did not sign that Protective Order; Plaintiff brought the case to this Court.

Complaint (Dkt 13) is a legal document, when a court analyzes a 12(b)(6) motion, it accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. Complaint's ¶¶54-60 is shining at this Court docket, and Defendant did not strike. Plaintiff's serious accusations against Defendant; the Court must consider this is TRUE

> "WALMART'S MATERIALLY FALSE, FRAUDLENT STATEMENTS AND ALTERNATION OF EVIDENCE..**to cover up Walmart's retaliation due to Dr. Jana's protected Whistleblower activities**..possibly committing further crimes" (emphasis added)

One can clearly see that the Defendant modified and altered EXHIBIT 1 (DKT 13) and presented as EXHIBIT 2 (DKT 13) at OALJ and asserted OALJ that if there is protective order, Defendant will be happy to provide an un-redacted version of the email with attachments, "intend on providing the attachments subject to a protective order". OALJ fell into Defendant's trap,

Defendant tainted OALJ and was successfully able to get the protective order without participating in a single discovery in more than 150 days at OALJ...EXHIBIT 1 has an attachment, which Defendant did not disclose, which says, "**Termination recommend...msg**" (visible at the top of EXHIBIT 1); disclosing this attachment will only help Defendant to avoid liability if Defendant did not retaliate because of Plaintiff's protected whistleblowing activities..To add to the puzzle, Defendant modified and altered that email attachment and renamed it,"**Recommendation.docx**" (EXHIBIT 2). EXHIBIT 1 EXHIBIT 2 have different Sent dates even if they are the same email ("Walmart provided a redacted version in its original response out of an abundance of caution...We are attaching the unredacted version herein") and deceit OALJ "intend on providing the attachments subject to a protective order" to make sure nobody will ever know Defendant's manipulation and crimes (Dkt 13). At the bottom of the altered document EXHIBIT 2 has a page number 1 which indicates an editor was utilized to alter. Also, there are many inconsistencies in the body of the email. There may be more alternation which Plaintiff does not know.

Defendant is continuing the same strategy of Protective Order in this Court as well to hide its crimes under the invisible walls of Confidentiality. Defendant got more than 15 months, still could not submit a single document to substantiate it would have terminated Plaintiff even in the absence of Plaintiff's Whistleblowing activities.

Defendant was so desperate to terminate Plaintiff right after Plaintiff's whistleblowing activities that Defendant did not hesitate to use a hearsay statement to terminate Plaintiff (Complaint Dkt 13 ¶89) and Defendant utilized one of Plaintiff's whistleblowing activities to fire Plaintiff which a

direct evidence of retaliation due to Plaintiff's whistleblowing activities (Complaint DKT 13 ¶¶90-105)

Plaintiff had an excellent performance review including but not limited to saving more than 250 million dollars in fiscal year 2023 and his co-workers feels he "is nice and humble person to work with..There is clearly a good system built on trust and respect between him and the other data scientists.." (Complaint DKT 13, ¶34)

Complaint (DKT 13) also demonstrated how Plaintiff's co-workers remained silent to protect their jobs despite expressing "red flag" about vendor Infogain's contracts. (Complaint DKT 13 ¶¶97-210)

Plaintiff is entitled for the damages due to unlawful termination. Plaintiff submitted back pay and front pay damage calculations to Defendant and Plaintiff also demands punitive damage, Pecuniary damages, Non-Pecuniary Damages (past and future) and any other damages the Court finds appropriate.

### *Walmart's synopsis:*

This case arises out of Walmart's termination of Plaintiff's employment in October 2023. Walmart fired Plaintiff because his tenure at Walmart was mired with disruption, toxicity, and constant attempts to undermine supervisors, at times he was confused and discombobulated, and as a result of this and much more his performance suffered. Clear from the face of his pleadings, Plaintiff resented his supervisors and colleagues and viewed them as incompetent, undereducated, and unqualified to manage someone of Plaintiff's supposed caliber. As a result of his increasingly concerning behavior, his colleagues and leadership felt Plaintiff could be a threat to the health and safety of other associates. Instead of taking accountability for his erratic behavior and his inability

to work within a team, Plaintiff characterized his termination as Walmart's retaliation for his purported whistleblowing and asserted claims against Walmart under Section 806 of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the Criminal Antitrust Anti-Retaliation Act ("CAARA"), 15 U.S.C. § 7a-3.

