# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DILIP JANA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00698-SDJ-BD |
| | § | |
| WALMART INC., | § | |
| | § | |
| Defendant. | § | |

**DECLARATION IN SUPPORT OF DEFENDANT'S
SECOND MOTION FOR ENTRY OF PROTECTIVE ORDER**

My name is Morgan Jones. I am over 21 years of age, of sound mind, and am capable of making this declaration. I have never been convicted of a felony or crime of moral turpitude. I have personal knowledge of the facts stated in this declaration and hereby declare that all such facts are true and correct. I could testify competently to these facts if called as a witness.

1. I am an associate at the law firm, Greenberg Traurig, LLP. I am one of the attorneys serving as outside counsel for Walmart Inc. ("Walmart") in the above-captioned action ("Lawsuit") and am authorized to make this declaration on behalf of Walmart in such capacity. I submit this declaration in support of Walmart's Second Motion for Entry of Protective Order.

2. Based on my position as outside counsel to Walmart, my experience in this Lawsuit, and my review of pertinent documents, I am competent to testify to the matters contained in this declaration.

3. As outside counsel, I received and have reviewed Plaintiff's filings in this Lawsuit and Plaintiff's discovery requests to Walmart served on March 28, 2025. True and correct copies of Plaintiff's Requests for Production and Interrogatories are attached hereto collectively as

1

**Exhibit B-1**. Plaintiff's discovery requests seek confidential information and documents from Walmart, including but not limited to Walmart's sensitive commercial information related to business transactions and vendor relationships, as well as Walmart's personnel records, ethics complaints, investigation reports, performance reviews, and disciplinary action evaluations related to current and former Walmart employees—most of whom are nonparties.

4. On March 24, 2025, Walmart's counsel and Plaintiff participated in a Rule 26(f) conference during which the parties discussed, among other things, the possibility of submitting an agreed protective order to govern the disclosure of confidential information during discovery. Plaintiff indicated his opposition to the entry of any protective order governing the confidentiality of documents.

5. As outside counsel, I have reviewed the documents collected by Walmart to date that are relevant or potentially relevant to this Lawsuit and/or are responsive to Plaintiff's discovery requests. Such documents include Walmart's personnel records related to ethics complaints, investigation reports, employee evaluations, performance reviews, hiring information, compensation, disciplinary records, and termination information for current and former Walmart employees. Walmart's personnel records contain sensitive information, such as the relevant employee's role and responsibilities, job history, salary, promotions, leaves of absence, time off requests, date of birth, social security number, personal email address(es), home address, sexual orientation, emergency contacts, personal phone number, performance reviews, career development plans, certifications, trainings, and compliance with Walmart policies.

6. Walmart considers each of the foregoing categories of documents to be confidential and does not allow most Walmart employees—much less the public—to access such documents. Permitting wide dissemination of employee personnel files would result in a defined, serious injury to both current and former Walmart employees' and Walmart's privacy. I can attest that Plaintiff,

Walmart, and Walmart's nonparty current and former employees are likely to suffer financial, reputational, professional, or other harm and embarrassment if the confidential information in Walmart's personnel records is freely and publicly disseminated.

7.  Plaintiff's discovery requests seek, and Walmart intends to produce, certain confidential documents and communications reflecting Plaintiff's insubordination and poor job performance during his employment with Walmart. I have reviewed such documents and I believe that their unharnessed disclosure could—and likely would—cause embarrassment to Plaintiff and would harm Plaintiff's professional reputation and undermine Plaintiff's prospects of future employment.

8.  Similarly, any adverse actions, negative performance reviews, or other unfavorable information in nonparty current and former Walmart employees' employment records that are deemed relevant and disclosed during discovery could negatively impact the nonparties' professional and personal reputations and constitute an invasion of privacy without a protective order in place. Further, if personnel records are freely disclosed without protection, employers, like Walmart, could potentially cease to frankly criticize and rate employee performance for fear of potential public disclosure later.

9.  As outside counsel, I have also reviewed documents related to Plaintiff's allegations of purported whistleblowing underlying this Lawsuit, including Plaintiff's email dated August 8, 2023 in which he "reported possible fraud to **SVP Allie Hazelwood**, a Person of Supervisory Authority over [Plaintiff] at Walmart[.]" (*See* Dkt. 13, ¶ 62; emphasis in Complaint) In this email, Plaintiff requested that Ms. Hazelwood: "***<u>Please keep this email as confidential</u>***[.]" (bold, italics, and underlining by Plaintiff). If this email and any similar emails that Plaintiff specifically requested to be kept confidential are produced without adequate safeguards in place, third parties could freely review the email and could reasonably assume that Walmart failed to

3

adequately protect its employee's explicitly confidential communications—causing reputational damage to Walmart. The free distribution of files (bearing Walmart's name and logo and clear markers of confidentiality) outside of the litigation could also cause reputational harm to Walmart by giving the incorrect impression that Walmart lacks sufficient protections to secure its sensitive data and records.

10. The Court's entry of a blanket protective order permitting the parties to designate defined categories of documents as confidential prior to production would protect the parties' and nonparties' legitimate privacy interests while also ensuring full compliance with discovery obligations. Absent a blanket protective order, the parties—particularly Walmart—would need to prepare, file, and likely defend multiple individual motions for protective orders to obtain separate Court rulings regarding the confidentiality and disclosure of sensitive documents throughout discovery. This process would result in a significant, unnecessary, and unduly burdensome expenditure of time and resources for both the parties and the Court. The entry of a blanket protective order would serve the interests of a just, speedy, and less expensive determination of this Lawsuit by alleviating the need for and delay occasioned by extensive and repeated judicial intervention.

11. On April 4, 2025, Walmart filed its initial opposed Motion for Entry of Protective Order (Dkt. 51). Before filing, Walmart's counsel emailed Plaintiff on March 31, 2025 and April 2, 2025 to confirm that Plaintiff was still opposed to the entry of any protective order in this Lawsuit. On April 3, 2025, Plaintiff responded and stated that he "[does not] see any need for any Protective Order and [is] opposed to it." A true and correct copy of this email exchange is attached hereto as **Exhibit B-2**.

12. The Court denied Walmart's initial opposed Motion for Entry of Protective Order (Dkt. 51) on May 1, 2025. (*See* Dkt. 60) The next day, on May 2, 2025, in compliance with Federal

Rule of Civil Procedure 26, I again emailed Plaintiff in a good faith effort to resolve the dispute underlying Walmart's forthcoming second motion for entry of protective order without Court action. On May 5, 2025, Plaintiff filed a true and correct copy of the parties' email exchange from May 2, 2025 (*see* Dkt. 62-1) and accused me of using "intimidating and harassing tactics" "to misuse protective order procedures." (*See* Dkt. 62) As I believe is evident from my emails to Plaintiff on May 2, 2025 (*see* Dkt. 62-1), I did not intend to "intimidate" or "harass" Plaintiff (*see* Dkt. 62) during my attempt to confer with him in compliance with the Federal Rules of Civil Procedure.

13. Plaintiff has not officially stated whether he is still opposed to the entry of the requested protective order, but I expect Plaintiff will continue to oppose the entry of any protective order, as he did in the prior administrative proceedings between the parties.

Pursuant to 28 U.S.C, § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June __3__, 2025 in Dallas, Texas.

*Morgan Jones*
Morgan Jones

5