THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DILIP JANA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00698-SDJ-BD |
| | § | |
| WALMART INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
EMERGENCY MOTION FOR LEAVE (DKT 90)**

Defendant Walmart Inc. ("Walmart") hereby submits this Response to Plaintiff's Emergency Motion for Leave to Transmit July 18, 2025 Production to Federal Law Enforcement Due to Expiring Access and Lack of Rule 26(g) Certification (Dkt. 90; the "Motion").

**A. Walmart does not oppose the unnecessary relief Plaintiff seeks.**

Most of the complaints Plaintiff raises in the Motion have either already been resolved by the Court or are addressed in Walmart's contemporaneously filed discovery brief. Specific to the Motion, Plaintiff seeks leave from the Court to transmit certain confidential materials produced by Walmart subject to the protective order to the FBI "solely to support lawful reporting of potential criminal conduct." Because Walmart and its current and former attorneys have not engaged in any conduct remotely close to "criminal," the Motion is a waste of this Court, the parties, and the FBI's time and resources. Regardless, Walmart ultimately does not oppose the relief Plaintiff requests in the Motion, and any investigation by the FBI would confirm that Walmart and its current and former counsel have not committed any wrongdoing.

### B. Walmart produced confidential documents subject to the protective order.

On July 18, 2025, Walmart emailed a link to its second production of documents to Plaintiff, which Plaintiff initially "objected" to and refused to download. Plaintiff has since accessed the production, which includes the native version of the email (the "Bowman Email") with attachments that Plaintiff has baselessly claimed in almost every filing that Walmart and/or its former counsel fraudulently "altered" or "created" to support Walmart's defenses. *See, e.g.*, Dkt. 13-1 & 13-2 (redacted and unredacted copies of the Bowman Email attached as exhibits to Plaintiff's operative Complaint). As Plaintiff seems to understand, the Bowman Email and its attachments constitute clear and convincing evidence of Walmart's defense that it would have terminated Plaintiff irrespective of any purported whistleblowing activity by him. *See, e.g.*, Dkt. 90 ¶ 14 ("By altering [the Bowman Email], Walmart is trying to demonstrate that it would have terminated Plaintiff regardless of Plaintiff's whistleblowing activities [] to avoid liability in this lawsuit."); Dkt. 64 ¶ 36 (The Bowman Email "appears crafted to support Walmart's legal defense that it would have terminated Plaintiff even absent his whistleblowing activity, thereby avoiding liability under the clear and convincing evidence standard."). Instead of accepting the Bowman Email for what it is, Plaintiff remains committed to his unwavering belief that the Bowman Email was "created" or "altered" by Walmart or its former counsel after-the-fact—even though the email has been produced in native form in an attempt to eliminate Plaintiff's baseless document manipulation theories. Accordingly, Plaintiff's allegations of evidence manipulation are entirely false.

In furtherance of his conspiracy theories, Plaintiff now seeks to provide the document production to the FBI. Plaintiff offers no reason why the FBI would have any interest in reviewing a document production in a civil case. Nor has Plaintiff identified any criminal conduct that

warrants the FBI's involvement. Plaintiff's attempt to involve the FBI is, therefore, a complete waste of resources. Walmart is nevertheless mindful that Plaintiff would likely frame any opposition to his request as an attempt by Walmart to "hide" its alleged "crimes" from law enforcement. Walmart has nothing to hide, and Plaintiff's concerns lack any reasonable foundation. And to hopefully put this issue to bed, Walmart does not oppose its July 18, 2025, production being provided to the FBI—otherwise in accordance with the terms of the operative protective order (Dkt. 67).

