IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **DILIP JANA** § | |
| § | |
| **v.** § | NO. 4:24-CV-00698-SDJ-BD |
| § | |
| **WALMART, INC.** § | |

**ORDER AND REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pro se plaintiff Dilip Jana sued defendant Walmart, Inc., for alleged violations of the whistleblower protections of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the Criminal Antitrust Anti-Retaliation Act ("CAARA"), 15 U.S.C. § 7a-3. Dkt. 13 (operative complaint). Walmart moved to dismiss. Dkt. 22; *see* Dkts. 29 (response), 30 (reply), 31 (sur-reply). Walmart also moved to strike Jana's response and sur-reply, Dkt. 32; *see* Dkt. 34 (response), 37 (reply), 40 (sur-reply), and Jana moved for leave to file excess pages, Dkt. 33; *see* Dkt. 39 (response). The court will deny Walmart's motion to strike, grant Jana's motion for leave, and recommend that Walmart's motion to dismiss be denied.

**BACKGROUND**

At this stage of the case, the facts as alleged by Jana are presumed to be true. *See Stanley v. City of Sanford*, 145 S. Ct. 2058, 2062 (2025).

According to the complaint, Jana began working for Walmart in March 2020 as a Principal Data Scientist. Over the next few years, he helped save Walmart hundreds of millions of dollars and received positive feedback from his supervisors and peers. Then, in 2023, Jana was promoted to Director of Data Science.

Shortly thereafter, Jana's new supervisor, Adrian Milbourne, asked Jana to participate in the bid-selection process for a data-science vendor that was to complete a "Proof of Concept" within eight weeks. Dkt. 13 at 12. Walmart received five bids for that project, including a bid from Infogain, an Indian company, and a joint bid from Deloitte and Google, two American companies. Infogain's

bid price was $180,000; Deloitte and Google's was $300,000. Jana compared the two bids and determined that Infogain would not produce quality work because it lacked strong data scientists. He expressed that concern to his colleague Kamil Bay, the Director of Analytics. The next day, Ridhi Mehra, Milbourne's and Jana's supervisor, discussed the vendor-selection process with Jana. Mehra told Jana that she favored Infogain because it was charging less and understood "the problem" better; in fact, she had already met with Infogain privately before the bid-selection process began. *Id.* at 13. The next week, Bay developed a vendor-evaluation number system that seemed to favor Infogain, and Infogain ultimately beat out Deloitte and Google to win the contract. Soon after, Mehra visited India, where Infogain was located and where Mehra was a citizen.

Almost immediately after being selected, Infogain began charging more than its bid had promised, reaching a total of almost $1,000,000. And during its relationship with Walmart, Infogain failed to deliver results that could have saved Walmart billions of dollars, including completing "0% for the first two projects and 50% for the third project" and failing to hand over its proprietary software. *Id.* at 16.

Despite Infogain's poor performance, Mehra and Milbourne gave Infogain more projects with only vague objectives that Walmart paid Infogain to complete—sometimes after the fact, even though vendors are usually paid before completing work—and then offered Infogain a new project worth "a few million dollars" over six months "with the possibility to renew those contracts for years to come." *Id.* In August 2023, after Jana learned of that new project, he began informing his Walmart supervisors of suspected shareholder fraud and antitrust violations, including "possible violations of Antitrust Laws in particular procurement fraud, possible fraud in Corporate Responsibility for Financial Reports, possible fraud in internal control of issuers for financial reporting, possible fraud to Shareholders and possible fraud under [the] Foreign Corrupt Practices Act (FCPA)." *Id.* at 18. He also refused to "sign off" on Infogain's work because of its poor quality, believing that doing so would constitute criminal fraud. *Id.* at 20. But Bay signed off on the work, noting at some point (it is unclear when) that he wanted the Infogain project to work for the sake of Mehra, his supervisor with whom he had worked at Sam's Club.

