# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

**FILED**

OCT 0 7 2025

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

| | | |
|---|---|---|
| IN THE MATTER OF: | § | |
| | § | |
| DILIP JANA | § | Civil Action No. 4:24-cv-00698-SDJ-BD |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| WALMART, INC., | § | |
| *Defendant.* | § | |

---

### PLAINTIFF'S STATEMENT REGARDING OCTOBER 6 HEARING

---

Good afternoon, Your Honor. I appreciate the Court's time and I fully respect whatever decision the Court makes. My purpose today is simply to help protect the integrity of this Court's record.

Your Honor, this hearing is really about one thing — whether **"Walmart's Supplemental Production"** on July 18 ("July 18 dump") can even count as real discovery. If those documents can't be trusted — because they were changed, not certified, or created later — then nothing else in this case can move forward on a true and honest record.

So before we talk about anything else, we first need to decide whether that July 18 document dump is genuine and lawful discovery, or whether it's a bad-faith dump meant to cover up what really happened. For Court's Convenience, Plaintiff is providing July 18 Dump here:

7/28/25, 3:45 PM

Gmail - Walmart's Supplemental Production

 Gmail

Dilip Jana <janadilip@gmail.com>

## Walmart's Supplemental Production

2 messages

Christina De Leon <GT-LiquidFiles@gtlaw.com>
Reply-To: deleonch@gtlaw.com
To: janadilip@gmail.com
Cc: peter.wahby@gtlaw.com, holmes.hampton@gtlaw.com, morgan.jones@gtlaw.com

Fri, Jul 18, 2025 at 2:00 PM

Hello,

Below please find a link to Walmart's Supplemental production.

The password is:

Thank you,

**Christina DeLeon**
Paralegal

Greenberg Traurig, LLP
2200 Ross Avenue | Suite 5200 | Dallas, TX 75201
T +1 214.665.3618 | F +1 214.665.5917
deleonch@gtlaw.com | www.gtlaw.com

## Secure Message Info

Message ID

Message
Expires        Monday, 28 July

Message URL

Permission     Only specified recipients can access the files attached to this
               message.

7/28/25, 3:45 PM

Gmail - Walmart's Supplemental Production

## Files attached to this message

| Filename | Size |
|----------|------|
| .zip | 42.3 MB |

Download Files

Reply to this Secure Message

You will need to authenticate to view this Secure Message. If you don't have an account on files.gtlaw.com, you can still click on the download link and you will be prompted to validate your email.

If you need assistance accessing or using this system, please contact the sender.



### GT GreenbergTraurig

**Greenberg Traurig — Liquid Files: https://files.gtlaw.com**

---

**Dilip Jana** <janadilip@gmail.com>                                                Mon, Jul 21, 2025 at 2:33 PM
To: deleonch@gtlaw.com
Cc: peter.wahby@gtlaw.com, holmes.hampton@gtlaw.com, morgan.jones@gtlaw.com, Dilip Jana <janadilip@gmail.com>

Dear Mr. Wahby,

I acknowledge receipt of Walmart's July 18, 2025 "Supplemental production", which includes password-protected files.

Please clarify the basis and scope of this production, including identification of the applicable discovery request or disclosure category, and whether Walmart designates any of these documents as confidential or subject to the Protective Order currently in effect.

I also note that the production lacks a Rule 26(g)-compliant signature or certification.

Kind regards,

Dr. Dilip Jana

800 Fairlawn St, Allen, TX 75002

Ph: 318-243-9743

EMail: janadilip@gmail.com

[Quoted text hidden]

https://mail.google.com/mail/u/0/?ik=9f87c01cec&view=pt&search=all&permthid=thread-f:1838012402072893676&simpl=msg-f:1838012402072893676…    2/3

---

## I. July 18 Dump Is Not a Discovery Document

As stated in Dkt 111:

> *The July 18 Dump was served by paralegal transmission without certificate of service and without reference to any discovery category. Exhibit 3 is not a Rule 26(a)(1) Initial Disclosure (Walmart produced zero documents in April 2025), not a Rule 26(e) supplement (which presupposes a prior disclosure), and not a Rule 34 response (Plaintiff had withdrawn all requests by July 11, 2025). As such, Exhibit 3 is not part of discovery at all and is inadmissible.*

At the core of these 4 motions, there is only one issue – this is a very simple issue. My Motions Dkt 94, 106, 108 and 109 asked to strike Walmart's July 18 "supplemental production" ("July 18 Dump"). As Dkt 108 states:

> *"Rule 26(g)(2) imposes a ministerial duty that cannot be deferred: the court must strike any unsigned disclosure, request, or response unless promptly cured after notice. Walmart's July 18, 2025 transmission was served by paralegal link without attorney certification, and despite Plaintiff's written notices on July 21, July 24, and August 4, no Rule 26(g) signature or category identification has ever been supplied. Weeks later, the defect remains uncured. **The issue is binary, <u>not discretionary</u>: either Rule 26(g)(2) applies and the set must be stricken, or Rule 37(c)(1) independently bars its use"** (emphasis added)*

