

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | § § | Civil Action No. 4:24-cv-00698-SDJ-BD |
| DILIP JANA | § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| WALMART, INC., | § | **RECUSAL MOTION** |
| *Defendant.* | § § | |

---

### PLAINTIFF'S UNOPPOSED MOTION (BY COURT ORDER DKT 99) TO RECUSE HONORABLE SEAN D. JORDAN

---

### UNDER 28 U.S.C. §§ 455(a), 455(b)(1), AND 144

This motion seeks the recusal of the Honorable Sean D. Jordan from further proceedings pursuant to 28 U.S.C. §§ 455(a), 455(b)(1), and 144. A reasonable, fully informed observer would question the Court's impartiality in light of: (i) the one-sentence denials at Dkts. 91–93 issued without engagement with the record grounds presented; (ii) the Court's tolerance of an extra-statutory "written confirmation" in place of Rule 26(g)'s contemporaneous certification (Dkt. 117); and (iii) a sustained pattern in which Walmart's contradictory privilege assertions, uncertified productions, and the June 9 and July 18 dumps were credited while Plaintiff's rule-based objections were not addressed on the merits. Recusal is necessary to protect due process and public confidence in the judiciary.

## A. Appearance of Partiality in the Handling of Dkt. 91 — Protective Order Procured Through Uncertified Production and Now Shielding Fraudulent Material

### 1. Overview

Plaintiff respectfully seeks recusal under 28 U.S.C. § 455(a). On the current record, the Protective Order (Dkt. 66) was entered on June 27, 2025 while Walmart's June 9 transmission lacked a contemporaneous Rule 26(g) signature; Plaintiff flagged that defect in writing on June 10. No signed certification was supplied before the order issued, and at the October 6 hearing the Court requested only a "written confirmation," indicating the absence of a contemporaneous Rule 26(g) certification. The District Court later affirmed the Protective Order (Dkt. 91) without addressing the Rule 26(g)(2) objection or the Local Rule CV-7(f) reply issue. The practical effect is that a protective order remains in place over materials that, as of issuance and affirmance, had not been shown to comply with Rule 26(g)'s signature requirement. In addition, Plaintiff's filings (Dkts. 101, 109, 111) assert evidence spoliation by Walmart supported by metadata; while the Court has not adjudicated those allegations on the merits, continued reliance on the Protective Order to restrict access to the disputed files—without first resolving the Rule 26(g) threshold—creates an objective appearance that procedural protections are operating to shield unverified productions from scrutiny. A reasonable, fully informed observer could question impartiality on these facts. A reasonable observer would conclude that the Protective Order—and the Court's affirmance in Dkt. 91—operate not to protect confidential information, but to insulate fraudulent evidence from exposure, giving rise to the appearance of judicial complicity.

## 2. The Record Shows Zero Certified Discovery

Walmart's April 7 Initial Disclosure (Dkt. 70-1, PageID 1068–1073) listed no documents, no ESI, and no description by category or location. Prior to Dkt 70, Plaintiff Notified Walmart's Incomplete and Evasive Initial Disclosure in Dkt 62 and 64. It was an empty placeholder that did not meet the minimum standard of Rule 26(a)(1)(A)(ii). Thus, as of June 9, 2025, there were zero valid disclosures in the record. When Walmart transmitted its June 9 dump by email link, it did so without a Rule 26(g) signature, certification, or privilege log. Plaintiff immediately objected in writing (Dkt. 65-3, PageID 1018–1019):

> "Was a Rule 26(g) certification served with Walmart's June 9 production? If so, identify the signatory and provide a copy of the signed certification."
>
> "Please produce a privilege log compliant with Rule 26(b)(5)(A) identifying any documents withheld on the basis of privilege or work product."

Under Rule 26(g)(2), the Court must strike an unsigned or uncertified disclosure "unless a signature is promptly supplied after the omission is called to the attorney's attention." No signature was ever supplied. Therefore, the June 9 dump was legally void. Plaintiff had no duty to download it, as Rule 26(g)(2) expressly relieves a party of any obligation to accept or act on an uncertified production.

## 3. The Magistrate's Protective Order Relied on an Uncertified Production

Instead of striking the June 9 dump under Rule 26(g)(2), the Magistrate relied on it to issue the Protective Order. The order expressly states:

> "Jana's argument that Walmart has not served its initial disclosures or a privilege log is not well-taken. Walmart served its initial disclosures, and although Walmart has yet to serve its privilege log, it is in the process of doing so." (Dkt. 66, PageID 1034.)

