

FILED

OCT 1 5 2025

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

# Exhibit 3

### October 6, 2025 Hearing Transcript

*(Judicial acknowledgment of "zero documents initially" and instruction for written confirmation)*

**Record Source:** October 6, 2025 Hearing Transcript, Pages 25–26

**Key Quotation:**

> **THE COURT:** "There was zero documents initially. So how could you supplement zero?"

> **MR. WAHBY:** "It's a supplement to the initial disclosure … everything rest assured is certified under the federal rules … I buried my signature wherever they come from, paralegal, associate, whatever the case may be."

> **THE COURT:** "So you made that representation in open court today that it was certified as required. Would you be willing to just put that in writing and submit that—seven days from now?"

> **MR. WAHBY:** "Yes, Your Honor."

This transcript confirms the certification defect, the Court's indulgent substitution of "written confirmation," and Walmart's subsequent **non-compliance** with Dkt. 117.

1                   UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF TEXAS (SHERMAN DIVISION)

3    DILIP JANA,
                                   Case No. 4:24-cv-00698-SDJ-BD
4              Plaintiff,

5    v.                            Sherman, Texas
                                   October 6, 2025
6    WALMART, INC.,                4:01 p.m.

7              Defendant.
     _____

8
                        TRANSCRIPT OF MOTION HEARING
9                   BEFORE THE HONORABLE BILL DAVIS
                     UNITED STATES MAGISTRATE JUDGE
10
     APPEARANCES:
11   For the Plaintiff:          Dilip Jana, Pro Se
                                 800 Fairlawn St
12                               Allen, TX 75002

13   For the Defendant:         Peter S. Wahby, Esq.
                                Holmes H. Hampton, Esq.
14                              Greenberg Traurig, P.A.
                                2200 Ross Avenue
15                              Suite 5200
                                Dallas, TX 75201
16
     Court Recorder:            AEJ
17
     Transcription Service:     Chris Hwang
18                              Abba Reporting
                                PO Box 223282
19                              Chantilly, Virginia  20153
                                (518) 302-6772
20

21

22

23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25

1

**INDEX**

2

3                                                                Page

Motion, denied                                  16

4       Motion, moot                                    17

5       Motion, denied                                  28

6       Motions, denied                                 36

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Call to order at 4:01 p.m.)

2          THE COURT:  Okay, an hour and one minute late

3     unfortunately.  And I apologize to all.  I'll call the final

4     case for today and that is case number 4:24-CV-698, Jana v.

5     Walmart.

6          MR. WAHBY:  Good afternoon, Your Honor.

7          THE COURT:  Good afternoon, and if I could just make

8     sure that everybody's speaking into a microphone so that we get

9     a good recording of the proceedings.

10         And Mr. Jana, if we could start by having you

11    announce your presence?

12         MR. JANA:  Yes, Your Honor.  Your Honor,

13    (indiscernible).

14         THE COURT:  Yes, well, first -- no, please start by

15    announcing who you are and that you're representing yourself if

16    that's what you're doing.

17         MR. JANA:  Yes, Your Honor.  This is Dr. Dilip Jana.

18    I'm representing myself on this case, Jana v. Walmart, 4:24-CV-

19    00698.

20         THE COURT:  Okay, thank you.

21         And for Walmart?

22         MR. WAHBY:  Thank you, Your Honor, Peter Wahby and

23    Holmes Hampton for Walmart.

24         THE COURT:  Okay.  Good afternoon to everyone.

25         Dr. Jana, if you want to approach, you can.  Okay,

1    the record will reflect that Dr. Jana has provided the Court

2    with a binder of materials.  We're here because Dr. Jana and

3    Walmart are in a discovery dispute.

4           Pursuant to the Court's order, which is Docket 99,

5    the parties submitted briefs outlining the remaining issues.

6    Those are Dockets 103 for Walmart and Dr. -- I'm sorry for Dr.

7    Jana, Docket 104.

8           There have been numerous motions and notices filed

9    from the Plaintiff's side over the past two months.  The Court

10   scheduled a hearing to try to resolve all the issues at the

11   same time.

12          And I believe that was Docket 110 instructing the

13   parties to be prepared to discuss Docket 72, 94, 95, 106, 108,

14   and 109.

15          So Docket Number 99 relieved Walmart of the

16   obligation to respond to all of the motions and other filings

17   that you've made, Dr. Jana.  And so, we have responses to only

18   some of those docket entries that I mentioned.

19          And as I understand it, there are two main points of

20   dispute.  One is the Bowman (phonetic) email that Dr. Jana

21   believes is fabricated, and then, the July 18th production and

22   issues relating to its certification.  Discovery is stayed by

23   virtue of Docket Number 99.

24          MR. JANA:  Yes, Your Honor.

25          THE COURT:  So, today, I'd like to start with -- I

1    would just like to take up the motions in sequence.  I'll start

2    with Docket Number 72, which is the motion for criminal

3    referral to law enforcement and for sanctions.  I'll hear your

4    argument on that motion, Dr. Jana, I'll hear Walmart's

5    response, and then, make a ruling.  So you can start.

6         MR. JANA:  Thank you, Your Honor.  The Docket 72 I

7    filed on July 7th, 2025.  When I filed it on July 7, one was

8    docket July 18 production was not like yet.  So I filed based

9    on Walmart's production at the OSHA in February 2024 and at

10   OALJ on June 2024.  Those two emails, they're supposed to be

11   same emails.

12        THE COURT:  Is it the Bowman email?

13        MR. JANA:  That's correct, Your Honor.

14        THE COURT:  Okay.

15        MR. JANA:  So they're supposed to be the same email.

16   But after close inspection that headers are different, bodies

17   are different, Bowman's signature panel is different, and

18   attachments are also different.

19        THE COURT:  The what are different?

20        MR. JANA:  Attachments.

21        THE COURT:  Attachments, okay.

22        MR. JANA:  So Exhibit 1 of Docket 13, which is the

23   complaint, has the OSHA portion of the email.  There is a

24   attachment recommendation termination, recommendation.msg.

