# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | § | **Civil Action No. 4:24-cv-00698-SDJ-BD** |
| | § | |
| DILIP JANA | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WALMART, INC.,** | § | |
| *Defendant.* | § | |
| | § | |



---

### PLAINTIFF'S MOTION TO ENFORCE DKT. 67 ¶7 AND DECLARE JULY 18, 2025 PRODUCTION OUTSIDE DKT. 66/67

---

Plaintiff Dr. Dilip Jana, ***pro se***, respectfully moves under the Protective Order (Dkt. 67) ¶7 for a global order declaring Walmart's July 18, 2025 production (**Exhibit 1**, Submitted **UNDER SEAL**) outside the Protective Order's coverage and requiring Walmart to withdraw all July 18 confidentiality designations. This is a threshold scope/eligibility motion under ¶7—not a file-by-file confidentiality dispute and not a motion to compel.

### Notice to Avoid Any "No Opportunity to be Heard" Argument; Request for Short, Fixed Response Deadline (No Additional Time).

To avoid any suggestion—now or on appeal—that Walmart lacked notice or a fair opportunity to be heard, Plaintiff expressly requests that the Court order Walmart to file a substantive response to this Motion within fourteen (14) days of service—no later than January 29, 2026—and state expressly that any response-suspension concepts associated with Dkt. 99 do not apply to this Motion. Dkt. 99

reflects Walmart's request to be excused from responding "unless ordered to respond"; Plaintiff is requesting such an order here and affirmatively invites adversarial testing on a short, fixed schedule. If Walmart elects not to respond by January 29, 2026, that nonresponse will be by Walmart's own choice—not for lack of notice—and Plaintiff requests that the Court apply the ordinary consequences of nonresponse to the extent permitted, including treating the Motion as unopposed and deeming any untimely arguments or objections waived. Plaintiff further requests that extensions be denied absent truly extraordinary circumstances given that the July 18 production issues have been live since July 18, 2025 and have already been addressed in multiple filings and hearings.

## I. Factual Background And Dkt 67 ¶7 Predicate (Exhibits A-C)

### A. Dec. 29, 2025: Plaintiff served a written ¶7 GLOBAL challenge notice (Exhibit A)

On December 29, 2025, Plaintiff served Walmart's counsel a written Protective Order ¶7 challenge notice directed to the July 18 dump (See Exhibit A) and asked whether Walmart will withdraw Confidentiality designation:

> "Within 10 business days of receipt of this email, please confirm in writing that Walmart will:
>
> 1. Withdraw the confidentiality designations for the July 18 dump in its entirety and stipulate that the July 18 production is not governed by Dkt. 66/67 because it is not valid Rule 26(a)/(e) discovery material under Gate 1; and
> 2. In the alternative (if Walmart refuses), provide a Rule-text-first response, specifically:

B. Walmart did not respond within 10 business days.

C. Exhibit A requested CV-7(h) conference times; ¶7 required a timely designation position

Exhibit A requested a conference (verbatim):

> "Local Rule CV-7(h) Conference Request:
> Protective Order ¶7 references a conference under Local Rule CV-7(h). Plaintiff is pro se and preserves all rights, but to avoid any procedural dispute Plaintiff is willing to confer.

*Please provide two available times (Central) for a short call within the next 7 days, or state that Walmart declines."*

Walmart did not respond and did not propose any time for a phone conference.

D. Jan. 14, 2026: Plaintiff served an impasse notice after ¶7's response window expired (Exhibit B)

After ¶7's ten-business-day period expired without a response, Plaintiff served a written impasse notice. Exhibit B states (verbatim):

> *"¶7 provides that the Producing Party has ten (10) business days after receipt of a challenge notice to advise whether it will change the designation. That period has now expired without a response."*

Exhibit B also records the failed conference predicate (verbatim):

> *"Plaintiff also requested conference times pursuant to ¶7's reference to Local Rule CV-7(h). No times were provided and no conference was offered."*

Exhibit B then states Plaintiff's conclusion and intent to seek ¶7 relief (verbatim):

