# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **DILIP JANA** | § | Civil Action No. 4:24-cv-00698-SDJ-BD |
| *Plaintiff* | § | |
| v. | § | |
| **WALMART, INC.,** | § | |
| *Defendant.* | § | |
| | § | |

---

### Plaintiff's Motion to Vacate District Judge's Order Dkt 91 and Magistrate Judge's Protective Orders Dkt 66, 67

---

**TO THE HONORABLE SEAN D. JORDAN, UNITED STATES DISTRICT JUDGE:**

1. Plaintiff Dr. Dilip Jana, **pro se**, respectfully moves to vacate District Judge Order Dkt. 91 and Magistrate Judge Protective Orders Dkt. 66 and Dkt. 67. This motion is brought principally under Federal Rule of Civil Procedure 54(b) because Dkt. 66, Dkt. 67, and Dkt. 91 are interlocutory orders that remain subject to revision before entry of final judgment. It is further grounded in Rule 72(a), the protective-order limits imposed by Rule 26(c), the disclosure and supplementation structure of Rules 26(a) and 26(e), and the Fifth Amendment's guarantee that a party may not be bound by a dispositive reply-stage theory without notice and a meaningful opportunity to respond.

### I.   THE DISTRICT COURT'S OWN PRIOR NON-ENGAGEMENT CANNOT BE BOOTSTRAPPED INTO FINALITY BY A MANDAMUS DENIAL

2. Dkt. 117 denied multiple motions challenging Walmart's July 18 production, yet instead of removing that production under Rule 26(g)(2), the Court preserved it through a court-invented

---

"written confirmation" mechanism for a trillion-dollar defendant, even though that mechanism appears nowhere in the Federal Rules of Civil Procedure. Dkt 117:

### ORDER

Yesterday, the parties appeared for a hearing on several of plaintiff Dilip Jana's motions. Minute Entry for Oct. 6, 2025. For the reasons stated on the record, it is **ORDERED** that:

1) Jana's motion for criminal referral and sanctions, Dkt. 72, is **DENIED**;

2) Jana's motions to strike Walmart's July 18, 2025, production and for sanctions, Dkts. 94, 106, 108, are **DENIED**;

3) Jana's motion to strike Walmart's response to Dkt. 72, Dkt. 95, is **DENIED**;

4) Jana's motion to place Walmart's July 18, 2025, production in the public domain, Dkt. 109, is **DENIED**;

5) Defendant Walmart, Inc. must submit written confirmation of its July 18, 2025, production certification within seven days of the docketing of this order.

So **ORDERED** and **SIGNED** this 7th day of October, 2025.



Bill Davis
United States Magistrate Judge

3. Dkt. 91 _recited_ Rule 72(a), overruled Dkt. 77 without answering Plaintiff's preserved objection.

The Court has reviewed Jana's objections, his supplemental notice, and the related motions and concludes that Jana has failed to demonstrate that the Magistrate Judge's Order was clearly erroneous or contrary to the law.

It is therefore **ORDERED** that Plaintiff Dilip Jana's Objections to Magistrate Judge's Order and Request for District Judge Review, (Dkt. #77), are **OVERRULED**.

So **ORDERED** and **SIGNED** this 24th day of July, 2025.

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

4. As shown in the flowchart below, the District Court and Fifth Circuit have created a circular procedural bootstrap that has left the preserved Rule 26 issues without any written ruling or explanation for over nine months – the sole beneficiary is the trillion dollar defendant.



The Fifth Circuit then denied extraordinary mandamus relief. But that denial was not a blanket merits adjudication of all preserved district-court issues. The Fifth Circuit expressly stated: "If Jana was dissatisfied with the magistrate judge's handling of the case, **he could, but did not, direct his complaints to the district court.**" That statement is decisive. It means the Fifth Circuit denied extraordinary relief in part because it expected Plaintiff to return to the district court and seek ordinary review there. Plaintiff is now doing exactly what the Fifth Circuit said he had not yet done. The district court now invoking that mandamus denial as though it excuses further district-court engagement with the very issues that drove Plaintiff to mandamus in the first place. **That is circular.** That is why the present posture creates a circular procedural bootstrap that should not be allowed to substitute for a merits ruling.

