# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **DILIP JANA**<br>*Plaintiff*<br>v.<br>**WALMART, INC.,**<br>*Defendant.* | §<br>§<br>§<br>§<br>§ | **Civil Action No. 4:24-cv-00698-SDJ-BD**<br><br>**USCA Fifth Circuit Case No. 26-40392** |

## PLAINTIFF-APPELLANT'S RULE 62.1 MOTION FOR INDICATIVE RULING ON DKT. 179'S OMNIBUS DENIAL AND FOR MOTION-SPECIFIC ADJUDICATION OF PRESERVED COLLATERAL ISSUES UNDER RULES 60(b)(3) AND 60(d)(3)

1. Plaintiff-Appellant Dr. Dilip Jana, ***pro se***, moves under Federal Rules of Civil Procedure 60(b)(3), 60(d)(3), and 62.1 concerning Dkt. 179. He requests motion-specific adjudication of the collateral rule-compliance and record-integrity questions preserved in Dkts. 147, 151, 170, and 173 under the Court's retained authority. If the Court concludes that any requested adjudication requires modification of Dkt. 179's omnibus-denial clause, Plaintiff alternatively requests a Rule 62.1(a)(3) statement that the Court would grant relief on remand or that the motion raises a substantial issue.

Dkt. 179 was entered "[p]ursuant to" Dkt. 178, which dismissed the action at the protected-activity pleading step, declined to reach Walmart's affirmative defense, and directed alleged litigation misconduct to the Federal Rules or the Court's inherent power. Dkt. 178 at 25-27, PageID 4207-09; Dkt. 179 at 1, PageID 4211. The immediate determinations requested here are collateral to that merits disposition and cannot disturb it.

2. This motion also invokes the Court's institutional interest in determining what entered its record. In *Hazel-Atlas*, where fraud had already been established, the Supreme Court explained why that interest extends beyond the opposing litigants:

> *"Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the* ***agencies of public justice be not so impotent*** *that they must always be mute and* ***helpless victims of deception and fraud."*** *(emphasis added)*

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

3. Plaintiff does not ask the Court to assume that ultimate conclusion here. He requests the limited, oath-bound comparison needed to determine whether the verified facts satisfy the Rule 60 standards stated below. Dkts. 178 and 179 were entered June 22, 2026; Plaintiff timely appealed, and the Rule 60(b)(3) component of this motion is timely under Rule 60(c)(1). Any Rule 62.1(a)(3) statement will be reported under Federal Rule of Appellate Procedure 12.1.

## I. LEGAL STANDARDS

### A. Rule 62.1 and collateral authority

4. Rule 62.1 permits the Court to defer or deny a motion it lacks authority to grant because of a pending appeal, state that it would grant the motion on remand, or state that the motion raises a substantial issue. Fed. R. Civ. P. 62.1(a). The latter two statements activate Federal Rule of Appellate Procedure 12.1. Two controlling Supreme Court precedents establish that termination of the principal action does not extinguish authority over collateral rule-enforcement matters. First, the Supreme Court held in *Cooter & Gell* that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). A sanctions determination "is not a judgment on the merits of an action"; rather, it decides "a collateral issue: whether the attorney has abused the judicial process," and "[s]uch a determination may be made after the principal suit has been terminated." *Id.* at 396. Second, the Supreme Court's unanimous decision in *Willy*—on certiorari to, and affirming, the Fifth Circuit—applied that principle

even after the district court was determined to lack subject-matter jurisdiction: “The interest in having rules of procedure obeyed, by contrast, does not disappear upon a subsequent determination that the court was without subject-matter jurisdiction.” *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992), aff’g 915 F.2d 965 (5th Cir. 1990). Binding Fifth Circuit precedent independently confirms that “a district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of a case.” *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 637 (5th Cir. 2008). Accordingly, the Court may adjudicate now those portions of the requested relief that enforce procedural rules, police litigation conduct, or otherwise remain collateral to Dkts. 178 and 179. To the extent any requested ruling would modify Dkt. 179 or grant judgment-altering Rule 60 relief, Rule 62.1(a)(3) supplies the procedure.