As detailed in Walmart's pending Motion to Dismiss [ECF No. 22], Plaintiff has failed to state a CAARA claim or a SOX claim against Walmart and his Second Amended Complaint [ECF No. 13] should be dismissed without leave to replead.

- First, Plaintiff is not a whistleblower under CAARA and SOX because one who makes contrived and baseless accusations of illegal conduct is not engaged in the "protected activity" that defines whistleblowing. Plaintiff failed to allege sufficient facts to plausibly suggest that a reasonable person would have believed that Walmart's conduct was illegal, and Plaintiff thus failed to state a viable SOX or CAARA claim.

- Second, because an affirmative defense is evident directly from the face of the Complaint, both of Plaintiff's claims should be dismissed. Walmart is not liable because, even in the absence of Plaintiff's purported whistleblowing, Walmart would have terminated Plaintiff's employment in any event due to Plaintiff's insubordination, disruption, and underperformance—all of which are detailed in the factual allegations of the Complaint.

2. **Jurisdictional basis for this suit.**

The Court has federal question jurisdiction because Plaintiff pursues claims under SOX, 18 U.S.C. § 1514A, and CAARA, 15 U.S.C. § 7a-3.

3. **A list of the correct names of the Parties to this action and any anticipated additional or potential Parties.**

The Parties are correctly named. There are no anticipated additional or potential Parties.

4. **A list of any cases related to this case pending in any state or federal court, identifying the case numbers and courts along with an explanation of the status of those cases.**

   None.

5. **Confirmation that the initial disclosures required by Rule 26(a)(1) and the Order Governing Proceedings have been completed.**

   Both Parties served their respective initial disclosures on or before the Court's April 7, 2025 deadline.

6. **Proposed scheduling order deadlines.**

   See the Parties' proposed scheduling order attached hereto as **Exhibit A**.

7. **Description of items in accordance with Rule 26(f):**

   a. **Subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

   **Plaintiff's Position:**
   Plaintiff anticipates needing discovery and does not anticipate handling discovery in phases. All information responsive to Plaintiff's discovery request that is relevant to this case, proportional to the needs of the case and is not privileged and that is in Walmart's possession, custody, or control is to be produced. Plaintiff does not anticipate any limitation. Plaintiff intends to propound written discovery in the form of interrogatories, requests for production, and requests for admissions as authorized by the Federal Rules. Plaintiff also intend to conduct the depositions of certain Walmart current and past Walmart Employees and third-party vendor, Infogain members.

**Walmart's Position:**

Walmart anticipates needing discovery regarding the merits of Plaintiff's claims, the factual circumstances surrounding Plaintiff's termination of employment with Walmart, Plaintiff's alleged damages, Walmart's alleged liability, and Walmart's affirmative defenses. Walmart does not anticipate handling discovery in phases and believes that discovery should be completed by the dates provided in the Parties' proposed scheduling order. Walmart submits that discovery should be limited to the cause for Plaintiff's termination and Plaintiff's purported whistleblowing in order to prevent overly broad, irrelevant, and unduly burdensome discovery from Plaintiff.

> b. **Any issues relating to disclosure or discovery of electronically stored information ("ESI") such as the form(s) that it should be produced and methodologies in identifying or culling relevant and discoverable ESI. Any disputes regarding ESI that counsel for the Parties are unable to resolve during conference must be identified in report.**

None at this time, but if any dispute regarding ESI arises, the Parties will work together to attempt to resolve those issues before seeking intervention from the Court. Defendant wants PDF format will be the default format for production, unless native format is requested, at which time the Parties will either agree to production in that format or address the issue with the Court but Plaintiff disagreed and suggested .eml format will be the default format for production and Plaintiff provided reasons behind it (**EXHIBIT B**), involving Court for which format to is a waste of judicial resources and preventing fraud and manipulation.