Concerningly, Plaintiff has stated in several of his recent emails and filings, including the Motion, that none of the documents in Walmart's second production are protected by the Court's Protective Order (Dkt. 67). *See, e.g.*, Dkt. 101, p. 2 ("[T]he July 18, 2025 production is not protected by the Court's Protective Order[.]"); Dkt. 101-1, p. 5 (noting alleged inapplicability of protective order); Dkt. 90, p. 14 ("[T]he July 18, 2025 production is not protected under the operative Protective Order[.]"). Contrary to Plaintiff's representations in the Motion, Walmart's July 18, 2025, production *did* include documents properly designated as confidential and produced subject to the terms of the operative protective order. *See, e.g.*, Dkt. 101-2 (email from Plaintiff claiming Walmart produced documents with improper confidentiality designations). Walmart maintains the propriety of its confidentiality designations and rejects any argument by Plaintiff that Walmart waived confidentiality. *See, e.g.*, Dkt. 101, p. 2 (suggesting Walmart waived confidentiality of documents produced on July 18, 2025); Dkt. 101-2, p. 4 (same). As stated above, Walmart ultimately does not oppose Plaintiff's request that the Court grant him leave to submit Walmart's second production to the FBI for (a completely unnecessary) investigation. However, Walmart reiterates that Plaintiff must comply with the Court's directives (Dkt. 67) related to the

handling of confidential materials produced during discovery, including the confidential documents in Walmart's second production.

### C. Walmart has complied with its Rule 26(g) obligations and did not submit a filing with a "hallucinated" quotation to the Court.

In the Motion, Plaintiff continues to argue—without citing any supporting case law—that Federal Rule of Civil Procedure 26(g) imposes an obligation on Walmart to "certify" its document productions. Walmart respectfully submits that Plaintiff seems to misunderstand the scope and meaning of Rule 26(g) and maintains that Walmart has fully complied with its obligations under the rule. *See* Dkt. 88, p. 5 (quoting *Itamar Med. Ltd. v. Ectosense NV*, No. 20-60719-CIV-DIMITROULEAS/SNOW, 2021 WL 12095095 (S.D. Fla. Dec. 28, 2021) ("[Plaintiff's] counsel has made the certification necessary by signing [Plaintiff's] discovery responses in accordance with Rule 26(g), nothing further is required.")).

In his "Notice of Clarification and Partial Opposition to Dkt. 85, Identifying Fraudulent Misrepresentations and Preserving Plaintiff's Reliance on the Judicial Waiver Asserted Therein" (Dkt. 97; the "Notice"), Plaintiff repeatedly—and erroneously—represents that Walmart quoted a nonexistent passage from the *Itamar* case in its Motion for Order Excusing Responses (Dkt. 85). *See, e.g.*, Dkt. 97, p. 9 ("**Walmart fabricated a 'HALLUCINATED' quotation in Dkt 85**") ("Walmart itself **inserted a fabricated quotation into the record**—a quotation that does not appear anywhere in the cited decision" and "is entirely **fictitious**") & p. 12 ("Walmart went so far as to insert a **hallucinated quotation**, fabricated from a non-existent passage in [the *Itamar* case]…") (emphasis by Plaintiff). Contrary to Plaintiff's representations (*see id.*, p. 9, 14), Walmart cited the *Itamar* case in its Response to Plaintiff's Motion for Criminal Referral and Sanctions (Dkt. 88)—not in its Motion for Order Excusing Responses (Dkt. 85). *See* Dkt. 88, p. 5. And, more importantly, the language quoted by Walmart *does* appear in the *Itamar* case. Walmart simply

**DEFENDANT'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR LEAVE (DKT 90)**     4

substituted the bracketed "[Plaintiff's]" for the *Itamar* plaintiff's actual name that appears in the opinion, a perfectly appropriate alteration. For ease of the Court's and Plaintiff's reference, a copy of the *Itamar* case with the disputed quotation highlighted is attached as **Exhibit A**.