Based on Jana's conversations with his supervisors, Walmart investigated Jana's claims but closed its investigation without providing Jana any details. One week later, Walmart's HR department recommended that Jana be terminated. Milbourne then reprimanded Jana for failing to deliver on a project and publicly reassigned Jana's work to Bay. And Mehra failed to meet with Jana to discuss his concerns about the reassignment. Jana speculates that Milbourne intended the project to be impossible and reassigned the work so that Jana would speak up and give Walmart a reason to fire him. And Jana did speak up, submitting a formal ethics complaint against Milbourne and publicly criticizing Mehra. Shortly after, Walmart terminated Jana and gave Jana's former position to Bay. About one year later, Walmart terminated Bay, Milbourne, and Mehra despite their years of service.

Believing his termination to be retaliation for whistleblowing, Jana sued. Walmart moved to dismiss for failure to state a claim and to strike Jana's response and sur-reply. Jana moved for leave to file his sur-reply with excess pages. The court held a hearing on all three motions.

## LAW

Federal Rule of Civil Procedure 12(b)(6) authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Motions under that rule "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In considering such a motion, the court must first identify and exclude legal conclusions in the complaint that "are not entitled to the assumption of truth," then consider the remaining "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must accept as true all well-pleaded facts and view them in the light most favorable to the plaintiff. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). A complaint will survive a motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering the motion, the court may not look beyond "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v.*

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted).

## DISCUSSION

### I. The Motions to Strike and for Excess Pages

Walmart moved to strike Jana's response to the motion to dismiss, Dkt. 29, because Jana failed to follow Local Rule CV-10(a)(5), which requires double spacing. Walmart asserts that, had Jana followed that rule, the response would have exceeded the 30-page limit set by Local Rule CV-7(a)(1). Walmart also moved to strike Jana's sur-reply, Dkt. 31, because it likewise was not double spaced, *see* Loc. R. CV-10(a)(5), and because it exceeded the permissible 10-page limit, Loc. R. CV-7(a)(1). Additionally, Walmart moved to strike the sur-reply because Jana attached a flash drive to it without serving the contents of the drive on Walmart. Walmart argues that the court cannot consider that evidence because it was not served on Walmart and because the court is limited to the pleadings when ruling on a motion to dismiss.

Jana argues that Walmart's motion fails to meet the standard for striking under Rule 12(f). He argues that Walmart will not be prejudiced if the motion is denied and that the evidence attached to his sur-reply should be considered by the court because it was incorporated by reference in the complaint. He also asserts that Walmart was served with the evidence through the court's electronic-filing system and that there is good cause to grant him leave to file excess pages because he did not know he was violating a rule and he made that mistake only because he was rushing to file the document around Christmas. He also appears to argue that there is good cause to grant leave because he is a pro se litigant. Citing Local Rule CV-7(k), he adds that if the court decides to strike pages, it should strike only the excess pages of his sur-reply rather than the entire document. Relying on many of those same arguments, Jana moved for leave to file the extra pages of his sur-reply.

4

Walmart argues that it is prejudiced by the sur-reply because Jana attached new evidence to it, which meant that Walmart did not have the opportunity to respond to that evidence. Walmart asserts that Rule 12(f) is inapplicable because it applies only to pleadings and not a response or sur-reply and that Walmart instead asks to strike pursuant to the court's inherent authority to strike a filing that does not comply with the local rules. It also argues that Jana claims ignorance of the local rules only when doing so works in his favor. And in response to Jana's motion for leave, Walmart argues that the motion is untimely because the local rules require such a motion be filed immediately before the sur-reply. *See* Loc. R. CV-7(k). Walmart adds that the deadline to file responsive documents has also passed, so the motion to file excess pages is doubly untimely. Finally, Walmart states that the entire sur-reply should be struck because it raises arguments that Jana calls "central" to his claims without giving Walmart the opportunity to respond.