Walmart's July 18 dump is legally void. Walmart never identified it as Initial Disclosures, RFP responses, or Interrogatory answers. Plaintiff had withdrawn his RFPs on July 11, and Walmart never gave sworn Interrogatory answers. If it were a supplemental disclosure under Rule 26(a)(1)(E), it was unsigned, violating Rule 26(g)(2), which mandates striking. The Court therefore faces not a discovery "supplement," but an **orphaned dump of fabricated evidence with no basis in the Rules.** Rule 37(c)(1) bars Walmart from using any such undisclosed or unsigned information. Default judgment is required, as lesser sanctions cannot cure the prejudice.

**Rule 26(g) Violations Are Non-Curable and Warrant Striking**

Walmart's reliance on *Itamar* is misplaced. *Itamar* merely held that productions within **already-signed discovery responses** could be treated as covered by the existing signature. It did not rewrite Rule 26(g) to allow paralegal email dumps, **orphaned** "supplementals," or retroactive re-branding of uncertified transmissions. The text of the Rule is categorical:

> *"Every disclosure … must be signed"* by counsel of record. Fed. R. Civ. P. 26(g)(1).

The consequence is automatic:

> *"Other parties have no duty to act … and the court must strike it unless a signature is promptly supplied." Fed. R. Civ. P. 26(g)(2).*

No signature was ever supplied for the July 18 Dump, despite Plaintiff's repeated objections ( July 21, July 24, August 4). **Striking is not optional – "*court must strike it".***


**Rule 26(a)(1) and Rule 37(c)(1) Mandate Preclusion**


Separately, Rule 26(a)(1)(A)(ii) required Walmart to disclose any documents it might use to support its defenses. Its failure to do so triggers Rule 37(c)(1), which makes **exclusion the default.** Walmart cannot rely "on a motion, at a hearing, or at trial" on evidence it failed to disclose. There is no substantial justification and no harmlessness; the prejudice is absolute. Because Walmart produced nothing else in discovery, striking and preclusion leave the record barren of defense evidence.

# Walmart's Initial Disclosure

*(Dkt. **70-1** (PageID 1068–1073) )*

**Governing Laws:**

**A. Rule 26(a)(1)(A)(ii)** — Initial disclosure of documents/ESI

"**A copy**—or a **description by <u>category and location</u>**—**of all documents, electronically stored information, and tangible things** that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."

Rule 26(g)

(g) SIGNING DISCLOSURES AND DISCOVERY REQUESTS, RESPONSES, AND OBJECTIONS

(1) *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

(i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(2) *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

(3) *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

**B. Rule 26(g)(1) — Signature/certification of disclosures**

"Every disclosure under Rule 26(a)(1) or (a)(3) … must be signed by at least one attorney of record in the attorney's own name … By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A) with respect to a disclosure, **it is complete and correct as of the time it is made**; …"

**C. Rule 26(g)(2) — consequence for missing signature:**

"Other parties have no duty to act on an unsigned disclosure … and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention."

**D. Rule 26(e) — Supplementing**

(1) In General. A party **who has made a disclosure under Rule 26(a)** — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:

(A) in a timely manner *if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or*

(B) as ordered by the court."

**E. Rule 37(c)(1) — Automatic use-bar for failure to disclose**

"If a party **fails to provide information … as required by Rule 26(a) or (e),** the **party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial**, **unless** *the failure was substantially justified or is harmless*."


## Walmart Never Made a Valid Rule 26(a)(1)(A)(ii) Disclosure — So There Is Nothing to "Supplement" Under Rule 26(e)


**What Walmart Did — and What's Missing**

Record: Walmart's purported Initial Disclosures (Apr. 7, 2025) appear at Dkt. 70-1 (PageID

1068–1073). In that filing Walmart:

1. Did not produce "a copy" of any documents or ESI.

2. Did not provide "a description by category and location" of documents/ESI it may use (no custodians, no repositories, no paths, no Bates ranges, no locations).

3. Conditioned production on a protective order (a promise of future production is not an initial disclosure).

4. Provided no Rule 26(g)(1) certification that the disclosure was "complete and correct as of the time it is made."

This is a wholesale failure of Rule 26(a)(1)(A)(ii) and Rule 26(g)(1). Under Rule 26(g)(2), such an unsigned/uncertified disclosure must be stricken absent prompt correction. Walmart never corrected.

### C. Concrete Example (Wendy Bowman Email)

Walmart's Initial Disclosures (Dkt. 70-1, PageID 1068–1073) produced no documents and stated that no production would occur absent a protective order. Later, after the Court entered a protective order, Walmart included in its July 18, 2025 dump Wendy Bowman's October 4, 2023 email.