Days later, Walmart told the Court: "Walmart has not yet withheld any responsive documents on the basis of privilege" (Dkt. 76, PageID 1193).

As Plaintiff explained in Dkt. 80:

> *"Walmart's statement in Dkt. 76 that Walmart has not yet withheld any responsive documents on the basis of privilege is irreconcilable with its simultaneous admission that it is in the process of preparing a privilege log (Dkt. 76, PageID 1193). These two claims cannot both be true. If Walmart has not withheld any documents under a claim of privilege, there would be no basis or need to prepare a privilege log under Rule 26(b)(5)(A). The very purpose of a privilege log is to identify documents withheld on the basis of privilege or work product protection. However, Walmart promised this Court that it was preparing privilege log, see Court Order Dkt 66: 'And although Walmart has yet to serve its privilege [log], it is in the process of doing so.' See Dkt. 65 at 5."*

The privilege-log representation surfaced via reply (Dkt 65), raising Local Rule CV-7(f) concerns (new matter in reply) and Magistrate Judge approved Protective Order right after Walmart's Reply denying Plaintiff any opportunity to respond—implicating basic notice principles (see **Mathews v. Eldridge, 424 U.S. 319, 333 (1976)**). Coupled with the absence of a contemporaneous Rule 26(g) certification for the June 9 transmission, these quoted statements present internally inconsistent foundations for the Protective Order. Plaintiff contends that, on this record, **the order was procured by fraud**; at minimum, the sequence contributes to an objective appearance of partiality under 28 U.S.C. § 455(a).

### 4. The District Judge's Affirmance in Dkt. 91

When Plaintiff filed a Rule 72(a) objection to challenge these defects, the District Judge issued Dkt. 91, summarily affirming the Magistrate's order and stating only that Plaintiff "failed to show clear error." The Court made no findings regarding certification, no discussion of the CV-7(f) violation, and no acknowledgment that the "initial disclosure" on which the order rested was devoid of any

documents. By endorsing the Protective Order without addressing the certification objection or the due-process violation, the District Judge effectively transformed an invalid, uncertified email transmission into the jurisdictional basis for broad secrecy. That decision creates the appearance that the Court was protecting Walmart's process itself, not any legitimate discovery content.

**5. The October 6 Hearing Confirmed the Fraudulent Foundation**

The later October 6, 2025 hearing before Magistrate Davis made clear there was never a Rule 26(g) certification. The Magistrate acknowledged Plaintiff's argument that Walmart's initial disclosure contained "zero documents" and asked: **THE COURT: "So how could you supplement zero?"** (p. 25 L. 13–16). See Dkt 121, Ex. 3.

Counsel for Walmart responded: **MR. WAHBY:** "Here's the disclosure certified in full pursuant to Rule 26(g) seal of approval pursuant to the federal rules… I buried my signature wherever they come from, paralegal, associate, whatever the case may be." (p. 25–26) See Dkt 121, Ex. 3.

The Court then asked Walmart to "put that in writing." This proves the obvious: there was no contemporaneous certification. The "seal of approval" comment was a rhetorical improvisation, not a signed certification under Rule 26(g). Yet the Protective Order continues to rest upon that nonexistent certification.

**6. What the Protective Order Is Actually Protecting NOW**

As it stands, the Protective Order shields no **lawfully discoverable, Rule-26(g)-certified** material:

- **April 7 Initial Disclosure: Zero** documents, **zero** categories, **zero** ESI (Dkt. 70-1, PageID 1069–1073). Walmart's Response to Plaintiff's RFP's: **Zero Documents** (See Dkt 62-1)
- **June 9 dump: Uncertified**, **unsigned**, objected to on June 10, and therefore **void** under **Rule 26(g)(2)** absent a prompt signature (none supplied). See Dkt 65-3 PageID 1015-1019.
- **July 18 dump: Uncertified** and, per Plaintiff's forensic submissions, **altered post hoc** and **falsely dated**—confirming spoliation indicators (Dkts. **101, 109, 111**).

If no certified discovery ever existed, what does the Protective Order protect? The practical effect is that it **shields an invalid, disputed production** from public scrutiny (see Dkts. **101, 109, 111**). That **function is foreign to the Federal Rules** and inconsistent with neutral administration of discovery.

Plaintiff's forensic analysis further shows that multiple files in the July 18 set **were never transmitted through an SMTP server**—i.e., **the email was never sent**—and exhibit metadata anomalies (Dkts. **109, 118**). The Court is aware of these filings, yet the Protective Order remains in place over the very materials flagged for alteration.