25   That attachment was removed in July 2024 motion.

1        Now that brings up the question what is the integrity

2   of that judicial system whether it depend on those kind of all

3   type documents?

4        Now the question here is, Your Honor, this is a

5   breach of (indiscernible) as you know.  Criminal Antitrust

6   Anti-Retaliation Act that Congress had enacted in 2020 and

7   President Trump had made into the law in December 2020.

8        And this is the first case in this Court.  And even

9   if whosoever demonstrates that he participated in visible

10  activity still can (indiscernible), can get away with it and

11  avoid liability if (indiscernible) can prove by clear and

12  convincing way that it would have committed regardless of

13  visible activity.

14       So that's what is clear and convincing way is coming.

15  And that's Wendy Bowman's mail is coming.  That's the

16  centerpiece of the evidence.

17       Now, Your Honor, it's been roughly two years now,

18  three to less than two years.  Walmart produced zero certified

19  documents in this discovery period.

20       THE COURT:  Okay, just to make sure I understand what

21  you said, Walmart has produced no certified documents?

22       MR. JANA:  That is correct, Your Honor.

23       THE COURT:  And what do you mean by that, certified?

24       MR. JANA:  Okay, so let me explain that.  I have

25  given that statement, that statement and everything

1   (indiscernible) you know, tell this Court here.

2          We had -- Your Honor, this Court ordered discovery to

3   proceed in the month of March.  And then, we had initial

4   disclosure.  And Walmart submitted initial disclosure, it

5   produced zero document, zero location of the files, zero ESI.

6   It's a complete failure.

7          Then I submitted the Rule 34 production request,

8   produced zero documents.  Condition reduction of documents with

9   protective order, condition production of documents on

10  privilege.  On interrogatory sector, Your Honor, Walmart did

11  not answer a single interrogatory under oath and they ignore

12  it.

13         Now this Court approved protective order on June 27,

14  2025.  Before that, on appeal 28 in Walmart's interrogatory,

15  Walmart's RFP responses utilize privilege as a basis to

16  withhold documents while not producing any privilege log.

17         I'm a father of five children.  And I set up a GoFund

18  web page to support my family.  These Walmart attorneys found

19  that, submitted to Court justified I was going to

20  (indiscernible) Your Honor, serving the protective order.  It

21  is docketed in 65, Docket 65.

22         Now what happened after that on after June 27 when I

23  saw protective order was granted (indiscernible) produced zero

24  documents, I have submitted, Your Honor, Walmart's initial

25  disclosure here that you can see and I lined up what defect it

1   has and why it cannot supplement any more documents.

2          Now after June 20, 2027 and after June 27, 2025, what

3   I saw without producing anything, Walmart is trying to hide

4   something.  And I had to file motions after motions.  And at

5   the end, I withdraw my Rule 34 RFP request on July 7th -- I

6   think 10th or 11th, around that time.

7          Now on July 18th, Walmart produced Walmart's

8   supplemental production.  Your Honor, I'm not an attorney.  I'm

9   a normal public.  I didn't go to school for -- in the law.

10  Like you, Your Honor, you have to go through your like law

11  school, all other career, you know, that's the career you have

12  similar to my colleagues.

13         THE COURT:  So let me just -- let me just pause there

14  and say you understand that even though you're not an attorney,

15  you're still bound by the rules and you have --

16         MR. JANA:  Absolutely.

17         THE COURT:  -- to --

18         MR. JANA:  Absolutely.

19         THE COURT:  -- you have to make legal arguments to

20  support your positions?

21         MR. JANA:  Yes, absolutely.  What I was going to say,

22  Your Honor.

23         THE COURT:  Hold on.  And when I'm talking, you're

24  not talking.

25         MR. JANA:  Yeah, sure.

1    THE COURT:   Your Docket Number 72 is a motion

2  requesting a criminal referral; is that right?

3    MR. JANA:   That's correct.

4    THE COURT:   What's your best case for that?

5    MR. JANA:   Here, we have -- I have reported multiple

6  cases, Your Honor.  So it is on page number 14 of the Docket

7  72.  The point is Walmart did not provide any interrogatory

8  answers, just yes or no.

9    THE COURT:   What's the case?

10    MR. JANA:   It is Chudasama v. Mazda Motor

11  Corporation.  This is 11th Circuit on page number 13.  Then I

12  have Chambers v. Nasco, 501 U.S. 32.  And then, we have -- as I

13  said, this conduct also (indiscernible) Chambers v. Nasco, but

14  the Supreme Court found that the federal courts have inherent

15  authority to sanction parties who engage in bad faith conduct

16  that abridges the judicial process.

17    In Chambers, Court explained that fraud upon the

18  Court includes conduct that abridges the judicial process and

19  obstructs the opposing party's ability to present its case

20  fully and fairly.

21    THE COURT:   Okay, that's supporting a sanctions

22  request, right?

23    MR. JANA:   That's correct.

24    THE COURT:   Is it also supporting a criminal

25  referral?

1     MR. JANA:  Your Honor, as a regular public, I don't

2   have any authority to ask for criminal referral, but I was

3   asking for Court's inherent authority because of the fraudulent

4   activity on the discovery.

5     THE COURT:  You were asking for what again?

6     MR. JANA:  Court's inherent authority.

7     THE COURT:  Inherent authority to sanction, right?

8     MR. JANA:  That's right.

9     THE COURT:  Okay.  So you don't have any authority to

10   support criminal referral?

11     MR. JANA:  No.

12     THE COURT:  Okay.  You can continue, but because

13   that's what your motion is going towards, I would say kind of

14   wrap up your argument for that motion.

15     MR. JANA:  Right.  So, Your Honor, I asked in my

16   interrogatory either yes or no OSHA and (indiscernible) have

17   the same email or different email, whether it had been altered.

18   Walmart attorney didn't answer just simple yes or no.  And they

19   did not answer under oath.