> *"Accordingly, Plaintiff concludes the parties are at an impasse and will proceed to seek Court relief under ¶7 to alter the confidential status of the July 18, 2025 production (globally)."*

And Exhibit B offered one final deadline to avoid motion practice (verbatim):

> *"If Walmart wishes to avoid motion practice, counsel may reply by 5:00 p.m. Central today stating Walmart's position on whether it will withdraw or modify the July 18 designations globally and proposing two specific CV-7(h) conference times (Central). If no such response is received by that deadline, Plaintiff will proceed to file the motion and will treat the parties as remaining at impasse."*

E. Jan. 14, 2026: Walmart refused and invoked "discovery stayed" as the reason (Exhibit C)

Walmart responded the same day. Exhibit C states (verbatim):

> *"Given that discovery in this case is currently stayed, Walmart does not consider your challenge to its confidentiality designations appropriate at this time."*

Exhibit C continues (verbatim):

> *"Even if Walmart agreed with your challenge to the designations (which it does not), Walmart taking corrective action would be inconsistent with the stay on discovery."*

That is Walmart's stated position: that a discovery stay operates as a blanket veto over Protective Order ¶7—such that Walmart need not withdraw, modify, or even substantively justify designations within ¶7's ten-business-day framework, and need not offer the CV-7(h) conference ¶7 contemplates.

## II. Argument

### A. Dkt 67 ¶7 Is the Right Vehicle to Challenge Confidentiality Designation

At the October 6, 2025 hearing (**Exhibit F**), the Court directed Plaintiff to use the Protective Order's designation-challenge mechanism, stating: **"I'm looking at the protective order. Section 4 I think it is, on page 4. It provides a mechanism to challenge designations….You need to file the procedural requirements challenging confidentiality designation." (Exhibit F, p33-36).** Plaintiff is doing exactly what the Court instructed: invoking Protective Order ¶7 as the procedural vehicle for a designation dispute. Plaintiff further notes that **Dkt. 109 was denied without reaching the merits**, and nothing in that ruling waives or forecloses Plaintiff's ability to file an appropriate motion addressing the forensic anomalies identified in Dkt. 109; Plaintiff expressly preserves all such rights and arguments. Protective Order ¶7 exists to (1) create a structured challenge process, (2) require the designating party to either withdraw or justify the designation, (3) preserve the status quo only **pending** Court resolution, and (4) tee up a Court ruling when the parties reach impasse. Plaintiff has followed ¶7 as written. This motion is therefore not a collateral attempt to "reopen discovery" or "compel" anything; it is a direct request for the Court to **enforce its own Protective Order** and decide a threshold coverage question.

Critically, this is not a dispute about whether particular documents are sensitive. Plaintiff is not asking the Court to adjudicate, one document at a time, whether each item should be "Confidential."

Plaintiff's challenge is **global and threshold**: Plaintiff contends the July 18, 2025 production is not valid Rule 26(a)/26(e) "discovery material" and therefore is not eligible to be treated as "Protected Material" under Dkt. 66/67 at all. In other words, the Court is being asked to decide a **scope/eligibility** question: whether confidentiality labels may be used to bring an entire production under the Protective Order **when the production itself is challenged as outside the Rule 26(a)/(e) framework**. That threshold nature is exactly why ¶7 is the right mechanism. ¶7 is designed to resolve disputes about "designations" and the "level of protection" afforded to materials—i.e., whether the Protective Order applies and how. Plaintiff triggered ¶7 in writing and demanded precisely what ¶7 requires: withdrawal/modification or a substantive justification grounded in controlling authority.

Plaintiff's position remains the same: the July 18 dump is outside the intended scope of "Protected discovery material" because the production is not anchored to valid Rule 26(a)/(e) predicates and therefore cannot be brought under the Protective Order simply by labeling. The Protective Order's ¶7 mechanism is therefore the proper—and Court-directed—vehicle for resolving this dispute as a threshold matter of Protective Order scope, not as an item-by-item confidentiality review.