5. Plaintiff has separately placed before this Court the problem of summary non-engagement and overreading of the Fifth Circuit's mandamus denial in Dkt. 168. A mandamus denial does not erase the district court's independent duty to address what remains pending before it. It does not transform unresolved district-court questions into resolved ones. And it does not permit the district court to treat its own prior non-engagement as cured by an appellate refusal to issue an extraordinary writ. If allowed to stand, this loop would mean that the less fully the district court engages preserved issues, the easier it becomes later to claim that those issues are somehow already over. That is precisely why the bootstrap is so serious: it converts the absence of a merits ruling into the justification for avoiding one. That point matters even more because, in a later order, Judge Jordan wrote: "Though the issue of recusal remains open to the extent that Jana continues to file motions challenging my ruling, the controversy has been resolved by the Fifth Circuit," and further wrote that "the Fifth Circuit's ruling extinguishes the controversy." Those statements cannot be used here to avoid written review of the

protective-order controversy. The Fifth Circuit did not say the protective-order controversy was "resolved" or "extinguished" on the merits. It said Plaintiff had not yet exhausted the district-court route.

6. This motion is therefore the very district-court route the Fifth Circuit said Plaintiff had not yet taken. Because extraordinary mandamus was denied on the premise that ordinary district-court review remained available, this Court should now provide direct written review of Dkt. 66, Dkt. 67, and Dkt. 91 rather than attempt to shift the burden back onto the Fifth Circuit's extraordinary-remedy ruling. Put differently, the Fifth Circuit denied extraordinary relief because Plaintiff had not yet fully pursued ordinary district-court review; it did not hold that Dkt. 66, Dkt. 67, or Dkt. 91 were correct on the merits, and it did not hold that Dkt. 91 had meaningfully engaged Plaintiff's objections under Rule 72(a). The Fifth Circuit noted that "[d]istrict courts have broad discretion in determining whether to grant a motion for a protective order," and explained that interlocutory review of such ordinary discovery rulings is generally ***unavailable*** "**through mandamus or otherwise**" **absent a "clear and indisputable" right to relief.** Thus, the Fifth Circuit denied extraordinary relief because mandamus was not the proper vehicle to overturn an ordinary discovery order on that record—not because it adjudicated the antecedent merits question Plaintiff raises here: whether the material being shielded ever belonged to discovery at all. That category question remained for district-court review, and Dkt. 91 did not answer it.

## II. ARGUMENT

### A. Rule 54(b) authorizes this Court to vacate and revise Dkt. 66, Dkt. 67, and Dkt. 91

7. Federal Rule of Civil Procedure 54(b) provides that, absent an express final-judgment determination, any order adjudicating fewer than all claims or the rights and liabilities of fewer than all parties "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Dkt. 66 and Dkt. 67 are nondispositive protective-order rulings. Dkt. 91 is a district-judge order overruling objections to that nondispositive ruling. None of those orders is a final merits judgment disposing of all claims. Rule 54(b) is therefore the correct procedural vehicle. It is being asked to correct interlocutory orders that continue to govern the case and continue to restrict Plaintiff on a protective-order foundation that was never lawfully reconciled with the docket. Because those are interlocutory orders, Rule 54(b) permits and requires their correction now.

## B. Dkt. 91 should be vacated because it did not perform the meaningful Rule 72(a) review the rule requires

### B.1. Dkt. 91 did not engage Plaintiff's preserved objection that Rule 26(c)(1) cannot support a protective order over material never shown to belong to any valid discovery category

9. By the time Dkt. 91 was signed on July 24, 2025, this issue was squarely and repeatedly before the Court. In Dkt. 62 (May 5, 2025):

> **"PLAINTIFF'S DECLARATION OF DEFENDANT'S INCOMPLETE/EVASIVE INITIAL DISCLOSURE AND PLAINTIFF'S OBJECTION TO DEFENDANT'S SUPPLEMENTAL INITIAL DISCLOSURE"**

, Plaintiff stated:

> "..…While Initial Disclosures are generally intended to remain confidential between the parties, the Plaintiff respectfully brings this portion of the Defendant's Initial Disclosure to the Court's attention in the interest of justice.. As of this filing, the Defendant has **failed to produce a single document, which directly undermines the purpose and obligations set forth in Federal Rule of Civil Procedure 26(a)( 1)(A)(ii)**...Defendant failed to comply with

its obligations under Federal Rule of Civil Procedure 26(a)( 1)(A)(ii) by producing zero (0)..” (emphasis added)