5. The Rule 26 process proceeded by Court order. Rejecting Walmart's requested stay, Magistrate Judge Davis held: "The court agrees with Jana. Walmart has not demonstrated exceptional circumstances warranting a stay of discovery pending the court's ruling on its Rule 12(b)(6) motion." Dkt. 49 at 2, PageID 706. Walmart's April 7, 2025 initial disclosure and July 18, 2025 supplemental production therefore occurred within a Court-authorized Rule 26 process. The later stay at Dkt. 99 could not retroactively excuse or cure defects in disclosures already served, and Dkt. 179 did not eliminate the Court's authority to adjudicate collateral compliance with that process.

**B. Rules 60(b)(3) and 60(d)(3)**

**6. (1) Presentation standard - Rule 60(b)(3).** Rule 60(b)(3) permits relief when the movant proves by clear and convincing evidence that an opposing party's fraud, misrepresentation, or misconduct prevented the movant from fully and fairly presenting the case. *Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 364 (5th Cir. 2018). **(2) Judicial-integrity standard - Rule 60(d)(3).** Rule 60(d)(3)

preserves the Court's power to set aside a judgment for fraud that "defiles the court itself" or prevents "the judicial machinery" from performing its impartial function. *Wilson v. Johns-Manville Sales Corp.*, 873 F.2d 869, 872 (5th Cir. 1989). The institutional interest described in *Hazel-Atlas* explains why that inquiry extends beyond injury to one litigant. 322 U.S. at 246. **(3) Final fraud-on-the-court standard.** A final Rule 60(d)(3) determination requires an unconscionable plan or scheme designed to influence the judicial decision and is reserved for the most egregious misconduct, including fabrication of evidence by a party in which an attorney is implicated. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1573 (5th Cir. 1996); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978). Section II.A applies these standards separately: the presentation standard to the effect of Walmart's representations and the missing sworn corporate answer; the judicial-integrity standard to the different versions of the email submitted in federal proceedings; and the final fraud-on-the-court standard only after comparison with the original October 4, 2023 email and supporting records.

## II. ARGUMENT

### A. THE DIFFERENT VERSIONS OF THE OCTOBER 4 BOWMAN EMAIL USED BY WALMART IN FEDERAL PROCEEDINGS PRESENT A PRESERVED RULE 60(d)(3) QUESTION

**7. The Bowman email is central evidence, but deciding its integrity cannot disturb the judgment.** Walmart used the October 4, 2023 Wendy Bowman email to support its contention that it would have terminated Plaintiff without his protected whistleblowing activity—the employer's clear-and-convincing-evidence burden described in *Murray v. UBS Securities, LLC*, 601 U.S. 23, 26, 28 (2024). Walmart submitted a redacted version to OSHA on February 21, 2024, what it called an unredacted version to OALJ on June 14, 2024, and another version through its July 18, 2025 supplemental production here. Dkt. 13, PageID 298–99; Dkt. 30 at 10–11, PageID 589–90. Dkt. 178

dismissed at the protected-activity pleading step and expressly did not reach Walmart's affirmative defense. Dkt. 178 at 25, PageID 4207. Determining whether those versions accurately reproduce the original email therefore concerns collateral record integrity and cannot alter Dkts. 178 or 179.

**8. The altered-version issue was pleaded before discovery and presented as an institutional concern.** The Complaint alleged that the OALJ version was altered from the OSHA version. Dkt. 13 ¶191, PageID 277. Walmart acknowledged the redacted-then-unredacted sequence but characterized the allegation as vexatious and sanctionable, Dkt. 14 at 2–5, PageID 325–28, and later represented through counsel that it "did not 'alter' evidence—it produced an unredacted version of a document." Dkt. 30 at 11, PageID 590. "Statements by counsel in briefs are not evidence." *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980). During October 6, 2025 hearing Plaintiff accordingly told the Court: "My purpose today is simply to help protect the integrity of this Court's record"; if the July 18 files were changed, later-created, or uncertified, "nothing else in this case can move forward on a true and honest record." Dkt. 123-4 at 2, PageID 1872. That is the institutional interest protected by *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