> c. **Any agreements or disputes relating to asserting claims of privilege or preserving discoverable information including agreements pursuant to Federal Rule of Evidence 502 (such as the potential need for a protective order and any procedures to which the Parties might agree for handling inadvertent production of privileged information and other privilege waiver issues). A party asserting that any information is confidential should immediately apply to the Court for entry of a protective order.**

Walmart has filed a pending Motion for Entry of Protective Order [ECF No. 51] to govern the Parties' disclosure of confidential information.

Plaintiff opposes Defendant's Motion for Protective Order and Plaintiff is in the process of Responding to Walmart's Motion for Entry of Protective Order [ECF No. 51]

    d. **Any changes that should be made in the limitations on discovery imposed by the Rules.**

None.

    e. **Whether any other orders should be entered by the Court pursuant to the Federal Rule of Civil Procedure 26(c) or Rule 16(b), (c).**

Walmart requests entry of its proposed protective order.
Plaintiff opposes Walmart's proposed protective order.

The Parties request the entry of their agreed scheduling order (**EXHIBIT A**)

8. **Statement of the progress made toward settlement and the present status of settlement negotiations, including whether a demand and/or an offer has been made. If the Parties have agreed upon a mediator, also state the name, address, and phone number of that mediator and a proposed deadline for mediation.**

Informal settlement discussions have taken place, but no demand or offer has been made. Plaintiff submitted calculation of demand amount through Initial Disclosure. The Parties have not yet agreed upon a mediator.

9. **The identity of persons expected to be deposed.**

*Plaintiff's Position:*

Plaintiff intends to notice the deposition following Walmart employees:

1. Kamil Bay – Director of Analytics at Walmart
2. Adrian Milbourne – Sr. Director at Walmart

3. Megha Banerjee – Data Scientist at Walmart
4. Wendy Bowman – HR People Manager at Walmart
5. Monica Hall – Walmart Ethics Manager
6. Doug McMillion – CEO Walmart

Plaintiff also intend to notice the deposition of each of Defendants' previous employees who was terminated during the pendency of this case:

1. Ridhi Mehra – Ex-Walmart Vice President
2. Sandeep Golkunda – Ex-Walmart Data Scientist

Plaintiff also intend to notice the deposition to third party vendor, Infogain, members including but not limited to:

1. Veera Raghavan

Plaintiff reserves the right to depose additional individuals as the Parties engage in discovery.

*Walmart's Position:*

Walmart currently anticipates deposing Plaintiff but reserves the right to depose additional individuals as the Parties engage in discovery. Walmart does not concede that the individuals identified by Plaintiff above are relevant, material, or proper subjects for depositions. Walmart reserves the right to object to any discovery Plaintiff has served or will later serve in this matter, including but not limited to deposition notices.

10. **Estimated trial time and whether a jury demand has been timely made.**

Plaintiff made a timely jury demand. The Parties estimate that any trial of this matter will require three days.

11. **The names of the attorneys who will appear on behalf of the Parties at the management conference (the appearing attorney must be an attorney of record and have full authority to bind the client).**

*For Plaintiff*: Dilip Jana

*For Walmart*: Peter Wahby, Holmes Hampton, Morgan Jones

12. **Whether the Parties jointly consent to trial before a magistrate judge.**

The Parties do not jointly consent to trial before a magistrate judge.

13. **Any other matters that counsel deem appropriate for inclusion in the joint conference report or that deserve the special attention of the Court at the management conference.**

None at this time

## Summary of the Rule 26f Meet and Confer Meeting: March 24, 2025

On March 24, at 2 pm CDT Peter Wahby called Plaintiff and the call lasted for about 20 minutes.

Peter expressed that he prefers the Plaintiff do not record this call. Peter asserted that he is an officer of the court and he will only state accurate information. Peter also said Plaintiff, as a pro se Plaintiff, will also be held to that same standard in the Court. Peter mentioned that we don't need recordings that could be misconstrued or taken out of context. Peter said he will tell the truth, and Plaintiff will tell the truth, and we'll move forward.