Relatedly, Plaintiff asserts in his Notice that Walmart "**FALSELY**" accused him of continuing to cite non-existent and irrelevant caselaw in his filings. *See* Dkt. 97, p. 9 (emphasis by Plaintiff). However, as reflected in the Notice itself, Plaintiff *has* continued to rely on imaginary and inapplicable cases to support his arguments—even after the Court cautioned him against doing so (*see* Dkt. 66). For example, in his Notice, Plaintiff represents that "*Turner v. Godinez*, 2016 WL 951651, at *2 (N.D. Ill. Mar. 14, 2016)" supports the proposition that this Court should blindly accept his deficient submissions "despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [] unfamiliarity with rule requirements." Dkt. 97, p. 13–14. Plaintiff's Westlaw citation for the *Turner* case corresponds to an administrative opinion by the Louisiana Department of Environmental Quality styled *In the Matter of City of Shreveport*. The *Shreveport* opinion is a nine-sentence order setting a telephone status conference between the parties' counsel, and it bears no conceivable relevance to this lawsuit or Plaintiff's arguments. Walmart cannot locate any Northern District of Illinois case between parties named "Turner" and "Godinez." And, although Walmart located two *Southern* District of Illinois cases styled "*Turner v. Godinez*," neither of those cases even arguably support Plaintiff's position. The federal district court dismissed the same *pro se* litigant's claims twice—first without prejudice, then with prejudice—for failure to state a claim. *See Turner v. Godinez*, No. 14–cv–00945–JPG, 2014 WL 4748360 (S.D. Ill. Sep. 24, 2014) (dismissing claims without prejudice); *Turner v. Godinez*, No. 14-cv-00945-JPG, 2015 WL 5693656 (S.D. Ill. Sep. 29, 2015) (dismissing claims with prejudice). The court did not acknowledge any leniencies afforded to *pro se* parties. *See id.*

Additionally, Plaintiff cites "*Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)" in his Notice in support of his statement that "Courts have long held that **pro se filings are to be liberally construed** and held to less stringent standards than formal pleadings drafted by lawyers." Dkt. 97, p. 13 (emphasis by Plaintiff). The *Conley* case could not possibly support Plaintiff's assertion, as the litigation involved parties that were represented by counsel at every stage of the proceedings and none of the *Conley* cases contain the term "pro se." *See Conley v. Gibson*, 355 U.S. 41 (1957) (reflecting both parties' representation by counsel); *Conley v. Gibson*, 229 F.2d 436 (5th Cir. 1956) (same); *Conley v. Gibson*, 138 F.Supp. 60 (S.D. Tex. 1955) (same). Walmart does not dispute that federal courts have consistently held that a *pro se* litigant's pleadings are "construed liberally" and "held to less stringent standards than formal pleadings drafted by lawyers." Rather, Walmart mentions this example solely to highlight that Plaintiff (or, more likely, the artificial intelligence software that Plaintiff evidently denies using) chose to rely on an irrelevant case for a legal principle well-established by numerous federal court decisions.

Walmart has incurred tremendous expense in defending against Plaintiff's baseless claims and analyzing Plaintiff's seemingly AI-generated filings and emails littered with inaccurate, misleading, and/or entirely fictitious citations. Walmart reserves the right to pursue dismissal of this lawsuit in accordance with the Federal Rules of Civil Procedure for Plaintiff's repeated failures to comply with this Court's local rules and orders, including but not limited to Dkt. 66 and Local Rule CV-11(g).

Dated: August 13, 2025

Respectfully submitted,

*/s/ Peter S. Wahby*
**Peter S. Wahby**
Texas Bar No. 24011171
peter.wahby@gtlaw.com
**Morgan E. Jones**
Texas Bar No. 24132301
morgan.jones@gtlaw.com
**Holmes H. Hampton**
Texas Bar No. 24144019
holmes.hampton@gtlaw.com
**GREENBERG TRAURIG LLP**
2200 Ross Ave., Suite 5200
Dallas, Texas 75201
Telephone: 214.665.3600

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all parties of record via the Court's e-filing system on August 13, 2025.

*/s/ Peter S. Wahby*
Peter S. Wahby