In reply, Jana states that he did not realize Walmart did not receive the contents of the flash drive but assures the court that Walmart now has a link to its content. He also repeats his previous arguments that there is no legal basis for the court to strike the entire sur-reply and that there is good cause for him to file excess pages.

Although Walmart expressed concern that it did not have an opportunity to address new arguments raised in the sur-reply, it did not identify what arguments those were. And to the extent Walmart objected to the evidence on the flash drive, the court agrees that it may not consider that evidence and will decline to do so. As to Jana's failure to follow the local rules, "courts may overlook a party's failure to abide by the local rules and choose to rule on a motion's merits instead." *Gibson Brands, Inc. v. Armadillo Distribution Enters., Inc.*, No. 4:19-CV-00358, 2023 WL 2899050, at *4 (E.D. Tex. Apr. 11, 2023), *appeal dismissed sub nom. Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, No. 24-40198, 2024 WL 4432084 (5th Cir. June 17, 2024). The court will do so here by denying Walmart's motion to strike and granting Jana's motion for excess pages. Those rulings should not, however, be mistaken for invitations for Jana to violate the local rules again. The court may strike Jana's future filings for violations of those rules. *See, e.g.*, Dkt. 73. And Jana should avoid excessive use of single-spaced quotations in future filings.

## II. The Motion to Dismiss

Walmart argues that Jana's complaint should be dismissed because it does not establish that Jana had an objectively reasonable belief that a SOX or CAARA violation occurred, such that his actions would qualify as protected activity under those statutes. Jana disagrees, arguing that he has sufficiently alleged an objectively reasonable belief that violations occurred. He adds that Walmart's reason for firing him was pretextual and that Walmart's motion should be denied based on the unclean-hands doctrine. Because Jana has sufficiently alleged that he engaged in protected activity, Walmart's motion to dismiss should be denied. Walmart will be able to present its arguments more fully at the summary-judgment stage.

### A. The SOX claim

Walmart argues that Jana's complaint should be dismissed because it does not establish that Jana had an objectively reasonable belief that a SOX violation occurred, so he has not sufficiently alleged that he engaged in protected activity. Walmart asserts that the Fifth Circuit requires a plaintiff to "at least approximate the basic elements" of the underlying claim in his complaint. Dkts. 22 at 19 (quoting *Day v. Staples Inc.,* 555 F.3d 42, 55 (1st Cir. 2009)), 30 at 5 (relying on a footnote in *Allen v. Administrative Review Board*, 514 F.3d 468, 480 n.9 (5th Cir. 2008)). And according to Walmart, Jana's belief that a violation occurred could not be reasonable because he lacked a legal understanding of such claims and because "no reasonable person in [Jana]'s role would arrive at the baseless legal conclusions that [Jana] has littered throughout the Complaint." Dkt. 22 at 18.

In response, Jana asserts that he need not "establish" anything at this stage. He argues that he must satisfy only Rule 8's pleading standard and that his complaint is to be construed liberally because of his pro se status. And even if he did have to establish something, he asserts that he pled enough facts to show that he had an objectively reasonable belief that violations had occurred based on the hiring of and ongoing relationship with Infogain despite its poor performance and Walmart's eventual investigation and firing of Mehra. And he disagrees that he must have legal training to have a reasonable belief that violations occurred.

6

Although Walmart agrees that Jana must abide by Rule 8's pleading standard, it argues that Jana must still plead facts suggesting that his belief that a violation occurred was reasonable. And according to Walmart, its firing of Mehra suggests mismanagement, not a SOX violation. But Jana asserts that the Compliance Vice President at Walmart found Jana's asserted violations credible, and the complaint alleges that Walmart managers at the very least took Jana's allegations seriously by opening, and then escalating, an investigation. *See* Dkt. 13 at 18–19, 23. In light of those allegations, the question of Jana's allegedly reasonable belief cannot be decided on a motion to dismiss.