That email was **not** designated "**Confidential**" in the July 18 production and was filed on the docket without any protective designation (see Dkt. 111-3, Ex. 3). By Walmart's own actions, it was never confidential.

If the Wendy Bowman email was not confidential, then nothing prevented Walmart from producing it with its April 7, 2025 Initial Disclosures. Rule 26(a)(1)(A)(ii) required Walmart to produce either "a copy—or a description by category and location" of all documents or ESI it may rely upon. Walmart did neither. It withheld even non-confidential evidence.

The failure to produce that email in April 2025 proves:

1. No protective order excuse. Walmart cannot claim it was barred from producing the email at the initial disclosure stage, since it later produced it without a confidentiality stamp.

2. No valid supplementation. Because Walmart failed to disclose the email when Rule 26(a)(1)(A)(ii) required it, it cannot cure that failure by a paralegal-served, uncertified dump three months later.

3. Automatic exclusion under Rule 37(c)(1). The Wendy Bowman email is precisely the type of evidence that must be excluded. Walmart's failure to disclose it at the baseline stage means it cannot be used "to supply evidence on a motion, at a hearing, or at a trial," absent substantial justification or harmlessness — neither applies.

**This example illustrates why the July 18 dump cannot be salvaged as a "supplement." Walmart never established a valid Rule 26(a)(1) baseline disclosure, and it withheld even non-confidential material that should have been disclosed from the outset.**

### D. Legal Consequence: No Baseline → No Supplementation

Rule 26(e)(1)(A) allows supplementation only for "a party who has made a disclosure under Rule 26(a)". **Walmart did not**. **Because there is no valid baseline disclosure of documents/ESI,** the July 18, 2025 dump (served by paralegal Alma, uncertified, and untethered to any discovery category) **cannot be a "supplement" under Rule 26(e)**. **It belongs to no discovery category under Rules 26(a), 26(e), or 34.**

Under Rule 37(c)(1), Walmart is therefore not allowed to use the July 18 materials "to supply evidence on a motion, at a hearing, or at a trial," absent a showing of substantial justification or harmlessness (neither applies here).

Plaintiff Notified this Court and Walmart on May 5, 2025 (**Dkt 62, PageID 840-844**) Walmart's Incomplete/Evasive Initial Disclosure but Walmart never Corrected it's Initial Disclosure. Now Court MUST strike Walmart's Initial Disclosure.

**Separately, under Rule 26(g)(2), the Court must strike Walmart's non-certified "disclosure."**

### What Itamar actually decided (and why Walmart's analogy fails)

- What Itamar produced: In Itamar v. Ectosense, the producing party served written Rule 34 responses and actually produced documents. There was confusion in the record because two different RFP/response sets were referenced (one attachment had the "correct" set), but bottom line: documents were produced with counsel's Rule 26(g) signature in place.

- What the issue was: The requesting party demanded extra, court-ordered certifications (beyond Rule 26(g))—sworn assurances that each custodian made a "good-faith and diligent" search. The court declined to force extra certifications, explaining that Rule 26(g) already imposes that duty and courts presume compliance absent concrete proof otherwise. In short, Itamar was a fight about search adequacy and additional certifications, not about unsigned disclosures, no privilege log, or productions untethered to any discovery category.

### Why Itamar does not control here

1. This is not a fight about "extra certifications"—it's about baseline, mandatory duties.

   In Itamar, the court refused to layer **additional certifications on top of Rule 26(g)'s presumption**. Here, Plaintiff is not asking for anything extra; Plaintiff seeks enforcement of the baseline the Rules already require:

- ○ Rule 26(a)(1)(A)(ii): "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things…."
- ○ Rule 26(a)(1)(E): disclosures must be based on information then reasonably available; they may not be withheld pending a protective order.
- ○ Rule 26(b)(5)(A): if withholding on privilege/work product, a privilege log is required.
- ○ Rule 26(g)(1): counsel's signature certifies the disclosure/response is "complete and correct as of the time it is made."
- ○ Rule 26(g)(2): an unsigned disclosure/response "must be stricken unless a signature is promptly supplied…."
- ○ Rule 33(b)(3)–(5): interrogatory answers must be in writing, under oath, signed by the party; objections must be signed by the attorney.
- ○ Rule 34(b)(2): tie each response to each RFP; state with specificity what is being produced/withheld.
- ○ Rule 37(c)(1): non-disclosed information may not be used unless harmless or substantially justified.

**Walmart never met the baseline in its Initial Disclosures**

**On April 7, 2025, Walmart served "Initial Disclosures" that:(See the binder, Dkt 70-1)**

- ○ Produced zero documents;
- ○ Listed only broad categories and conditioned production on a protective order;
- ○ Identified no locations for documents/ESI;
- ○ Reserved privilege/work-product yet provided no privilege log;
- ○ Nonetheless carried counsel's Rule 26(g) signature asserting the disclosures were "complete and correct."