To an objective observer, the continuation of secrecy **after** notice of alteration reads as judicial complicity in concealing fraud. More broadly, maintaining secrecy over **uncertified** and **forensically disputed** files—without first resolving the **Rule 26(g)** threshold—creates the appearance that procedural protections are being used to **shield unverified productions** rather than to safeguard legitimate confidentiality. Under **28 U.S.C. § 455(a)**, that appearance supports recusal.

## 7. The Constitutional and Appearance-of-Partiality Implications

Due process requires notice and a fair opportunity to respond before the Court relies on new factual submissions. By granting the Protective Order on a reply that introduced new material (the June 9 dump) without allowing rebuttal, and by later affirming that order in Dkt. 91, the Court deprived Plaintiff of that constitutional right. The continuing use of the order to shield fraudulent evidence compounds the problem: it projects that the Court's protective mechanism is being used as a cover for misconduct rather than as a neutral safeguard. Such conduct erodes public confidence in the judiciary's even-handedness. Under § 455(a), the test is not whether bias actually exists, but whether a reasonable person, knowing these facts, would question impartiality. Here, the answer is unequivocal. The Court's tolerance of an uncertified production, acceptance of a CV-7(f)-violative reply, and ongoing sealing of proven falsified documents collectively give rise to a clear appearance of partiality and **complicity**.

The Protective Order (Dkt. 66), affirmed by Dkt. 91, rests entirely on an uncertified June 9 production that was objected to in writing, never certified under Rule 26(g), and later exposed as fraudulent through forensic analysis for July 18 dump(Dkts. 101, 109, 111). The order's continued existence serves only to shield fraudulent evidence from public inspection. The Court's awareness of this fact and its continued enforcement of the order create the unavoidable appearance that the Court itself is protecting the fraud it should have struck. Even without proof of actual bias, these circumstances compel recusal. 28 U.S.C. § 455(a) requires disqualification whenever impartiality might reasonably be questioned. Plaintiff therefore respectfully requests that Judge Sean D. Jordan recuse himself from further proceedings, vacate the affirmance in Dkt. 91, and allow neutral adjudication of the Protective Order's legitimacy and the underlying discovery fraud.

## B. Appearance of Partiality in the Handling of Dkt. 92 and Its Procedural Context

**Overview.** On **July 11, 2025**, Plaintiff filed **Dkt. 77** (Rule 72(a) objection to **Dkt. 66**). With that filing, review of the protective order lay with the District Judge. On **July 14, 2025**, Plaintiff filed **Dkt. 80**—a **stand-alone** sanctions motion addressed to Judge Jordan because (1) **Dkt. 77** was already pending before him; (2) the misconduct arose from the same discovery track; and (3) the Magistrate had declined to enforce **Rule 26(g)(2)** despite written notice. That same day, Plaintiff filed **Dkt. 82** to ensure clarity:

> *"Plaintiff respectfully requests that the Court consider Dkt. 80 and Dkt. 81 as part of the record when evaluating the merits of Dkt. 77, and in determining whether the Magistrate Judge's issuance of the Protective Order (Dkt. 66) should be vacated for cause, including discovery misconduct, procedural impropriety, and fraud upon the Court."*

### 1. What Dkt. 80 Was

**Dkt. 80** was **not** a Rule 72(a) objection. It sought **mandatory, freestanding** relief: (i) **Rule 26(g)(2) strike** of the **June 9** email-link production; (ii) **Rule 37(c)(1) preclusion**; (iii) a **Rule 26(b)(5)(A)** privilege-log order; and (iv) vacatur of **Dkt. 66** for reliance on misrepresentations about "served" disclosures. The motion documented that Walmart's **April 7** initial disclosure contained **no documents/ESI** and that the **June 9** production was **unsigned/uncertified**, with Plaintiff's written demands on **June 10** and **June 30**. Under **Rule 26(g)(2)**, the court **"must strike"** unless promptly cured—no certification was supplied. The motion was **unopposed** (Walmart asked to be excused from responding, **Dkt. 85 at 3**).

### 2. Why Plaintiff Properly Went to the District Judge

Because **Rule 26(g)(2)** is **mandatory** and the Magistrate had not enforced it despite notice (Plaintiff's letters were in **Dkt. 65**), further motion practice before the same Magistrate would have been futile. Addressing **Dkt. 80** to Judge Jordan was the only route to secure enforcement while **Dkt. 77** was pending.