20     They wrote me an email because they objected they did

21   not answer anything under oath.  So that means I'm a Pro Se

22   Plaintiff.  I am here without any documents to support my case.

23     THE COURT:  Okay.  I think I understand your

24   argument.  Could I get the response?

25     MR. WAHBY:  Yes, Your Honor.  May it please the

 1   Court.  The -- we have a very simple chart.  To the extent it's

 2   helpful for the Court, it kind of goes through the main

 3   arguments.

 4         Your Honor's already summarized it as the Bowman

 5   email and the production certification, but it kind of

 6   cross-references all the different motions.  If it's helpful to

 7   the Court, may I provide it?

 8         THE COURT:  Please, yeah, you can approach.  Okay,

 9   you're using a font that is challenging my eyes, but I think I

10   can see it.

11         MR. WAHBY:  I apologize, Your Honor.  It's not that

12   is not the goal.

13         THE COURT:  It --

14         MR. WAHBY:  We're in the same club.  I'll -- I agree

15   with that.

16         THE COURT:  So we're here first so I'm hearing right

17   now on Docket 72 --

18         MR. WAHBY:  Yes, Your Honor.

19         THE COURT:  -- that looks like that's the first --

20         MR. WAHBY:  Yes, Your Honor.

21         THE COURT:  Well, it looks like 72 makes an

22   appearance in several rows of this chart.

23         MR. WAHBY:  Well, because -- that's right because the

24   issues that are talked about related to the email.  And that's

25   kind of a recurring theme that you'll see re-appears in

1  different motions that were filed.  And then, so those are

2  simply (indiscernible), Your Honor.

3          THE COURT:  Oh, okay, but 70 -- Docket 72 is asking

4  for criminal referral and sanctions, right?

5          MR. WAHBY:  Yes, Your Honor.

6          THE COURT:  So if you could speak to those two

7  issues --

8          MR. WAHBY:  Yes, Your Honor.

9          THE COURT:  -- so I can rule on that motion.

10          MR. WAHBY:  So criminal referrals, it's only been 25

11  years I've been doing this.  I haven't seen one of those

12  before.  And it just so happens (indiscernible) 5th Circuit or

13  in Court in this district because it doesn't exist.

14          And I'll just submit to the Court that if anything

15  has happened in this case that's sanctionable, it is the

16  constant stream of accusations of criminal conduct against me,

17  my firm, my clients, their personnel.

18          So, there's no basis, although Your Honor in the

19  event Your Honor identifies something that raises suspicion in

20  your mind, there are things that Your Honor could do, but

21  that's never the result of a motion for criminal referral.  So

22  we would respectfully --

23          THE COURT:  It'd be a sanctions order whether under a

24  rule of civil procedure or under the Court's inherent

25  authority, it would be exercising sanctions power.

1        MR. WAHBY:  Exactly, Your Honor.  And that's exactly

2   what's being requested.  And so, to the extent there's a motion

3   for criminal referral pending, we would respectfully submit

4   that it be denied in full.

5        And with respect to the sanction piece, whether it

6   relates to the email production or the certification because

7   the Plaintiff has covered both of those, which of those two

8   potential grounds for sanctions as requested would the Court be

9   most interested in hearing about?  Because they both re-appear

10  again and again.

11       THE COURT:  Well, I just want you to address what the

12  Court needs to know to make a ruling on Docket 72 right now.

13       MR. WAHBY:  Okay, so the interrogatory responses and

14  objections were provided.  They were primarily objections.

15  They were exclusively objections.  And that's because the

16  requests were improper and had baked into them certain

17  contested facts relating to forgery alteration.

18       And in addition to the fact that we don't believe the

19  interrogatories are a proper grounds for us to authenticate

20  documents that the Plaintiff is attaching to his interrogatory

21  requests.  And for that reason, we objected to the

22  interrogatories.

23       Now, having said that, once the stay of discovery is

24  lifted, we are prepared to admit the interrogatories to simply

25  state there's been no alteration of any evidence that is at

1    issue in this case.

2           I don't think that's going to solve the problem.  We

3    produced emails redacted and then unredacted.  And then, the

4    metadata.  Did that solve the problems?  They did not solve the

5    problems.

6           MR. JANA:  Your Honor?

7           THE COURT:  No.

8           MR. WAHBY:  So but I'll conclude with this.  To the

9    extent that interrogatory responses are the target for the

10   sanctions request, they were well founded objection to the

11   reasons stated therein.  And we will amend them once discovery

12   is lifted and simply say that there was no alteration of

13   evidence.

14          THE COURT:  Thank you, Mr. Wahby.

15          Dr. Jana, I'll have your response to that.

16          MR. JANA:  Your Honor, the attorney testified without

17   under oath.  And I requested the Court whatever he testified,

18   can he do that under oath that document has not been altered.

19          And with respect to that, Your Honor, I want to

20   impeach Walmart's production right here.  Wendy Bowman, the

21   same woman, whose email they're talking about, she send me an

22   email on 20th of October from her email.

23          And I want to give it to Court, Your Honor, to show

24   that signature panel for the same person is completely

25   different from October 20 panel and October 4 panel.

```
 1              THE COURT:  Okay.  Are saying you want to give me
 2    something that's not in your motion?
 3              MR. JANA:  That's -- I was keeping that for
 4    impeachment purpose to impeach Walmart's intent.
 5              THE COURT:  Right, no, I mean, I think anything that
 6    you want to get relief on needs to be in or attached to your
 7    motion.  If -- it sounds like maybe you could have attached
 8    that to a reply, to a response to the motion, but I don't see a
 9    mechanism for you to get it before the Court now if it's not --
10              MR. JANA:  Okay.
11              THE COURT:  -- in which you filed.
12              MR. JANA:  I apologize.  I thought I should be able
13    to, you know, I don't know the procedure.
14              THE COURT:  Yeah, well, again, part of being in Court
15    is having to know the procedure.  And so, the Court can't relax
16    the rules --
17              MR. JANA:  Sure.
18              THE COURT:  -- for one party.
19              MR. JANA:  Right, so Your Honor, coming back to Mr.
20    Wahby's document, I submitted Walmart's own document that
21    Walmart submitted to OSHA apparel agency.  Walmart submitted to
22    OALJ apparel agency.  I replied those documents.  And I asked
23    whether those two documents are same or altered.
24              Walmart cannot say -- they cannot take the ability
25    because they did not attach it.  It is their document, I
```

1    attached it as an exhibit.  So this should be telling whether

2    it has been altered or not.  It is a very simple question, Your

3    Honor.

4              THE COURT:  Okay.

5              MR. JANA:  So it is their document.  It's not -- I

6    didn't produce their document.  I just attached it.  It was

7    their document.