## B. Discovery Category / Threshold (Gate 1)

### Plaintiff's conferral email (Exhibit A) explains why Walmart's July 18 dump does not belong to any discovery category and explains why Plaintiff's Dkt 67 ¶7 challenge is global.

Exhibit A contains Plaintiff's written conferral/challenge notice under Protective Order (Dkt 67) ¶7. Walmart's April 7, 2025's baseline Initial Disclosure (**Exhibit E**) that produces no documents and provides no "category and location" is not a Rule 26(a)(1)(A)(ii) disclosure of documents/ESI. It leaves nothing concrete to "supplement" under Rule 26(e).

The following is **quoted verbatim** from Exhibit A and is incorporated here to show, in Walmart's own requested meet-and-confer posture, why Plaintiff contends the July 18 dump does not match any valid discovery category and therefore cannot be brought under the Protective Order merely by labeling:

> ### *"Gate 1 (Discovery Category / Threshold) — July 18 is not valid Rule 26(a)/(e) discovery; "supplement" cannot "supplement zero"*
>
> > *Walmart now characterizes the July 18 dump as "Supplemental Initial Disclosure," i.e., a Rule 26(e) supplement to Rule 26(a) initial disclosures. Gate 1 asks a threshold question: "What discovery category is this production?" If the production does not match a discovery category under the Rules, then it cannot be "confidential discovery material" under the Protective Order simply by labeling.*
> >
> > ### *1) Walmart's April 7 baseline did not provide Rule 26(a)(1)(A)(ii) "a copy—or a description by category and location"*
> >
> > *Rule 26(a)(1)(A)(ii) requires either:*
> >
> > - *A copy of the documents/ESI; OR*
> > - *A description "by category and location" of the documents/ESI the party "may use to support its claims or defenses."*
> >
> > *Walmart's April 7 "Initial Disclosures" did not provide either of those Rule-compliant options as a baseline. Instead, Walmart stated that its "investigation remains ongoing" and deferred production (including by conditioning production on entry of a protective order).*
> >
> > *Walmart's April 7, 2025's baseline Initial Disclosure that produces no documents and provides no "category and location" is not a Rule 26(a)(1)(A)(ii) disclosure of documents/ESI. It leaves nothing concrete to "supplement" under Rule 26(e).*
> >
> > ### *2) Rule 26(e) "supplementation" presupposes an actual Rule 26(a) baseline*
> >
> > *Rule 26(e)(1)(A) applies to "A party who has made a disclosure under Rule 26(a)." Supplementation is not a substitute for making the baseline disclosure in the first place.*
> >
> > *That is exactly why the Court identified the Gate 1 defect on the record:*
> >
> > > *"There was zero documents initially. So how could you supplement zero?"*

---

*That question is not rhetorical and it is not a "technicality." It identifies a **category problem (Gate 1)**: a "supplement" label cannot create a valid Rule 26(e) category where the baseline did not comply with Rule 26(a)(1)(A)(ii) in the first place.*

***Walmart did not answer the Court's Gate 1 question.** Instead of answering how a Rule 26(e) supplement can exist when the Rule 26(a) baseline produced zero documents and no category/location description, Walmart pivoted away from Gate 1 and moved to a different narrative (signature/"continuous certification"), leaving the Gate 1 defect unresolved.*

> **THE COURT:** *"There was zero documents initially. So how could you supplement zero?"*

*So this is a direct written request: **Walmart must answer that Gate 1 question in writing.** Please identify*

*(i) what Rule 26(a) baseline Initial Disclosure you contend existed on April 7 that can be "supplemented," and*

*(ii) where, in that baseline, Walmart provided either "a copy" or a "description by category and location" of documents/ESI it may use—consistent with Rule 26(a)(1)(A)(ii).*

*(iii) where Rules 26(a), 26(e), or 26(g) permit a "continuous certification" theory to cure a noncompliant baseline.*