10. Then Dkt 62 states clearly long before Dkt 66 (June 27, 2025) was ordered:

> “PLAINTIFF'S **OBJECTION** TO DEFENDANT'S SUPPLEMENTAL INITIAL DISCLOSURE…**Plaintiff respectfully OBJECTS Defendant's future Supplemental Initial Disclosure**, if any, pursuant to FRCP26(a)(l)(A)(ii).” (emphasis added)

11. That objection was not isolated, and it was not abandoned. In Dkt. 64, Plaintiff repeated that Walmart had “failed to produce a single responsive document,” had “produced no documents during Initial Disclosures,” and had failed to comply with Rule 26(a)(1)(A)(ii), which requires “a copy or a description by category and location of all documents” the disclosing party may use to support its claims or defenses. Dkt 64 (¶¶29-30) made it explicit:

> “**Walmart has failed to produce a single document in its Initial Disclosures, in direct violation of Federal Rule of Civil Procedure 26 (a)(1)(A)(ii),** which requires each party to provide “a copy or a description by category and location of all documents…” (emphasis added)

12. Then, in Dkt 70 (July 1, 2025): “PLAINTIFF'S RENEWED NOTICE OF OBJECTION TO ANY FUTURE SUPPLEMENTAL INITIAL DISCLOSURE DOCUMENT PRODUCTION BY DEFENDANT WALMART INC”. Plaintiff objected again: “Plaintiff expressly preserves and renews his objection to any future supplemental initial disclosure production by Walmart Inc. under Rule 26(a)(l)(A)(ii) in this case.”

13. Then, before Dkt. 91 (July 24, 2025) was entered, Walmart's actual April 7 initial disclosure had already been placed on the docket through Dkt. 70, and Dkt. 77 expressly told the Court that Walmart filed Dkt. 63 **“having produced zero documents, zero ESI, and zero privilege log, while withholding documents through incomplete and evasive initial disclosures (Dkt 62, Dkt 64 ¶¶ 29–31, Dkt. 70, PageID #1068–1073, EXHIBIT A-1).”.** Rule 26(e) does not authorize a party to

---

manufacture a compliant initial disclosure later by calling it a "supplement." The Rule provides that "[a] party who has made a disclosure under Rule 26(a) … must supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." **That text matters.** The *verbs* "supplement or correct" **presuppose an actual Rule 26(a) disclosure capable of supplementation or correction in the first place.** If Walmart's April 7 initial disclosure produced zero documents and did not provide the Rule 26(a)(1)(A)(ii) "copy—or a description by category and location—of all documents, electronically stored information, and tangible things" it may use to support its claims or defenses, then **there was no valid disclosure baseline for Rule 26(e) to supplement.** In that circumstance, a later production cannot become a lawful "Supplemental Initial Disclosure" by label alone.

14. That was the bridge Dkt. 91 was required to confront under Rule 72(a): whether Rule 26(e) could lawfully operate at all after an initial disclosure that, on **Plaintiff's preserved objection (Dkt 62, 70)** and Walmart's own April 7 document, produced zero documents. Dkt. 91 did not answer that question in writing. **A Rule 26(c)(1) protective order may govern discovery material; it does not authorize protection over material never shown to belong to any valid discovery category at all.**

15. Yet Dkt. 91 stated only that Plaintiff had failed to demonstrate that Dkt. 66 was clearly erroneous or contrary to law. It did not explain how Walmart could lawfully proceed by later "Supplemental Initial Disclosure" after an initial disclosure that, on its face, produced zero documents and did not satisfy Rule 26(a)(1)(A)(ii). It did not identify what valid discovery category the later June 9 or July 18 material belonged to. And it did not explain how Rule 26(c)(1) could support a protective order over material whose discovery status was never established in the first place. During the October 6,

2025 hearing Magistrate Judge recognized the defect but still did not penalize Walmart: "There was zero documents initially. So how could you supplement zero?" (Dkt 123-3; L15-16, PageID 1855) **That should have ended the story as per Rule 1**. It is now April 12, 2026, it is time to apply law to Walmart – it's long overdue. *The record now reflects a troubling inversion of Rule 1: rather than securing the just, speedy, and inexpensive determination of this straightforward issue, the Court's course has required an unemployed whistleblower to file motion after motion simply to obtain application of a basic rule against a trillion-dollar defendant, while simultaneously faulting Plaintiff for filing too many motions.*