**9. Walmart never converted counsel's no-alteration position into a served, oath-bound corporate answer.** Interrogatory No. 2 asked whether Walmart maintained that the OALJ version was "exactly the same unaltered document" and merely an "unredacted version" of the OSHA version; Walmart replied that it "cannot answer 'YES' or 'NO' to this Interrogatory as phrased." Dkt. 72-1 at 6–7, PageID 1132–33. Interrogatories 3 and 4 sought facts concerning the missing "Termination recommend…msg," different displayed times, and any alteration; Walmart supplied objections but no substantive answers. Id. at 7–8, PageID 1133–34. The paper bore counsel's

signature, **not a substantive answer under oath by a Walmart officer or agent**; Rule 33(b)(1)(B), (3), and (5) distinguish corporate answers under oath from counsel-signed objections. Id. at 2–3, PageID 1128–29. Plaintiff promptly requested correction "under oath." Dkt. 72-2 at 2–5, PageID 1152–55. Walmart then said it "will confirm under oath," Dkt. 85 ¶6, PageID 1273; that it "intends to supplement" while demanding that requests for "under-oath testimony must cease," Dkt. 88 at 2–4, PageID 1312–14; that its responses were "exclusively objections" but it "will amend them" after the stay, Hr'g Tr. 13:13–14:13, Dkt. 123-3, PageID 1843–44; and that "verified supplemental responses" were ready to serve although it was "unsure how to investigate or respond." Dkt. 118-2 at 2–3, PageID 1727–28. No signer, execution date, service date, or transmittal record for those purported responses appears in the record.

**10. Dkts. 109 and 111 expressly preserved admissibility, spoliation, fabrication, fraud on the court, and the resulting institutional-integrity concern before judgment.** Dkt. 109 called the case a "constitutional crossroads" and stated that prompt judicial intervention was necessary to "preserve the integrity of federal proceedings." Dkt. 109 at 3, PageID 1561. It further stated that the Court's treatment "creates the appearance of selective justice," invoked the Supreme Court's command that "justice must satisfy the appearance of justice," and warned that leaving Walmart's July 18 supplemental production "uncertified, unruled, and shielded from scrutiny" "undermines not only Plaintiff's rights but the integrity of federal judicial proceedings themselves." Id. at 5, PageID 1563 (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)); see also *In re Murchison*, 349 U.S. 133, 136 (1955) (quoting *Offutt*). Six days later, Dkt. 111 was titled "**NOTICE OF OBJECTION TO ADMISSIBILITY OF WALMART'S JULY 18, 2025 PRODUCTION, EVIDENCE OF SPOLIATION AND FRAUD**." Dkt. 111 at 1, PageID 1591. It preserved objections under Rules

26(g)(2), 37(c)(1), and 37(e), and "under *Hazel-Atlas* . . . (fraud on the court)," while expressly reserving sanctions based on alleged "fabrication of evidence." Id. at 3, PageID 1593. Its concluding section, "Spoliation and Fraud," alleged that three versions purporting to be the same email contained irreconcilable differences constituting "spoliation of evidence and fraud on the court." Id. at 9, PageID 1599. Dkt. 111 also attached Plaintiff's sworn § 1746 forensic analysis. The present Rule 60(d)(3) issue and its institutional implications are therefore direct continuations of issues expressly preserved before judgment, not postjudgment recharacterizations of a discovery dispute.