**Settlement Discussion**

Plaintiff asked Peter whether he had any chance to discuss any settlement options with Walmart prior to this meeting. Peter said he does have a sense of Walmart's settlement thoughts and asked Plaintiff what Plaintiff is looking to accomplish in the settlement. Plaintiff asked Peter if there is any lower/upper bound of the offer from Walmart, Peter then asked Plaintiff if he still believes he should be awarded 200 million dollars. Plaintiff said he is demanding backpay, which is already 1.2 million dollars as of now, he is demanding front pay until retirement, punitive and other damages. Plaintiff gave an example of a recent verdict against Walmart where Jury awarded a Walmart truck driver $34.7 million, Plaintiff expects substantial award as he was a corporate executive given his qualification and Plaintiff's potential for promotions; the damages are substantial. However, Plaintiff asserted he is open to negotiation. Peter asked whether Plaintiff had any calculations of damages, Plaintiff said he would submit all calculations during the Initial Disclosure. Peter said that would be helpful and he will review that properly and he will talk to Walmart about it and he thinks mediation may be an option.

**Claim and Defenses**

Peter asked Plaintiff why Defendant's Motion to Dismiss would not be approved. Plaintiff refuted that claim and stated that the Motion to Dismiss should be denied. In support Plaintiff asserted that Defendant improperly conflates the requirements of pleading a claim with the requirement for proving and establishing such a claim at the pleading stage and the complaint itself has sufficient facts to state the claim. Plaintiff mentioned his whistleblowing activities to multiple Walmart executives' multiple times and Walmart investigated based on Plaintiff's complaint. Plaintiff argued that even for the sake of argument, his mistaken belief is also protected. Plaintiff stated his briefs are well documented to address this. Plaintiff then challenged Peter why Defendant's Motion to Dismiss should not be denied. Peter replied that since it's Defendant's Motion to Dismiss, rather than dwelling on that he asked Plaintiff a "very practical question" about the Protective Order.

**Protective Order**

Peter asked Plaintiff if he was agreeable to entering the same protective order that was entered in the Administrative proceeding. Plaintiff disagreed and stated that without understanding why Defendant needs protective order he will oppose this Federal Court. Peter then explained that protective order simply means that the information won't be used for a purpose other than litigation and it won't be publicly available. Plaintiff then challenged that Walmart manipulated and modified documents at the Department of Labor to obtain a Protective Order while he did not even file any opposition at the Department of Labor against Walmart's Motion for Protective Order as he was busy with a new baby and he was preparing to kick the case out of Department of Labor to this Federal Court. Peter clarified that the goal of submitting a protective order is not to allow anyone to manipulate or change documents. It would be the same document. It just wouldn't allow the document to go outside of the courtroom. Plaintiff continued to oppose the protective order; he did not submit any discovery requests or interrogatories prior to the Meet and Confer meeting, thus not understanding what Defendant wants to protect. Additionally, Plaintiff asserted that Company Confidential Information and Attorney Client privileged materials do not supersede under SOX and CAARA federal protection. Plaintiff raised the concern of why we are even discussing a protective order at this point of time without understanding what needs to be protected.

**Discovery Plan**

Peter asked Plaintiff the general scope of areas that he wants to investigate in this case that will help Plaintiff prove his case to the court and there's a balancing act of the burden for the party and

the relevance. Plaintiff said he would be sending discovery requests sometimes that week as he was sick and he was extremely stressed out because of his home foreclosure process.

### Depositions

Peter asked if Plaintiff wanted to take depositions and asked for names. Plaintiff said he would send a detailed list of names that he may take depositions during the Initial Disclosure which was due on April 7, 2025.

### Plaintiff's Complaint about Defendant's Witness Manipulation

In one of Defendants Briefs Defendant wrote Defendant fired Ridhi Mehra because of mismanagement. Plaintiff asked Peter what do you mean by mismanagement, is the mismanagement of money? By firing the primary witness, Plaintiff complained that Walmart is manipulating witness during the pendency of this case and Plaintiff wants to access Ridhi Mehra related files as Plaintiff's whistleblowing activities was around Ridhi Mehra's possible fraud and Ridhi Mehra is the one who decided to fire Plaintiff. Plaintiff said he is evaluating whether to add Ridhi Mehra as Defendant since Ridhi Mehra no longer works at Walmart. Peter could not recall what mismanagement Plaintiff was referring to. Peter, however, promised that Plaintiff will get documents that are relevant to his claims, that are responsive to the requests and they're in Defendant's possession, custody or control.

### ESI

Parties agreed to preserve ESI

Respectfully Submitted,

_____
DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002