> SOX protects employees from retaliation for engaging in protected activity, which is
>
> > any lawful act done by the employee . . . to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission ["SEC"], or any provision of Federal law relating to fraud against shareholders[.]

18 U.S.C. § 1514A(a).

To succeed on a whistleblower claim under SOX, an employee must allege, and ultimately prove by a preponderance of the evidence, that (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Allen*, 514 F.3d at 475–76. "[A]n employee's reasonable belief" as required by § 1514A "must be scrutinized under both a subjective and objective standard." *Id.* at 477. "The objective reasonableness of a belief is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee." *Id.* "Importantly, an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected." *Id.* "In cases involving the sixth 'catch-all' category," that is, a violation of any provision of federal law relating to fraud against shareholders, "the employee must reasonably believe that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders."

7

*Allen*, 514 F.3d at 480; *see, e.g.*, Dkt. 13 at 15–16 (allegations regarding alleged deceptive activity by Walmart managers). "If the employee establishes these four elements, the employer may avoid liability if it can prove 'by clear and convincing evidence' that it 'would have taken the same unfavorable personnel action in the absence of that [protected] behavior.'" *Id.* at 476; *see* 18 U.S.C. § 1514A(b)(2)(C); 49 U.S.C. § 42121(b)(2)(B)(i); 29 C.F.R. § 1980.109(a)–(b).

In its motion to dismiss, Walmart focuses on the first of those elements, arguing that Jana has not sufficiently alleged that he engaged in a protected activity. Walmart asserts that Jana had to plead that he had an objectively reasonable belief that shareholder fraud occurred to satisfy that element. Relying on *Day,* 555 F.3d at 55, Walmart argued that for Jana "[t]o have an objectively reasonable belief there has been shareholder fraud, [his] theory of such fraud must at least approximate the basic elements of a claim of securities fraud." Dkt. 22 at 19.

The Fifth Circuit has not adopted *Day*, however, so at a hearing on the motion, the court asked Walmart for its best Fifth Circuit case. *See* Minute Entry for Feb. 24, 2025. Walmart pointed to *Allen*. And in its reply brief, Walmart relied on a footnote in *Allen*. Dkt. 30 at 5; *see Allen*, 514 F.3d at 480 n.9. That footnote discusses SOX claims under the sixth catch-all category, which includes when an employer fails to disclose something to its shareholders. The Fifth Circuit noted that a "generic fraudulent omission claim" under the "catch-all" category appeared to be "essentially a watered-down Rule 10b–5 claim." 514 F.3d at 480 n.9; *see* 17 C.F.R. § 240.10b–5 (making it illegal in connection with the purchase or sale of any security to (1) employ any device, scheme, or artifice to defraud, (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (3) engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person). And "[i]n cases involving an alleged fraudulent omission in violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5, the objective reasonableness of the employee's belief is evaluated in part through reference to the elements of a Rule 10b–5 claim."

8

But later in the same footnote, the court stated: "Because we conclude that substantial evidence supports the [Administrative Law Judge's] and [Administrative Review Board's] factual finding that [the employer] did not act with fraudulent intent . . ., we need not decide whether the objective reasonableness of all generic fraudulent omission complaints must be evaluated in part through reference to the elements of a Rule 10b–5 claim." *Id.* Because the court did not reach that question, *Allen* does not require a plaintiff's allegations to approximate the elements of shareholder fraud. *See also Seybold v. Charter Commc'ns, Inc.*, No. 3:21-CV-228-X, 2022 WL 675804, at *3 (N.D. Tex. Mar. 7, 2022) (declining to "extrapolate that footnote" to dismiss a claim when the plaintiff failed to plead materiality, one of the elements of a Rule 10b-5 claim, *see* 17 C.F.R. § 240.10b–5(b)).