Itamar involved a producing party who had already produced documents with a Rule 26(g) signature and was being asked for extra assurances. Here, Walmart didn't do the minimum Rule 26(a)(1)(A)(ii)/(E) require.

Plaintiff filed two Notices (Dkt 62 and 70) about Walmart's Incomplete and Evasive Initial Disclosure, Walmart never tried to cure.

**The July 18 paralegal productions were not signed under Rule 26(g) and were not tied to any discovery category.**

July 18, 2025: Uncertified paralegal production (the "zip" dump), again not tied to any specific discovery request/disclosure category, and again without a Rule 26(g) certification.

In Itamar, the fight was over search sufficiency and extra certifications; there was no pattern of unsigned productions untethered to the discovery rules. Rule 26(g)(2) is explicit: other parties have no duty to act on an unsigned disclosure/response, and the **court must strike** it unless a signature is promptly supplied. That's the exact opposite of Itamar's posture.

**Evidence-fabrication/spoliation is a world apart from Itamar.**

Your forensic showings identify uniform October 20, 2024 modification timestamps across multiple attachments and .eml files lacking the expected transport headers (e.g., missing "Received" chains)—classic red flags for reconstruction rather than contemporaneous transmission. Itamar was not an evidence-fabrication case; it was an adequacy case. Here, the problem is fabrication and misrepresentation, which falls outside Itamar's rationale and supports Rule 37(b)/(d) terminating sanctions.

**Conditioning mandatory disclosures on a protective order contradicts Rule 26(a)(1)(E).**

Walmart's Initial Disclosures expressly stated it would produce "upon entry of a protective order."
Rule 26(a)(1)(E) says the opposite: a party must disclose based on information then reasonably
available and cannot withhold because its investigation is not complete. Itamar does not bless gating
mandatory disclosures behind a protective order.

**The right legal consequence here (even under  Itamar's logic)**

Even Itamar presumes compliance with the baseline. Where the baseline is not met—unsigned
productions (Rule 26(g)(2)), no initial documents (Rule 26(a)(1)(A)(ii)), no privilege log (Rule
26(b)(5)(A)), no sworn interrogatory answers (Rule 33(b)(3)–(5)), and productions not tied to any
discovery rule (Rule 34(b)(2)/26(e))—the Rules provide the remedy:

- Strike the unsigned materials (Rule 26(g)(2)).

- Preclude use of undisclosed information (Rule 37(c)(1)).

- Sanctions up to default for failure to obey discovery obligations and orders (Rule
  37(b)(2)(A)(vi); 37(d)(1)(A)(ii)).

Walmart's reliance on Itamar v. Ectosense is misplaced. Itamar refused to impose extra
certifications where the producing party had already complied with Rule 26(g) and made document
productions; it was a search-adequacy case. Here, Walmart never met the baseline: it served Initial
Disclosures with no documents and conditioned production on a protective order (contrary to Rule
26(a)(1)(E)); it asserted privilege with no log (Rule 26(b)(5)(A)); it refused to provide any sworn
interrogatory answers (Rule 33(b)(3)–(5)); and it delivered paralegal "July 18 dump" with no Rule
26(g) certification and no tie to any Rule 26/34 category. Those unsigned productions must be

stricken (Rule 26(g)(2)), and the undisclosed materials precluded (Rule 37(c)(1)). U**nlike Itamar, this record also shows fabrication/spoliation (uniform October 20, 2024 modification timestamps; deficient .eml transport headers)**

I. **Impeachment of July 18 dump:**
   Please refer Wendy Bowman's October 20 email that Wendy Bowman sent to Plaintiff on

   October 20, 2023 after the termination for Wendy Bowman's original Signature block

II. **Spoliation and Fabrication of Central Evidence: Visual**

   Plaintiff respectfully request the Court to look at
   - Dkt 111 PageID 1595-1599)
   - Dkt 72

I have provided those documents in the binder.

**Impeachment of July 18 dump:**

## A. Three Conflicting Versions of the Same Email

Walmart has produced **three different versions** of the October 4, 2023 "termination recommendation" email chain — all purporting to be the same record, yet each materially altered.

1. **Exhibit 1** – Redacted Version (Produced February 21, 2024 to OSHA).

   ○ Provided as "EXHIBIT 1" in Plaintiff's Complaint (Dkt. 13).

   ○ Redacted under the label "Attorney-Client Privilege."

   ○ Withheld critical content, including HR and Ethics discussions, for 110+ days.

2. **Exhibit 2** – "Unredacted Version" (Produced June 14, 2024 to OALJ).

   ○ Provided as "EXHIBIT 2" in Plaintiff's Complaint (Dkt. 13).