### 3. What Dkt. 92 Did—and Did Not Do

On **July 24, 2025**, the Court entered **Dkt. 92**: "The Court presumes that Walmart does not intend to respond… See (Dkt. 85 at 3)." It then denied **Dkt. 80** as "moot/premature," **without addressing** the text of **Rule 26(g)(2)** or **Rule 37(c)(1)**. An **unopposed** motion invoking a **self-executing** rule received no merits determination. To a reasonable observer, adopting a litigant's **silence** to avoid ruling on a mandatory sanction projects procedural indulgence.

### 4. The Direct Consequence: October 6 and Dkt. 117

Because **Dkt. 92** left **Rule 26(g)** unenforced, the defect resurfaced with Walmart's **July 18** dump (also uncertified). At the **October 6** hearing, the Court recognized the baseline:

> **THE COURT:** "There was zero documents initially. So how could you supplement zero?" (Tr. 25:13–16)
> Defense counsel offered only a verbal assurance:
> **MR. WAHBY:** "Here's the disclosure **certified** in full… I **buried my signature** wherever…" (Tr. 25–26)

The Court then asked for **"written confirmation."** The next day's **Dkt. 117** ordered Walmart to submit that confirmation. This sequence confirms there was **no contemporaneous Rule 26(g)**

**certification** on June 9 or July 18; "confirmation" is not a substitute for a timely **signature** under **Rule 26(g)(2)**.

### 5. Appearance of Partiality

**Dkt. 92** is the pivot: by denying a **mandatory-rule** motion as "moot/premature," the Court preserved an **uncertified** record and enabled an extra-statutory **"confirmation"** workaround later memorialized in **Dkt. 117**. In the same period, the Court strictly enforced procedural form against Plaintiff (see **Dkt. 93**), while accepting a represented party's **unsigned** productions on trust. A reasonable observer could view this as **selective enforcement**, sufficient for **§ 455(a)** recusal. From April 7 through October 7, 2025, Walmart produced **no Rule-26(g)-certified disclosure**; the **April 7** disclosure was empty, the **June 9** and **July 18** dumps were **uncertified**. The Court's responses—**Dkt. 66** (accepting "service"), **Dkt. 92** (denying an unopposed sanctions motion), and **Dkt. 117** (inviting "confirmation")—collectively replaced **"must strike"** with **discretionary indulgence**. Even absent actual bias, these facts would cause a reasonable person to question impartiality. Recusal is warranted under **28 U.S.C. § 455(a)**.

## C. Appearance of Partiality in the Handling of Dkt. 93 — Unequal Enforcement of Local Rules and Denial of Merits Review

**Overview.** The Court's one-sentence order—"The Court has reviewed Jana's objection and concludes that Jana has failed to demonstrate that the Magistrate Judge's Order was clearly erroneous or contrary to the law." (Dkt. 93)—summarily overruled Plaintiff's objection (Dkt. 81) to the striking of Plaintiff's Motion to Compel (Dkt. 75). That disposition ignored Local Rule CV-7(i) and controlling Supreme Court pro-se precedent, and it reinforced an appearance of unequal enforcement.

**What Dkt. 75 sought.** The motion asked the Court to compel yes/no answers to Interrogatories 1–4 and to conduct in-camera review of Exhibits 1 and 2—core authenticity issues. The narrow, dispositive example was Interrogatory No. 2: is Exhibit 2 merely an "unredacted version" of Exhibit 1 (yes/no).

**Why striking Dkt. 75 was improper as to a pro se litigant.** The Magistrate struck the motion under CV-7(h) for lack of a "personal conference," yet CV-7(i) states: "Neither the 'meet and confer' [CV-7(h)] nor the 'certificate of conference' [CV-7(i)] requirements are applicable to pro se litigants (prisoner or non-prisoner)." The exemption applies in full to Plaintiff. The ruling also disregarded Plaintiff's written conferrals and Walmart's admission that it "did not substantively answer" the interrogatories.

**Pro se accommodation (Supreme Court).** The Supreme Court requires that pro se filings be read liberally and held to less stringent standards. See Haines v. Kerner, 404 U.S. 519; Estelle v. Gamble, 429 U.S. 97, 106; Boag v. MacDougall, 454 U.S. 364; Conley v. Gibson, 355 U.S. 41, 45–46. Those decisions do not excuse compliance with rules, but they forbid using local procedure to penalize the unrepresented while indulging a represented adversary.