8              THE COURT:  Okay.  Thank you for the argument.  I

9    will deny Docket 72.  Docket 72, and today, Dr. Jana, you've

10   not provided information supporting your request for criminal

11   referral.

12             Interrogatory objections are permissible under the

13   rules.  Walmart's not required to respond yes or no.  It can

14   object.  And its objections here were sufficiently specific.

15   It did not commit fraud upon the Court in the Court's view by

16   refusing to answer yes and no.

17             And as you've heard today from Walmart's counsel,

18   when discovery resumes, there can be responses to your

19   interrogatory request.

20             We'll next take up Docket Number 95, the motion to

21   strike Walmart's response, which is Docket 88.  And yeah, I'm

22   sure.  I think that's what 95 is about.  So I'll have your

23   argument.

24             MR. JANA:  That's removed.

25             THE COURT:  I'll have your argument on Docket Number

1    95.

2              MR. JANA:  Again, Your Honor, we have already all of

3    there for Docket 72.  And Docket 95 was for Walmart's response

4    to Docket 72.  So that means that should have been moot, isn't

5    it?  Or you want to me to argue?  Because that you have already

6    ordered that for Docket 72.

7              THE COURT:  Well, I sometimes get confused with all

8    the docket numbers.  Let me --

9              MR. JANA:  Right, right.

10             THE COURT:  -- let me hear from Walmart as to whether

11   there's anything I need to rule on on Docket Number 95.

12             MR. WAHBY:  I believe this is moot, Your Honor,

13   because you just denied the motion.  This is an attempt to

14   strike our response.

15             THE COURT:  I see, okay.  So --

16             MR. WAHBY:  So I believe it's moot.

17             THE COURT:  Okay, so I'll dismiss Docket Number 95 as

18   moot.  That brings us to Docket Number 94.  Is that one still

19   live?  That's a motion to strike --

20             MR. JANA:  Yes, Your Honor.

21             THE COURT:  -- Walmart's July 18th discovery

22   production?

23             MR. JANA:  Yes, Your Honor.

24             THE COURT:  Okay.  So I'll hear your argument on

25   Docket Number 94.

```
 1              MR. JANA:  Okay, so I want to refer to this Court

 2    about Docket 94, it's number 2 of my statement, where I

 3    provided Christina De Lamone's (phonetic) email transmission

 4    for July 18 production.

 5              It says Walmart's supplemental production.  I do not

 6    know what it means supplemental production.  That's a big

 7    designation.  And as of today, Walmart did not identify which

 8    category of discovery this July 18 production belongs to.

 9              Since Walmart did not identify after multiple

10    repeated reports, this production is legally void because it

11    doesn't belong to any discovery category.

12              THE COURT:  Okay, let me make sure I understand.  Is

13    your argument here about the lack of a certification?

14              MR. JANA:  Now, before I go to certification, Your

15    Honor, I want to understand what this discovery document is.

16    Is that supplemental initial disclosure or Rule 34 RFPs or

17    what?  So which category belongs to?  That's the first question

18    I have.

19              THE COURT:  Uh-huh.

20              MR. JANA:  You know, I don't know which category.  I

21    communicated with opposing attorney that put plenty of notices

22    in the court docket.  And as of today, there is no answer.

23              THE COURT:  Okay, but so --

24              MR. JANA:  I don't want to --

25              THE COURT:  Okay, sorry, go ahead.
```

```
 1              MR. JANA:  So I don't want to speculate.  This is not
 2    my duty to speculate.  That one of the reason I said on page
 3    number 4 on my statements Walmart's July 18th dump is legally
 4    void because it did not identify which category it belongs to.
 5              That being said, I tried to explain why it cannot be
 6    Walmart's supplemental initial disclosure and why it cannot be
 7    Walmart's RFP because I don't really withdraw RFP.  So RFP's
 8    out of the way.  So only possibility is Walmart's initial
 9    disclosure.
10              Then, I want to walk you through, Your Honor, on page
11    number 5 onwards, I have clearly written and also I have given
12    a binder here of Walmart's initial disclosure for your
13    reference so that you have everything together.
14              THE COURT:  Okay.
15              MR. JANA:  You can check initial disclosure.  And you
16    can see that there is nothing on the initial disclosure.  There
17    is not a single --
18              THE COURT:  What tab are you looking at?
19              MR. JANA:  Your Honor, initial disclosure, so
20    Walmart's initial disclosure I put that in Court Docket 70.
21    And Your Honor, if you see case ID 1070 for Rule
22    26(a)(1)(A)(2), copy or description by category and location,
23    this is all zero.
24              THE COURT:  Sorry, I'm not seeing what tab you're
25    looking at.
```

 1          MR. JANA:  Oh, I'm sorry.  I apologize.  It is

 2    initial disclosure, it should be the second tab.

 3          THE COURT:  Okay, second tab for me is Plaintiff's

 4    renewed notice of objection to any future supplemental initial

 5    disclosure.  Is that the document you're looking at right now?

 6          MR. JANA:  That's right, that's right.

 7          THE COURT:  Okay, so tell me what page?

 8          MR. JANA:  Okay, so in my tab, it is initial

 9    disclosure.  And page IB107 -- 1070.  Docket number 71.

10          THE COURT:  Okay, I can't find it, so just go ahead

11    and make your argument.