**3) Gate 1 consequence for the Protective Order (global)**

*Because the Protective Order governs "confidential discovery material" exchanged in discovery, and because the July 18 dump is not valid Rule 26(a)/(e) material under Gate 1, the entire July 18 dump is outside the Protective Order's intended scope. A confidentiality stamp cannot convert an extra-category production into "Protected discovery material."*

*This is why Plaintiff's ¶7 challenge is global." (emphasis added*

## Dkt. 67 protects only defined "Confidential Information" exchanged in discovery—not any material outside of discovery category

Even apart from the Rule 26 category defects described above, Dkt. 67's own text confirms that the

Protective Order is not a free-floating secrecy device that attaches to whatever a party later stamps

"CONFIDENTIAL." The Order protects only defined "Confidential Information" in good faith and

only as to materials produced in this litigation / exchanged in discovery—i.e., within the Order's defined scope.

Dkt. 67 defines "Confidential Information" as follows (verbatim):

> *"For purposes of this Protective Order, 'Confidential Information' shall mean information which in good faith is believed by the producing party to contain: (a) confidential personal identifying information; (b) non-public and/or confidential business or financial information; or (c) other confidential information protected from public disclosure." (Dkt. 67 ¶2)*

And it defines "Confidential" material in terms of what is produced in the litigation (verbatim):

> *"For purposes of this Protective Order, 'Confidential' information produced in this litigation, including without limitation, documents, deposition testimony, and written discovery responses, shall be governed by this Protective Order." (Dkt. 67 ¶3)*

Thus, the Protective Order's protections attach only to "Confidential" information produced in this litigation and meeting the Order's definition of "Confidential Information"—not to an entire production that is challenged as **outside valid Rule 26(a)/(e) discovery category eligibility** and therefore outside the Protective Order's intended coverage. A confidentiality stamp cannot expand Dkt. 67 beyond its own definitions, and it cannot be used to shelter a production that Plaintiff challenges as not valid "Discovery Material" exchanged in discovery in the first place.

## C. Signature/Certification Defect (Gate 2)

### July 18 dump  is not Rule 26(g)-compliant "discovery material," and therefore, outside of Protective Order coverage

Plaintiff's conferral letter **(Exhibit A)** explicitly stated that Walmart's July 18 dump lacks Rule 26(g) compliant Certification and there is no such "continuing certification" law available for Walmart in Federal Rules of Civil Procedure.

### C. Gate 2 (Signature / Certification) — Walmart's "continuing certification" position is not Rule 26(g) compliance, and the April 7 signature does not cure July 18

*Even assuming arguendo that Walmart could call July 18 a "supplement" (Gate 1)(it is not), Gate 2 addresses the separate requirement that "Every disclosure" must be signed and certified.*

### C1. The October 6 record: Walmart stated a "continuing certification" theory and agreed to put it in writing

*At the October 6 hearing, Walmart's counsel articulated the position that later productions sent by "paralegals, associates," etc. "relate back" to the initial-disclosure signature—described as "one continuing certification":*

> *"[T]hat actually relates back to the original certification. **So it's like one continuing certification**."*

*Walmart further stated:*

> *"everything rest assured is certified under the federal rules. I buried my signature wherever they come from, paralegal, associate, whatever the case may be."*

*And after the Court asked for a written confirmation:*

> *"So you made that representation in open court today that it was certified as required. Would you be willing to just put that in writing and submit that … 7 days from now?"*
> *"Yes, Your Honor."*

*This matters here because Walmart is now expected—under the Rules and the Court's request—to tie its position to Rule 26(g)'s actual requirements, not an extra-text "umbrella" theory.*

### C2. Why the "continuing certification" theory does not satisfy Rule 26(g)'s text

*Rule 26(g)(1) is not "signature somewhere in the case." It is disclosure-by-disclosure:*

- *The Rule's command is categorical:*
  *"Every disclosure under Rule 26(a)(1) … must be signed…."*

---

*A later disclosure (a later "supplemental initial disclosure" under Rule 26(e)) is still a "disclosure under Rule 26(a)(1)" for signature purposes because it is part of the initial disclosure regime. Nothing in Rule 26(g) states that a prior signature automatically covers later disclosures indefinitely, including disclosures transmitted by non-signatories, without identifying what exactly is being certified at that later time.*