16. Dkt. 66 itself shows the same problem. The Court stated that "**even if Wal-Mart's discovery responses are incomplete … that does not mean that the court should not issue a protective order.**" But Plaintiff's objection was *not* merely that Walmart's responses were "*incomplete*." Plaintiff's objection was that Walmart's April 7 initial disclosure produced zero documents and that **Walmart had not shown that the material it wanted shielded belonged to any valid discovery category at all.** Dkt. 91 did not engage that objection in writing.  **It therefore did not perform the Rule 72(a) review the rule requires.**

17. How could Dkt. 91 meaningfully apply Rule 72(a) without answering Plaintiff's preserved objection that Walmart could not lawfully proceed by later Supplemental Initial Disclosure after a zero-document initial disclosure? Dkt. 91 could not have provided meaningful Rule 72(a) review while leaving unanswered Plaintiff's preserved objection that Walmart could not lawfully proceed by later "Supplemental Initial Disclosure" after a zero-document initial disclosure. **That was the dispositive issue.** It was preserved (Dkt 62), renewed (Dkt 70), and placed squarely before the Court.

**Rule 72(a) required the Court to confront it. The Court must confront it now—not by bypassing it, not by silence, and not by another summary denial, but by directly applying the governing law to the record already before it.** The Court may reject Plaintiff's objection, but it may not continue refusing to answer it.

### B.2. Dkt. 91 also failed to engage Plaintiff's preserved Fifth Amendment objection that Dkt. 66 adopted Walmart's new reply-stage June 9 theory without giving Plaintiff a meaningful opportunity to respond

18. Dkt. 91 also failed to address Plaintiff's separate constitutional objection. Walmart did not present the June 9 production posture as a load-bearing basis for relief in its original protective-order motion. Instead, Walmart used reply-stage material to shift the theory. Dkt. 65-3 described June 9 as "Walmart's first production of documents," and Walmart asserted in reply that it had served initial disclosures, produced documents, and was preparing a privilege log. Dkt. 66 then adopted that new posture, relying on the premise that "Walmart served its initial disclosures, see Dkt. 65-2 at 2." Plaintiff expressly raised the constitutional defect in Dkt. 77. As quoted in the later record, Dkt. 77 argued that "Dkt. 66 was issued in violation of Plaintiff's Fifth Amendment due process rights, Local Rule CV-7(f) … Dkt. 66 relied on new reply-stage assertions … before Plaintiff had a meaningful opportunity to rebut those new arguments and misrepresentations." Dkt. 77 also argued that, "even if Walmart's June 9, 2025, dump is treated as 'initial disclosures,' Plaintiff's timely May 2, 2025 Objection (Dkt. 62) precludes Plaintiff's acceptance of these documents," and that Dkt. 65-2 and 65-3 mischaracterized the June 9 dump as "initial disclosures.". By the time Dkt. 91 was signed, that constitutional objection was squarely before the Court. Yet Dkt. 91 did not address it in writing. It did not explain whether Walmart could use reply to recast the June 9 transmission as though it were lawful "initial disclosures." It did not explain whether Plaintiff was denied a meaningful opportunity

to respond before Dkt. 66 adopted that new theory. And it did not explain how Rule 72(a) review was satisfied without confronting the due-process objection Dkt. 77 expressly raised. The later record only confirms the force of that objection. As reflected elsewhere in the docket, the Court itself later stated: "There was zero documents initially. So how could you supplement zero?"(Dkt 123-3; L15-16, PageID 1855) If there were zero documents initially, then Walmart's reply-stage June 9 theory was not a harmless procedural pivot. It was a new merits premise. Plaintiff objected to that premise in Dkt. 77 on both Rule 26 and Fifth Amendment grounds. Dkt 77 explicitly stated: "These errors collectively deprived Plaintiff of due process by denying the right to meaningfully participate in the discovery process before restrictions were imposed, contrary to the **Fifth Amendment and Mathews v. Eldridge, 424 U.S. 319, 333 (1976)**". Dkt. 91 did not engage either one in writing. Accordingly, Dkt. 91 should be vacated because it did not provide meaningful Rule 72(a) review of either dispositive objection Plaintiff actually presented: first, that Rule 26(c)(1) cannot support a protective order over material never shown to belong to any valid discovery category; and second, that Dkt. 66 adopted Walmart's new reply-stage June 9 theory in violation of Plaintiff's Fifth Amendment right to a meaningful opportunity to respond.