**11. The sworn analyses identify a defined set of source-testable differences.** Plaintiff states that he read Walmart's files directly from its ZIP without alteration and verified matching before-and-after hashes. Dkt. 109-2 at 2–3, PageID 1572–73; Dkt. 111-2 at 3–4, PageID 1606–07. The analyses report: (1) different displayed sent times and header structures and distinct SHA-256 hashes among the OSHA, OALJ, and federal-court versions, Dkt. 111 at 4–8, PageID 1594–98; (2) no top-level Received, X-Received, Authentication-Results, DKIM, or ARC fields in the July 18 native-email package, although embedded components contain Received fields, Dkt. 109-5, PageID 1583; (3) "Termination recommend…msg" in the OSHA version but Recommendation.docx in the federal-court version, with Adrian Milbourne identified as Creator and LastModifiedBy and a revision count of 106, Dkt. 109-2 at 5–6, PageID 1574–75; Dkt. 109-7 at 2, PageID 1587; Dkt. 111 at 8, PageID 1598; and (4) a PDF identifying Tesseract OCR as producer and July 16, 2025 as its creation date—two days before production and **nearly twenty-two months after the asserted email date.** Dkt. 111-2 ¶¶10–12, 16, PageID 1607–09. Plaintiff's sworn analysis concludes that the PDF is an OCR reconstruction created in 2025. Walmart's statement that its production included the email

natively does not identify the specific file it claims is the unchanged original or reconcile these combined differences. Dkt. 88 at 4, PageID 1314.

12. The Court redirected Dkt. 109 away from its pleaded certification, spoliation, fabrication, and court-integrity grounds before denying it as a confidentiality dispute. Plaintiff explained that the purported native EML had never passed SMTP, had been supplied as a modified standalone version, and presented "a question of integrity of this Court." Hr'g Tr. 29:7–30:14, Dkt. 123-3, PageID 1859–60. When Plaintiff reiterated that the production lacked certification and contained "fraudulent information throughout," the Court responded: "But how does that—I want you to focus on the public domain issue. . . . That's the basis for this." Id. at 31:1–8, PageID 1861. The Court then asked Walmart—whose production was challenged—whether the confidentiality procedure was "reason enough to deny Docket 109"; Walmart answered, "Yes, Your Honor." Id. at 33:6–16, PageID 1863.
13. The Court adopted that route and directed Plaintiff to file under the Protective Order. Id. at 36:4–17, PageID 1866. Plaintiff complied through Dkt. 151 in January 2026, but it received no motion-specific ruling before Dkt. 179's omnibus denial. Dkt. 151 at 1, PageID 3129; Dkt. 179 at 1, PageID 4211. This supplies the Rule 60(d)(3) nexus: the Court did not test the alleged deception. It redirected the issue away from merits review and then left the Court-directed follow-up without motion-specific findings; consequently, the judicial machinery did not perform its impartial task of determining whether its record had been corrupted. More than eighty years ago, the Supreme Court in *Hazel-Atlas* identified that precise institutional failure: "The public welfare demands that the agencies of public justice be not so **impotent** that they must always be mute and **helpless victims of deception and fraud**." 322 U.S. at 246 (emphasis added).

14. The Court likewise mischaracterized Dkt. 72 as an objections dispute and never adjudicated the visible differences between Walmart's OSHA and OALJ productions of the Bowman email. Dkt. 72 placed those two versions before the Court and asked whether they were the same unchanged email or had been altered. At the hearing, Plaintiff reiterated: "I submitted Walmart's own document that Walmart submitted to OSHA . . . [and] OALJ. . . . And I asked whether those two documents are same or altered." Hr'g Tr. 15:19–16:7, Dkt. 123-3, PageID 1845–46. The Court instead denied Dkt. 72 because objections were permissible and refusing to answer yes-or-no did not itself constitute fraud. Id. at 16:8–16, PageID 1846; Dkt. 117 at 1, PageID 1688. That ruling answered a different question and made no finding concerning the versions' identity, authenticity, or alteration. Dkt. 173 later requested thirteen binary findings separating the narrowed objection ruling from the unadjudicated visual-discrepancy issue, but Dkt. 179 supplied none. Dkt. 173 at 12–14, PageID 4156–58; Dkt. 179 at 1, PageID 4211. This repeated narrowing supplies the same Rule 60(d)(3) nexus: the Court never determined whether the materially different tribunal-facing versions reflected deception of the judicial process. This repeated narrowing supplies the same Rule 60(d)(3) nexus: the Court never determined whether the materially different tribunal-facing versions reflected deception of the judicial process. That is the precise institutional danger identified in *Hazel-Atlas*: "The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." 322 U.S. at 246 (emphasis added). Accordingly, Plaintiff requests the limited verification specified in § III.B; absent that verification or express merits findings, neither Dkt. 117 nor Dkt. 179 authenticates any Bowman-email version or adjudicates the preserved Rule 60 issues.