Further, Walmart's attempt to litigate the factual reasonableness of Jana's belief at this stage fails. In *Wallace v. Tesoro Corp.*, in reviewing a ruling on a motion to dismiss, the Fifth Circuit noted that "[t]he objective reasonableness of an employee's belief under SOX cannot be resolved as a matter of law 'if there is a genuine issue of material fact.'" 796 F.3d 468, 479–80 (5th Cir. 2015). It then found that the plaintiff "cleared the low hurdle of pleading a plausible case for relief," *id.* at 482, by pleading that he thought the accounting practice he reported violated SEC rules because "[t]he basis for that belief in this case, including the level and role of [the plaintiff's] accounting expertise and how that should weigh against him, are grounded in factual disputes that cannot be resolved at this stage of the case," *id.* at 480.

Likewise, Jana has alleged that he believed Walmart was defrauding its shareholders and the basis for that belief is grounded in factual disputes that cannot be resolved at this stage. In addition to the allegations already noted and cited in this order, Jana alleged that Mehra met with Infogain before the bidding process and expressed her preference for Infogain during the process and that Bay created a scoring system that was designed to help Infogain win the bidding process. Once Infogain's bid was selected, Mehra flew to India, where Infogain was located. Infogain then began charging Walmart hundreds of thousands of dollars more than the initial bid and underperformed or outright failed to provide a product that could have saved Walmart billions of dollars. Yet

9

Walmart continued to extend its relationship with Infogain, including awarding it a new project (without collecting competing bids) that would cost Walmart over a million dollars. And when Jana refused to sign off on Infogain's work (because he believed doing so was fraud), he was fired while his colleague, who agreed that Infogain's work was subpar, signed off on that same work and was given Jana's job. Additionally, he alleges that only a year after Walmart investigated his claim, it fired Bay, Milbourne, and Mehra despite their previous years of service.

### B. The CAARA claim

As with the SOX claim, Walmart argues that Jana failed to allege a reasonable belief that Walmart violated an antitrust law because he failed to allege the basic elements of an antitrust claim. It adds that any reasonable person would perform a Google search of the basic contours of a CAARA claim before concluding that bid-rigging and procurement fraud occurred based on Walmart's relationship with Infogain. Jana again argues that he sufficiently pled an objectively reasonable belief under Rule 8's forgiving pleading standard.

CAARA protects employees from retaliation for engaging in protected activity. Protected activity means to provide or cause to be provided information relating to

> any violation of, or any act or omission the covered individual reasonably believes to be a violation of, the antitrust laws; or . . . any violation of, or any act or omission the covered individual reasonably believes to be a violation of, another criminal law committed in conjunction with a potential violation of the antitrust laws or in conjunction with an investigation by the Department of Justice of a potential violation of the antitrust laws[.]

15 U.S.C. § 7a-3(a)(1). Under CAARA, "antitrust laws" refers to 15 U.S.C. §§ 1 and 3, which make "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce" illegal. *See* 15 U.S.C. § 7a-3(a)(3)(A).

CAARA is relatively new, *see* Pub. L. No. 116-257, 134 Stat. 1147, and neither the Supreme Court nor the Fifth Circuit has enumerated the elements a plaintiff must prove to succeed on a claim under it. Congress, however, stated that CAARA is to be "governed by the legal burdens of proof set forth in section 42121(b) of Title 49." 15 U.S.C. § 7a-3(b)(2)(C); *see* 29 C.F.R. § 1991.109,

10

which is the same burden-shifting framework that governs a SOX claim, *see* 18 U.S.C. § 1514A(b)(2)(C); 29 C.F.R. §§ 1980.109(a)–(b), .114(b); *Allen*, 514 F.3d at 475–76.