   ○ Still bore the subject line "Attorney-Client Privilege" even though no lawyers were included as sender or recipient.

   ○ Included ordinary HR and Ethics communications ("We would like to discuss…", "added to the existing ethics case…") — plainly non-privileged.

3. **Exhibit 3** – OCR-Recreated Version (Produced July 18, 2025).

   ○ Served in Walmart's uncertified "document dump" (see Dkt. 109).

   ○ Metadata reveals Exhibit 3 was created in **July 2025** by Tesseract OCR — nearly two years after the purported October 4, 2023 transmission.

   ○ Signature panel for Wendy Bowman differs significantly from Exhibits 1 and 2. Outlook signature blocks are static; variation proves document tampering.

As shown in Dkts. 109 and 111, forensic review demonstrates Exhibit 3 is not a contemporaneous record but a reconstructed fabrication, introduced under the shield of a protective order.

## B. Inconsistent Signature Panels as Evidence of Alteration

Plaintiff conducted forensic screenshot comparisons (Dkt. 111) of Wendy Bowman's signature panels across Exhibits 1–3. Despite each purporting to be the same October 4 email:

- **Exhibit 1** includes a compressed, low-resolution block.

- **Exhibit 2** shows spacing and formatting differences.

- **Exhibit 3** contains a distinctly different panel, inconsistent with Outlook's uniform signature reproduction.

Outlook signatures are static metadata objects. The presence of three visibly different panels in what is alleged to be the same record is irrefutable evidence of alteration.

## C. Contradictory Privilege Assertions and the "Ping-Pong" Strategy

Walmart's privilege claims around Exhibits 1 and 2 reflect deliberate manipulation:

- **April 28, 2025**: In sworn responses to Plaintiff's Interrogatories and RFPs, Walmart asserted that Exhibits 1 and 2 were privileged (Dkt. 72-1; Dkt. 62-2).

- **June 25, 2025**: In its Reply for Protective Order, Walmart promised the Court it was "in the process of preparing a privilege log" (Dkt. 65) and the Court accepted it "Walmart served its initial disclosures, see Dkt. 65-2 at 2. And although Walmart has yet to serve its privilege log, it is in the process of doing so. See Dkt. 65 at 5." See Dkt 66

- **July 10, 2025**: Walmart abruptly reversed, claiming "Walmart has not yet withheld any responsive documents on the basis of privilege" (Dkt. 76).

Both cannot be true. If no documents were withheld, there was no basis for a privilege log. If documents were withheld, Walmart's denial was false. **This contradictory "ping-pong" was designed to mislead the Court, securing a protective order under false pretenses.**

## D. Walmart's Own Admissions of Tactical Delay

After refusing for months to answer Plaintiff's Interrogatories (Nos. 1–4), Walmart admitted in **Dkt. 88, PageID 1314**:

> "Walmart intends to supplement its responses to Interrogatories 1–4 based on its recent production of the Bowman Email… Plaintiff is free to forensically dissect the Bowman Email himself…"

This is critical. Walmart declined to answer Plaintiff's Interrogatories before June 27, when no protective order existed. Only after manufacturing Exhibit 3 on July 18 did Walmart suggest it would

answer. This sequence proves that Walmart engineered fabricated evidence first, then conditioned its interrogatory responses on that fraudulent record — **a direct attempt to mislead the Court.**

## E. Fraud Upon the Court, Not Just Plaintiff

Fraud upon the court is distinct from discovery abuse: it targets the Court itself. Here, Walmart fabricated Exhibit 3 in July 2025 and introduced it under seal, knowing the Court had already ordered all discovery disputes routed through its supervision (Dkt. 66). By producing altered evidence under the Court's protective order, Walmart deceived the Court into believing it was receiving authentic discovery. This constitutes fraud upon the Court under *Hazel-Atlas* and *Wilson*, which the Fifth Circuit recognizes as grounds for terminating sanctions.

## E. Fraudulent Intent and Impact on the Case

This is not a matter of sloppy production. Walmart:

- Created three versions of its central defense exhibit;

- Altered signature blocks of a key HR witness;

- Failed to produce native files with intact metadata;

- Made contradictory sworn statements regarding privilege;

- Hid behind a protective order obtained on false pretenses.

Such conduct strikes at the heart of Plaintiff's retaliation claim. The October 4 email chain is the linchpin of Walmart's defense under 49 U.S.C. § 42121(b)(2)(B)(ii). By fabricating and altering that very exhibit, Walmart destroyed the possibility of a fair adjudication on the merits.

## A. Spoliation and Fabrication of Central Evidence: Forensic

### *Based on Evidence in Dkts. 95, 109, 111, and Associated Exhibits*

In any real email, the flow is:   Sender → SMTP/Exchange server → Receiver.



Each time the message passes through an SMTP server, that server adds a Received: header showing:

- o   Which server handled it,
- o   The time/date,
- o   The IP or hostname.