Unequal enforcement and federal-rule supremacy. Local Rule CV-7(i) exists to ease burdens on unrepresented parties, **not to exempt a represented party from Rule 26(c)(1)'s mandatory good-faith conferral.** Rule 83(a)(1) forbids any local practice that nullifies a Federal Rule (see Colgrove v. Battin, 413 U.S. 149, 161 n.18; In re Adams, 734 F.2d 1094, 1099 (5th Cir. 1984)). Yet here: (i) Plaintiff's pro se motion was struck for a requirement that does not apply to him (CV-7(i)), (ii) Walmart's protective-order motion was granted despite its own conferral defects.

That asymmetry mirrors the concern in In re Murchison, 349 U.S. 133, 136, and United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995): justice must "satisfy the appearance of justice."

**Prejudice and appearance.** The Dkt. 93 disposition denied any merits review of a targeted authenticity dispute (Exhibit 1 vs. Exhibit 2), central to causation and the "same-decision" defense. In context with Dkts. 91 and 92, the summary affirmance—without addressing CV-7(i) or the pro-se accommodation—reasonably appears to shield one party's procedural defaults while penalizing the unrepresented litigant.

**Conclusion.** On these facts, a reasonable person would question impartiality. That is sufficient under 28 U.S.C. § 455(a). Plaintiff respectfully asks that Judge Jordan recuse so Dkt. 81 and the underlying discovery issues receive neutral, law-bound review.

### D. Institutional Alignment and the Appearance of Coordinated Accommodation

On July 16, 2025, Plaintiff filed a Motion to Recuse Magistrate Judge Bill Davis (Dkt. 83) based on repeated discovery irregularities and the Magistrate Judge's refusal to enforce Rule 26(g). The motion was directed to the District Judge, Sean D. Jordan, because under 28 U.S.C. § 455 and Federal Rule of Civil Procedure 72(a), only the supervising Article III judge may decide a motion to recuse a magistrate judge. Despite this, Magistrate Judge Davis ruled on the motion himself (Dkt 98) and denied it—**thereby adjudicating his own impartiality.** This was not a mere procedural oversight. It was a deliberate act that allowed him to continue presiding over the very disputes that gave rise to the recusal request. Once the Magistrate denied his own disqualification, he immediately continued to oversee the same set of motions that **all turned on the Rule 26(g) certification defect** he had refused to address.

**Rule 26(g)(2) is explicit and mandatory:** "**The court must strike an unsigned** disclosure, request, response, or objection unless a signature is promptly supplied after the omission is called to the attorney's attention." **There is no discretion.** The omission was called to Walmart's attention on June 10, 2025, when Plaintiff requested a copy of the signed Rule 26(g) certification for the June 9 dump and a corresponding privilege log (Dkt. 65-3 at PageID 1018–1019). No certification was ever produced. Under the plain text of Rule 26(g)(2), the **Court had a non-discretionary duty to strike** the June 9 production and all subsequent derivative productions. Walmart raised a new argument, bringing the June 9 production into its reply in violation of Local Rule CV-7(f). Walmart produced zero documents prior to filing for a Protective Order on June 3, 2025. The Magistrate did not wait for Plaintiff's sur-reply despite Walmart's new argument in its reply; thereby violating Plaintiff's constitutional rights by ordering the Protective Order on June 27, 2025.

The Magistrate Judge disregarded this duty and proceeded to hear the same defective issues in the October 6, 2025 hearing. At that hearing, every motion before him—including Dkts. 94, 106, 108, and 109—depended solely on whether Walmart's July 18 production was certified under Rule 26(g). The court acknowledged the baseline problem during the October 6 hearing (See Dkt 121, Ex. 3.)

> **THE COURT:** "What I understood Dr. Jana to be arguing in part was, you know, the zero-documents part. There was zero documents initially. *So how could you supplement zero?*" (Tr. 25:13–16) (emphasis added)

Rather than ordering Walmart to produce a valid Rule 26(g) certification as the law requires, the Magistrate permitted defense counsel to offer only a verbal assurance:

**MR. WAHBY:** "*Here's the disclosure certified in full pursuant to Rule 26(g) seal of approval pursuant to the federal rules, subject to the Court's penalties if anything goes awry.... I buried my signature wherever they come from, paralegal, associate, whatever the case may be.*" (Tr. 25–26)

---

**THE COURT:** *"So you made that representation in open court today that it was certified as required. Would you be willing to just put that in writing and submit that?"* (Tr. 26)