12          MR. JANA:  So, Your Honor, if you can see the

13    statement that I made, governmental lodge.  And then, Walmart

14    never made a valid Rule 26(a)(1)(A)(2) disclosure.  So there is

15    nothing to supplement under Rule 26(e) because Walmart produced

16    zero documents, zero ESI, zero location.  So that highlights

17    Rule 26(a)(1)(A)(2).

18          Because there is no baseline, there's no production,

19    they cannot supplement anything more.  Now Walmart I see tried

20    to use Itmar (phonetic) from Florida case, but again, Your

21    Honor, I have spent pretty good amount of time and I have

22    documented that, Your Honor, on page number 9.  So I have

23    documented on page number 9 and 10 why Itmar cannot be applied

24    in this case.

25          Before I go to Itmar, Your Honor, I want to say that

1    we are talking about Wendy Bowman's email, right?  But nothing

2    was produced giving the initial disclosure by Rule 37(c)(1).

3    Walmart is bear (sic) to use any of those documents unless it

4    can produce substantive (indiscernible), which Walmart cannot.

5        Now I have documented, Your Honor, page number 8 that

6    completed example Wendy Bowman's email.  By the way, if Your

7    Honor, I want to make sure record reflects that as you shared,

8    Your Honor, you could not find the initial disclosure, but I

9    want to make sure the record reflects it is under Docket Number

10   71.  It starts with page ID 1069 until 1073.  So it is already

11   in the docket.

12       For one complete example, Wendy Bowman's example, I

13   clearly explained why this email cannot come to the case and

14   should be bear (sic) using this email.

15       Before going to as I said, we need to understand

16   whether this July 18 dump is that belongs to any discovery

17   category, that's the first question I have.

18       Second question I have seems Walmart's initial

19   disclosure is defective, there's no baseline.  And July 18 dump

20   was transmitted by email by paralegal with no attorney

21   signature, no Rule 26(g) signature.

22       Therefore, Rule 26(g)(2) is very clear.  Court must

23   strike it once opposing attorney's notified.  And I notified

24   opposing attorney since July 21, 2025 multiple times and they

25   are all in the court docket.

 1          So, therefore, without going to argument or Itmar,

 2    Your Honor, first, it doesn't belong to any discovery category.

 3          Second, it does not have any certification.  And

 4    that's exactly the reason why Congress made this rule out, Rule

 5    26(g), that you need to certify that when you are producing

 6    these documents, you must tell the Court this is correct and

 7    truth.

 8          THE COURT:  Okay, are you arguing that she suffered

 9    any harm or prejudice by --

10          MR. JANA:  Yes, Your Honor.

11          THE COURT:  Okay, tell me what that is?

12          MR. JANA:  This may be, Your Honor, you are on the

13    case -- in that case since it's just one year.  I am dealing

14    the case zero document.

15          THE COURT:  I'm sorry, can you say that again?

16          MR. JANA:  I'm dealing the case with zero document

17    from Walmart.

18          THE COURT:  Oh, okay.

19          MR. JANA:  Now --

20          THE COURT:  Well, there was some production here.

21    Were you -- you said -- you're complaining about documents that

22    were produced, right?

23          MR. JANA:  No.  They did not produce any document

24    before the protective order was granted on June 27th, zero

25    documents.  Then after the protective order was granted, they

1    produced July 18th document, but no certification --

2                THE COURT:  Oh, okay.  So --

3                MR. JANA:  -- as submitted by paralegal.

4                THE COURT:  Submitted by paralegal you said?

5                MR. JANA:  Yes.

6                THE COURT:  Okay.  So you're -- when you say zero

7    documents, you're talking about initially.  Then there was a

8    supplementation.  And I -- what I understand you to be arguing

9    is supplement what?

10                MR. JANA:  That's right.

11                THE COURT:  You're not sure what that went to.

12                MR. JANA:  That's correct.

13                THE COURT:  And that's point number one.  Point

14    number 2 is, oh, and you didn't certify what you're supposed

15    to.  Do I have your -- do I have that right?

16                MR. JANA:  Yes, Your Honor.

17                THE COURT:  Okay.  Is that the kind of nub of your

18    argument or is there something more?

19                MR. JANA:  That's pretty much the key component, but

20    I already, you know, dealt with Walmart (indiscernible) there's

21    out of the state paper called (indiscernible) and where there

22    was too many companies.  There were extending discovery and

23    during that Rule 34 productions, some of the documents in Itmar

24    wanted to have more documents whether the custodian has done

25    more research and they have to certify.

1        So basically, they had a baseline production already.

2   And they were set or they have the document, they don't need to

3   do any more.

4        THE COURT:  Okay.

5        MR. JANA:  This is different.  So I would be --

6        THE COURT:  I think I -- yeah, I think I understand

7   your argument.  I want to give Walmart --

8        MR. JANA:  Sure.

9        THE COURT:  -- a chance to respond.

10       MR. JANA:  Sure.

11       THE COURT:  And then, you'll have a chance for

12  rebuttal.

13       And Mr. Wahby, I guess what I'm wondering is this

14  seems like something that maybe can be cleared up pretty easily

15  if you can identify what the production was going to, the

16  supplemental production.

17       MR. WAHBY:  Yes.

18       THE COURT:  And if there's some certification that

19  you can provide, even if maybe even if the rules don't require

20  it, if there's some assurance that you can provide that would

21  show that what you're sending is accurate?

22       MR. WAHBY:  Out of deference to the Court, I'll say

23  here in open court that what I provided was certified pursuant

24  to Rule 26(g).  So that is my official statement on the record

25  to the Court and to Dr. Jana.

1    I'd go one step further and say at the time it was
2    provided, it actually was certified.  After I signed our
3    initial disclosures as the Court note as well pursuant to Rule
4    26, that's the certification everything is complete and
5    accurate to the best of my knowledge.  We provided the initial
6    disclosures.

7    And my -- the rest of the team, paralegals,
8    associates, administrative support can rest assured that they
9    too can send emails attaching documents to make a supplemental
10   production.  And that actually relates back to the original
11   certification.  So it's like one continuing certification.  So
12   I'm on the hook the whole time for the certification.