*Accordingly, Plaintiff understands Walmart's stated position (as quoted above) to be: "the initial-disclosure signature covers later supplemental productions by relation-back." Plaintiff cannot locate that relation-back concept in the text of Rule 26(g)(1) or (g)(2). If Walmart contends it exists, Walmart must identify the Rule-text hook or controlling authority that overrides Rule 26(g)(1)'s "Every disclosure … must be signed" requirement.*

### *C3. Independently: the April 7 signature cannot do the work Walmart assigns it here, because Rule 26(g)(1) certifies "complete and correct as of the time it is made"*

*Even if Walmart intends to rely on its April 7 signature as an "umbrella," Rule 26(g)(1) defines what that signature certifies:*

*it "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the disclosure "is complete and correct as of the time it is made."*

*But Walmart's April 7 Initial Disclosures simultaneously took the position that its "**investigation remains ongoing**" and did not provide the baseline "a copy—or a description by category and location" of documents/ESI the party "may use."*

*Those two things do not fit together as a "complete and correct" disclosure of Rule 26(a)(1)(A)(ii) materials. If Walmart's position is that April 7 was "perfectly certified" and "complete and accurate," then Walmart must explain—by **Rule text**—how a disclosure that (i) provides no documents and no category/location, while (ii) expressly indicates ongoing investigation / future supplementation / deferred production, satisfies a certification of completeness "as of the time it is made."*

### *C4. Gate 2 consequence: Plaintiff disputes that July 18 is Rule 26(g)-compliant "discovery material," and therefore disputes Protective Order coverage*

*Plaintiff's ¶7 challenge therefore extends to the global designation itself: Walmart is using Protective Order confidentiality to shield a production whose discovery-category and certification predicates remain defective.*

Walmart has acknowledged that the July 18 dump was not served with its own standalone signature/certification and has asserted that any certification "relates back" to the April 7, 2025 Initial Disclosures certification. Walmart stated (verbatim):

*"...supplemental production. And that actually relates back to the original certification. So it's like **one continuing certification**. So I'm on the hook the whole time for the certification –*

But Rule 26(g)(2) does not recognize a "relation-back" substitute for signing the disclosure at issue. Rule 26(g)(2) mandates (verbatim):

*Failure to Sign. Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.*

### D. Rule 37(c)(1) Preclusion (Gate 3)

Plaintiff's conferral letter (Exhibit A) expressly stated that Walmart's July 18 dump is outside Protective Order coverage **independently** because Rule 37(c)(1) precludes use of the July 18 materials as merits evidence where Rule 26(a)/(e) and Rule 26(g) predicates are not satisfied—and that Protective Order secrecy cannot be used to preserve or exploit material that the Rules render unusable. The following is **quoted verbatim** from Exhibit A:

*"D. Gate 3 (Rule 37(c)(1) Preclusion) — Walmart is "not allowed to use" July 18 materials, and Protective Order secrecy cannot be used to preserve unusable material*

*Rule 37(c)(1) is the Rule's enforcement mechanism when Rule 26(a)/(e) requirements are not met. It provides:*

*"the party is not allowed to use that information ... on a motion, at a hearing, or at a trial…"*

*Here:*

- *Gate 1: July 18 is not a valid Rule 26(e) supplement because there was no Rule 26(a)(1)(A)(ii) baseline "copy—or ... category and location" to supplement; and*
- *Gate 2: Walmart's asserted "continuing certification" theory does not match Rule 26(g)(1)'s requirement that "Every disclosure ... must be signed," and the April 7 certification cannot logically be used to certify an indefinite set of later materials without addressing "complete and correct as of the time it is made."*

*Therefore, July 18 materials should not be treated as usable merits evidence. As a practical matter, that is why Plaintiff is challenging global confidentiality coverage: the Protective Order should not be used as a vehicle to (i) keep the production secret, while (ii) simultaneously preserve or exploit it as a usable merits record.*