### C. Dkt. 66, Dkt. 67, and Dkt. 91 should be vacated because the protective order is now shielding only Walmart's July 18 production, and Rule 26(c) cannot protect material that does not belong to any valid discovery category

19. As set out in Section B above, Walmart's April 7 initial disclosure produced zero documents, did not satisfy Rule 26(a)(1)(A)(ii), and could not lawfully support later "Supplemental Initial Disclosure" after Plaintiff expressly objected to such supplementation. It follows that Walmart's later July 18, 2025 production does not belong to any valid discovery category. **That is dispositive now because discovery is stayed (Dkt 99)**. The protective order is not presently needed to govern any

---

hypothetical future production. Its only live practical effect is to continue shielding Walmart's July 18, 2025 production. That is what Dkt. 66, Dkt. 67, and Dkt. 91 are doing now.

20. Rule 26(c) allows protection only for discovery material. It does not authorize a protective order to remain in force over material that was never shown to belong to any valid discovery category at all. The Court may have discretion over valid discovery. But it has no discretion to keep shielding non-discovery by inertia. The Court's own later acknowledgment underscores the point: "There was zero documents initially. So how could you supplement zero?"(Dkt 123-3; L15-16, PageID 1855).  If Walmart could not lawfully supplement a zero-document initial disclosure, then the July 18 production cannot be kept under Rule 26(c) as though it were ordinary discovery. So the issue is now simple. At this point, the protective order is shielding only Walmart's July 18 production. Because that production has never been shown to belong to any valid discovery category, Dkt. 66, Dkt. 67, and Dkt. 91 cannot continue to stand. A protective order cannot be used as a shell around material that is not discovery.

### III. THE COURT HAS A DUTY TO ANSWER CONTROLLING DOCKET QUESTIONS DIRECTLY, ACCURATELY, AND UNDER THE JUDICIAL OATH

21. This motion asks the Court to answer controlling docket questions directly and truthfully. A federal judge takes an oath to "administer justice without respect to persons, and do equal right to the poor and to the rich," and to "faithfully and impartially discharge and perform all the duties incumbent upon" him under the Constitution and laws of the United States. **28 U.S.C. § 453.** That duty includes applying the Federal Rules *as written,* describing the docket accurately, and resolving preserved legal issues on the law rather than by silence, narrowing, or summary non-engagement. That duty is especially important here because, as set out in Section I, **¶¶ 2-6** above, the Fifth

Circuit's order forecloses any attempt to hide behind mandamus to avoid written district-court review. Plaintiff sought mandamus only after Dkt. 91 failed to engage the preserved Rule 26, Rule 72(a), Local Rule CV-7(f), and Fifth Amendment objections in writing. Plaintiff has now done exactly that. The Court therefore should not answer this motion with the same type of summary disposition that drove Plaintiff to mandamus in the first place.

22. The timing underscores why a direct written response is now long overdue. Plaintiff filed Dkt. 77 on July 11, 2025, placing the Rule 72(a) objections squarely before the Court, and Dkt. 91 was entered on July 24, 2025.  It is now April 13, 2026. More than nine months have passed since Dkt. 91. Plaintiff should not have to file motion after motion merely to obtain the written review Rule 72(a) already requires. That is the Court's duty to provide. During that delay, the practical benefit of the Court's silence has flowed in only one direction: toward Walmart, a defendant with billion-dollar litigation power. Plaintiff respectfully submits that the Court's duty is not to preserve that asymmetry by inaction, but to decide the preserved issues under the governing rules. Rule 1 requires the Court and the parties to secure the "**just, speedy, and inexpensive determination of every action and proceeding**." This motion asks the Court to do exactly that. These are not obscure doctrines. They are the ABCs of federal civil procedure: Rule 26(a)(1)(A)(ii), Rule 26(c)(1), Rule 26(e), Rule 72(a), and the Fifth Amendment requirement of notice and a meaningful opportunity to respond.