### B. WALMART HAS NOT SHOWN THAT ITS JULY 18, 2025 SUPPLEMENTAL PRODUCTION WAS TIMELY UNDER RULE 26(e); RULE 37(c)(1) PRECLUDES ITS USE ABSENT SUBSTANTIAL-JUSTIFICATION OR HARMLESSNESS FINDINGS

15. Walmart fixed the category of the July 18, 2025 supplemental production. Counsel told the Court: "It's a supplement to the initial disclosure," followed by "we supplement some additional documents." Oct. 6, 2025 Hr'g Tr. 25:18-22, Dkt. 123-3, PageID 1855. The Court therefore need not identify another discovery category; the issue is whether Walmart's admitted supplement complied with Rule 26(e). Walmart possessed and had already used the Bowman email as central defense evidence at OSHA and OALJ in 2024. Dkt. 13, PageID 298-99; Dkt. 178 at 25, PageID 4207. Yet Walmart's signed April 7, 2025 initial disclosure stated that "Walmart's investigation remains ongoing" and, in response to Rule 26(a)(1)(A)(ii), stated only that "Walmart will produce copies of all required, non-privileged materials in accordance with the Court's Order Governing Proceedings [ECF No. 50] upon the Court's entry of a protective order." Dkt. 70-1 at 1-2, PageID 1069-70. That was a conditional promise of future production, not a production. Walmart's April 7, 2025 initial disclosure transmitted no copies and listed broad categories without identifying custodial, physical, or electronic locations. Id. at 2-3, PageID 1070-71. Rule 26(a)(1)(A)(ii) required copies or a description by category and location when the initial disclosure was due; incomplete investigation was no excuse. Fed. R. Civ. P. 26(a)(1)(E).

16. Walmart's October 6 handout admitted that document productions "came later," yet claimed that Walmart's April 7, 2025 initial disclosure required no category-and-location description "because Walmart produced copies of documents instead." Dkt. 118-2 at 3, PageID 1728. That later description was false on the face of Walmart's signed April 7, 2025 initial disclosure: the signed initial disclosure promised future production, provided no copies, and identified no locations. Later copies cannot

retroactively satisfy the deadline for the April 7, 2025 initial disclosure. The Court itself asked: "There was zero documents initially. So how could you supplement zero?" Oct. 6, 2025 Hr'g Tr. 25:13-16, Dkt. 123-3, PageID 1855. Walmart did not identify a copy or location entry in its April 7, 2025 initial disclosure; counsel repeated that the July 18, 2025 supplemental production was a supplement to the initial disclosure. Id. at 25:17-22. That admission fixes the category; it does not establish compliance. Plaintiff preserved the defect before Walmart served the July 18, 2025 supplemental production. Dkt. 62 stated on May 5, 2025 that Walmart had "failed to produce a single document," explained that initial disclosure was not conditional on a protective order, and objected to later supplementation. Dkt. 62 at 3-5, PageID 842-44. Dkt. 70 renewed the objection on July 1, 2025, docketed Walmart's April 7, 2025 initial disclosure for enforcement of Rules 26(a)(1)(A)(ii) and 37(c)(1), and "expressly preserve[d] and renew[ed]" preclusion. Dkt. 70 at 1-2, 6-7, PageID 1060-61, 1065-66. Walmart therefore served the July 18, 2025 supplemental production with advance written notice of the zero-document baseline and the preclusion issue. Rule 26(e) permits timely correction; it does not erase the initial omission of evidence Walmart had possessed and used since 2024. Walmart must establish what the July 18, 2025 supplemental production corrected and why that correction was timely. Otherwise, Rule 37(c)(1) precludes its use absent findings of substantial justification or harmlessness.