As already noted, the Fifth Circuit has concluded that, to prevail on a SOX claim under that framework, "an employee must prove by a preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Allen*, 514 F.3d at 475–76 (footnotes omitted). As with Jana's SOX claim, it remains to be seen whether Jana will be able to meet his corresponding burden under CAARA. Walmart may be able to show at the summary-judgment stage that he cannot. At this stage, though, and in the absence of binding precedent addressing CAARA's requirements, the allegations in the complaint are sufficient to survive Walmart's motion to dismiss. *See Wallace*, 796 F.3d at 479–80, 482.

### C. Walmart's affirmative defense

Walmart argues that even if Jana pled an objectively reasonable belief that a SOX or CAARA violation occurred, his claims should be dismissed because an affirmative defense appears on the face of his complaint. In Walmart's view, the complaint shows that Walmart would have fired Jana in the absence of his protected behavior because he "engaged in insubordination and created a toxic work environment." Dkt. 22 at 26. Walmart relies on an email that Wendy Bowman, a Walmart Human Resources employee, sent recommending that Jana be fired for "[o]utbursts and disrespect at team meetings." Dkt. 22 at 29. Jana argues that Walmart has changed its stated reasons for firing him during this litigation and that those changes demonstrate pretext and that he was actually terminated in retaliation for his whistleblowing.

Walmart "may avoid liability if it can prove 'by clear and convincing evidence' that it 'would have taken the same unfavorable personnel action in the absence of that [protected] behavior.'" *Allen*, 514 F.3d at 476. And courts can "grant Rule 12(b)(6) motions when the pleadings demonstrate that the plaintiff cannot overcome affirmative defenses such as absolute and qualified immunity, statute of limitations, statute of frauds, laches, or *res judicata*." *Bell v. Eagle Mountain*

11

*Saginaw ISD*, 27 F.4th 313, 320 (5th Cir. 2022). To support dismissal, "the pleadings must reveal beyond doubt that the plaintiffs can prove no set of facts that would overcome the defense or otherwise entitle them to relief." *Id.* (quotation marks omitted).

Jana's complaint does not demonstrate beyond doubt that Walmart would have fired Jana even without his whistleblowing. The complaint alleges that Walmart assigned Jana an impossible task to provoke his termination and terminated him shortly after his whistleblowing despite years of positive performance reviews. And Walmart's identification of actions alleged in the complaint that could have, but may not have, caused Walmart to terminate Jana is insufficient. *See Parker v. BNSF Ry. Co.*, 137 F.4th 957, 964–65 (9th Cir. 2025) (explaining that "the employer must prove that it 'would have' taken the same personnel action had the employee not engaged in protected activity; proving simply that it 'could have' taken the same personnel action does not suffice"). The court therefore need not consider at this stage whether Walmart's stated reason for firing Jana is pretextual.

### D. The unclean-hands doctrine

Jana argues that Walmart altered the email from HR recommending his dismissal to hide the real reason he was fired, so he asserts that Walmart's motion to dismiss should be denied under the unclean-hands doctrine. Walmart argues that the unclean-hands doctrine does not apply here because Jana seeks a legal, rather than an equitable, remedy. But Jana asserts that the unclean-hands doctrine does apply because he is seeking declaratory and injunctive relief. Because the court recommends that Walmart's motion to dismiss be denied for other reasons, it need not reach that issue.

### E. Leave to amend

Jana argues that, if the court grants Walmart's motion to dismiss, it should grant him leave to amend his complaint. Walmart asserts that Jana's request should be denied because Jana has already amended and did so without leave of court. Because the court will recommend that the motion be denied, the court need not reach that issue, either.

## CONCLUSION

It is **ORDERED** that Walmart's motion to strike, Dkt. 32, is **DENIED,** and that Jana's motion for leave, Dkt. 33, is **GRANTED**.

It is **RECOMMENDED** that Walmart's motion to dismiss, Dkt. 22, be **DENIED**.

\* \* \*

Within 14 days after service of this report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made. *Id.* § 636(b)(1). Failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

So **ORDERED** and **SIGNED** this 15th day of August, 2025.

_____
Bill Davis
United States Magistrate Judge