So, a legitimate sent message will always have at least one Received: line (often many, depending on hops).



## What's Missing in Walmart's Evidence

1. No Received Headers

    ○ Missing server stamps = missing proof of delivery.

2. No Server-Native Export

    ○ A true Exchange/Office 365 export would show complete headers and MIME boundaries.

    ○ What you got was a later .eml export (July 2025), not a server-native record.

3. No Audit Trail / Export Log

    ○ Defendant hasn't explained who exported it, when, or with what tool.

    ○ That's critical because the "attachment" could have been inserted after the fact.

Every real email must go through an SMTP server, and that server stamps the message. The .eml Walmart produced has zero stamps. That means it was never sent. **If it was never sent, then it**

cannot establish that **Recommendation.docx was ever transmitted as an attachment**. What they've given us is at best a draft, not proof of communication. We need the server-native copy from Exchange with headers, or the Court should treat this as unauthenticated."

- **It has 0 Received: headers.**
- That means the email never touched an SMTP server → it was never sent.
- Without going through the SMTP stage (the middle block in the diagram), there's no way to prove the attachment (Recommendation.docx) was ever transmitted.

## 1. Spoliation and Fabrication of Central Evidence

- **Dkt 109-3 (Exhibit 1: Forensic Analysis of WM-JANA 0000260.EML)** confirms:
  - No "Received" headers → email was never transmitted through Outlook/Exchange.
  - The attached `Recommendation.docx` shows **modification on Oct 20 2024**, a year after the claimed email date (Oct 4 2023). This document has been attached at a later date and the email has never been sent.
  - Size and MIME discrepancies prove post-hoc alteration.

    *(Ref: Dkt 109-3 at PageID 1577–1578).*

- **Dkt 111-3 (Exhibit 3)** proves Walmart re-generated the same document as a **Tesseract OCR output on July 16 2025**, not a 2023 original.

- PDF metadata lists `producer: Tesseract v5.2.0.20220712,`

  `creationDate: D:20250716182801-05'00'` — incompatible with any

  contemporaneous record from 2023.

- Outlook or Adobe cannot generate such OCR tags.

  *(Ref: Exhibit A-1 PageID 1610–1613).*

**What is OCR?**

OCR means *Optical Character Recognition*. It is computer software that looks at a picture of text

(like a scanned document) and tries to turn the shapes of the letters into editable, searchable text

Walmart produced **WM-JANA_0000260** in two forms:

1. The native `.eml` (email file)

2. A **PDF generated with OCR**.

In the `.eml`, Wendy Bowman's signature block looks like a normal Outlook signature panel.

In the OCR PDF, the **same signature panel** shows **different spacing and formatting** — not because

Wendy typed it differently, but because OCR reinterpreted it in 2025 when the file was imaged.

**Why this matters**

- **If the email were authentic and native, there would be no need for OCR.** OCR is used for

  scanned paper or images, not for real electronic emails.

- By running OCR on this file in 2025, Walmart created a *second version* of the same email — one that no longer matches the original format.

- This confirms the Court is not looking at a uniform, authentic business record, but at **two inconsistent artifacts**:

  - one draft `.eml` that was never sent, and

  - one OCR-created PDF generated nearly two years later.

Optical Character Recognition ("OCR") is a software process that converts pictures of text into machine-readable text. OCR is commonly used to digitize paper documents or scanned images, but it necessarily changes the layout and is not a faithful copy of the original file. In this case, Defendant produced WM-JANA_0000260 both as a native `.eml` and as a PDF generated with OCR in July 2025. The `.eml` shows Wendy Bowman's signature panel in its native format, but the OCR PDF alters the spacing and structure of that same panel. This dual production of the same record in inconsistent forms demonstrates that Defendant is not producing a uniform native record and instead has substituted an OCR-generated derivative for the authentic email.

Defendant produced the same email (WM-JANA_0000260) in two forms: a native .eml and an OCR-generated PDF. OCR is used to make scanned images searchable, but it changes formatting and is not a faithful reproduction of the native file. The fact that Defendant produced inconsistent versions of the same record — one draft email with no Received: headers, and one OCR derivative created nearly two years later — demonstrates that the production is not authentic and lacks chain of custody.

Your Honor, this is the same record, but Walmart gave it to us in two different ways. The `.eml` shows the signature panel normally. The PDF, created later with OCR, alters it. If this were a real server-native email, there'd be one consistent version. Instead, we have two inconsistent artifacts — which means the Court cannot rely on this as authentic.

Judge, if Walmart wanted to show this email, they could have simply opened the `.eml` in Outlook and printed it to PDF. That would have been a faithful copy. Instead, they created an OCR-derived PDF, which changes the layout. That tells us two things: (1) the PDF is not a native reproduction, and (2) Walmart is giving the Court two different versions of the same record. That inconsistency alone makes the evidence unreliable.