The Magistrate Judge's own observation—"**So how could you supplement zero?**" (Oct. 6 Tr. 25:13–16)—underscores that **Rule 26(e)** permits supplementation only where there was a valid **Rule 26(a)(1)** baseline to begin with. With Walmart's Initial Disclosure listing **no documents/ESI** (Dkt. 70, PageID 1068–1073), there was nothing to supplement; and under **Rule 37(c)(1)**, "the party is **not allowed to use** that information or witness… unless the failure was substantially justified or is harmless." By inviting "**written confirmation**" in lieu of a contemporaneous **Rule 26(g) certification**, the Court effectively treated a **must-strike** requirement (**Rule 26(g)(2)**) as a discretionary after-the-fact cure, allowing continued reliance on an uncertified production. Plaintiff had repeatedly cited Rule 26(g) in the record, and the request for "confirmation" the next day (Dkt. 117) signals that no timely certification existed. Whatever the intent, the sequence creates the **appearance** that mandatory safeguards were relaxed for Walmart while strict compliance was expected of the pro se opponent—an appearance sufficient to trigger **§ 455(a)**. Plaintiff did not seek review of the Magistrate's **self-denial** by the District Judge because the pattern of prior rulings—Dkts. 91, 92, and 93—demonstrated that any such objection would meet the same fate: a one-sentence affirmance without analysis. The futility of further appeal underscores the appearance that both judicial officers had already aligned on outcome, irrespective of the governing law. The District Judge's consistent refusal to address Rule 26(g) defects signaled that the supervisory review contemplated by 28 U.S.C. § 636(b)(1)(A) was illusory. This institutional alignment between the Magistrate and the District Judge projects the unmistakable appearance of partiality. The Magistrate refused to follow the plain language of Rule 26(g)(2) and instead created a new "written confirmation" standard; the District Judge's pattern of summary denials confirmed that this departure

from law would stand uncorrected. Together, these acts convey that the Court system as a whole was willing to accommodate one party's ongoing noncompliance while imposing procedural rigidity on the other. A reasonable observer would conclude that the judiciary in this case ceased to function as a neutral enforcer of the Federal Rules and instead became a shield for Walmart's procedural misconduct. The same uncertified June 9 production that led to the Protective Order (Dkt. 66) and its affirmance (Dkt. 91) continued to infect every subsequent ruling, culminating in the October 6 hearing where "**certification**" was reduced to "**confirmation**." This pattern creates the appearance of coordinated judicial accommodation of a represented party's noncompliance, to the detriment of a pro se whistleblower—an appearance sufficient to warrant recusal under 28 U.S.C. § 455(a). Under 28 U.S.C. § 455(a), recusal is mandatory whenever a judge's impartiality might reasonably be questioned. The sequence of events—from the Magistrate's self-denial of recusal, to the refusal to enforce Rule 26(g), to the District Judge's consistent silence—would lead any objective observer to question whether this Court is capable of impartial oversight. Accordingly, Plaintiff respectfully requests that Judge Sean D. Jordan recuse himself to preserve the integrity of the proceedings and restore public confidence in the even-handed administration of justice.

**Prayer for Relief.** Plaintiff respectfully requests: (1) recusal of Judge Sean D. Jordan under 28 U.S.C. §§ 455(a), 455(b)(1), and § 144; (2) vacatur of Dkt. 91 and related orders grounded on the uncertified June 9 and July 18 productions; and (3) reassignment to a neutral Article III judge for adjudication of the Protective Order's legitimacy, Plaintiff's Rule-based sanctions motions, and all issues preserved in Dkts. 75, 77, 80, 81, 94, 104, 106, 108, 109.

Dated: October 15, 2025

Respectfully Submitted,

*[signature: Dilip Kumar Jana]*

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002

## CERTIFICATE OF SERVICE

On October 15, 2025, a true and correct copy of the foregoing was served upon the following through the Court's CM/ECF system:

| Peter S. Wahby | Morgan E. Jones | Holmes H. Hampton |
|---|---|---|
| Texas Bar No. 24011171 | Texas Bar No. 24132301 | Texas Bar No. 24144019 |
| Peter.wahby@gtlaw.com | Morgan.jones@gtlaw.com | holmes.hampton@gtlaw.com |

GREENBERG TRAURIG LLP
2200 Ross Ave, Suite 5200 Dallas, Texas 75201
Telephone: 214.665.3600
Facsimile: 214.665.3601
ATTORNEYS FOR DEFENDANT WALMART INC.

Dated: October 15, 2025

Respectfully Submitted

*[signature: Dilip Kumar Jana]*

Dilip Jana, pro se Plaintiff
Tel: 318-243-9743
EMail: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002