13   THE COURT:  And what was that so I -- what I
14   understood, Dr. Jana to be arguing in part was, you know, the
15   zero documents part.  There was zero documents initially.  So
16   how could you supplement zero?

17   MR. WAHBY:  It's a -- yes, Your Honor.  Thank you.
18   It's a supplement to the initial disclosure.  So here's the
19   disclosure certified in full pursuant to Rule 26(g) seal of
20   approval pursuant to the federal rules, subject to the Court's
21   penalties if anything goes to awry.

22   And then, we supplement some additional documents.
23   The timing was that there was a pause as we hoped to get a
24   protective order entered.  That created some confusion.  So we
25   said forget the protective order.  Produce everything that we

1    possibly can.  And then, we got the protective order and we

2    made a second production of the email we thought should be

3    protected.

4         And then, including the metadata.  So that's how that

5    all went down.  And so everything rest assured is certified

6    under the federal rules.  I buried my signature wherever they

7    come from, paralegal, associate, whatever the case may be.

8         THE COURT:  So you made that representation in open

9    court today that it was certified as required.  Would you be

10   willing to just put that in writing and submit that --

11        MR. WAHBY:  I will --

12        THE COURT:  -- 7 days from now?

13        MR. WAHBY:  Yes, Your Honor.

14        THE COURT:  Okay, so again, Dr. Jana, I'll let you

15   know when it's time for you to speak again.  I want to make

16   sure I'm finished talking to Mr. Wahby first.

17        Okay, well, if Walmart is able to do that within 7

18   days just to confirm what you said in open court, that seems

19   like that would solve this problem.

20        MR. WAHBY:  Yes, sir.  For the Court's own -- just

21   for my edification to clarify for the Court, everything

22   is -- we provided initial disclosure.  And they're signed.  And

23   that was perfectly appropriate.

24        And say I'm going to -- I -- as a deference to the

25   Court and pursuant to the Court's request, I will do that or

1  whatever the Court requests, but the initial disclosures as

2  produced were perfectly certified.

3          THE COURT:  Understood.  I'm just trying to see if

4  there's a way that we can clear this up consistent with what

5  you've said in open court today.

6          MR. WAHBY:  And we'll follow Your Honor's lead on

7  that.

8          THE COURT:  Okay.  Is there anything else you want to

9  say on Docket 94?

10         MR. WAHBY:  No, thank you.

11         THE COURT:  Okay.  So Dr. Jana, I'll give you a

12 chance for a brief rebuttal.

13         MR. JANA:  Yes, Your Honor.  Again, I'll come back to

14 Docket 71, Walmart initial disclosure.  Again, I don't want to

15 repeat the same thing again, but I want to make sure the record

16 reflects Walmart's initial disclosure is starting from Docket

17 Number 70-1, page ID 1069 and ending 1073.

18         I also want to make sure the record reflects my

19 statement on page number 7, Walmart's never made a valid Rule

20 26(a)(1)(A)(2) disclosure.  So there is nothing to supplement

21 under Rule 26(e).

22         THE COURT:  Okay.  Thank you for your argument on

23 Docket Number 49.  I've ordered there to be a written

24 confirmation of what Mr. Wahby has said in Court today,

25 otherwise Docket 94 is denied for the reasons that I've stated.

1      That takes us to Docket Number 109.  This is an

2   emergency motion to place the July 18th production in the

3   public domain.  I'll take your argument on that, Dr. Jana.

4      MR. JANA:  So 109?

5      THE COURT:  Yes.

6      MR. JANA:  Okay, so again, it boils down to the same

7   problem of certification that Walmart did not certify.  And I

8   still did not get, Your Honor, Walmart did not say what kind of

9   document.  Was it supplemented initial disclosure or I still

10  didn't get that answer.

11      That being said, as you have already, Your Honor,

12  they should certify, but I want to request that that

13  certification should be under oath.  So that was done --

14      THE COURT:  Say that again?

15      MR. JANA:  Under oath.

16      THE COURT:  Under oath.  Okay.

17      MR. JANA:  Yes.  And 109 also boils down to the same

18  logic, the no certification means Court must strike it.

19      And if that document does not belong to any discovery

20  category, it should not be -- belong to any protective order

21  because protective order only happens for discovery documents.

22      And if July 18 production does not belong to any

23  discovery category, therefore, July 18 production should not be

24  under the protective order.

25      THE COURT:  Okay.

1           MR. JANA:  Now, Your Honor, do you have any question?

2           THE COURT:  No, I just thought you might be done with

3    your argument on that.

4           MR. JANA:  No, not yet.  One second.  So that's the

5    main argument, Your Honor, because it doesn't have any category

6    of the documents.

7           Then in 109, I have found multiple NRICs with that

8    EML file.  So, Your Honor, I want to draw your attention on my

9    statement on page number 18.  On page number 18, as we all

10   know, we all use email.  We have our email.  We write some

11   email and push the send button.

12          Once you send button, it goes out of our server.  It

13   hits the in between server called SMTP.  And once it hits the

14   SMTP, it clears a hit record right there.  And then, it goes to

15   the receiver end.  And the receiver receive that email.

16          So, forensically when I analyze, any forensic

17   (indiscernible) analyze, this was C.A. Pally (phonetic) sent

18   email should have SMTP hit because it needs to pass the server.

19          When I saw Walmart's July 18.eml file, which Walmart

20   claims as native file, as I have shown you before that in OSHA

21   it has a file (indiscernible) removed since then, and they have

22   added a new file called recommend (indiscernible) docs, which

23   is editable.

24          Now what we have found very interestingly that new

25   file has been added 106 times and it was not attached to the

 1    main EML file.  And the main EML file has never been sent.  The

 2    one provided to this Court has zero hit, zero.

 3            What it means it never passed SMTP.  It is a

 4    standalone version attached to this doc file and give it to us

 5    modified.