*Concrete Example (Wendy Bowman Email -- WM-JANA_0000260.pdf): Walmart's April 7 "Initial Disclosures" produced no documents/ESI and provided no description "by category and location" as Rule 26(a)(1)(A)(ii) requires. Yet after entry of the Protective Order, Walmart included in the July 18 dump a purported Wendy Bowman October 4, 2023 email, and did not designate that email "Confidential" (WM-JANA_0000260.pdf). By Walmart's own actions, this item was not treated as confidential—so there was no protective-order excuse for withholding it at the Rule 26(a) baseline stage. Rule 26(e) supplementation presupposes a compliant baseline disclosure; an empty, uncategorized baseline cannot be "supplemented" into compliance by later dumping key merits documents. Accordingly, Rule 37(c)(1) applies: evidence not provided as required by Rule 26(a) or (e) "is not allowed to be used … on a motion, at a hearing, or at a trial," absent substantial justification or harmlessness—neither applies to a document Walmart itself treated as non-confidential."*

Exhibit A (Plaintiff's December 29, 2025 conferral letter) invoked Protective Order ¶7 and required Walmart—within ten (10) business days—to either withdraw/modify the July 18 designations or explain the basis for maintaining them. Because Plaintiff's challenge is threshold and global (category eligibility, Rule 26(g) certification, and Rule 37(c)(1) consequences), Exhibit A demanded **global withdrawal** or a **Rule-text-first** written response tied to the controlling Federal Rules, including identification of the asserted "continuing certification / relation-back" theory. The following is quoted **verbatim** from Exhibit A:

*E. Protective Order ¶7 Request (10 business days) — global relief + Rule-text-first response + request to identify the "continuing certification" theory in the Federal Rules of Civil Procedure*

*Protective Order ¶7 requires Walmart, within ten (10) business days after receipt, to advise whether it will change the designation(s). Plaintiff requests global relief consistent with Gates 1–3.*

*Within 10 business days of receipt of this email, please confirm in writing that Walmart will:*

1. *Withdraw the confidentiality designations for the July 18 dump in its entirety and stipulate that the July 18 production is not governed by Dkt. 66/67 because it is not valid Rule 26(a)/(e) discovery material under Gate 1; and*

2. *In the alternative (if Walmart refuses), provide a Rule-text-first response, specifically:*

*(a) Gate 1: Explain how July 18 can be a valid Rule 26(e) "supplement" when Rule 26(a)(1)(A)(ii) requires "a copy—or a description by category and location," Walmart's baseline did not provide either, and Rule 26(e)(1)(A) applies only to "a party who has made a disclosure under Rule 26(a)."*

*(b) Gate 2: Identify the Federal Rule text (or controlling authority) that supports Walmart's stated October 6 position that a later "supplemental" production "relates back" to an earlier signature as "one continuing certification," notwithstanding Rule 26(g)(1)'s requirement that "Every disclosure ... must be signed." In doing so, address the Court's Gate 1 question—"There was zero documents initially. So how could you supplement zero?"—and explain how a "relation back" certification cures that threshold defect.*

*(c) Gate 2 (independent): Explain how Walmart's April 7 signature can satisfy Rule 26(g)(1)'s certification that the disclosure "is complete and correct as of the time it is made," when Walmart's baseline did not provide the required "copy—or ... category and location" and stated the "investigation remains ongoing."*

*(d) Gate 3: Explain how Walmart contends Rule 37(c)(1)'s "not allowed to use" consequence does not apply to the July 18 materials, given Gates 1–2.*

*If Walmart intends to rely on any "case law" to avoid the plain text of Rules 26(a), 26(e), 26(g), or 37(c)(1)—including out-of-circuit decisions or distinguishable fact patterns—Walmart must identify the authority and explain why the Federal Rules' mandatory text is not controlling here. Plaintiff will not accept delay-by-citation as a substitute for Rule-text compliance.*

Exhibit A squarely tees up Gate 3 as an independent, rule-based barrier: if the July 18 materials were not provided "as required" by Rule 26(a) or (e), then Rule 37(c)(1) supplies the default consequence—Walmart "is not allowed to use" those materials "on a motion, at a hearing, or at a trial" unless Walmart carries its burden to show substantial justification or harmlessness. Because Walmart has taken the position that July 18 cures and should "extinguish" integrity disputes, Gate 3

matters now: it prevents Rule 37(c)(1) from being nullified in practice by procedural labeling, and it requires Walmart to confront the Rule's mandatory preclusion consequence on the record.