23. The same unresolved issues presented in this motion also overlap with the pending recusal motions. Dkt. 91's failure to engage the preserved objections in writing are not isolated merits points. They are part of the same docket pattern Plaintiff has already placed before the Court in the recusal track. When those issues are not directly answered, the omission affects not only whether Dkt. 66,

Dkt. 67, and Dkt. 91 may continue to stand, but also whether the record reflects neutral, law-bound adjudication. When legal objections are raised, tied to specific rules, preserved in writing, and then repeatedly bypassed or left unanswered, that pattern itself becomes part of the record. Under those circumstances, the Court's duty is not merely to dispose of the motion, but to answer the controlling docket questions directly, accurately, and under the governing law. Plaintiff is alleging that the Court-approved protective-order structure is continuing to shield material that the Federal Rules do not authorize the Court to protect, and that Plaintiff's Fifth Amendment right to a meaningful opportunity to respond was bypassed when Walmart's new June 9 theory was adopted through reply and never meaningfully reviewed under Rule 72(a). **Those are serious complaints.** If they are wrong, the Court should say so directly and explain why. If they are right, the Court should correct them. What the Court should not do is remain silent while the challenged order structure continues in force. Because these same omissions now overlap with the pending recusal motions, the Court's failure to address them is no longer merely a merits problem; it has become part of the recusal record itself. What Plaintiff seeks here is modest but necessary: a written, law-engaged ruling stating what the Court is deciding, under what rule, and why. **The Court may rule against Plaintiff.** But it should not hide behind the Fifth Circuit's extraordinary-remedy ruling, and it should not answer with further silence or another summary denial. To uphold the integrity of the judicial system, the Court should now do its own job under Rule 1 and under its judicial oath: decide the preserved issues directly, promptly, and in writing.

## IV. REQUEST FOR EXPEDITED CONSIDERATION

24. Plaintiff respectfully requests expedited consideration because, for more than 9 months, the Court's protective order has continued to ***shield material that is not lawfully protectable under Rule 26(c)***. The harm addressed by this motion is ongoing and present. Walmart filed its renewed protective-order motion on June 3, 2025, and the resulting protective-order structure has remained in place since June 27, 2025**.** Discovery is now stayed. The order is therefore not presently needed to govern future discovery. Its only live practical effect is to continue shielding Walmart's July 18, 2025 production. The court itself ***later*** acknowledged during the hearing on October 6, 2025  the threshold defect itself and asked Walmart: "**There was zero documents initially. So how could you supplement zero?**"(Dkt 123-3; L15-16, PageID 1855). Walmart never responded. If Walmart could not lawfully supplement a zero-document initial disclosure, then the material now being shielded does not belong to any valid discovery category. Plaintiff respectfully submits that this issue should not remain unresolved any longer and requests expedited disposition.

## V. PRAYER

25. Plaintiff respectfully submits that this motion should not be met with another summary denial. Plaintiff already received that in Dkt. 91, and it was precisely that non-engagement that drove Plaintiff to seek mandamus. The Fifth Circuit responded not by resolving the merits, but by stating that Plaintiff could direct his complaints to the district court.  Plaintiff has now done so. The district court should therefore do what Dkt. 91 did not: <u>engage the actual law and the actual preserved objections in writing</u>.  For the reasons stated above, Plaintiff respectfully requests that the Court:

(1) Vacate Dkt. 91 under Rule 54(b), (2) Vacate Dkt. 66 under Rule 54(b), (3) Set aside the protective order Dkt 67 entered pursuant to Dkt. 66, (4) Provide written threshold findings

answering the questions set out above if the Court declines immediate vacatur; and (5) Grant any further relief the Court deems just and proper.

Dated: April 13, 2026

Respectfully Submitted,

DILIP JANA, Plaintiff

*Pro Se*

Telephone : 318-243-9743

Email: janadilip@gmail.com

800 Fairlawn St, Allen, TX, 75002

**CERTIFICATE OF SERVICE**

On April 13, 2026, a true and correct copy of the foregoing was served upon the following through

the Court's CM/ECF system:

Peter S. Wahby                Morgan E. Jones              Holmes H. Hampton
Texas Bar No. 24011171        Texas Bar No. 24132301       Texas Bar No. 24144019
Peter.wahby@gtlaw.com         Morgan.jones@gtlaw.com       holmes.hampton@gtlaw.com

GREENBERG TRAURIG LLP
2200 Ross Ave, Suite 5200 Dallas, Texas 75201
Telephone: 214.665.3600
Facsimile: 214.665.3601
ATTORNEYS FOR DEFENDANT WALMART INC.
Dated: April 13, 2026

Respectfully Submitted,

_____
DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002