### C. WALMART DID NOT PROMPTLY SUPPLY THE MISSING RULE 26(g) SIGNATURE AFTER NOTICE; RULE 26(g)(2) THEREFORE REQUIRES STRIKING THE JULY 18, 2025 SUPPLEMENTAL PRODUCTION

17. The Supreme Court adopted Rule 26(g) in 1983 to impose an "affirmative duty" and "curb discovery abuse." 461 U.S. 1095 (1983); H.R. Doc. No. 98-54; Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. The 2007 Advisory Committee Note called the former

omission of disclosures from the unsigned-paper provision an "obvious drafting oversight" and expressly placed disclosures among the matters the court "must strike" unless the omitted signature is supplied promptly after notice. Fed. R. Civ. P. 26 advisory committee's note to 2007 amendment. Walmart's admission establishes that the July 18, 2025 supplemental production was a supplement to its Rule 26(a)(1) initial disclosure. Rules 26(a)(4) and 26(g)(1) required the supplemental disclosure to be in writing, signed, and served. At the October 6 hearing, counsel identified no signature served with the July 18, 2025 supplemental production. Counsel instead asserted that the later transmission "relates back to the original certification" and is "like one continuing certification." Oct. 6, 2025 Hr'g Tr. 25:1-12, Dkt. 123-3, PageID 1855. Walmart's hearing handout likewise stated there is "no such thing as a separate Rule 26(g) certification" and relied on the signature on Walmart's April 7, 2025 initial disclosure. Dkt. 118-2 at 3, PageID 1728. Those assertions defend the absence of a later signature; they do not identify one. Rule 26(g)(2) supplies the cure and the consequence. The recipient has no duty to act on an unsigned disclosure, and after the omission is called to the serving party's attention, the serving party must promptly supply the signature or "the court must strike it." Plaintiff called the omission to Walmart's attention on July 21, 2025; Dkt. 94 recorded on July 25, 2025 that no signature had been supplied. Dkt. 94 at 2-3, 8, PageID 1358-59, 1364. Walmart's position that no later certification was required defended, but did not cure, the omission. A confirmation that the signature on Walmart's April 7, 2025 initial disclosure continuously covered the July 18, 2025 supplemental production neither signs that later disclosure nor certifies its completeness when made.

18. Dkt. 117 nevertheless required Walmart to submit "written confirmation of its July 18, 2025, production certification." Dkt. 117 at 1, PageID 1688. Rule 26(g)(2) identifies a promptly supplied

signature—not written confirmation of an asserted continuous certification—as the cure. The dispositive questions under the Rule are therefore binary: did a signature accompany the July 18, 2025 supplemental production, or did Walmart promptly supply the omitted signature after notice? If neither occurred, Rule 26(g)(2) commands that the Court strike the July 18, 2025 supplemental production. Whether Walmart may use any information from that supplemental production is separately governed by Rule 37(c)(1).

**D. THE FOUR PRESERVED COLLATERAL MOTIONS REQUIRE LONG-OVERDUE, MOTION-SPECIFIC ADJUDICATION**

19. Dkts. 147, 151, 170, and 173 preserved related collateral questions concerning Rules 26(e), 26(g), and 37(c)(1), Protective Order eligibility, and the identity and source of the October 4, 2023 Bowman email. Dkts. 157, 160, and 163 later requested motion-specific rulings, but Dkt. 179 disposed of the four motions only through its omnibus clause. The issues are neither new nor complex: Plaintiff pleaded the altered-version allegation on September 13, 2024, challenged Walmart's zero-document April 7, 2025 initial disclosure in Dkt. 62, and invoked Rule 26(g)(2)'s mandatory-strike command in Dkts. 94, 106, and 108 after Walmart served its admitted July 18, 2025 supplement to its initial disclosure without a separate signature. Dkt. 117 instead required "written confirmation." Dkt. 117 at 1, PageID 1688. Rule 26(g)(2) recognizes no such substitute: unless the omitted signature is promptly supplied after notice, "the court must strike" the disclosure. Rule 1 favors resolving those closed-record questions now, with limited Bowman-email verification only if necessary.