- **Dkt 109-4 (Exhibit 2)** expands this: every embedded `.eml` inside the master email shows modification timestamps of **Oct 20 2024**, creating a uniform post-dated footprint → a clear forensic indicator of tampering.

### Privilege Abuse

Walmart's abuse of privilege across multiple forums—OSHA, OALJ, and this Court—establishes scienter and a pattern of obstruction. This is not an isolated error but a deliberate strategy spanning twenty months.

At OSHA in February 2024, Walmart withheld Exhibit 1 on "privilege" grounds. Four months later, at OALJ, Walmart reversed itself, claiming the redactions were a "good faith error" and promising to produce attachments "subject to protective order." That representation bought Walmart time and led directly to the issuance of a protective order in June 2024.

When this case began in federal court, Walmart returned to the same tactic. In April 2025, under oath, Walmart invoked attorney-client privilege and work-product protection in response to Interrogatories Nos. 3 and 4 and RFP Nos. 1, 3, and 4 (Dkts. 72-1, 62-2). In June 2025, Walmart told this Court it was "in the process of preparing a privilege log" (Dkt. 65), and the Court relied on that assurance in granting a protective order (Dkt. 66). But just two weeks later, on July 10, 2025, Walmart reversed course again, stating it "has not yet withheld any responsive documents on the basis of privilege" (Dkt. 76). These two claims cannot both be true. If no documents were withheld, there was no basis to promise a privilege log.

This shifting posture shows intentional manipulation. Walmart first invoked privilege to shield evidence, then reversed itself once a protective order was secured, and finally used the cover of that order to inject uncertified, altered materials. The abuse of privilege was not an innocent mistake—it was a calculated delay tactic and concealment strategy. Courts have long recognized that privilege gamesmanship constitutes bad faith and supports terminating sanctions. See Chilcutt v. United States, 4 F.3d 1313, 1321 (5th Cir. 1993).

The pattern is clear: conceal, delay, mislead, and alter. That is fraud on the court. Default judgment is the only sanction that can remedy twenty months of privilege abuse.

### Walmart's Weaponization of Procedure

From the outset, Walmart has not defended this case on its merits but has weaponized procedure to suppress a whistleblower's claims. One episode captures this bad faith clearly. After Plaintiff—terminated and supporting five minor children—created a small GoFundMe page merely to survive, Walmart told this Court:

> ***"Walmart's counsel discovered that Plaintiff seems to have started posting about this lawsuit on GoFundMe, Reddit, and potentially other sites online… Plaintiff's efforts to attract public attention to this lawsuit underscore the necessity of a protective order to prevent the dissemination of confidential discovery materials online." (Dkt. 65, PageID 1003.)***

On June 27, 2025, the Court granted Walmart's Second Motion for Protective Order (Dkt. 66), adopting that narrative. Yet Walmart's reply (Dkt. 65) raised new arguments in violation of Local Rule CV-7(f), and Plaintiff was denied any opportunity to respond. Within two days, the order issued—without hearing or analysis—transforming a protective order meant to protect truly confidential materials into a device to conceal fraud.

What followed was the opposite of the "just, speedy, and inexpensive determination" required by Rule 1: a pattern of systematic discovery abuse.

• Rule 26 violations:  No initial disclosures identifying witnesses, ESI, or native files.  Walmart's assurances of forthcoming production were false; even its promised privilege log (Dkt. 65) never appeared.

• Rule 33 violations:  Walmart refused to answer interrogatories under oath.  In its June 11 email, counsel admitted it had "not substantively answered" them. No corporate verification was ever provided.

• Rule 34 violations:  No documents were produced in response to Plaintiff's requests for production.

• Privilege-log contradictions:  Walmart first swore documents were withheld as privileged (Dkts. 72-1, 62-2), then promised a log (Dkt. 65), then reversed course and claimed no documents were withheld (Dkt. 76).  These positions cannot coexist truthfully.

Instead of obeying discovery rules, Walmart used the protective order as a shield to inject fabricated evidence into the record.  Two so-called "productions"—June 9 and July 18, 2025—were both uncertified under Rule 26(g).  Forensic analysis now in the record (Dkts. 109 and 111) confirms the July 18 dump contains spoliated and manipulated material, including multiple inconsistent versions of the same October 4, 2023 email with altered metadata and signature panels.

## Walmart's Integrity Versus Litigation Conduct

Walmart's own Code of Conduct declares that "Integrity is the cornerstone of our culture" and that the company is "people led, service driven, and committed to doing the right thing." CEO Doug McMillon frequently speaks publicly about leading with empathy and grace. Yet Walmart's conduct in this litigation tells a different story.