 6            Your Honor, it's a question of integrity of this

 7    Court.  If Walmart is allowed to use document without

 8    certification, without producing any certified documents and

 9    produce altered documents, (indiscernible) documents, there is

10    no justice.

11            I believe this Court is fully aware of what's going

12    on.  And I have complete trust on this Court.  And I believe

13    on -- I have provided sworn affidavit in Docket 109 that I have

14    analyzed.

15            THE COURT:  Let me just --

16            MR. JANA:  Yeah.

17            THE COURT:  Let me ask you if I understand correctly

18    --

19            MR. JANA:  Sure.

20            THE COURT:  -- what you're asking for in Docket 109.

21    You're asking for the July 18th, 2025 production to be placed

22    in the public domain; is that right?

23            MR. JANA:  Yes, Your Honor.

24            THE COURT:  Okay.  And well, let me just let you wrap

25    up your argument.

 1          MR. JANA:   Okay.  So, as you have seen, not only it

 2   was not certified, not only it doesn't belong to any discovery

 3   category, but also, it has fraudulent information throughout

 4   that production.

 5          THE COURT:   But how does that -- I want you to focus

 6   on the public domain issue.

 7          MR. JANA:   Right.

 8          THE COURT:   That's the basis for this.

 9          MR. JANA:   Okay, okay, sure.  I -- Your Honor, I put

10   that on that page number 1, Cara Pappas (phonetic) and public

11   interest.  As I said, Cara is the nation's first

12   (indiscernible) case right here.

13          Now if Walmart is allowed to use altered document

14   without producing a single document for the last two years, the

15   (indiscernible) and the Congress' intent to protect this

16   (indiscernible) is horrible (indiscernible).

17          THE COURT:   Okay.

18          MR. JANA:   And that's --

19          THE COURT:   I'll let you have rebuttal.  Let me hear

20   from Walmart on this point.

21          And maybe, Mr. Wahby, if you could help me focus on

22   what the Court needs to decide here?

23          MR. WAHBY:   Yes, Your Honor.  The email that was

24   produced at that time, there was discussion if we produce the

25   metadata, maybe that will assuage all of these concerns about

1    forgeries and manipulation.

2              Well, no, we'll make things worse.  Maybe there's --

3    so we produced the email with the metadata pursuant to the

4    protective order that Your Honor entered and so --

5              THE COURT:  Okay, so you put some kind of

6    confidential marking on that when you produced it?

7              MR. WAHBY:  Yes, Your Honor.

8              THE COURT:  Uh-huh.  And you meant for that

9    production to be covered by the protective order, right?

10             MR. WAHBY:  Absolutely.

11             THE COURT:  Uh-huh.  Okay, there was some I think I

12   have a note here about some email traffic.

13             MR. WAHBY:  The --

14             THE COURT:  Did you say that to Dr. Jana in email

15   traffic or how did this play out?

16             MR. WAHBY:  Well, if the email -- the email at issue

17   that the Plaintiff wants to put in the public record contains

18   personal information about other people, including people who

19   reported Dr. Jana.  And it's a highly sensitive email.  He has

20   it, but it shouldn't be in the public record.

21             It includes the identities of others who have no

22   interest in being publicly disclosed in that way.  And that's

23   why we held it until Your Honor entered a protective order.

24             THE COURT:  Yeah.

25             MR. WAHBY:  Am I answering Your Honor's question?

1        THE COURT:  Yeah, I think so.

2        MR. WAHBY:  And there's -- so the parties here in

3   this case claim that Dr. Jana have the contents of the email,

4   including the metadata, there's nothing to be gained by making

5   it publicly available for the world to see.

6        THE COURT:  Okay, I'm looking at the protective

7   order, Section 4 I think it is, on page 4.  It provides a

8   mechanism to challenge designations that I think you made here

9   of confidentiality.  Did Dr. Jana comply with that?

10        MR. WAHBY:  No, sir.  No, Your Honor.

11        THE COURT:  Okay.

12        MR. JANA:  Your Honor, there's is no confidential --

13   I'm sorry.

14        THE COURT:  Still talking to Mr. Wahby.  Is that

15   reason enough to deny Docket 109?

16        MR. WAHBY:  Yes, Your Honor, yes, Your Honor.

17        THE COURT:  Okay, you have anything else to add on

18   that?

19        MR. WAHBY:  No, Your Honor.

20        THE COURT:  I'll hear rebuttal from you, Dr. Jana.

21        MR. JANA:  Okay, so Wendy Bowman's email was not

22   confidential.

23        THE COURT:  Okay, and you know the docket entry I

24   just talked about, the protective order, part 4, provides a

25   mechanism for you to make that assertion, right?

 1          MR. JANA:  But my question is, Your Honor, this

 2    production does not belong to any discovery category.

 3          THE COURT:  No, no, no.  Do you understand that?  Do

 4    you understand that part 4 of the protective order says that a

 5    receiving party may challenge a producing party's designation

 6    of confidentiality at any time?

 7          MR. JANA:  Yes.

 8          THE COURT:  And then, it goes through what you'd have

 9    to do for that?

10          MR. JANA:  I -- it does, Your Honor.  I wrote that

11    and it is in the court docket.  And there is a document with

12    the court docket for more than one year in the public docket.

13    And Walmart has put that it's confidential.  I wrote that in

14    the court docket.  It is on the court docket.  So there is no

15    confidentiality properly designed.

16          I put a document in court docket, Docket if I

17    remember correctly Exhibit Number 9 in the complaint Docket 13,

18    it is on the court docket for more than one year.  Then Walmart

19    reproduced the same document and designate it as confidential.

20          THE COURT:  Okay.  Let me press pause on what you're

21    saying and hear from Mr. Wahby.

22          Dr. Jana has said that he did comply with that

23    provision.  Is that accurate?

24          MR. WAHBY:  It's not accurate, Your Honor.  He said

25    there was no designation whatsoever because in his mind, they

 1    were not certified.  They're not -- it's a document dump and

 2    they don't exist.

 3            So there is no -- they don't exist in his mind

 4    something that could be -- designated as confidential.  So he

 5    just ignored the existence and the designation and the P.O.