### E. Walmart Declined Plaintiff's CV-7(h) Conference Request and Withheld ¶7 Engagement; the Parties Are at Impasse and Court Intervention Is Required

Plaintiff invoked Protective Order ¶7 in writing and requested CV-7(h) conference times (Exhibits A–B). Walmart refused to engage the ¶7 challenge on the merits and asserted the discovery stay as a blanket basis to treat the ¶7 challenge as "not appropriate" and to refuse corrective action (Exhibit C). Exhibit C states (verbatim):

> "Given that discovery in this case is currently stayed, Walmart does not consider your challenge to its confidentiality designations appropriate at this time."
> "Even if Walmart agreed with your challenge to the designations (which it does not), Walmart taking corrective action would be inconsistent with the stay on discovery."

Accordingly, the parties are at impasse and Court intervention under ¶7 is required.

### F. Dkt 99 Does Not Authorize Walmart to Nullify Dkt 67 ¶7 - Walmart's "Stay" Theory Creates a One-Way Lock That Requires a Threshold Court Ruling

Walmart's position (as stated to Plaintiff) is that because discovery is stayed, Walmart will not treat Plaintiff's ¶7 designation challenge as "appropriate," and even if Walmart agreed, corrective action would be "inconsistent" with the stay. That position is incompatible with Dkt. 99's text and purpose. Dkt. 99 does **not** state that the Protective Order's ¶7 designation-challenge mechanism is suspended, nor does it authorize Walmart to keep a contested production under "CONFIDENTIAL" status indefinitely while refusing the very procedure the Court ordered the parties to use. A stay cannot be converted into a unilateral, one-way advantage: **Walmart cannot insist the July 18 production remain protected while simultaneously refusing the Protective Order's correction mechanism.** That is the precise reason a threshold scope/eligibility ruling is necessary.

# III. Relief Requested

WHEREFORE, Plaintiff respectfully requests that the Court GRANT this Motion and enter an Order providing the following relief:

1. **Dkt 67 ¶7 Scope / Coverage Ruling (Global):** Pursuant to Protective Order (Dkt. 67) ¶7, declare that Walmart's **July 18, 2025 production** (the "July 18 dump") is **outside the coverage** of the Protective Order and **not governed** by Dkt. 66/67 because it is not eligible "Discovery Material" / "Protected Material" within the meaning of Dkt. 67 and is not valid Rule 26(a)/(e) and Rule 26(g) compliant discovery material under Plaintiff's Gate 1 and Gate 2 defects.

2. **Global Withdrawal of July 18 Designations:** Order Walmart to **withdraw all confidentiality designations** applied to the July 18, 2025 production **in its entirety** (including any "Confidential," "Highly Confidential," or equivalent markings), and to serve written confirmation of that withdrawal.

3. **No Protective-Order Enforcement as to July 18:** Order that Walmart may not invoke Dkt. 66/67 to restrict Plaintiff's filing, discussion, or use of the July 18, 2025 production on the theory it is "Protected Material," and that the July 18 production may be used in this litigation without Protective Order constraints.

4. **Expedited Consideration / Shortened Response Time (CV-7(e)):** Order expedited consideration and fix Walmart's response deadline at **fourteen (14) days** from service of this Motion (and, if served January 15, 2026, **no later than January 29, 2026**), with **no**

**extensions** absent truly extraordinary circumstances, and state expressly that any

response-suspension concepts associated with Dkt. 99 do not apply to this Motion.