20. Those collateral rulings cannot disturb Dkt. 178's protected-activity ruling or the judgment based upon it. Dkt. 178 expressly declined to reach Walmart's affirmative defense and directed alleged litigation misconduct to sanctions under the Federal Rules or the Court's inherent power. Dkt. 178 at

25–27, PageID 4207–09. If relief requires revision of Dkt. 179's omnibus-denial clause, Rule 62.1(a)(3) supplies the procedure. That clause—"[a]ll relief not previously granted is hereby DENIED"—did not determine the contents of the April 7 initial disclosure, the July 18 supplement's Rule 26(e) and 26(g) compliance or Protective Order eligibility, or the identity and authenticity of the Bowman-email versions. Dkt. 179 at 1, PageID 4211. Motion-specific findings are necessary for appellate review and to prevent the omnibus denial from being treated as findings never made. Because *Hazel-Atlas* warns that judicial institutions must not become "mute and helpless victims of deception and fraud," and Appeal No. 26-40392 is proceeding, Plaintiff requests expedited adjudication of Dkts. 147, 151, 170, and 173 and any necessary Rule 62.1(a)(3) statement under Federal Rule of Appellate Procedure 12.1.

## III. REQUESTED RELIEF

**21.** Plaintiff respectfully requests that the Court: **(A) Adjudicate the preserved motions or issue an indicative ruling.** Adjudicate Dkts. 147, 151, 170, and 173 on their merits through motion-specific written orders and grant their requested collateral relief. If the pending appeal prevents relief, issue the appropriate Rule 62.1(a)(3) would-grant or substantial-issue statement for notice under Federal Rule of Appellate Procedure 12.1. **(B) Order limited verification.** If the Court considers the record concerning Walmart's April 7, 2025 initial disclosure ambiguous, require a declaration under 28 U.S.C. § 1746 from a person with personal knowledge identifying every copy transmitted with that disclosure and the contemporaneous transmittal record. Require Walmart to identify the purported "verified supplemental responses" referenced in Dkt. 118-2—including their signer, execution date, service date, and transmittal record—or state under oath that none were served. Separately, require a chambers-only comparison of the original October 4, 2023 Bowman email as stored in Wendy

Bowman's system-of-record mailbox, including its original attachments, with the OSHA, OALJ, and federal-court versions, using the available complete native headers, chain-of-custody records, and collection, export, or processing records. Require a qualified custodian or IT declarant with personal knowledge to identify the source materials, state whether Walmart stands behind the native-email file included in its admitted July 18, 2025 supplement to its initial disclosure as an unchanged copy of the original mailbox email, and reconcile the identified timestamp, header, hash, *.msg/Recommendation.docx*, revision-count, and Tesseract differences by reference to those records. Repeating counsel's descriptions is not source verification. Until verification is completed and the Court makes express findings, no party should treat as established either that the versions are accurate copies of one unchanged email or that the visible differences prove alteration. (C) **Enter a motion-specific written disposition of any denial or deferral.** Identify the affected docket and request and state whether the ground is procedural, jurisdictional, or merits-based. If merits-based, specify whether the Court decided: (1) April 7 contents and July 18 Rule 26(e) and 26(g) compliance; (2) Rule 37(c)(1); (3) Protective Order eligibility; (4) whether verified responses were served; (5) Bowman source and authenticity, including the scope of the Dkt. 72 and Dkt. 109 rulings; and (6) the preserved Rule 60 issues. Absent an express finding, no denial or deferral should be construed as establishing any underlying fact, authenticity determination, or rule-compliance conclusion. Absent an express finding, a denial or deferral should resolve only the requested relief and should not be construed as establishing an underlying fact, authenticity determination, or rule-compliance conclusion. A motion-specific written disposition is necessary because Dkt. 179's omnibus denial did not disclose which questions were decided and because precise findings are necessary for appellate review and to prevent either party from attributing determinations the Court did not make.

Dated: 08-26-2026

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002

**CERTIFICATE OF SERVICE**

I certify that on the date this motion is filed, I served it on counsel for Walmart via the Court's CM/ECF system.

Respectfully Submitted,

DILIP JANA, Plaintiff
*Pro Se*
Telephone : 318-243-9743
Email: janadilip@gmail.com
800 Fairlawn St, Allen, TX, 75002