The same corporation that proclaims integrity to its shareholders has, in this courtroom, evaded basic discovery rules, defied Local Rule CV-7(f), and used a protective order not to protect trade secrets, but to hide evidence. What Walmart calls "integrity" in its annual reports has become, in practice, a tool for procedural gamesmanship — weaponized to exhaust and silence a whistleblower who exposed internal misconduct.

The contrast could not be sharper: a company that tells the public it leads with ethics and compassion, but that in federal court fabricated evidence, ignored Rule 26(g) certifications, and violated discovery obligations that exist precisely to ensure honesty in litigation. A corporation cannot preach integrity in Bentonville while practicing deception in the Eastern District of Texas.

**95: MOTION to Strike [88] Response to Motion, Based on Walmart's Procedural Default, Failure to Address [72] MOTION for Sanctions, Local Rule Violations, and Bad Faith Litigation Conduct and Renewed Request for Criminal Referral**

**72: MOTION for Criminal Referral and Sanctions**

**ARGUMENT IN SUPPORT OF CRIMINAL REFERRAL (DKT 72): Dkt 72 arguments**

### Legal Violations Implicated

- **18 U.S.C. § 1001 – False Statements:** Fabricating metadata and misrepresenting a document's origin to a federal tribunal constitutes a material false statement.

- **18 U.S.C. § 1519 – Falsification of Records:** Altering electronic evidence with intent to influence judicial proceedings is a felony.

- **18 U.S.C. § 1503 – Obstruction of Justice:** Submitting falsified evidence to impede discovery qualifies as obstruction.

- **18 U.S.C. § 1621 – Perjury:** Declarations inconsistent with tampered timestamps are perjurious if made under oath.

### Nexus to Whistleblower Retaliation

- The altered email and OCR-regenerated PDF formed the cornerstone of Walmart's retaliation defense—its claim that Plaintiff was terminated for "performance and behavior," not whistleblowing.

- By falsifying the record, Walmart sought to erase the true timeline of protected activity (Aug 8 – Oct 12 2023 disclosures) and fabricate a retroactive "recommendation for separation."

- These actions directly obstructed Plaintiff's CAARA and SOX claims.

## 5. Referral Standard

Federal courts routinely refer such matters where there is:

- **Evidence alteration (spoliation);**

- **False representations to the tribunal;**

- **Potential criminal violation affecting case integrity.**

Precedent: *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (A court has the inherent power to refer willful fraud or bad-faith conduct to the Department of Justice.)

## Requested Action

Plaintiff respectfully requests that the Court enter an order providing:

1. Rule 26(g) Certification (Short Deadline).

   Within seven (7) days, Defendant shall file a certification signed by counsel of record pursuant to Rule 26(g) stating that the July 18, 2025 production is complete, correct, and unaltered, and identifying the discovery category to which it belongs (e.g., response to a specific RFP or initial disclosure). The certification shall be supported by a short declaration that identifies:

(a) the original custodian(s);

(b) the export method/tool used (including any OCR or conversion); and

(c) the date and time the production set was generated.

2. Limited In Camera Review (Single Item; Five Minutes).

Following the certification in ¶1, the Court will conduct a brief in camera inspection of one document—the Wendy Bowman's October 4, 2023 email—sourced directly from the original custodian's mailbox (native format with full internet headers), without further briefing or production beyond that single item.

3. Noncompliance Consequence (Self-Executing).

If Defendant fails to file a compliant certification by the deadline in ¶1, the July 18, 2025 production shall be deemed non-compliant and is stricken pursuant to Rule 26(g)(2) without further order.

4. Preservation.

Defendant shall continue to preserve all sources of potentially relevant ESI—including the original custodial mailbox for the Bowman email—and suspend any auto-deletion applicable to those sources pending completion of the steps above.

5. Neutral Reservation.

This Order shall not be construed to waive, limit, or prejudice any party's rights, objections, or remedies available under the Federal Rules of Civil Procedure or applicable law. Compliance does not retroactively validate or cure any prior discovery conduct.

Dated: October 6, 2025

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002

## CERTIFICATE OF SERVICE

On October 6, 2025, a true and correct copy of the foregoing was served upon the following through

the Court's CM/ECF system:

| Peter S. Wahby | Morgan E. Jones | Holmes H. Hampton |
|---|---|---|
| Texas Bar No. 24011171 | Texas Bar No. 24132301 | Texas Bar No. 24144019 |
| Peter.wahby@gtlaw.com | Morgan.jones@gtlaw.com | holmes.hampton@gtlaw.com |

GREENBERG TRAURIG LLP
2200 Ross Ave, Suite 5200 Dallas, Texas 75201
Telephone: 214.665.3600
Facsimile: 214.665.3601
ATTORNEYS FOR DEFENDANT WALMART INC.

Dated: October 6, 2025

Respectfully Submitted

Dilip Jana, pro se Plaintiff
Tel: 318-243-9743
EMail: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002