 6            THE COURT:  Okay.

 7            MR. WAHBY:  But it goes back to the certification and

 8    the forgery and all of that.

 9            THE COURT:  Yeah.  And I've already ruled on some of

10    this.

11            MR. WAHBY:  Yes.

12            THE COURT:  Is there anything else you want to say,

13    Dr. Jana, on this point?

14            MR. JANA:  That statement is not correct, Your Honor.

15    I did say that exhibit using Docket 13 is there.  And Walmart

16    produced the same document as confidential I challenge in the

17    court docket, but they never responded to my response.  So what

18    the definition of confidentiality here, number one.

19            Number two, Wendy Bowman's (indiscernible) is not

20    confidential.  The very first place, they did not produce Wendy

21    Bowman's email as confidential.  So that should be public any

22    way because there is no confidentiality attachment to Wendy

23    Bowman's email.

24            Second, as I said, with all the other, you know,

25    arguments we have, if the document does not belong to any

 1    discovery category, I still didn't get that answer from this so

 2    far, then it should not be under protective order.  It's very

 3    simple logic.

 4              THE COURT:  Okay, I'm going to deny Docket 109 for

 5    the reasons I've stated.  You need to file the procedural

 6    requirements challenging confidentiality designation.  I

 7    haven't seen where you did that.

 8              I'm also going to deny Dockets 106 and 108 because

 9    they're essentially repeats of Docket Number 94.

10              Does that cover all the Docket entries that were set

11    for today?  Is there anything more?

12              MR. WAHBY:  That's everything, Your Honor.

13              MR. JANA:  That's everything.

14              THE COURT:  All right, so again, Dr. Jana, if you

15    want to challenge designation of information that's

16    confidential under the protective order, please look at Docket

17    Number 67 and page 4 for the procedure.

18              You filed a lot of motions and a lot of notices that

19    make it difficult for the Court to efficiently process this

20    case.  The Court's doing its best to understand what you're

21    arguing and to process your motions, review them, and rule on

22    them in due course.

23              The Court has a very heavy workload as I'm sure you

24    understand.  To the extent that you're re-submitting notices or

25    motions asking for the same relief or overlapping relief, it

1    slows things down even more.

2            Emergency motions are reserved under our local rules

3    for situations that are -- where you need to avoid even it --

4    irreparable harm.  Otherwise, you shouldn't be filing emergency

5    motions.  Just because you use that label doesn't mean a Court

6    will treat it as such.

7            One, you know, one point that you should be aware of

8    if you want to the Court to do something, you should file a

9    motion.  If you want to the Court to know something, you should

10   file a letter or a notice.

11           To the extent you're filing notices that ask the

12   Court to do something, that should be in the form of a motion.

13   Again, the motion should be supported and not duplicating

14   requests that you've made elsewhere.

15           There are page limits that you have to abide by.  And

16   you're aware of that.  Both parties have to abide by the page

17   limits in local rules.

18           And as for -- I think there's been some accusation

19   the Court maybe ruled on some things without waiting for a

20   reply or a surreply.

21           Under the local rules, there's no obligation for the

22   Court to wait for a reply or a surreply.  There is nothing

23   improper about a court ruling on something before a reply or

24   surreply comes in.

25           There's also been some accusations here about use of

1    artificial intelligence.  The Court has essentially no

2    tolerance for hallucinated cases or the use of artificial

3    intelligence that produces inaccurate statements.

4           And I don't find that Walmart has done that, even

5    though, Dr. Jana, you've suggested that it might have.

6    Sometimes when lawyers are quoting a case, they'll insert

7    brackets or ellipses to show alterations of the quoted text.

8    That's permissible.  It doesn't make it a incorrect quotation.

9           There appears to be some citations in your filings,

10   Dr. Jana, that don't appear for the or don't support the

11   propositions that they're citing for.

12          To the extent that you're using artificial

13   intelligence to generate that and not checking that, I would

14   want to make very clear that the Court won't allow you to do

15   that and you risk sanctions for doing that.

16          So with that, I believe that Walmart has said that

17   I've covered the motions that were set for today.  Is there

18   anything else that you believe was set for today and should be

19   resolved, Dr. Jana?

20          MR. JANA:  Your Honor, I think I understand Court's

21   position.  I want to make it clear my position while I filed

22   two to three motions for last 11 months from August 2024 until

23   27th of June.

24          I have not rebuttal, submitted any rebuttal for

25   protective order or denial single line sentence, denial of

1  Docket 91, 92, 93, or 98.

2          However, as I said, uncertified production must be

3  stricken.  This is not discretionary.  This is the law.  And

4  that has not been happened in this Court.  And that prompted me

5  to file motions after motions after notice.

6          My intention is not rebuttal this Court.  I'm very

7  respectful, but when I see Plaintiff's motion for compel in-

8  camera review for one Wendy Bowman's email has been denied

9  within 24 hours, when opposing attorney is saying is premature,

10  Court is adapting similar language premature while the Court

11  ministral duty to strike this production, but it didn't happen.

12  So that's compelling me to file these motions and notices.

13          THE COURT:  Okay.  Well, thank you for the

14  explanation.  You have been heard today and you've gotten

15  rulings on many of these motions.  I hope that the guidance the

16  Court has provided today will be helpful to understand how you

17  can proceed with the case.

18          Is there anything further from Walmart?

19          MR. WAHBY:  No, Your Honor.

20          THE COURT:  Okay, thank you both.  We're adjourned in

21  this matter and all are excused.

22          THE BAILIFF:  All rise.

23      (Proceedings concluded at 5:00 p.m.)

24

25

1

**CERTIFICATE**

2

3

4          I, Chris Hwang, court approved transcriber, certify

5     that the foregoing is a correct transcript from the official

6     electronic sound recording of the proceedings in the above-

7     entitled matter.

8

9

10

11          /s/ *Chris Hwang*
            _____          October 11, 2025
12
            Chris Hwang                        Date
13
            Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25