Dated: 01-15-2026

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002

# CERTIFICATE OF CONFERENCE

## (LOCAL RULE CV-7(h); PROTECTIVE ORDER DKT. 67 ¶7)

Local Rule CV-7's "meet and confer" and "certificate of conference" requirements do not apply to pro se litigants (Exhibit D). As the Rule states (verbatim): **"Neither the 'meet and confer' nor the 'certificate of conference' requirements are applicable to pro se litigants (prisoner or non-prisoner)".** Nevertheless, to avoid any procedural dispute and to streamline this issue without motion practice, Plaintiff attempted to confer as contemplated by Protective Order Dkt. 67 ¶7 and requested CV-7(h) conference times.

**Dec. 29, 2025 — Written ¶7 GLOBAL challenge notice (Exhibit A).** Plaintiff served Walmart's counsel a written Protective Order ¶7 GLOBAL challenge notice directed to the July 18 production and requested that Walmart state its designation position within ¶7's response period, including (verbatim):

> *"Within 10 business days of receipt of this email, please confirm in writing that Walmart will:*
> *Withdraw the confidentiality designations for the July 18 dump in its entirety and stipulate that the July 18 production is not governed by Dkt. 66/67 because it is not valid Rule 26(a)/(e) discovery material under Gate 1; and*
> *In the alternative (if Walmart refuses), provide a Rule-text-first response, specifically:"*

Exhibit A also requested a CV-7(h) conference (verbatim):

> *"Local Rule CV-7(h) Conference Request:*
> *Protective Order ¶7 references a conference under Local Rule CV-7(h). Plaintiff is pro se and preserves all rights, but to avoid any procedural dispute Plaintiff is willing to confer. Please provide two available times (Central) for a short call within the next 7 days, or state that Walmart declines."*

**No timely ¶7 response; no conference times.** Walmart did not respond within ¶7's ten-business-day period and did not propose any conference times.

**Jan. 14, 2026 — Impasse notice after ¶7 window expired (Exhibit B).** Plaintiff served a written impasse notice stating (verbatim):

> "¶7 provides that the Producing Party has ten (10) business days after receipt of a challenge notice to advise whether it will change the designation. That period has now expired without a response."
> "Plaintiff also requested conference times pursuant to ¶7's reference to Local Rule CV-7(h). No times were provided and no conference was offered."
> "Accordingly, Plaintiff concludes the parties are at an impasse and will proceed to seek Court relief under ¶7 to alter the confidential status of the July 18, 2025 production (globally)."

Exhibit B also offered a final opportunity to avoid motion practice (verbatim):

> "If Walmart wishes to avoid motion practice, counsel may reply by 5:00 p.m. Central today stating Walmart's position on whether it will withdraw or modify the July 18 designations globally and proposing two specific CV-7(h) conference times (Central). If no such response is received by that deadline, Plaintiff will proceed to file the motion and will treat the parties as remaining at impasse."

**Jan. 14, 2026 — Walmart refused and invoked the stay (Exhibit C).** Walmart responded the same day and refused to engage ¶7 on the merits, stating (verbatim):

> "Given that discovery in this case is currently stayed, Walmart does not consider your challenge to its confidentiality designations appropriate at this time."
> "Even if Walmart agreed with your challenge to the designations (which it does not), Walmart taking corrective action would be inconsistent with the stay on discovery."

The parties are at impasse and Court intervention is required.

Dated: 01-15-2026

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002

## CERTIFICATE OF SERVICE

On January 15, 2026, a true and correct copy of the foregoing was served upon the following through

the Court's CM/ECF system:

| Peter S. Wahby | Morgan E. Jones | Holmes H. Hampton |
|---|---|---|
| Texas Bar No. 24011171 | Texas Bar No. 24132301 | Texas Bar No. 24144019 |
| Peter.wahby@gtlaw.com | Morgan.jones@gtlaw.com | holmes.hampton@gtlaw.com |

GREENBERG TRAURIG LLP
2200 Ross Ave, Suite 5200 Dallas, Texas 75201
Telephone: 214.665.3600
Facsimile: 214.665.3601
ATTORNEYS FOR DEFENDANT WALMART INC.

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002